# EXHIBIT A

# BCV-17-100630 - KENNETH G. BEAVERS VS NEW PENN FIANCIAL, LLC DBA SHELLPOINT MORTGAGE SERVICING ET AL

Case Number: BCV-17-100630
File Date: 03/22/2017
Case Status: Pending

Court: B-Civil
Case Type: 26-CV Other Real Property-Civil Unlimited

Plaintiff : KENNETH G. BEAVERS

**Active Attorneys**
**Pro Se**

Defendant : NEW PENN FIANCIAL, LLC DBA SHELLPOINT
MORTGAGE SERVICING

**Active Attorneys**
Lead Attorney:
**ASCHERIN, PRESTON K**
Retained

Defendant : RESURGENT CAPITAL SRVICES LP

Defendant : FEDERAL HOME LOAN MORTAGAGE CORPORATION AKA FREDDIE MAC

**03/22/2017 Complaint**
Comment: IN EXPANDO
**03/22/2017 Civil Case Cover Sheet (CM-010)**
**03/27/2017 Summons Issued and Filed**
**03/27/2017 Order to Show Cause**
Comment: Re: 3.110 Hearing Date: 7/10/2017 Hearing Time: 8:30 AM Hearing Department/Division:11
**03/27/2017 Civil and Small Claims Documents**
Person to Serve: KENNETH G. BEAVERS                        Unserved
Person to Serve: NEW PENN FIANCIAL, LLC DBA                Served: 04/25/2017
SHELLPOINT MORTGAGE SERVICING
Person to Serve: RESURGENT CAPITAL SRVICES LP             Served: 04/25/2017
Person to Serve: FEDERAL HOME LOAN MORTAGAGE              Served: 04/25/2017
CORPORATION AKA FREDDIE MAC
**05/01/2017 Proof of Service - Summons / Complaint**
Comment: AS TO RESURGENT CAPITAL SERVICES, LP, MAIL
**05/01/2017 Proof of Service - Summons / Complaint**
Comment: AS TO FEDERAL HOME LOAN MORTGAGE CORP AKA FEDDIE MAC, US MAIL
**05/01/2017 Proof of Service - Summons / Complaint**
Comment: AS TO NEW PENN FIANCIAL, US MAIL
**05/01/2017 Proof of Service - Summons / Complaint**
Comment: AS TO RESURGENT MORTGAGE SERVICING . US MAIL
**05/01/2017 Proof of Service - Summons / Complaint**
Comment: AS TO FEDERAL HOME LOAN MORTGAGE CORPORATION AKA FREDDIE MAC, US MAIL
**05/23/2017 Notice of Acknowledgement and Receipt**
Comment: AS TO NEW PENN FINANCIAL , LLC
**05/23/2017 Notice of Acknowledgement and Receipt**

05/23/2017 Notice of Acknowledgement and Receipt
Comment: AS TO RESURGENT MORTGAGE SERVICING,

05/26/2017 Answer to Complaint
Comment: AS TO NEW PENN FINANCIAL, LLC DBA SHELLPOINT MORTGAGE SERVICING.

05/26/2017 Notice of Change Name/Address

07/10/2017 Order to Show Cause - CRC 3.110
Judicial Officer: Lampe, David R.
Hearing Time: 8:30 AM
Cancel Reason: Proof Of Service Filed

09/25/2017 Case Management Conference
Judicial Officer: Lampe, David R.
Hearing Time: 8:30 AM

## BCV-17-100630 - KENNETH G. BEAVERS VS NEW PENN FIANCIAL, LLC DBA SHELLPOINT MORTGAGE SERVICING ET AL

| | |
|---|---|
| Case Number: BCV-17-100630 | Court: B-Civil |
| File Date: 03/22/2017 | Case Type: 26-CV Other Real Property-Civil Unlimited |
| Case Status: Pending | |

Plaintiff : KENNETH G. BEAVERS

**Active Attorneys**
**Pro Se**

Defendant : NEW PENN FIANCIAL, LLC DBA SHELLPOINT MORTGAGE SERVICING

Defendant : RESURGENT CAPITAL SRVICES LP

Defendant : FEDERAL HOME LOAN MORTAGAGE CORPORATION AKA FREDDIE MAC

**03/22/2017 Complaint**
Comment: IN EXPANDO
**03/22/2017 Civil Case Cover Sheet (CM-010)**
**03/27/2017 Summons Issued and Filed**
**03/27/2017 Order to Show Cause**
Comment: Re: 3.110 Hearing Date: 7/10/2017 Hearing Time: 8:30 AM Hearing Department/Division:11
**03/27/2017 Civil and Small Claims Documents**
Person to Serve: KENNETH G. BEAVERS          Unserved
**07/10/2017 Order to Show Cause - CRC 3.110**
Judicial Officer: Lampe, David R.
Hearing Time: 8:30 AM
**09/25/2017 Case Management Conference**
Judicial Officer: Lampe, David R.
Hearing Time: 8:30 AM



**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF KERN**
BAKERSFIELD COURT
1415 TRUXTUN AVENUE
BAKERSFIELD CA 93301

| | FOR COURT USE ONLY |
|---|---|

*ENDORSED*
FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF KERN

MARCH 27, 2017

TERRY MCNALLY, CLERK
BY *Stephanie Sosa* DEPUTY

PLAINTIFF/PETITIONER:
   KENNETH G. BEAVERS
DEFENDANT/RESPONDENT:
   NEW PENN FIANCIAL, LLC DBA SHELLPOINT MORTGAGE
**SERVICING**
   RESURGENT CAPITAL SRVICES LP
   FEDERAL HOME LOAN MORTAGAGE CORPORATION AKA
**FREDDIE MAC**

| NOTICE OF ORDER TO SHOW CAUSE | CASE NUMBER: |
|---|---|
| RE: CALIFORNIA RULES OF COURT, RULE 3.110 | BCV-17-100630 |

**TO PLAINTIFF AND PLAINTIFF'S COUNSEL:**

**You are ordered to appear** on **July 10, 2017** at **8:30 AM** in **Bakersfield Department 11** of the above entitled court to give any legal reason why sanctions shall not be imposed for failure to serve the complaint on all named defendants and file proof(s) of service with the court within sixty (60) days after the filing of the complaint pursuant to California Rules of Court, Rule 3.110.  All appearances are mandatory, unless the required proof(s) of service are received by the court five (5) court days prior to the hearing date, and then no appearance is necessary.

**TERRY MCNALLY**
CLERK OF THE SUPERIOR COURT

Date:  March 27, 2017

By:  _____*Stephanie Sosa*_____
    Stephanie Sosa, Deputy Clerk

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:** NEW PENN FINANCIAL, LLC DBA SHELLPOINT
*(AVISO AL DEMANDADO):* MORTGAGE SERVICING; RESURGENT CAPITAL
SERVICES LP; RESURGENT MORTGAGE SERVICING; FEDERAL
HOME LOAN MORTGAGE CORPORATION AKA FREDDIE MAC AND
DOES 1-50 INCLUSIVE

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

KENNETH G. BEAVERS

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*
ENDORSED

SUPERIOR COURT, METROPOLITAN DIVISION
COUNTY OF KERN

MAR 27 2017

TERRY McNALLY, CLERK
BY _____ DEPUTY

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | Superior Court, County of Kern<br>Metropolitan Division<br>1415 Truxtun Ave.<br>Bakersfield, CA. 93301 | **CASE NUMBER:** *(Número del Caso):* BC 17-100630 |
|---|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
KENNETH G. BEAVERS   (661)-327-7041
3200 21ST STREET, SUITE 300
BAKERSFIELD, CA. 93301

DATE: MAR 27 2017   Terry McNally   Clerk, by   S. SOSA   , Deputy
*(Fecha)* _____ *(Secretario)* _____ *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation) ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |
|---|---|---|

CM-010

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br><br>KENNETH G. BEAVERS<br>3200 21st St. Suite 300<br>BAKERSFIELD CA. 93301<br>TELEPHONE NO.: (661) 327-7041  FAX NO.: (661) 327-9551<br>ATTORNEY FOR *(Name):* | FOR COURT USE ONLY<br><br>ENDORSED<br><br>FILED<br>SUPERIOR COURT, METROPOLITAN DIVISION<br>COUNTY OF KERN<br><br>MAR 22 2017<br><br>TERRY McNALLY, CLERK<br>BY_____ DEPUTY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF KERN
STREET ADDRESS: 1415 TRUXTUN AVE
MAILING ADDRESS: 1415 TRUXTUN AVE
CITY AND ZIP CODE: BAKERSFIELD CA 93301
BRANCH NAME:

CASE NAME: KENNETH G. BEAVERS VS. NEW PENN FINANCIAL, LLC ET AL.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: BCV-17-100630 |
|---|---|---|---|---|
| ☒ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter ☐ Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☒ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☒ is ☐ is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. ☐ Large number of separately represented parties
b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. ☒ Substantial amount of documentary evidence
d. ☐ Large number of witnesses
e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☒ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☒ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ☒ is not a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*

Date: MARCH 22, 2017

KENNETH G BEAVERS _____ Kenneth G Beavers
(TYPE OR PRINT NAME)         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
*www.courtinfo.ca.gov*

ENDORSED

FILED
SUPERIOR COURT, METROPOLITAN DIVISION
COUNTY OF KERN

MAR 22 2017

TERRY McNALLY, CLERK
BY_____DEPUTY

NOTICE OF ASSIGNMENT AND
CASE MANAGEMENT CONFERENCE

Assigned to DAVID R. LAMPE for all pur

Hearing Date: 7-25-17

Time: 8:30 AM

Department: 11

See CRC Rule 3.720 Et. Seq.

1  Kenneth G. Beavers
3200 21st Street, Suite 300
2  Bakersfield, CA 93301
Cell: (661) 204-4646
3  Fax: (661) 327-9551
Email: kenbeavers6@gmail.com
4  Plaintiff in Pro Per

5

6

7  KENNETH G. BEAVERS,

8        Plaintiff,

9  vs.

10 NEW PENN FINANCIAL, LLC DBA
SHELLPOINT MORTGAGE SERVICING;
11 RESURGENT CAPITAL SERVICES LP;
RESURGENT MORTGAGE SERVICING;
12 FEDERAL HOME LOAN MORTGAGE
CORPORATION AKA FREDDIE MAC
13 AND DOES 1 – 50 INCLUSIVE

14       Defendants

CASE NO.: BCV-17-100630

COMPLAINT FOR:

(1)  FRAUD BASED ON DECEIT AND MISREPRESENATION;
(2)  FRAUDULENT INDUCEMENT;
(3)  VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACT;
(4)  VIOLATION OF THE PRIVACY ACT;
(5)  VIOLATION OF THE FAIR CREDIT REPORTING ACT;
(6)  VIOLATION OF THE CONSUMER FINANCIAL PROTECTION BUREAU'S LOSS MITIGATION LAWS AND REGULATIONS;
(7)  VIOLATION OF CALIFORNIA FORECLOSURE REDUCTION ACT AKA THE CALIFORNIA HOMEOWNER BILL OF RIGHTS;
(8)  VIOLATION OF RESPA 2605;
(9)  CONSPIRACY;
(10) BREACH OF THE COVENENT OF GOOD FAITH AND FAIR DEALING;
(11) FINANCIAL ELDER ABUSE WITH CONTINUAL PERSONAL ATTACKS WITH MALICE
(12) UNFAIR AND UNLAWFUL BUSINESS PRACTICE
(13) BREACH OF FUDICIARY DUTIES

COMES NOW THE PLAINTIFF who hereby files this Complaint as follows:

1

COMPLAINT

Plaintiff, KENNETH G. BEAVERS, hereby reserves the right to amend this complaint if and when Plaintiff learns more facts and/or issues in regards to the actions or in-actions of the Defendants.

GENERAL ALLEGATIONS AS TO ALL CAUSES OF ACTION TO ALL DEFENDANTS:

Plaintiff alleges:

PARTIES

1. At all times material to this complaint, Plaintiff, KENNETH G. BEAVERS was a resident of the County of Kern and the owner of the real property which is the subject of this action, commonly known as 3716 Crest Drive, Bakersfield, CA 93306. The Property is more particularly described within Exhibit "1" attached hereto and incorporated herein by reference (hereinafter "the Subject Property").

2. Plaintiff is informed and believes and thereon alleges that Defendant NEW PENN FINANCIAL, LLC dba SHELLPOINT MORTGAGE SERVICING ("SHELLPOINT") is a Delaware corporation duly authorized to conduct business within the state of California.

3. Plaintiff is informed and believes and thereon alleges that Defendant RESURGENT CAPITAL SERVICES, LP ("RCSLP") is a Delaware corporation duly authorized to conduct business throughout the state of California.

4. Plaintiff is informed and believes and thereon alleges that Defendant RESURGENT MORTGAGE SERVICING ("RESURGENT") was not authorized to conduct business throughout the state of California based on searches of state licensing records. Plaintiff is ignorant of state of Corporation.

5. Plaintiff is informed and believes and thereon alleges that FEDERAL HOME LOAN MORTGAGE SERVICING ("FREDDIE MAC") is a federally chartered corporation and is duly authorized to conduct business throughout the state of California.

COMPLAINT

6. Plaintiff is ignorant of the Defendants sued as Does 1 – 50 herein, and thereon alleges that said Doe Defendants are the agents, employees, representatives, subsidiaries, and controlled entities of the named Defendants herein and that each Doe Defendant at all times herein were acting as the agent and/or representative of each other and hereby are responsible in some manner for the injuries and damages complained of herein. Plaintiff will seek leave of court to amend this complaint to name the true names and capacities of Doe Defendants when the same is ascertained.

## FACTS COMMON TO ALL CAUSES OF ACTION

7. On or about October 4, 2005, Plaintiff, as borrower, made, executed and delivered to AMERICAN BROKERS CONDUIT ("ABC"), Lender, a Promissory Note in the amount of $408,000. A copy of said Note is attached herein as Exhibit "2" and incorporated herein by this reference.

8. To secure payment of the principal sum and interest as provided for in the Note and as part of the same transaction, Plaintiff as trustor, executed and delivered to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") as beneficiary for ABC, a Deed of Trust dated October 4, 2005, by the terms of which Plaintiff, as trustor, conveyed to Stewart Title of California, as trustee, real property described in paragraph 1. A copy of said Deed of Trust is attached hereto as Exhibit "3" and incorporated herein by this reference.

9. Prior to first mortgage payment, ABC notified the Plaintiff his loan servicer was AMERICAN HOME MORTGAGE SERVICING, INC. ("AHMSI"), a Maryland Corporation, who collected mortgage payments in Irving, Texas. AHMSI was licensed as a loan servicer in the state of California.

10. On or about November 19, 2007, AHMSI notified the Plaintiff that his loan servicing was transferred to Bank of America. No identity of creditor was given.

3

COMPLAINT

11. On or about November 17, 2009, Bank of America notified the Plaintiff his loan servicing was transferred to Bank of America, N.A. Bank of America identified the Plaintiff's creditor as "FHLMCLBAC133sub".

12. On or about March 26, 2012, Bank of America notified the Plaintiff his loan servicing was transferred to Defendant RESURGENT MORTGAGE SERVICING ("RESURGENT"), a division of RESURGENT CAPITAL SERVICES, LP.

13. On or about April 19, 2012, Defendant RESURGENT notified the Plaintiff that his loan servicing had been placed with RESURGENT by Defendant FREDDIE MAC.

14. On or about January 15, 2013 the Plaintiff requested a loan modification and submitted a hardship letter to Defendant RESURGENT. The Plaintiff's request was sent as a Qualified Written Request ("QWR") under Section 6 of RESPA (12 U.S.C Section 2605) (RESPA).

15. Defendant RESURGENT notified the Plaintiff that his request was assigned to "single point of contact" ("SPC") Stacy Davidson on or about January 23, 2013.

16. RESURGENT SPC Stacey Davidson ignored the Plaintiff's QWR for loan modification as well as telephone calls placed to her by the Plaintiff.

17. On or about March 25, 2013, Plaintiff sent a "QWR" under RESPA to RESURGENT protesting "SPC" Davidson's failure to respond to his January 15, 2013 request for loan modification.

18. On or about April 5, 2013, Defendant RESURGENT assigned a new "SPC", Fabio Vivas (Vivas), who sent the Plaintiff a Uniform Borrowers Assistance Form (UBAF) application with instructions for completion and a list of required documents for loan modification approval.

19. On or about April 24, 2013, the Plaintiff submitted his UBAF dated April 22, 2013 which was indexed as to content and third party verified as enclosed.

20. On or about May 2, 2013, Defendant RESURGENT's "SPC" Vivas revealed in a telephone conversation with the Plaintiff that an unauthorized third party had opened the

4

sealed envelope addressed specifically to SPC Vivas. This envelope contained multiple personal identification and sensitive business records. SPC Vivas informed the Plaintiff many of the submitted documents were missing.

21. SPC Vivas' attitude toward the Plaintiff was aggressive by demanding the resubmission of the missing personal identification documents. Vivas refused to attempt to locate previously submitted documents that were mishandled by an unauthorized third party and made the following demands:

    a) Defendant RESURGENT and SPC Vivas demanded the Plaintiff submit all of his sole proprietorship business bank statements for the past two months including his company's client trust accounts.

    b) The Plaintiff vehemently objected to submitting the client trust accounts for two reasons:

        1. California law limits the Plaintiff from having more than $200.00 of his company's funds in each of the two client trust accounts.

        2. Defendant RESURGENT's demands would force the Plaintiff to violate his clients rights to privacy because the client trust account statements contained copies of actual checks issued to his multiple clients. These newly required documents would have to be submitted without the Plaintiff's client's knowledge or permission in order to comply with the Defendant RESURGENT's required time for receipt.

22. Defendant RESURGENT's SPC Vivas threatened the Plaintiff by demanding the Plaintiff submit his client trust account bank statements of the most recent two months or RESURGENT would not process his April 22, 2013 UBAF and deny his request for loan modification.

23. On or about May 22, 2013, the Plaintiff submitted copies of all requested bank statements. The two client trust account statements verified over $300,000 in deposits of which less than $400.00 was the Plaintiff's company funds. The client trust account

statements were submitted under duress which was stated in writing upon submission. This was a forced violation of the Right to Financial Privacy Act of 1978.

24. On or about June 12, 2013, Defendant RESURGENT notified the Plaintiff that his UBAF was "complete". /

25. On July 15, 2013, Defendant RESURGENT's SPC Vivas telephoned the Plaintiff to inform him that his request for loan modification was denied because he made too much money. SPC Vivas could not remember any specific reasons for this denial. This verbal denial is a blatant violation of California Civil Code 2923.6 (f) by not giving written notice and identifying specific reasons for denial.

26. On or about July 18, 2013, Plaintiff filed a written complaint with Defendant RESURGENT's SPC Vivas demanding specific details for denial. SPC Vivas had promised to send the details for RESURGENT denial within 5 business days from July 15, 2013. He never sent any written details for denial for loan modification as required by federal and state of California laws (California Civil Code 2923.6 (f)).

27. On or about July 30, 2013, Defendant RESURGENT notified the Plaintiff that his creditor was Bank of New York, Trustee for FREDDIE MAC.

28. On or about July 30, 2013, Defendant RESURGENT appointed Wendell Hayes, Jr. (HAYES JR), RESURGENT Escalations Department, to review the Plaintiff's appeal for disclosure of the income qualifying ratios RESURGENT used in their unlawful verbal denial of the Plaintiff's requested loan modification.

29. On or about August 8, 2013, Wendell Hayes, Jr. and RESURGENT notified the Plaintiff that RESURGENT needed more time to review his UBAF completed May 22, 2013. Defendant RESURGENT had received all requested and required borrower documents more than 60 days prior to August 8, 2013 to review.

30. On or about August 13, 2013, the Plaintiff submitted two "QWR" letters under RESPA to RESURGENT's Hayes Jr. requesting:

   a) Direct contact information for his creditor;

6

COMPLAINT

b) The written explanation for denial for loan modification submitted April 24, 2013, which was dated April 22, 2013, that was promised by July 20, 2015.

31. On or about September 20, 2013, the Plaintiff received a letter dated September 9, 2013 from RESURGENT's Hayes, Jr. stating that "based on a careful review of information RESURGENT received, the Plaintiff was not eligible for loan modification because RESURGENT determined the Plaintiff had cash reserves in excess of $25,000." A copy of this September 9, 2013 letter is attached to this complaint as Exhibit "4" and incorporated herein by reference.

32. RESURGENT Hayes Jr.'s letter deliberately evaded and ignored disclosing the Plaintiff's request for loan modification qualifying ratios used by RESURGENT's SPC Vivas for loan modification denial, but instead resorted to adding the Plaintiff's client trust account bank balances of over $300,000 to the Plaintiff's meager savings to invent a new replacement reason for denial in order to cover up the gross negligence of RESURGENT and SPC Vivas in evaluating the Plaintiff's UBAF of April 22, 2013.

33. This denial letter of September 9, 2013 violated California Civil Code 2923.6 (f) and 12 CFR1024.41 (h (3)) of federal law. Included in RESURGENT's letter dated September 9, 2013 as an enclosure, was a copy of the Plaintiff's executed Note, Exhibit "2", which for the first time disclosed to the Plaintiff that his original lender, ABC, had assigned the ownership of his note to Goldman Sachs Mortgage without recourse. This assignment was un-dated and contradicted the claim of Defendant RESURGENT that FREDDIE MAC owned the Plaintiff's note. If FREDDIE MAC did not own the Plaintiff's note, they could not grant a loan modification or short sale.

34. On or about September 30, 2013, the Plaintiff sent an appeal letter/binder to Defendant RESURGENT dated September 27, 2013 demanding:

a) Proof of valid present creditor;

b) Direct contact information for said valid creditor;

7

COMPLAINT

    c)  Documented written proof of RESURGENT's authorization to service Plaintiff's loan;

    d)  Clarification of reasons for denial of the Plaintiff's loan modification request.

35. Plaintiff notified RESURGENT all mortgage payments would be curtailed until RESURGENT provided valid documentation of the aforereferenced items (a) through (d). This letter/binder was sent as a QWR under RESPA. A copy of Plaintiff's letter dated September 27, 2013 is attached hereto as Exhibit "5" and incorporated herein by reference.

36. On or about October 7, 2013, Plaintiff served RESURGENT with a Don't Call Notice as to specific phone numbers. Defendant RESURGENT was notified in said notice all future communications would be in writing. This notice was served on RESURGENT Hayes Jr. in three separate written notices which were acknowledged as received by RESURGENT.

37. On November 20, 2013, Defendant RESURGENT willfully violated the registered Don't Call Notices by calling the Plaintiff at his business. This phone call was screen shot and recorded by the Plaintiff.

38. On or about November 25, 2013, Plaintiff filed a written complaint with Defendant RESURGENT regarding the willful violation of the "Don't Call Notice" described in Paragraph 36 of this complaint.

39. On or about December 4, 2013, Defendant RESURGENT responded to the Plaintiff's QWR appeal letter dated September 27, 2013 (Exhibit "5" of this complaint) by serving the Plaintiff by certified mail a NOTICE OF DEFAULT AND INTENT TO ACCERLERATE "NOD"). A copy of this "NOD" dated December 4, 2013 is attached to this complaint as an Exhibit "6" and incorporated herein by reference.

40. This December 4, 2013 "NOD" was a violation of 12 CFR 1024.41 (f) and Section 6 of RESPA (12 U.S.C. Section 2605 (e) (1) (2) (3)). The Plaintiff was not 120 days late on his mortgage payment on December 4, 2013.

COMPLAINT

41. This December 4, 2013 "NOD" served on the Plaintiff on or about December 9, 2013 gave formal notice to the Plaintiff that the present owner and holder of his mortgage was RESURGENT Capital Services LP. Refer to Exhibit "6" of this complaint and paragraph 39.

42. The Plaintiff was advised and instructed in Defendant RESURGENT's "NOD" referenced in Paragraph 39 and Exhibit "6" of this complaint by an "Important Notice" to contact Defendant FREDDIE MAC directly to verify information contained in said "NOD" dated December 4, 2013. This Important Notice was attached and made a part of Exhibit "6" of this complaint.

43. This "Important Notice" gave the physical address of FREDDIE MAC which was the first disclosure of direct contact information previously demanded in multiple prior "QWR" letters sent under RESPA by the Plaintiff.

44. In the "Important Notice" enclosed and made a part of the "NOD" dated December 4, 2013, as referenced in paragraph 39 through 43 and Exhibit 6 of this complaint, Defendant RESURGENT deliberately attempted to confuse, deceive, and mislead the Plaintiff by putting Defendant RESURGENT's phone numbers as the direct contact phone number for FREDDIE MAC in order to block the Plaintiff from contacting FREDDIE MAC for clarification of ownership of his mortgage.

45. On or about December 17, 2013 the Plaintiff sent a complaint letter/binder demanding Defendant RESURGENT rescind the NOD dated December 4, 2013 (Exhibit "6" of this complaint). The Plaintiff stated in said letter:

    a) This NOD was a violation of federal law and California Civil Code 1788.13 (a) (e) (j) (l);

    b) The Plaintiff had served Defendant RESURGENT with five (5) "QWR" letters under RESPA demanding proof of a verified creditor and evidence of written authorization from said creditor for RESURGENT to service Plaintiff's loan. The letters were dated

COMPLAINT

August 13, 2013; September 27, 2013; October 28, 2013; November 4, 2013; and November 25, 2013. All letters were confirmed received by RESURGENT.

46. Defendant RESURGENT served the Plaintiff with the NOD dated December 4, 2013 (Exhibit "6" of this complaint) on or about December 9, 2013 with full knowledge they had not responded to five (5) QWR's under RESPA for proof of valid creditor. Defendant RESURGENT willfully served said NOD without disclosure of a valid creditor or Defendant RESURGENT's authorization to serve said NOD from a valid documented creditor. This was a deliberate and willful act of violation of multiple federal and state of California consumer protection laws to be referenced at trial.

47. Defendant RESURGENT had disclosed to the Plaintiff four different and conflicting claims of ownership, holders and/or trustees of the Plaintiff's loan between July 30, 2013 and December 9, 2013. RESURGENT refused to provide the Plaintiff with valid documented evidence of present ownership for any disclosed entity as required by federal and state of California law.

48. On December 24, 2013 (Christmas Eve day), Defendant RESURGENT despicably acted with malice in violating the Plaintiff's Don't Call Notices served four times between October 7, 2013 and December 24, 2013. The Plaintiff received from RESURGENT a vicious seventeen (17) minute phone attack, which was screen shot and recorded. This was the premeditated beginning of personal attacks on the Plaintiff for reporting the Defendants RESURGENT and SHELLPOINT's continuing multiple violations of federal and state of California consumer protection laws to regulatory agencies.

49. The Defendant RESURGENT's representative used deceitful trickery to engage the Plaintiff in conversation by not immediately identifying his company or his purpose. The illegal phone call originated from RESURGENT's Houston Texas office.

50. RESURGENT's Christmas Eve day call contained the following accusations and threats to the Plaintiff:

10

COMPLAINT

a) The Plaintiff had never filed a "Don't call Notice" to specific phone numbers with RESURGENT;

b) RESURGENT never served the Plaintiff with a NOD dated December 4, 2013;

c) FREDDIE MAC was the Plaintiff's creditor and always had been;

d) RESURGENT never gave any form of notification that RESURGENT Capital Services LP was the owner and holder of the Plaintiff's mortgage;

e) Defendant threatened the Plaintiff that if he challenged any NOD, RESURGENT would hire an expensive California attorney to run up the cost of curing a default on his mortgage loan.

51. The Plaintiff is hearing impaired and this phone call was on a "speaker mode" and witnessed by the Plaintiff's wife who suffered an emotional breakdown. All Christmas activities were cancelled.

52. A formal written complaint letter was sent to Defendant RESURGENT, dated December 25, 2013, on December 26, 2013 which was confirmed delivered December 27, 2013. Plaintiff RESURGENT refused to acknowledge, apologize, or investigate the vicious attack which was motivated by intentional vengeful retaliation to harm the Plaintiff on a sacred religious holiday for reporting RESURGENT's illegal actions to regulators.

53. On or about December 31, 2013 the Plaintiff received a letter dated December 24, 2013 from RESURGENT's Hayes Jr. postmarked in Houston, Texas. A copy of this December 24, 2013 letter is attached to this complaint as Exhibit "7" and incorporated herein by reference.

54. This letter tried to cover up gross negligence and violation of federal and state of California laws by Defendant RESURGENT and their representatives Vivas and Hayes Jr. in the evaluating and processing of the Plaintiff's UBAF dated April 22, 2013. This resulted in the illegal NOD dated December 4, 2013 being served on the Plaintiff on or about December 9, 2013.

11

COMPLAINT

55. This December 24, 2013 letter contained enclosures of Hayes Jr.'s letter dated September 9, 2013 Exhibit "4" and a Min Summary from MERS for the Plaintiff's first mortgage loan with a transfer history of alleged ownership and loan servicers.

56. Defendant RESURGENT's December 24, 2013 letter was a written response to the Plaintiff's September 27, 2013 appeal letter sent to Hayes Jr. which was confirmed delivered October 2, 2013. The following is evidence from RESURGENT and Hayes Jr.'s letter dated December 24, 2013 of loan servicer malfeasance:

   a) The Defendant RESURGENT had violated the response time for a QWR under RESPA for the Plaintiff's September 27, 2013 letter;

   b) RESURGENT claims the Plaintiff's principal balance of his loan had escalated from approximately $407,000 to $680,000;

   c) RESURGENT's Hayes Jr. claims FREDDIE MAC is the Plaintiff's creditor and requests all inquiries pertaining to the Plaintiff's loan be sent to RESURGENT. This request of Hayes Jr. was made in order to cover up RESURGENT's, Hayes', and SPC Vivas' gross negligence and multiple violations of CFPB loss mitigation laws and regulations as well as California Civil Code to be referenced at trial;

   d) The RESURGENT NOD dated December 4, 2013 served by certified mail on the Plaintiff on or about December 9, 2013 notified the Plaintiff RCSLP was the owner and holder of the Plaintiff's loan, not FREDDIE MAC. This certified mail NOD contradicts and overrides Hayes Jr.'s letter of December 27, 2013 sent regular mail;

   e) The Important Notice contained in the NOD dated December 4, 2013 advises and instructs the Plaintiff to contact FREDDIE MAC directly for any reason. This certified mail notice contradicts and overrides Hayes Jr.'s statement to contact RESURGENT in his December 24, 2013 letter;

   f) The RESURGENT December 24, 2013 letter enclosure of the MERS Min Summary for the Plaintiff's loan led to the Plaintiff's discovery of conflicting, false, misleading, and questionable transfers of ownership and loan servicers over the life of his loan;

12

g) RESURGENT Hayes Jr. gave the Plaintiff a carefully manufactured false analysis of his UBAF dated April 22, 2013 to attempt to cover his false statement in his September 9, 2013 letter (Exhibit "5") to the Plaintiff that RESURGENT's denial of his loan modification was "based on a careful review" of his UBAF documentation;

h) RESURGENT and Hayes Jr. repeatedly referred the Plaintiff back to the negligent and vindictive SPC Vivas for re-evaluation of the Plaintiff's completed UBAF dated April 22, 2013 in violation of 12 CFR1024.41 (h(3)) independent evaluation. Hayes Jr. deliberately used this scheme of multiple referrals back to SPC Vivas exclusively to cover up his and SPC Vivas' multiple violations of federal and state of California consumer protection laws and gross negligence to be referenced at trial.

57. On January 8, 2014 the Plaintiff sent a response letter to RESURGENT's Hayes Jr. dated January 6, 2014 as a "QWR" under RESPA, with multiple exhibits, to Hayes Jr.'s letter of December 24, 2013. A copy of this Plaintiff's letter of January 6, 2014 without exhibits is attached to this complaint as Exhibit "8" and incorporated herein by reference. Exhibits will be presented at trial.

58. This letter challenged the following statements by Defendant RESURGENT's Hayes Jr. in his December 24, 2013 letter (Exhibit "7") to the Plaintiff.

a. The Plaintiff's principal loan balance had increased to $680,000 from approximately $407,000 without explanation;

b. No documented proof of a valid owner of Plaintiff's mortgage or authorization for RESURGENT to service Plaintiff's loan for any disclosed creditor;

c. Wrongful denial of Plaintiff's loan modification request based on qualifying ratios due to negligent elementary evaluations by an unqualified RESURGENT Representatives, including Hayes Jr.;

d. RESURGENT's Hayes Jr. calculated qualifying income loan ratios using a principal loan balance of $333,793.75 as a reason for denial of the Plaintiff's failure to qualify

13

for loan modification after stating in his December 24, 3013 letter the principal balance was $680,000 without explanation;

59. RESURGENT Hayes Jr. refused to answer this January 6, 2014 letter in a format required by Section 6 of RESPA (12 U.S.C. Section 2605 (e) (b) 2 (b) (c)) addressing specific questions in this QWR under RESPA.

60. On or about January 21, 2014, the Plaintiff sent Defendant RESURGENT a "QWR" letter under RESPA dated January 17, 2014 demanding the identity and contact information for the Plaintiff's original creditor and RESURGENT's written documented proof of right to service the Plaintiff's mortgage from any documented valid creditor. This letter was sent to RESURGENT Representative Hayes Jr. A copy of the Plaintiff's January 17, 2014 letter without exhibits is attached to this complaint as Exhibit "9" and incorporated herein by reference. Exhibits will be entered into evidence at trial.

61. The Plaintiff's letter and exhibits of January 17, 2014 is a forensic investigation by the Plaintiff of transfers of ownership and authorized servicers beginning with the recording of his loan on October 26, 2005.

62. The source of forensic information examined was:

   a) Examination of original documents presented by the Plaintiff's original lender and all servicers;

   b) Research of California regulatory agencies licensing records for alleged loan servicers;

   c) Recorded documents in Kern County, California;

   d) Notices of ownership and servicing transfer sent to and retained by the Plaintiff;

   e) Documents, notices, and letters delivered and certified mailed to the Plaintiff by Defendant RESURGENT.

63. Defendant RESURGENT refused to respond to the Plaintiff's January 17, 2014 letter. This is a violation of RESPA.

14

COMPLAINT

64. On or about March 3, 2014, the Plaintiff received a joint Notice of Transfer of Servicing from Defendant RESURGENT and SHELLPOINT dated February 14, 2014, but mailed after February 21, 2014, stating Defendant SHELLPOINT was the Plaintiff's new loan servicer effective March 1, 2014.

65. SHELLPOINT notified the Plaintiff in their February 14, 2014 notice that they had purchased the servicing of the Plaintiff's loan. The Plaintiff's loan at the time of transfer from RESURGENT was a loan in default as evidenced by RESURGENT's NOD served on the Plaintiff (Exhibit "6") on or about December 9, 2013.

66. As an acquirer of servicing of defaulted debt, SHELLPOINT is compelled to comply with the Fair Debt Collection Practices Act (FDCPA) as of March 1, 2014.

67. On March 18, 2015, the Plaintiff sent a "QWR" letter under RESPA dated March 14, 2014 to Defendant SHELLPOINT demanding documented proof of original and successor creditors and written proof of authorization for SHELLPOINT to service the Plaintiff's loan. A copy of the Plaintiff's letter dated March 14, 2014 is attached to this complaint as Exhibit "10" and incorporated herein by reference.

68. The Plaintiff's letter to Defendant RESURGENT dated January 17, 2014 as referenced in paragraphs 60 through 62 and Exhibit "9" of this complaint was submitted to Defendant SHELLPOINT on March 18, 2014 (Exhibit "10") and made a part of the Plaintiff's demands for proof of valid creditor and authorization for SHELLPOINT to service the Plaintiff's loan. Delivery of Plaintiff's letter dated March 18, 2014 was confirmed received by Defendant SHELLPOINT on March 21, 2014.

69. In March of 2014, the Plaintiff tried to access his MERS account online. This online access to retrieve an updated MERS Min Summary such as the one Defendant RESURGENT sent the Plaintiff on December 24, 2013, as referenced in paragraph 55 and 56 (f) and Exhibit "7" was blocked from record retrieval. The Plaintiff's MERS Min status was marked "Min Status Inactive", thus denying the Plaintiff access to the history

COMPLAINT

of recorded transfers of the Plaintiff's mortgage loan owners and authorized servicers as well as any future transfers for his mortgage.

70. Defendants RESURGENT, SHELLPOINT, and FREDDIE MAC have all refused to respond to multiple written demands for disclosure of the identity of the parties and their purpose for blocking the Plaintiff's records. These written demands were made as "QWR's" under RESPA.

71. On January 31, 2014, the Plaintiff sent a new UBAF to Defendant RESURGENT who had maliciously reassigned the Plaintiff's UBAF back to SPC Vivas in violation of 12 CFR 1024.41 (h (3)). The Plaintiff had filed a written complaint about SPC Vivas on September 27, 2013, as referenced in Exhibit "5".

72. The Defendant RESURGENT's representative Hayes Jr. repeatedly referred the Plaintiff back to SPC Vivas multiple times in order to try to conceal his and SPC Vivas' history of gross negligence and violation of federal and state of California law.

73. On or about February 19, 2014, the evaluation of the Plaintiff's January 31, 2014 UBAF received by RESURGENT on February 5, 2014 was transferred to Defendant SHELLPOINT's "SPC" Kim Collinsworth ("Collinsworth").

74. SPC Collinsworth and Defendant SHELLPOINT ignored the Plaintiff's January 31, 2013 UBAF for 3 months letting all time sensitive submitted documents expire in their validity. SHELLPOINT mishandled or lost many of the Plaintiff's submitted personal financial identification documents exposing the Plaintiff and his business to identity theft.

75. On April 15, 2014, the Plaintiff sent a letter dated April 4, 2014 directly and exclusively to Defendant FREDDIE MAC. A copy of this letter complaint is attached hereto as Exhibit "11" and incorporated herein by reference. The four (4) binders of Exhibits enclosed with Exhibit "11" will be presented at trial.

76. Defendant RESURGENT advised and instructed the Plaintiff in an Important Notice served on Plaintiff with Defendant RESURGENT's illegal NOD of December 4, 2013 to

16

COMPLAINT

contact Defendant FREDDIE MAC directly for any questions regarding RESURGENT's NOD. Refer to paragraphs 39 through 43 and Exhibit "6".

77. The Plaintiff's letter to FREDDIE MAC was contained in four (4) binders of Exhibits exposing the illegal, vindictive activities and deliberate personal attacks by Defendant RESURGENT, SPC Vivas, and RESURGENT representative Hayes, Jr. against the Plaintiff with despicable malice.

78. The scope of the Plaintiff's April 4, 2014 letter to Defendant FREDDIE MAC was limited to the following request:

   a) FREDDIE MAC's claim and proof of ownership of the Plaintiff's mortgage (if any);

   b) Documented proof of authorization for Defendant RESURGENT to service the Plaintiff's mortgage if FREDDIE MAC claims ownership of the Plaintiff's mortgage;

   c) Complaint against Defendant RESURGENT and their representative SPC Vivas and Hayes Jr. for deliberate and willful violation of consumer protection laws as required by CFPB laws and regulations and California Civil Codes previously referenced.

79. On April 30, 2014, the Plaintiff sent, by certified mail a "QWR" letter under RESPA, to Defendant SHELLPOINT's assigned SPC Collinsworth a complaint letter regarding her and SHELLPOINT's failure to process and respond to the Plaintiff's loss mitigation UBAF application dated January 31, 2014. A copy of the letter without exhibits is attached to this complaint as Exhibit "12" and incorporated herein by reference. Supporting Exhibits will be presented at trial.

80. SHELLPOINT SPC Collinsworth ignored the Plaintiff's impassioned pleas for fairness and help as outlined in his April 30, 2014 letter (Exhibit "12"). Ms. Collinsworth refused to answer any of the Plaintiff's written correspondence the entire time she was the Plaintiff's appointed SPC, even though the Plaintiff's multiple correspondences to SPC Collinsworth were sent as QWR's under RESPA 2605.

81. On May 23, 2014, much to the shock and dismay of the Plaintiff, he received a letter dated May 13, 2014 from SHELLPOINT Escalations Department representative Wendell

COMPLAINT

Hayes, Jr. A copy of SHELLPOINT's May 13, 2014 letter is attached to this complaint as Exhibit "13" and incorporated herein by reference.

82. Defendant SHELLPOINT had not only employed the despicable, devious and vengeful Hayes Jr., but had assigned him to monitor the Plaintiff's personal information file. SHELLPOINT took this malicious, cold, and conniving action with full knowledge that Hayes Jr.'s gross negligence of not filing three Don't Call Notices to three specific phone numbers that belonged to the Plaintiff had led to the horrific, abusive, and destructive 17 minute phone call on December 24, 2013 (Christmas Eve day) from a RESURGENT collector. This call caused the Plaintiff's wife's mental breakdown with lasting devastating effects and cancellation of the Plaintiff's meaningful religious Christmas. SHELLPOINT and Hayes, Jr. had prior notice and knowledge that this December 24, 2013 phone call had been "screen shot" and recorded by the Plaintiff. Hayes Jr.'s documented gross negligence was the cause of this vicious telephone attack on Christmas Eve day. SHELLPOINT purposely appointed Hayes Jr. to the Plaintiff's file with knowledge the Plaintiff had filed a complaint with FREDDIE MAC on April 15, 2014. Refer to paragraph 75 through 78 and Exhibit "11".

83. SHELLPOINT's Hayes Jr.'s May 13, 2014 letter (Exhibit "13") contained a litany of misstatements of facts that were documented in the Plaintiff's loan history in the MERS Min Summary  he provided the Plaintiff with on December 24, 2013 (Exhibit "7"). Hayes Jr.'s letter was a flawed and devious attempt to answer the Plaintiff's January 17, 2014 letter which contained a forensic analysis of ownership and loan servicer transfers for the Plaintiff's loan. He purposely misquoted the Plaintiff's written statements contained in his January 17, 2014 letter referenced in paragraphs 60 through 63 and Exhibit "7".

84. SHELLPOINT and Hayes Jr.'s letter of May 13, 2014 (Exhibit "13) revealed to the Plaintiff for the first time that an undisclosed party had secretly, without notice to the Plaintiff, ordered MERS to assign to Defendant RESURGENT Capital Services, LP (RCSLP), for value received, all its rights, title, and interest in the Plaintiff's loan on

18

February 5, 2014. The Plaintiff discovered in public records that this assignment was recorded February 12, 2014 in the Kern County Recorder's Office. x

85. The Plaintiff believes that Defendant RESURGENT instigated this premeditated, deceitful, and secret action of MERS' Assignment of all rights, title, and interest to the Plaintiff's mortgage to Defendant RCSLP for purpose of blocking and removing all present and future access to the Plaintiff's flawed MERS history of past record transfers of ownership and servicers. The MERS web access now reports the Plaintiff's account "Inactive" and blocks the Plaintiff's access to past records of ownership and servicing of his mortgage.

86. The Plaintiff believes the Defendant, RESURGENT, along with unknown conspirators are attempting to conceal, cover up, and rectify the illegal NOD dated December 4, 2013, which violates 12 CFR 1024.41 (f) referenced as Exhibit "6". This December 4, 2013 NOD states that RCSLP is the owner and holder of the Plaintiff's mortgage loan which contradicts the MERS Min Summary sent to the Plaintiff on December 24, 2013 by RESURGENT Hayes Jr. (Exhibit "7").

87. In this referenced letter (Exhibit "13") dated May 13, 2014, SHELLPOINT and Representative Hayes, Jr. deviously attempted to cover-up Defendant SHELLPOINT and SPC Collinsworth's gross negligence of ignoring the Plaintiff's complete UBAF submission, received February 5, 2014, for three months and letting the validity of the majority of the submitted time sensitive documents expire.

88. SHELLPOINT's Hayes purposely mislead the Plaintiff by representing that only the items listed on page 3, paragraph 6 of his letter of May 13, 2014 (Exhibit "13") needed to be sent to SPC Collinsworth for evaluation to complete the January 31, 2014 submitted UBAF.

89. SHELLPOINT's escalations representative, Hayes Jr., had full knowledge this was a false and misleading statement and noncompliant with Home Affordable Modification Program (HAMP) eligibility guidelines and regulations.

19

COMPLAINT

90. Many of the items listed in SHELLPOINT and Hayes Jr.'s letter of May 13, 2014 were not a required item according to the instructions in the UBAF or had previously been delivered with extreme documented security to the designated SPC Collinsworth.

91. SHELLPOINT's Hayes, Jr. was continuing his prior documented pattern of deliberate, calculated, premeditated attacks on the Plaintiff for exposing his and Defendants RESURGENT and SHELLPOINT's repeated violations of multiple federal and California consumer protection laws which will be referenced at trial. SHELLPOINT willfully approved representative Hayes Jr.'s vengeful attacks on the Plaintiff, with full knowledge of his past negligent behavior as verifiable evidence at trial will prove.

92. On July 7, 2014 the Plaintiff sent a "QWR" letter under RESPA dated July 7, 2014 to Defendant SHELLPOINT's Hayes Jr. in response to SHELLPOINT's May 13, 2014 letter (Exhibit "13"). The Plaintiff demanded a disclosure of the identity of the party or parties who instructed MERS to transfer all rights, title, and interest to the Plaintiff's mortgage to Defendant RCSLP on February 5, 2014 and on whose authority.

93. The Plaintiff also demanded Defendant SHELLPOINT give written documented evidence of authorization to service the Plaintiff's loan. The Plaintiff's letter was confirmed delivered to SHELLPOINT on July 9, 2014. A copy of the Plaintiff's letter dated July 7, 2014 without exhibit's is attached to this complaint as Exhibit "14" and incorporated herein by reference.

94. On July 10, 2014, the Plaintiff sent a second letter directly and exclusively to FREDDIE MAC with multiple exhibits in a binder containing over three hundred pages. A copy of the Plaintiff's July 10, 2014 letter without exhibits is attached to this complaint as Exhibit "15" and incorporated herein by reference. Defendant FREDDIE MAC had not acknowledged or responded to the Plaintiff's first letter dated April 4, 2014 as referenced in paragraphs 75 through 78 and Exhibit "11". Exhibits attached to Plaintiff's Exhibit "15" will be presented at trial.

20

COMPLAINT

95. The scope of the Plaintiff's second letter was limited to two (2) requests referenced in the Plaintiff's first letter to FREDDIE MAC on April 4, 2014 along with a complaint against the alleged loan servicers for deliberate and willful violation of consumer protection laws under RESPA 12 USC Section 2605 and the FDCPA.

96. The Plaintiff asked for a second time:

    a) Does Defendant FREDDIE MAC make any claim that they own the Plaintiff's mortgage;

    b) If ownership is claimed, with written documented proof; did FREDDIE MAC appoint Defendants RESURGENT and SHELLPOINT as their authorized agent to service the Plaintiff's loan?

97. The Plaintiff copied Defendant SHELLPOINT on the second letter to Defendant FREDDIE MAC dated July 10, 2014 with exhibits.

98. On July 17, 2014, the Plaintiff filed a written complaint with California Congressman Kevin D. McCarthy, majority leader of the House of Representatives, dated July 16, 2014 against Defendant FREDDIE MAC for failure to respond to the Plaintiff's April 4, 2014 letter (Exhibit "11"). The scope of the Plaintiff's letter to Congressman McCarthy requested he contact FREDDIE MAC on the Plaintiff's behalf and request FREDDIE MAC directly answer the Plaintiff's two letters dated April 4, 2014 and July 10, 2014 sent specifically and exclusively to Defendant FREDDIE MAC and referenced as Exhibit's "11" and "15" of this complaint. A copy of the Plaintiff's letter to Congressman Kevin D. McCarthy dated July 16, 2014 without exhibits is attached to this complaint as Exhibit "16" and incorporated herein by reference. This July 16, 2014 letter to Congressman McCarthy was copied, with exhibits, to Defendant SHELLPOINT.

99. On or about July 30, 2015, a representative for Congressman McCarthy contacted the Plaintiff and informed him that because of the nature of the complaint and the heated controversy between the Plaintiff and the referenced loan servicers, Defendant FREDDIE MAC informed Congressman McCarthy's office they would research the matter and

21

COMPLAINT

1    reply directly to the Plaintiff. Congressman McCarthy would be copied on their direct

2    response to the Plaintiff.

3    100.    It was agreed that Defendant SHELLPOINT was not authorized to respond for

4    FREDDIE MAC. The Plaintiff approved this agreement through Congressman

5    McCarthy's office.

6    101.    On August 1, 2014, the Plaintiff notified Defendant SHELLPOINT's

7    representative Hayes Jr. by confirmed fax and by a certified mail letter with return receipt

8    that Defendant SHELLPOINT was not authorized to respond to the Plaintiff's letters sent

9    specifically and exclusively to Defendant FREDDIE MAC as per a mutual agreement

10   between FREDDIE MAC and Congressman McCarthy's office, which was ratified by the

11   Plaintiff.

12   102.    The Plaintiff's August 1, 2014 letter also notified SHELLPOINT's Hayes Jr. that

13   SHELLPOINT had violated the California Fair Credit Reporting Act while the Plaintiff's

14   loan was under protection of RESPA 2605 between March and April 2014.

15   103.    A copy of the Plaintiff's letter, dated August 1, 2014 sent to Defendant

16   SHELLPOINT and their representative Hayes Jr., by certified mail and confirmed faxed,

17   is attached to this complaint as Exhibit "17" and incorporated herein by reference.

18   104.    On July 28, 2014, the Plaintiff sent a complaint letter dated July 24, 2014 to

19   Defendant SHELLPOINT demanding they correct false credit reporting in violation of

20   section 6 of RESPA 12 USC Section 2605 (e) (1) (2) (3) and California Civil Codes

21   1785, 25 (a) through (g) and 1788.13 (a) (e) (f) (i) (j).

22   105.    SHELLPOINT's violation of federal and state of California Fair Credit Reporting

23   Act's (FCRA) caused the Plaintiff's 35 year old sole proprietorship small business to lose

24   crucial existing lines of credit and denial for new lines of credit. This illegal act caused

25   serious repercussions to the Plaintiff's ability to finance his business operating cash flow

26   requirements and posed a threat to its future existence. A copy of the Plaintiff's letter

27

28

COMPLAINT

dated July 28, 2014 to Defendant SHELLPOINT is attached to this complaint as Exhibit "18" and incorporated herein by reference.

106.    On August 4, 2014, the Plaintiff submitted all of the requested documents designated in SHELLPOINT representative Hayes Jr.'s letter dated May 13, 2014 (Exhibit "13") to SHELLPOINT's appointed SPC Collinsworth. Defendant SHELLPOINT did not specify a required deadline for delivery for these documents. SHELLPOINT's Hayes Jr.'s detailed list of these required documents contained demands for copies of documents held by third parties which made them difficult to obtain.

107.    The Plaintiff delivered the required documents in a reasonable time. All submitted documents which were indexed, 3rd party inspected, and verified as enclosed, were shipped to SHELLPOINT's appointed SPC Collinsworth on August 4, 2014 and confirmed delivered on August 6, 2014.

108.    Refer to a copy of the Plaintiff's cover letter and index dated August 2, 2014 submitted to Defendant SHELLPOINT's SPC Collinsworth which is hereby attached to this complaint as Exhibit "19' and incorporated herein by reference.

109.    On August 19, 2014, the Plaintiff sent a certified letter, dated August 20, 2014, to Defendant SHELLPOINT representative Hayes Jr. demanding the name and contact information for their California attorney handling the intended foreclosure on the Plaintiff's home. Refer to a copy of the August 20, 2014 letter attached to this complaint as Exhibit "20" and incorporated herein by reference. This initiation of foreclosure as described in the Defendant SHELLPOINT's letter dated July 24, 2014, as evidenced by an enclosure in Exhibit "20", constitutes a violation of California Civil Codes 2923.6 (c) – (h), 2924.11 and 2924.18 – dual tracking.

110.    SHELLPOINT's SPC Collinsworth was still evaluating the Plaintiff's January 31, 2014 UBAF application according to SHELLPOINT's Hayes Jr. letter of May 13, 2015 as referenced in paragraphs 88 through 90 and Exhibit "13".

COMPLAINT

111. On September 10, 2014, the Plaintiff received a copy of a letter dated August 26, 2014 sent to the "Office of Congressman Kevin D. McCarthy" by Defendant SHELLPOINT.

112. This letter was drafted and sent by SHELLPOINT Representative Hayes Jr. who has a history of multiple violations of federal and state of California Consumer Protection laws in his past involvement in this matter. He possesses extreme personal prejudices against the Plaintiff for reporting his and Defendants RESURGENT and SHELLPOINT's violations of federal and California laws to regulators. A copy of the Defendant SHELLPOINT's letter to the "Office of Congressman Kevin McCarthy" dated August 26, 2014 is attached to this complaint as Exhibit "21" and incorporated herein by reference.

113. This malicious, deceitful and unauthorized letter was sent in violation of the agreed method of response to the Plaintiff negotiated between Defendant FREDDIE MAC and a representative for Congressman McCarthy, which was conveyed to and ratified by the Plaintiff as described in paragraphs 99 through 103 and verified in Exhibit "17" of this complaint.

114. The purpose of this unauthorized letter was to attack the Plaintiff's credibility and cause the Plaintiff unjustified emotional pain, embarrassment and humiliation in an attempt to convince Congressman McCarthy that the Defendants RESURGENT and SHELLPOINT were compliant with all federal and state consumer protection laws and innocent of any violations of federal and state laws.

115. The following is proof that Defendant SHELLPOINT deliberately and willfully sent perjurious and slanderous information to a United States Congressman, a criminal act, to unjustly ruin the credibility and reputation of the 78 year old senior citizen Plaintiff requesting justified assistance from his Congressman.

   a) The Plaintiff sent his April 4, 2014 letter solely and exclusively to Defendant FREDDIE MAC (Exhibit "11") as advised and instructed by Defendant

24

COMPLAINT

RESURGENT on December 4, 2013 (Exhibit "6"). Defendant RESURGENT was copied by the Plaintiff.

Defendant SHELLPOINT was not referenced in any manner in the Plaintiff's April 4, 2014 complaint sent to FREDDIE MAC (Exhibit "11"). SHELLPOINT was not a first source party for any documents, exhibits, information or occurrences prior to March 1, 2014 when they began their illegal and unauthorized servicing of the Plaintiff's loan.

SHELLPOINT had no documented standing or verified authorization to respond for Defendant FREDDIE MAC to the Plaintiff or to Congressman McCarthy for occurrences prior to March 1, 2014.

b) The Plaintiff served Defendant SHELLPOINT with a notice dated August 1, 2014 by confirmed fax and certified mail that SHELLPOINT was not authorized to respond to Defendant FREDDIE MAC (paragraph 101 and Exhibit "17" of this complaint).

c) Defendant SHELLPOINT's letter to Congressman McCarthy was a deliberate and willful violation of the Fair Debt Collection Practices Act ("FDCPA") 1692 c (b) by communicating the Plaintiff's personal information to a third party in violation of the Plaintiff's written denial for authorization to release said personal information as referenced in paragraph 101 and Exhibit 17 of this complaint.

Defendant SHELLPOINT admitted knowledge of this violation of FDCPA 1692 c (b) in their August 26, 2014 letter to Congressman McCarthy (refer to Exhibit "21" page 3 of this complaint).

d) SHELLPOINT's violations of the Privacy Act are as follows:

1. SHELLPOINT recklessly addressed their August 26, 2014 letter originated by SHELLPOINT's Hayes Jr. to the "Office of Congressman Kevin McCarthy" without contacting Congressman McCarthy's office for a designated recipient. Congressman McCarthy's office consists of full time and part time

25

employees, interns, and public volunteers thus leaving the Plaintiff's personal information exposed to unidentified third parties and unprotected to the risk of identity theft.

2.  SHELLPOINT granted the "office" of Congressman McCarthy's continuing unauthorized access to the Plaintiff's loan information file without the Plaintiff's authorization. Defendant SHELLPOINT has refused to rescind said authorization for unauthorized and unidentified third parties in Congressman McCarthy's office to access the Plaintiff's personal information thus exposing the information to continuing identity theft. This has caused the Plaintiff great anxiety, depression, and fear.

3.  The scope of the Plaintiff's letters sent solely and exclusively to Defendant FREDDIE MAC dated April 4, 2014 and July 10, 2014 was limited to the Plaintiff's request for FREDDIE MAC's claim and proof of ownership of the Plaintiff's mortgage and identification of FREDDIE MAC's authorized agent/loan servicer, if so claimed. This is referenced in paragraphs 75 through 78, Exhibit "11", and paragraphs 94 through 97, and Exhibit "15" of this complaint.

Defendant SHELLPOINT maintains they are servicing the Plaintiff's loan by "all applicable state law and federal regulations", which is a knowingly and verifiable false claim to mislead and misrepresent salient information to Congressman McCarthy to discredit and humiliate the Plaintiff.

116.    On September 25, 2014 the Plaintiff sent a third letter, with a binder of evidence documents, dated September 22, 2014 to Defendant FREDDIE MAC requesting proof of claim or ownership of the Plaintiff's mortgage and identification of their authorized agent/loan servicer if ownership is claimed. A copy of the Plaintiff's September 22, 2014 letter to FREDDIE MAC without exhibits is attached to this complaint as Exhibit "22"

COMPLAINT

and incorporated herein by reference. Exhibits in Plaintiff's above referenced September 22, 2014 letter to FREDDIE MAC will be presented at trial.

117.     This third request letter conforms with the scope of information requested in the Plaintiff's letter to Defendant FREDDIE MAC's April 4, 2014 (Exhibit "11") and July 10, 2014 (Exhibit "15").

118.     The Plaintiff reported SHELLPOINT's illegal and unauthorized intervention into the agreed upon method for Defendant FREDDIE MAC to respond to the Plaintiff, and SHELLPOINT's violation of FDCPA and Privacy Act in their August 26, 2014 letter to the "Office" of Congressman Kevin McCarthy (Exhibit "21") to FREDDIE MAC September 22, 2014 (Plaintiff Exhibit "22").

119.     On September 22, 2014, the Plaintiff hand delivered to Congressman McCarthy's office a complaint letter with a binder of evidence documents against Defendant FREDDIE MAC for failure to directly respond to the Plaintiff's prior request letters of April 4, 2014 (Exhibit "11") and July 10, 2014 (Exhibit "15"). Included in this letter was the Plaintiff's complaint against SHELLPOINT's deliberate violation of FDCPA and the Privacy Act in their letter of August 26, 2014 (Exhibit "21"). A copy of the September 22, 2014 letter to Congressman McCarthy, without exhibits, is attached to this complaint as Exhibit "23" and incorporated herein by reference.

120.     Defendant SHELLPOINT intentionally planned to deceive Congressman McCarthy in their August 26, 2014 letter (Exhibit "21") by deliberately distorting salient facts through material omissions of the following facts to cover up Defendants RESURGENT and SHELLPOINT's continual and deliberate violation of multiple federal and state of California consumer protection laws to be identified at trial:

a)  SHELLPOINT states that they initially evaluated the Plaintiff for a loan modification in July 2013 when in fact Defendant RESURGENT and their "SPC" Vivas evaluated and wrongfully denied the Plaintiff's April 22, 2013 UBAF verbally on July 15, 2013. SHELLPOINT did not begin servicing the Plaintiff's loan until March 1, 2014. Refer

27

COMPLAINT

to paragraphs 25 and 26 and Exhibit "10" of this complaint. This is an intentional false statement.

b) SHELLPOINT claimed the Plaintiff's cash reserves were greater than $25,000. This false statement omits the fact that Defendant RESURGENT demanded copies of the Plaintiff's two business client trust account bank statements evidencing over $300,000 in deposits of which, as required by California laws, only $400.00 belonged to the Plaintiff's sole proprietorship business. RESURGENT wrongfully evaluated these trust account balances as belonging to the Plaintiff and added them to his cash reserves. Refer to paragraphs 31 and 32 of this complaint.

c) SHELLPOINT states in their August 26, 2014 letter to Congressman McCarthy that the Plaintiff did not qualify for loan modification based on his monthly income as defined under the HAMP program. This is an intentional misstatement of facts with the following intentional omissions:

1. The Plaintiff sent a "QWR" letter under RESPA dated September 27, 2013 to Defendant RESURGENT's representatives Hayes Jr., who was then employed by RESURGENT, appealing RESURGENT's wrongful verbal denial of the Plaintiff's April 22, 2013 UBAF and demanding RESURGENT's calculations of qualifying ratios for denial by RESURGENT's Vivas on July 15, 2013. Refer to Exhibit "5" and paragraph 34 of this complaint.

2. Defendant Hayes Jr. did not respond to the Plaintiff's "QWR" letter of September 27, 2013 demanding the qualifying ratios SPC Vivas used in his July 15, 2013 verbal denial of the Plaintiff's UBAF until December 24, 2013. This was a clear violation of RESPA. Refer to Exhibit "7" and paragraphs 53 through 56 of this complaint.

3. SHELLPOINT's Hayes Jr. deliberately in a deceitful calculated act of self-serving cover up of his SPC Vivas and Defendant RESURGENT's wrongful denial of the Plaintiff's request for loan modification created a false, flawed, and manufactured

28

analysis of the Plaintiff's monthly income and expenses. Refer to Defendant RESURGENT and Hayes Jr.'s letter to the Plaintiff dated December 24, 2013 (Exhibit "7" and paragraphs 53 through 56 of this complaint).

121.    SHELLPOINT's Hayes Jr. did not disclose to Congressman McCarthy that the Plaintiff challenged RESURGENT's and Hayes Jr.'s flawed calculations in his "QWR" letter under RESPA dated January 6, 2014 (Exhibit "8" and paragraphs 57 through 59 of this complaint).

122.    The Plaintiff's January 6, 2014 letter, sent to the attention of RESURGENT's Hayes Jr., proved the Plaintiff did qualify for loan modification even under Defendant RESURGENT's contrived and manufactured denial qualifications. RESURGENT and Hayes Jr. refused to respond to the specific challenges of the Plaintiff's QWR of January 6, 2014, in violation of RESPA 2605 (e) (b) 2 (b) (c). Refer to paragraph 57 through 59 of this complaint.

123.    SHELLPOINT's Hayes Jr. had full knowledge of the Plaintiff's January 6, 2014 challenge of his and Defendant RESURGENT's flawed analysis containing major elementary errors in the calculation of the Plaintiff's qualifying ratios for loan modification. SHELLPOINT and Hayes Jr. deliberately and willfully elected to deceive Congressman McCarthy by concealing the Plaintiff's challenge letter of January 6, 2014 (Exhibit "8") to cause premeditated harm to the Plaintiff's credibility.

d)  SHELLPOINT's letter of August 26, 2014 states that Defendant FREDDIE MAC is the current owner of the Plaintiff's mortgage. SHELLPOINT failed to disclose the following facts to congressman McCarthy:

1.  Defendant RESURGENT served the Plaintiff by certified mail a NOD dated December 4, 2013 on December 9, 2013 stating that RESURGENT Capital Services LP was the owner and holder of the Plaintiff's mortgage, not FREDDIE MAC. Refer to Exhibit "6" and paragraphs 39 through 41 of this complaint.

29

COMPLAINT

2. In an "Important Notice" enclosed and made a part of this NOD of December 4, 2013, the Plaintiff was advised and instructed to contact Defendant FREDDIE MAC directly for answers to any questions concerning his mortgage and the NOD. Refer to paragraphs 42 through 44 and Exhibit "6" of this complaint.

3. The Plaintiff sent a "QWR" demand on December 17, 2013 to Defendant RESURGENT to rescind their December 4, 2013 NOD. RESURGENT refused deeming all information was true and correct. Refer to paragraph 45 (a) and (b) of this complaint.

e) RESURGENT sent the Plaintiff, as an enclosure in their December 24, 2013 letter, a copy of the MERS Min Summary (Exhibit "7") as referenced in paragraph 56 (f) of this complaint.

124. Defendant SHELLPOINT and their representative Hayes Jr. did not disclose to Congressman McCarthy that the Plaintiff had conducted an extensive investigation into the accuracy, history, and validity of all MERS Min Summary recordings of transfers of the ownership of the Plaintiff's mortgage and alleged loan servicers in comparison to public records of valid licensing of said loan servicers in California, and documents sent to the Plaintiff by Defendant RESURGENT.

125. The conflicting records were summarized in a QWR letter dated January 17, 2014 that was sent to Defendant RESURGENT (Exhibit "9") as referenced in paragraphs 60 through 63 of this complaint. This "QWR" letter was sent to RESURGENT representative Hayes, Jr. who refused to answer as required by RESPA 2605 (e) (b) (2) (b) (c).

126. The Plaintiff sent his same January 17, 2014 forensic QWR letter to Defendant SHELLPOINT as a part of the Plaintiff's "QWR" letter dated March 14, 2013 (Exhibit "10") as referenced in paragraphs 67 and 68 of this complaint.

127. SHELLPOINT representative Hayes Jr. did not respond until May 13, 2014 (Exhibit "13").

30

COMPLAINT

128.    The Plaintiff sent this same January 17, 2014 letter (Exhibit "9") to Defendant FREDDIE MAC as a part of the Plaintiff's request for claim of and proof of ownership of the Plaintiff's mortgage. Defendant FREDDIE MAC refused to respond. Refer to paragraphs 75 through 78 (a) (b) (c) and Exhibit "11" of this complaint.

f)    Defendant SHELLPOINT did not disclose to Congressman McCarthy that undisclosed parties secretly had the Plaintiff's MERS Min Summary permanently blocked between February 2014 and March 2014 so that the Plaintiff and his authorized representatives could not access the Plaintiff's MERS past records or future changes of transfers of the Plaintiff's mortgage and authorized loan servicers.

129.    This action was deviously taken to cover up the history of false prior transfers of ownership and loan servicers for the Plaintiff's mortgage and remove all methods of tracing future transfers of ownership and servicing transfers by the Plaintiff.

130.    The purpose for blocking access to the Plaintiff's MERS account was to hide the fact that Defendant RESURGENT Capital Services LP was not listed as an owner and holder of the Plaintiff's mortgage as claimed in the NOD dated December 4, 2013 (Exhibit "6").

131.    Defendant SHELLPOINT and representative Hayes Jr. refused to answer multiple QWR's letters sent under RESPA regarding disclosure of the parties involved in blocking the Plaintiff's account and having it identified as "inactive" by MERS.

g)    On May 23, 2014, the Plaintiff received a letter (Exhibit "13") from Defendant SHELLPOINT's representative Hayes Jr. disclosing that MERS "for value received" transferred ownership of the Plaintiff's mortgage to Defendant RCSLP, thus eliminating Defendant FREDDIE MAC as owner of the Plaintiff's loan.

132.    Defendant SHELLPOINT and representative Hayes Jr. deviously sent a copy of their May 13, 2014 letter to the office of Congressman McCarthy but purposely left out the incriminating copy of the Assignment of MERS' ownership of the Plaintiff's loan to

COMPLAINT

the Defendant, RCSLP, dated February 5, 2014 which was attached and made a part of the May 13, 2014 letter as an enclosure (Exhibit "13").

133.    This act was deliberate with intent to conceal salient documentation from a US Congressman in order to deliberately misrepresent the validity of the Plaintiff's claims of a conspiracy to cover up questionable and illegal claims of ownership of his loan by unknown parties yet to be discovered and disclosed.

134.    Defendant's SHELLPOINT and FREDDIE MAC refused to disclose or respond to the Plaintiff's "QWR's" under RESPA regarding the MERS Assignment to RCSLP, which granted "for value received" "all its rights, title, and interest" in the Plaintiff's mortgage. Said MERS Assignment was recorded February 12, 2014.

h)  Defendant SHELLPOINT and representative Hayes Jr. failed to disclose to Congressman McCarthy that the Plaintiff challenged Defendant SHELLPOINT's May 13, 2014 letter as a "QWR" under RESPA on July 7, 2014 with specific questions regarding the ownership of the Plaintiff's loan and Defendant SHELLPOINT's authorization to service the loan. Defendant SHELLPOINT refused to answer as required in RESPA format referenced under 12 USC Section 2605 (e) (b) (2) (b) (c).

135.    Defendant SHELLPOINT's deliberate omission of the Plaintiff's challenge of the validity of SHELLPOINT's May 13, 2014 letter (Exhibit "13") was to deceive Congressman McCarthy and intentionally harm the Plaintiff's credibility.

i)  Defendant SHELLPOINT and their representative Hayes Jr. purposefully limited their August 26, 2014 letter (Exhibit "21") to issues presented in the Plaintiff's first letter to Defendant FREDDIE MAC dated April 4, 2014 addressing violations of multiple federal and state of California consumer protection laws regarding Defendant RESURGENT only (refer to Exhibit "11").

32

136.    SHELLPOINT sent a copy of the Plaintiff's April 4, 2015 letter as an enclosure to their August 26, 2014 letter to Congressman McCarthy but intentionally omitted any reference to the Plaintiff's second letter to Defendant FREDDIE MAC (Exhibit "15").

137.    SHELLPOINT's representative Hayes Jr. carefully orchestrated and manipulated his letter of deceit to Congressman McCarthy, dated August 26, 2014, by omitting any reference to the Plaintiff's second letter dated July 10, 2014 (Exhibit "15") to FREDDIE MAC or provide a copy of said letter to Congressman McCarthy in order to conceal the fact that the bulk of documented evidence of malfeasance against SHELLPOINT was initiated by Hayes Jr. (Exhibit "15").

138.    SHELLPOINT representative Hayes Jr.'s omission of any reference to or enclosure of the Plaintiff's second direct letter to Defendant FREDDIE MAC (Exhibit "15") in his August 26, 2014 letter to Congressman McCarthy was a deliberate act of deception to conceal, distort, and misrepresent the actions of his and Defendant SHELLPOINT's involvement in violation of multiple federal and state of California consumer protection laws to be identified at trial. This was a deliberate and vengeful act intended to inflict harm on a 78 year old senior citizen and unjustly destroy his credibility.

139.    The magnitude of deliberate and willful violation of the FDCPA (1692 c (b)) and Right to Financial Privacy Act of 1978 ("Privacy Act") is evidenced in the following exhibits:

140.    A)    On July 24, 2014, the Plaintiff sent a letter to Defendant SHELLPOINT's legal department as a "QWR" complaint for SHELLPOINT's false and illegal credit reporting to multiple credit bureaus. This letter was confirmed received by SHELLPOINT on July 29, 2014 (refer to paragraphs 104 and 105, and Exhibit 18 of this complaint).

141.    B)    On August 19, 2014, the Plaintiff sent a certified "QWR" letter dated August 20, 2014 to Defendant SHELLPOINT's representative Hayes Jr. demanding the

33

name and contact information of SHELLPOINT's California attorney handling the intended foreclosure on the Plaintiff's home (refer to Paragraph 109 and Exhibit 20 of this complaint).

142.    The aforereferenced letters in paragraphs 140 and 141, and Exhibits 18 and 20, respectively were addressed to Defendant SHELLPOINT and their representatives as "QWR" under RESPA. SHELLPOINT is compelled to respond directly to borrower within RESPA required time frames for QWR's.

143.    The Plaintiff's letters written exclusively to Defendant FREDDIE MAC April 4, 2014 (paragraphs 75 through 78 and Exhibit 11) and July 10, 2014 (paragraphs 94 through 97 and Exhibit "15") made no reference to any of the QWR "subjects" addressed to Defendant SHELLPOINT in the Plaintiff's QWR letters to SHELLPOINT dated July 24, 2014 (Exhibit 18) and August 20, 2014 (Exhibit "20").

144.    SHELLPOINT and their representative Hayes Jr. deliberately, with malice, sent the responses to Plaintiff's QWR letter of July 24, 2014 (Exhibit 18) and August 20, 2014 (Exhibit "20") to the "office" of Congressman Kevin D. McCarthy on August 26, 2014 (Exhibit "21") in violation of the FDCPA (1692 c (b)) and the Privacy Act. This was a direct violation of the Plaintiff's written denial for SHELLPOINT to release personal information in response to his direct and exclusive letters to Defendant FREDDIE MAC dated April 4, 2014 and July 10, 2014 (Exhibits "11" and "15") to Congressman McCarthy or any unauthorized third party(ies). Neither of the Plaintiff's referenced letters (Exhibits "18" and "20") were directly answered by SHELLPOINT which is a violation of RESPA.

145.    The sole purpose of releasing this unauthorized information to the "Office" of Congressman McCarthy was to unjustly attack the character, creditability, and reputation of the Plaintiff and purposely embarrass and humiliate him in the eyes of his Congressman in retaliation for the Plaintiff reporting SHELLPOINT and Hayes Jr.

COMPLAINT

continual violations of federal and state consumer protection laws. This was a deliberate and willful act against the Plaintiff with malice.

146.     SHELLPOINT's information illegally released to the "Office" of Congressman McCarthy was outside of the scope of the inquiry of the Plaintiff's letters to Defendant FREDDIE MAC April 4, 2014 (Exhibit "11") and July 10, 2014 (Exhibit "15") and violated the FDCPA and Privacy Act.

147.     Defendant SHELLPOINT's focus of releasing the Plaintiff's personal information to the "Office" of Congressman McCarthy on August 26, 2014 (Exhibit "21") not only verifies their illegal and unwarranted personal attacks on the Plaintiff with malice, but also gives verifiable evidence of Defendant SHELLPOINT's scheme to hide and ignore all subject items in the Plaintiff's complaint letter of July 10, 2014 to Defendant FREDDIE MAC (referenced in Exhibit "15") from Congressman McCarthy. Defendant SHELLPOINT had received a complete copy, with all exhibits, of the Plaintiff's July 10, 2014 letter to FREDDIE MAC (Exhibit "15") on July 21, 2014.

148.     SHELLPOINT and Hayes Jr.'s letter of August 26, 2014 (Exhibit "21") on Page 1, Paragraph 2 states that "FREDDIE MAC is currently the owner of the account number ending in 9346."; the Plaintiff's mortgage.

149.     On Page 2, Paragraph 1 of this same letter, Defendant SHELLPOINT states they provided the Plaintiff a copy of the "Assignment of Mortgage reflecting the transfer of ownership from MERS to RESURGENT which, as confirmed on the previous page, is now being serviced by SHELLPOINT." (Exhibit "21").

150.     The only documented claim of proof of current ownership of the Plaintiff's mortgage according to Defendant SHELLPOINT's August 26, 2014 letter to the "Office" of Congressman McCarthy (Exhibit "21") is Defendant RESURGENT CAPITAL SERVICES LP (RCSLP) that was conveyed on February 5, 2014 and recorded February 12, 2014.

COMPLAINT

151.     A copy of the recorded Assignment of Deed of Trust dated February 5, 2014 and recorded February 12, 2014 is attached to this complaint as Exhibit "24" and incorporated herein by reference. This assignment of ownership of the Plaintiff's mortgage from MERS to Defendant RCSLP was made "for value received."

152.     Defendant's SHELLPOINT, RESURGENT, and FREDDIE MAC refuse to disclose any detailed information regarding this transfer of ownership of the Plaintiff's mortgage, in violation of multiple QWR letters under RESPA, and demands for information under FDCPA. All documented QWR's sent to the above reference Defendant's will be presented as Exhibits at trial.

153.     As of June 1, 2016, Defendant FREDDIE MAC has refused to directly reply to the Plaintiff's letters of April 4, 2014 (Exhibit "11") and July 10, 2014 (Exhibit "15"). FREDDIE MAC has never directly claimed ownership of the Plaintiff's mortgage. They have not claimed that Defendants RESURGENT or SHELLPOINT are nor ever were their authorized agents.

154.     On September 22, 2014, the Plaintiff filed a complaint with SHELLPOINT for violation of FDCPA by releasing unauthorized personal information to third parties and violation of the Privacy Act of 1978 in their letter to the "Office" of Congressman McCarthy August 26, 2014 (Exhibit "21"). A copy of the Plaintiff's September 22, 2014 letter to Defendant SHELLPOINT is attached to this complaint as Exhibit "25" and incorporated herein by reference.

155.     Defendant SHELLPOINT's August 26, 2014 letter was a deliberate, willful, and malicious breach of the Plaintiff's written denial of authorization for SHELLPOINT to respond to the Plaintiff's direct and exclusive correspondence to Defendant FREDDIE MAC dated April 4, 2014 (Exhibit "11") and July 10, 2014 (Exhibit "15"). This was a violation of the agreed method for FREDDIE MAC's response to the Plaintiff. This agreement was between FREDDIE MAC and Congressman McCarthy prior to August 1, 2014 and was ratified by the Plaintiff. Defendant SHELLPOINT was notified of this

36

agreed method of response to the Plaintiff in a certified letter and by fax on August 1, 2014 as verified in Exhibit "17" of this complaint.

156. On November 5, 2014, Defendant SHELLPOINT's Hayes Jr., author of SHELLPOINT's illegal letter to Congressman McCarthy of August 26, 2015 (Exhibit "21"), responded to the Plaintiff's letter of September 22, 2014 (Exhibit "25"). A copy of Defendant SHELLPOINT's November 5, 2014 letter is attached to this complaint as Exhibit "26" and incorporated herein by reference.

157. Defendant SHELLPOINT in their November 5, 2014 letter (Exhibit "26") denies the following accusations of the Plaintiff:

a) They did not violate the FDCPA in their August 26, 2014 letter to the "Office" of Congressman McCarthy;

b) They did not violate the Privacy Act in their August 26, 2014 letter to the "Office" of Congressman McCarthy;

c) They did not violate the Plaintiff's written denial of authorization to respond for FREDDIE MAC served on August 1, 2014 (Exhibit "17").

158. Defendant SHELLPOINT states in their November 5, 2014 letter to the Plaintiff (Exhibit "26") Page 11, Paragraph 3: "We maintain that we are servicing your loan pursuant to the original agreement and all applicable state laws and federal regulations." "Be advised that SHELLPOINT's stance on these matters remains unchanged."

159. The arrogance displayed in Defendant SHELLPOINT's November 5, 2014 response letter to the Plaintiff supports his accusations that Defendant SHELLPOINT lacks knowledge of and cannot comply with federal and state of California consumer protection laws. All violation of these statutes will be presented in detail at trial.

160. On November 11, 2014, the Plaintiff sent a second complaint letter to Defendant SHELLPOINT (confirmed delivered November 13, 2014) for false and illegal credit reporting in violation of the FDCPA and California Civil Code. A copy of the Plaintiff's

37

COMPLAINT

November 11, 2014 letter to Defendant SHELLPOINT without exhibits is attached to this complaint as Exhibit "27" and incorporated herein by reference.

161.     Defendant SHELLPOINT has refused to respond to the Plaintiff's July 24, 2014 letter sent as a "QWR" under RESPA (Exhibit "18") in a format required under RESPA (e) (b) 2 (b) (c) or to this second complaint letter (Exhibit "27").

162.     Defendant SHELLPOINT has refused to correct the Plaintiff's credit report as required by FCRPA, FCRA and California Civil Code 1785.25 (A through G). SHELLPOINT's willful refusal to comply with the referenced federal and state of California credit reporting laws has resulted in major repercussions for the Plaintiff's sole proprietorship business in obtaining future critical financing. The Plaintiff's loss of numerous existing lines of credit due to SHELLPOINT's willful negligence impacted the future existence of his thirty five (35) year old small business which provides the majority of the Plaintiff's income.

163.     The Plaintiff has submitted six (6) fully complete Uniform Borrower's Assistances Forms ("UBAF's") to Defendants RESURGENT and SHELLPOINT between April 24, 2013 and May 29, 2015. Each and every UBAF was submitted in the following manner with extreme security delivery measures and addressed specifically to the Defendant's "single point contacts" ("SPC") assigned to the Plaintiff's UBAF file and loan modification request.

164.     Each and every document requested in the original written instructions from Defendant RESURGENT and SHELLPOINT, in addition to the documents requested in the UBAF application, were indexed, verified by a third party as enclosed, and copied. Each document enclosed in the submitted UBAF's was individually verified by a third party's initials and by blanket certification.

165.     A copy of the Defendant's original instructions to the Plaintiff that accompanied each of the UBAF's sent to the Plaintiff was copied and submitted with the Plaintiff's

COMPLAINT

UBAF. These Defendant instructions detailed the required Plaintiff documents for submission in addition to the documents required in the UBAF forms.

166.     Each and every submitted UBAF was addressed solely and specifically to the Defendant RESURGENT and SHELLPOINT's assigned "SPC". They were double enveloped with extensive priority delivery instructions to protect the Plaintiff's personal identification information from identity theft.

167.     The Plaintiff photographed each and every delivery envelope for each UBAF submission beginning January 31, 2014 through May 29, 2015. This precaution was taken when Defendant RESURGENT lost and mishandled many of the Plaintiff's personal identification and business financial documents from his UBAF submitted April 25, 2013 specifically to "SPC" Vivas. RESURGENT and SPC Vivas refused to attempt to locate the missing submitted and indexed Plaintiff's documents.

168.     The Plaintiff's initial request for loan modification was made January 15, 2013 to Defendant RESURGENT. The assigned RESURGENT SPC ignored the Plaintiff's request for three months, and then RESURGENT's SPC Vivas wrongfully denied his April 22, 2013 UBAF on July 15, 2013 by a verbal communication from SPC Vivas. Refer to paragraphs 14 through 26 of this complaint.

169.     On or about July 30, 2013, Defendant RESURGENT placed the Plaintiff's UBAF file dated May 22, 2013 under the control and supervision of Wendell Hayes Jr. ("Hayes Jr.") of RESURGENT's Escalations Department. RESURGENT's Hayes Jr. deviously and willfully manufactured false reasons to support RESURGENT's Vivas' negligent and illegal denial of the Plaintiff's April 22, 2013 UBAF that was conveyed verbally on July 15, 2013 in violation of federal and state of California loss mitigation laws CFR 1024.41 (et seq) and California Civil Code 2923.6 (f)). Refer to paragraphs 25 through 59 and Exhibits 4, 5, 7, and 8 of this complaint. Specific evidence documents, with exhibits, will be presented at trial.

39

COMPLAINT

170.     The Plaintiff submitted to Defendant SHELLPOINT five UBAF's between February 5, 2014 and May 29, 2015 which were addressed, delivered, with extreme security, to SHELLPOINT's designated SPC's exclusively. Each UBAF was prepared in the manner reference in paragraphs 163 through 167.

171.     A copy of each of the Plaintiff's five (5) UBAF's submitted to Defendant SHELLPOINT dated January 31, 2014 (to SPC Collinsworth); September 29, 2014 (to SPC Collinsworth): December 31, 2014 (to SPC Fred Williams); March 24, 2015 (to SPC Nicholas Sanford); and May 22, 2015 (to SPC Nicholas Sanford) will be presented at trial. These UBAF submissions presented at trial will verify the Plaintiff's claims of deliberate, willful, and vengeful acts by SHELLPOINT to destroy the Plaintiff's and his family's health, safety, and financial welfare by conspiring to achieve their single purpose goal of foreclosing the Plaintiff out of his home illegally.

172.     Defendant SHELLPOINT had no intention of processing or accurately evaluating the Plaintiff's five (5) submitted UBAF's or requests for loan modification as evidenced by their SPC's repeatedly losing submitted personal identification and financial documents, deliberately letting time sensitive submitted documents expire in addition to inventing new false approval conditions in order to deem any and all submitted applications "incomplete." SHELLPOINT wrongfully deemed the Plaintiff's submitted UBAF's as "incomplete" without identifying the documents they claimed are missing, in violation of CFPB and HBOR laws and regulations previously referenced.

173.     Defendant SHELLPOINT falsely represented to the Plaintiff multiple times that they were processing and evaluating the Plaintiff's loss mitigation/loan modification request in compliance with all applicable Consumer Financial Protection Bureau ("CFPB") laws and regulations in addition to the California Foreclosure Reduction Act of 2013 laws and regulations, aka the California Homeowners Bill of Rights (HBOR). These were verifiable false statements to cover up the sole purpose of Defendants RESURGENT and SHELLPOINT to foreclose on the Plaintiff's home by any means;

40

COMPLAINT

legal or illegal. Hayes Jr., an employed escalations representative for both Defendants RESURGENT and SHELLPOINT, was the coordinator and control person for these devious and illegal schemes. The following actions of Defendant SHELLPOINT and their escalations representatives undeniably prove these accusations.

174.     The Plaintiff's first UBAF submitted to Defendant SHELLPOINT was dated January 31, 2014 and was confirmed delivered February 5, 2014. It was assigned to SHELLPOINT SPC Collinsworth who ignored it for three months, in violation of SHELLPOINT's written disclosure that the Plaintiff's UBAF would be examined for completeness no later than 5 business days after receipt, or February 12, 2014. The Plaintiff filed a written complaint to SHELLPOINT SPC Collinsworth April 30, 2014. Refer to paragraphs 71 through 74; paragraphs 79 through 80; and Exhibit 12 of this complaint. This is a verifiable violation of the CFPB and HBOR laws and regulations previously referenced.

175.     On May 23, 2014, the Plaintiff received Defendant SHELLPOINT's first letter of "completeness" dated May 13, 2014 in regard to his January 31 2014 UBAF which had been received by SHELLPOINT February 5, 2014. This letter of "completeness" was received 100 days after the February 12, 2014 date previously disclosed to the Plaintiff by the SHELLPOINT. Refer to paragraphs 79 through 91 and Exhibits "12" and "13" of this complaint.

176.     This letter was signed by SHELLPOINT's Hayes Jr. Hayes Jr.'s letter of May 13, 2014 (Exhibit "13"), on page 2, paragraph 5 acknowledges SHELLPOINT's receipt of the Plaintiff's January 31, 2014 UBAF but deems it incomplete as of May 13, 2014.

177.     The five bullet point items, printed in bold type, in SHELLPOINT Hayes Jr.'s May 13, 2014 letter gives verifiable proof that SHELLPOINT had:

    a)   Let time sensitive Plaintiff submitted documents expire

    b)   Lost previously submitted Plaintiff financial records, which had third party certification of enclosure, from the Plaintiff's January 31, 2014 UBAF. Hayes

41

1   Jr. had previously documented in writing some of these listed items had been

2   received, as evidence presented at trial will verify beyond a doubt.

3   c)   Deceitfully stated that the Plaintiff had not submitted documents which were

4   not in existence or required as per SHELLPOINT and the UBAF instructions

5   for the January 31, 2014 UBAF, such as the Plaintiff's 2013 federal tax

6   returns and IRS Form 4506-T for 2012 and 2013 tax return certification.

7   These tax returns were not required to be filed by the Plaintiff until April 15,

8   2014, the IRS deadline. As of the Plaintiff's January 31st UBAF, many IRS

9   Form 1098 and 1099's had not been received by the Plaintiff.

10  d)   Deemed the rental agreements and mortgage statements for the Plaintiff's

11  negative cash flow rental properties, which was not a condition or requirement

12  of the SHELLPOINT/RESURGENT or UBAF instructions, as missing.

13  According to the UBAF instructions for the Plaintiff's January 31, 2014

14  UBAF, these rental agreements and mortgage statements were not required if

15  schedule "E" of the Plaintiff's 2011 and 2012 federal, signed and dated, Form

16  1040 tax returns were submitted. These aforereferenced Plaintiff 2011 and

17  2012 Form 1040 tax returns with the required schedule "E" were certified as

18  submitted to Defendant's RESURGENT and SHELLPOINT and further

19  attested in writing as received by Hayes Jr. along with the fully executed IRS

20  Form 4605-T for tax years 2011 and 2012. This was an intentional

21  misstatement of fact by Hayes Jr. to cover up SHELLPOINT and SPC

22  Collinsworth's negligent processing of the Plaintiff's January 31, 2014

23  UBAF.

24  178.   The Plaintiff had submitted each and every document requested in the instructions

25  for his January 31, 2014 UBAF which was received by Defendant SHELLPOINT

26  February 5, 2015. All evidence of the Plaintiff's compliance regarding originally

27  requested documents will be presented at trial. SHELLPOINT's Hayes Jr.'s letter verifies

28

42

COMPLAINT

SHELLPOINT's violation of CFPB and state of California HBOR laws and regulations and the attempted cover up of multiple violations of these applicable loss mitigation laws protecting consumers.

179.     SHELLPOINT Hayes' letter of May 13, 2014, received by the Plaintiff May 23, 2014, required the Plaintiff to retrieve rental records from multiple third party property managers which required consent from the multiple owners of the properties since the Plaintiff was a minority owner of the reference properties in Hayes Jr.'s letter. It was difficult and time consuming. SHELLPOINT was demanding copies of bank statements of third parties who were reluctant to provide them to the Plaintiff for fear of violating the Privacy Act.

180.     SHELLPOINT's Hayes Jr. sent the Plaintiff a blank IRS Form 4506-T in his May 13, 2014 letter, which if executed by the Plaintiff, would expose him to identity theft. This IRS Form 4605-T was returned unexecuted to SHELLPOINT's SPC Collinsworth. Refer to Exhibit "19" of this complaint.

181.     All of SHELLPOINT's Hayes' documentation demanded his May 13, 2014 letter, except for an executed IRS Form 4506-T for federal tax years 2012 and 2013, was indexed, content certified enclosed, and shipped to SHELLPOINT's appointed SPC Collinsworth August 4, 2014 which was confirmed received by Defendant SHELLPOINT August 6, 2014. Refer to paragraphs 106 through 108 and Exhibit 19 of this complaint.

182.     SHELLPOINT's Hayes Jr.'s letter of May 13, 2014 gave no "drop dead" delivery date for these requested documents. This is a violation of CFPB and HBOR regulations. The Plaintiff delivered these documents in a timely manner considering the degree of difficulty in obtaining the demanded rental records and documents which were not required according to the original instructions given in writing to the Plaintiff for his January 31, 2014 UBAF.

43

COMPLAINT

183.     On June 13, 2014, Defendant SHELLPOINT's Hayes Jr. sent a letter to the Plaintiff stating SHELLPOINT was referring the Plaintiff's loan to an attorney to initiate a foreclosure proceeding. This letter was sent a mere 21 days after the Plaintiff's receipt of SHELLPOINT Hayes' May 13, 2014 letter claiming a convoluted array of so called un-submitted documents for the Plaintiff's January 31, 2014 UBAF which had been ignored by SHELLPOINT and their appointed SPC, Collinsworth. Refer to paragraphs 79 through 82; paragraphs 87 through 92; and Exhibits "12" and "13" of this complaint.

184.     On July 8, 2014, Defendant SHELLPOINT sent two certified letters to the Plaintiff that SHELLPOINT had already initiated a foreclosure against the Plaintiff's property as previously referenced in SHELLPOINT's Hayes' letter of June 13, 2014 in paragraph 183 of his complaint. SHELLPOINT violated CFR 1024.40 et seq; 2024.41 et seq and California Civil Code under HBOR by "commencing" a foreclosure on Plaintiff's property while the Plaintiff's UBAF of January 31, 2014 was being actively processed and evaluated by SHELLPOINT's SPC Collinsworth as evidenced in SHELLPOINT Hayes Jr.'s May 13, 2014 letter delivered to the Plaintiff May 23, 2014.

185.     SHELLPOINT's rush to commence foreclosure without giving the Plaintiff reasonable time to perform as required by CFPB and HBOR laws and regulations supports the Plaintiff's allegations that Defendants RESURGENT and SHELLPOINT had no intention of ever processing or accurately evaluating the Plaintiff's documentation for granting any type of loan modification for any submitted UBAF.

186.     The lack of a delivery date for the requested documents in the SHELLPOINT May 13, 2014 letter, a violation of aforereferenced federal and state of California loss mitigation laws and regulations, and the demand for the Plaintiff to sign a "blank" IRS Form 4605-T was used as a ploy to intentionally cause the Plaintiff extreme difficulty in complying with the unreasonable conditions of their May 13, 2014 letter.

187.     This devious scheme was used to illegally commence a foreclosure on the Plaintiff's property without giving him reasonable time to obtain the Defendant

44

SHELLPOINT's demanded documentation. This was an attempt to cover-up SHELLPOINT's and SPC Collinsworth's gross negligence of failing to comply with federal and state of California laws and regulations for loan loss mitigation policies and procedures mandated by the CFPB and HBOR, and SHELLPOINT's UBAF disclosures of evaluation times to the Plaintiff.

188.     The failure of Defendant RESURGENT to comply with CFPB and HBOR laws and regulations, beginning on or about January 23, 2013, in processing and evaluating the Plaintiff's loan modification requests, was the beginning of well documented unfair, deceptive, abusive acts and practices enacted against the Plaintiff during RESURGENT's unauthorized and illegal servicing of the Plaintiff's loan.

189.     RESURGENT's servicing of the Plaintiff's loan was terminated on or about February 14, 2014 when Defendant SHELLPOINT purchased the alleged loan servicing rights for the Plaintiff's loan. Defendant SHELLPOINT hired many of the employees of Defendant RESURGENT, including Hayes Jr. as a SHELLPOINT escalations representative. Hayes Jr. was designated by SHELLPOINT as a control person with full access to all the Plaintiff's personal and financial records that resulted in a continuation by SHELLPOINT of the following deceptive, abusive acts and practices against the Plaintiff:

    a)  Invented conditions that cannot be complied with because they do not exist in Generally Accepted Accounting Principles (GAAP) for sole proprietorship business profit and loss statements;

    b)  Purposely sending the wrong loss mitigation application to try to trap the Plaintiff and trigger a Notice of Sale after filing an illegal Notice of Default on February 3, 2015;

    c)  Intentionally let time sensitive documents expire;

    d)  Lose personal and business documents exposing the Plaintiff to identity theft.

COMPLAINT

e) Sent the Plaintiff multiple defective preprinted IRS Form 4605-T's that do not comply with the IRS forms instructions or SHELLPOINT's attached instructions entitled "How to Complete IRS Form 4605-T." This "defective" preprinted form was deliberately used by Defendant SHELLPOINT multiple times to purposely wrongfully, and illegally declare the Plaintiff's UBAF's incomplete;

f) The Plaintiff notified the Defendant SHELLPOINT their instructions for IRS Form 4605-T accompanying their UBAF's and condition letters were defective. SHELLPOINT refuses to correct this verifiable defective form to conform to IRS instructions.

190.    Defendant SHELLPOINT and their escalations representative Hayes Jr. continued to implement aggressive, unfair, deceptive, abusive acts and practices against the Plaintiff to discredit and maliciously harm him, his family, and destroy his thirty five (35) year old small business.

191.    After the Plaintiff filed his previously referenced complaint letters with Defendant FREDDIE MAC (Exhibits 11 and 15 of this complaint), and Congressman Kevin D. McCarthy (Exhibit "16" of this complaint), Defendant SHELLPOINT initiated the following unfair, deceptive, and abusive scheme to illegally deem all UBAF's submitted by the Plaintiff as "incomplete" in order to illegally foreclose on the Plaintiff's home.

a) Declare that requested financial documents were not submitted when, in fact, they were with third party verification and delivered with extreme security to designated SHELLPOINT's "SPC's".

b) Declare the Plaintiff failed to submit documents that were not identified in SHELLPOINT's instructions accompanying their UBAF's sent to the Plaintiff or the instructions contained in the four page UBAF forms.

c) Defendant SHELLPOINT was fully aware that the Plaintiff submitted his five (5) UBAF's, as referenced in paragraph 171 of this complaint, under extreme

46

delivery security with each and every document third party verified as enclosed. Refer to paragraphs 163 through 167 of this complaint.

SHELLPOINT, with the established documents history of submissions of the Plaintiff's five (5) UBAF's which complied with all original instructions sent to the Plaintiff, deviously created a scheme to deny the Plaintiff's fully complete UBAFS's as being "incomplete" by sending the Plaintiff single page denials of his UBAF's without identifying the specific documents they deemed "missing". A copy of SHELLPOINT's denial letter dated January 13, 2015 for the Plaintiff's December 31, 2014 submitted UBAF is attached to this complaint as Exhibit "28" and incorporated herein by reference. Copies of each single-page denial of the Plaintiff's UBAF's of a similar format, without identification of specific items deemed missing, will be presented at trial.

192.    The single page denials of the Plaintiff's fully complete UBAF's without identification of specific documents deemed missing is a violation of CFPB laws and regulations as defined in CFR 1024.41 and California Civil Code 2923.6. Defendant SHELLPOINT's multiple, deliberate, and willful acts of issuing these non-compliant and illegal denial notices to the Plaintiff provides proof SHELLPOINT was using this diabolical scheme to:

a)  See if the Plaintiff would challenge the notice in writing as required under federal and state of California loss mitigation laws and regulations;

b)  Let time sensitive submitted documents expire in their validity;

c)  To "buy" time to invent new reasons for denial of the Plaintiff's UBAF's which complied with all original instructions.

d)  Set a trap to trigger a foreclosure on the Plaintiff's home of ten (10) years by claiming he did not comply with the UBAF and SHELLPOINT's original instructions.

47

COMPLAINT

e)  To "quick step" their single purpose scheme to foreclose on the Plaintiff's home, not process and evaluate the Plaintiff's request for loan modification in compliance with federal and state of California loss mitigation laws and regulations.

193.  On December 22, 2014, three days prior to Christmas, the Plaintiff received a written demand, dated December 8, 2014, from Defendant SHELLPOINT for the Plaintiff to submit his third "new" UBAF form with all new supporting documentation. The Plaintiff's loan modification file was still outrageously assigned to SHELLPOINT's SPC Collinsworth who had ignored, lost, and mishandled the Plaintiff's prior submitted personal and financial documentation from the Plaintiff's January 31, 2014 and September 24, 2014 UBAF's. SPC Collinsworth's gross negligence and SHELLPOINT's violation of CFPB and HBOR loss mitigation laws and regulations will be detailed at trial. These violations are consistent with the aforereferenced aggressive, unfair, deceptive, abusive acts and practices of Defendant SHELLPOINT against the Plaintiff as referenced in paragraphs 189 through 192 of this complaint.

194.  Defendant SHELLPOINT's aforereferenced unfair and abusive acts against the Plaintiff is showcased by delivering a demand dated December 8, 2014 for a "new" UBAF, with submission of extensive time sensitive documentation. This December 8, 2014 UBAF was not delivered to the Plaintiff until Monday, December 22, 2014; three days prior to Christmas. This demand had an unreasonable "drop dead delivery date" of January 7, 2015. SHELLPOINT gave no consideration for holiday mail delays, Christmas and New Year's Holidays, and the difficulty for the Plaintiff to obtain records from bank and businesses during this busy time period. This was an intentional, abusive act to harass the Plaintiff, with malice, in order to ruin his religious and family holiday out of retaliation for his justified actions of reporting SHELLPOINT's willful violations of federal and state of California loss mitigation laws and regulations.

COMPLAINT

195.   On or about December 19, 2014, Defendant SHELLPOINT notified the Plaintiff they were replacing the non-responsive SPC Collinsworth, whose gross negligence in processing and evaluating the Plaintiff's UBAF's dated January 31, 2014 and September 29, 2014 is well documented, with a new "SPC", Fred Williams. SPC Collinsworth was the SHELLPOINT appointed SPC for the Plaintiff's loan modification file and control person for his submitted UBAF documents for ten (10) months. During this 10 month period, SPC Collinsworth ignored the Plaintiff's fully complete UBAF application for three months; lost or mishandled many of the Plaintiff's personal and financial records that had been submitted, entrusted, and delivered exclusively to her with extreme delivery precautions. SPC Collinsworth and SHELLPOINT's negligence exposed the Plaintiff and his sole proprietorship business to identity theft.

196.   Defendant SHELLPOINT did not process or evaluate the Plaintiff's submitted UBAF's in compliance with California Civil Code 2923.7 et seq and CFR 1024.41. Verified copies of the Plaintiff's January 31, 2014 and September 29, 2014 UBAF's including submitted Plaintiff's supporting documents will be entered into evidence at trial along with all Plaintiff correspondence sent as "QWR's" under RESPA to Defendant SHELLPOINT and their representatives Collinsworth and Hayes Jr.. The Plaintiff will also submit all correspondences he received from Defendant SHELLPOINT from February 2014 through December 19, 2014 into evidence at trial as verifiable proof of deliberate mishandling of the Plaintiff's submitted financial documents and UBAF's as referenced in paragraphs 163 through 195 of this complaint.

197.   Out of fear of losing his home, the Plaintiff was forced to cancel all holiday plans and family gatherings in order to comply with Defendant SHELLPOINT's abusive, unfair, and unreasonable demand for delivery of his third UBAF with time sensitive financial documentation by a "drop dead date" of January 7, 2015 to newly appointed SPC Fred Williams ("Williams").

49

COMPLAINT

198.     The Plaintiff completed Defendant SHELLPOINT's UBAF demand on December 31, 2014. The completed UBAF, signed and dated December 31, 2014, with all applicable required documents listed in SHELLPOINT's and the UBAF instructions, received by the Plaintiff December 22, 2014, were submitted, via USPS express mail, exclusively to SPC Williams on December 31, 2014 at 10:21 A.M. and was confirmed delivered to SHELLPOINT January 2, 2015 at 9:53 A.M. This December 31, 2014 Plaintiff UBAF was indexed, with third party verification of contents submitted and delivered with extreme priority delivery instructions as referenced in paragraphs 163 through 167 of this complaint. A copy of the photograph of the sealed document envelope, with specific delivery instructions to SPC Williams dated December 31, 2014 is attached to this complaint as Exhibit "29" and incorporated herein by reference. Copies of each and every delivery envelope sent with specific priority instructions to Defendant SHELLPOINT SPC's will be presented at trial with copies of third party verified indexes of content submitted with each and every UBAF.

199.     On January 23, 2015, the Plaintiff received a single page denial of his December 31, 2014 UBAF from Defendant SHELLPOINT dated January 13, 2015. Refer to paragraphs 191 (c) through 192 et seq and Exhibit "28" of this complaint. SHELLPOINT's denial of "completeness" of the Plaintiff's UBAF dated December 31, 2014 did not identify the documents they claimed were requested in their original document demand letter of December 8, 2014 and the accompanying UBAF form instruction as required by CFPB laws and regulation under CFR 1024.41 and California Civil Code 2923.6 under HBOR as previously referenced in paragraph 192 of this complaint.

200.     Upon receipt of Defendant SHELLPOINT's letter dated January 13, 2015, received on January 23, 2015 as referenced in paragraph 199, the Plaintiff immediately sent a five (5) page challenge and protest letter to Defendant SHELLPOINT as a "QWR" under RESPA for wrongful denial of completeness of his December 31, 2014 UBAF

50

COMPLAINT

previously reference in paragraphs 193 through 197 of this complaint. The Plaintiff demanded in writing a list of all documents SHELLPOINT claimed were missing from his December 31, 2014 UBAF or non-conforming to the original document demand sent to the Plaintiff by SHELLPOINT December 8, 2014. A copy of the Plaintiff's January 24, 2015 five page letter to Defendant SHELLPOINT, without approximately 100 pages of exhibits, is attached to this complaint as Exhibit "30" and incorporated herein by reference. All enclosures and exhibits made a part of the Plaintiff's January 24, 2015 letter will be entered into evidence at trial. The Plaintiff's letter dated January 24, 2015 was confirmed received by SHELLPOINT January 26, 2015 at 8:50 A.M.

201.       On or about February 11, 2015, the Plaintiff received a letter from Defendant SHELLPOINT dated February 4, 2015 that was mailed February 5, 2015, stating "we are working to gather the requested information and will forward it to you as soon as possible" in response to the Plaintiff's January 24, 2015 letter sent as a "QWR" under RESPA.  This letter states "SHELLPOINT MORTGAGE SERVICING" is servicing the Plaintiff's loan "on behalf of Federal Home Loan Mortgage Corporation the owner of your loan."

202.       On or about February 11, 2015, the Plaintiff received a letter dated February 4, 2015 in a response to the Plaintiff's letter dated January 24, 2015, Exhibit "30" of this complaint, stating: "SHELLPOINT MORTGAGE SERVICING (SHELLPOINT) has received your request for a loss mitigation program. However, because you have not provided all the documentation requested, your response package is currently considered incomplete."

This letter demands documentation previously submitted December 31, 2014 that confirms all of the Plaintiff's allegations previously referenced in paragraphs 189 through 192 of this complaint.

203.       SHELLPOINT deviously ignored answering the Plaintiff's demands in his letter dated January 24, 2015, sent as a "QWR" under RESPA, demanding identification of

51

COMPLAINT

specific items SHELLPOINT claimed were missing from his December 31, 2015 UBAF received by SHELLPOINT January 2, 2015. Defendant SHELLPOINT deceitfully stated all submitted Plaintiff documents in his December 31, 2014 UBAF were either non-compliant or not delivered. SHELLPOINT notified the Plaintiff they were replacing the Plaintiff's SHELLPOINT appointed SPC Williams with a newly assigned "SPC" Nicholas Sanford ("Sanford"). SPC Sanford was the third different SHELLPOINT assigned SPC to the Plaintiff's file in 46 days. SHELLPOINT'S "shell game" shuffle of SPC's was deliberately taken to confuse, frustrate, and harass the Plaintiff. This "SPC Shuffle" gives credit to the Plaintiff's claim of unfair, deceptive, abusive acts and practices against the Plaintiff by Defendant SHELLPOINT.

204.     Defendant SHELLPOINT gave the Plaintiff until March 6, 2015 to submit another "new" UBAF, the third (3rd) in five (5) months, when all of the time sensitive documents submitted December 31, 2014, that were received by SHELLPOINT January 2, 2015 were valid and compliant with CFPB and HBOR laws and regulations for processing and evaluating the Plaintiff's submitted time sensitive documents upon SHELLPOINT's receipt on January 2, 2015.

205.     On or about February 11, 2015, the Plaintiff was served in four letters, two by certified mail, dated February 9, 2015 a notice entitled "Foreclosure Prevention Alternatives" which stated "A non-judicial foreclosure has been commenced against your property."

206.     On February 15, 2015, the Plaintiff challenged Defendant SHELLPOINT's letter of February 9, 2015, referenced in paragraph 205 of this complaint, in a response letter dated February 15, 2015 with over 250 pages of enclosures and exhibits. A copy of the Plaintiff's three page letter dated February 15, 2015, sent to Defendant SHELLPOINT, with a copy of SHELLPOINT's February 9, 2015 letter to the Plaintiff (without enclosures and exhibits) is attached to this complaint as Exhibit "31" and incorporated herein by reference. The enclosures and exhibits contained in the Plaintiff's February 15,

52

COMPLAINT

2015 letter (Exhibit "31" of this complaint) will be submitted as evidence at trial. The Plaintiff's February 15, 2015 letter with enclosures and exhibits was confirmed received by Defendant SHELLPOINT February 23, 2015 at 7:16 A.M.

207.     CFPB, HBOR, and RESPA laws and regulations require all borrower (Plaintiff) correspondence, including, but not limited to UBAF's, UBAF submitted correspondence, borrowers personal and financial records, and borrower correspondence with all enclosures and exhibits be retained by SHELLPOINT for the life of the borrower (Plaintiff's) loss mitigation request. The Plaintiff's initial request for loan modification was submitted January 15, 2013 and has continued without interruption or withdrawal to the date of this complaint (CFR 1024.38 (c) record retention).

208.     The Defendant, SHELLPOINT, must retain a complete record and copies of all of the Plaintiff's submitted correspondence, UBAF's, and submitted financial documents as required by federal, state of California, and RESPA laws and regulations for loss mitigation request. Any claim by Defendant SHELLPOINT that they did not retain all of Plaintiff's submitted correspondence, personal and financial documents is a negligent and willful violation of the aforereferenced laws and regulations for retention of the borrower (Plaintiff's) records (CFR 1024.38 (c) record retention).

209.     On or about February 19, 2015, the Plaintiff was served, by certified mail, a "Notice of Default" by an unknown process server who is only identified as "P.O. Box 9057, Temecula, CA 92589-9057." This illegal Notice of Default ("NOD") is dated February 3, 2015, eight days after Defendant SHELLPOINT received the Plaintiff's challenge letter dated January 24, 2015, as referenced in paragraphs 200 through 201 and Exhibit "30" of this complaint, to SHELLPOINT's January 13, 2015 denial of the Plaintiff's December 31, 2014 UBAF. A copy of the NOD dated February 3, 2015 served on the Plaintiff by unidentified parties on or about February 19, 2015 by certified mail is attached to this complaint as Exhibit "32" and incorporated herein by reference.

COMPLAINT

210.     This February 3, 2015 NOD, Exhibit "32" of this complaint, was recorded February 5, 2015 in the county of Kern, state of California, as Document Number 000215013348 at the request of unidentified and unknown parties to the Plaintiff. The recorded document was sent to Old Republic Default Management Services ("Old Republic").

211.     On page two of the recorded NOD of February 5, 2015 (Exhibit "32") Old Republic identified Defendant RESURGENT CAPITAL SERVICES LP ("RCSLP") as the beneficiary (owner) of the Plaintiff's mortgage. This NOD, recorded February 5, 2015 (Exhibit "32") is the third notification sent to the Plaintiff, by Defendants RESURGENT and SHELLPOINT, between December 9, 2013 and February 19, 2015, that Defendant RCSLP is the owner and holder of the Plaintiff's mortgage, not Defendant FREDDIE MAC.

212.     The aforereferenced NOD in paragraphs 209 through 211, and Exhibit "32" of this complaint, as well as the Assignment of Deed of Trust from MERS to Defendant RSCLP "for value received", recorded on February 12, 2014, as described in paragraphs 84 through 85 and Exhibits "13" and "24" of this complaint, are the only publically recorded notices of ownership of the Plaintiff's mortgage purporting to identify a valid documented creditor of public record of the owner of the Plaintiff's mortgage. These documents were sent to the Plaintiff by Defendants RESURGENT and SHELLPOINT.

213.     The NOD from Defendant RESURGENT dated December 4, 2013 that was received by the Plaintiff, as referenced in paragraphs 29 through 47; 86 through 87; and Exhibit "6" of this complaint, on December 9, 2013 was never recorded according to public record.

214.     The December 4, 2013 NOD also claimed Defendant RCSLP was the owner and holder of the Plaintiff's mortgage. Defendant RESURGENT sent their December 4, 2013 NOD under two separate certified mailings and two regular mailings to illegally initiate,

54

harass, and threaten the Plaintiff in violation of FDCPA and 12 CFR 1024.41 (f) as referenced in paragraph 40 of this complaint.

215.     On or about February 23, 2015, the Plaintiff received a letter dated February 16, 2015 from SHELLPOINT Escalations Department Representative Rylee Washington ("Washington") in a detailed response to the Plaintiff's letter of January 24, 2015, as referenced in paragraph 200 and Exhibit "30" of this complaint. A copy of SHELLPOINT's February 16, 2015 letter to the Plaintiff is attached to this complaint as Exhibit "33" and incorporated herein by reference.

216.     In Defendant SHELLPOINT's February 16, 2015 letter, Exhibit "33" of this complaint, representative Washington on page 1 states "NEW PENN FINANCIAL, LLC dba SHELLPOINT MORTGAGE SERVICING is currently the owner of the account number ending in 7956. SHELLPOINT MORTGAGE SERVICING ("SHELLPOINT") began servicing the loan on behalf of the owner referenced above on or about April 16, 2012."

217.     Defendant SHELLPOINT in this referenced February 16, 2015 letter (Exhibit "33" of this complaint) thus notified the Plaintiff in writing that Defendant SHELLPOINT is currently the owner of the Plaintiff's mortgage, not Defendant FREDDIE MAC nor Defendant RSCLP as previously disclosed in written correspondence and notifications sent to the Plaintiff by Defendants SHELLPOINT and RESURGENT.

218.     Defendant SHELLPOINT also claimed in their February 16, 2015 letter (Exhibit "33" of this complaint) they began servicing the Plaintiff's mortgage on or about April 16, 2012 for owner NEW PENN FINANCIAL, LLC dba SHELLPOINT MORTGAGE SERVICING. This is a verifiable false statement as the following evidence of this complaint proves:

COMPLAINT

a) Defendant SHELLPOINT did not begin servicing the Plaintiff's loan until March 1, 2014 as evidence presented in this complaint as Exhibit "10" and paragraph 64 proves;

b) Defendant SHELLPOINT is making this false claim to try to cover-up willful and illegal violation of the FCRA as referenced in paragraphs 104 through 105; 159 through 162; and Exhibits 18 and 27 of this complaint which will be undeniably proven at trial;

c) SHELLPOINT's February 16, 2015 letter (Exhibit "33") also deceitfully implies that Defendant SHELLPOINT owned the Plaintiff's mortgage since the effective date of their loan servicing of the Plaintiff's mortgage "on or about April 16, 2012" which is a verifiable false statement of facts to intentionally confuse and mislead the Plaintiff.

219.    SHELLPOINT's Washington's response to the Plaintiff's January 25, 2015 "QWR" letter under RESPA 2605 (Exhibit "30" of this complaint) is consistent with the deceitful, intentional and willful scheme to deny any and all of the Plaintiff's submitted UBAF's as incomplete for the reasons referenced in paragraphs 163 through 196 of this complaint. SHELLPOINT and Ms. Washington used the following SHELLPOINT formatted automatic false reasons for denial of the Plaintiff's December 31, 2014 UBAF on January 13, 2015 in their February 16, 2015 letter (Exhibit "33" of this complaint):

a) "Missing documents: 2012 and 2013 federal personal and business tax returns (signed and dated)" – These signed and dated personal and business federal tax returns had been submitted to Defendant SHELLPOINT who had confirmed their receipt in writing in three (3) previous correspondences sent to the Plaintiff;

b) "IRS Form 4506-T was not completed." – This document was completed by the Plaintiff as instructed by SHELLPOINT in their written instructions entitled "How to Complete IRS Form 4506-T". Defendant SHELLPOINT's pre-printed IRS Form 4506-T is defective and unacceptable to the IRS as is their aforereferenced

COMPLAINT

instructions accompanying their defective pre-printed IRS Form 4506-T sent to the Plaintiff multiple times;

c) "Outdated bank statements" – This is a false statement. These bank statements were compliant and effective on the date SHELLPOINT received the Plaintiff's UBAF, dated December 31, 2014 on January 2, 2015. They were verifiably effective in accordance with CFPB, HBOR, and HAMP guidelines for submission of UBAF applications;

d) "A letter of explanation is needed for any deposits over $1,000.00" – This condition for approval is not mentioned or disclosed in Defendant SHELLPOINT's cover letter instructions or contained in the UBAF instructions sent to the Plaintiff on December 8, 2014. This is a "made up" phantom condition in order to unjustly deny the Plaintiff's December 31, 2014 UBAF and set up the recording of an illegal NOD on February 5, 2015 (Exhibits "32" of this complaint).

220.     On February 25, 2015, the Plaintiff sent a five page letter with approximately three hundred pages of enclosures and supporting exhibits to SHELLPOINT representative Washington in response to her February 16, 2015 letter (as referenced in paragraph 217 and Exhibit "33" of this complaint) contesting the deliberate false and invented reasons for declaring the Plaintiff's December 31, 2014 "complete" UBAF application as "incomplete" and exposing SHELLPOINT's violation of CFPB and HBOR laws and regulations by willfully filing an illegal NOD on February 5, 2015, as referenced in Exhibit "31" of this complaint. A copy of the Plaintiff's February 25, 2015 letter sent to SHELLPOINT's Washington as a QWR under RESPA, without enclosures and exhibits, is attached to this complaint as Exhibit "34" and incorporated herein by reference. Enclosures and exhibits attached and made a part of the Plaintiff's letter will be submitted into evidence at trial.

221.     The Plaintiff's letter of February 25, 2015 (Exhibit "34" of this complaint) was sent as a QWR under RESPA. The Plaintiff demanded the Defendant, SHELLPOINT,

57

COMPLAINT

immediately rescind their illegal NOD recorded February 5, 2015 which was initiated by SHELLPOINT and unidentified and yet to be disclosed third parties who conspired to deliberately and willfully foreclose on the Plaintiff's home, in violation of multiple CFPB and HBOR loss mitigation laws and regulations as referenced in paragraphs 199 through 219 and Exhibit "34" of this complaint.

222.    The Defendant SHELLPOINT deliberately misrepresented their intentions of working on the Plaintiff's denied December 31, 2014 UBAF as stated and professed in their letter to Plaintiff, dated February 16, 2015 (Exhibit "33"),  in response to the Plaintiff's January 24, 2015 QWR letter (Exhibit "30" of this complaint). Defendant SHELLPOINT was instead, contrary to their written statements of February 16, 2015 to the Plaintiff, deviously recording a NOD dated February 3, 2015 on February 5, 2015 as evidenced in Exhibit "32" of this complaint. This was an undeniable unfair, deceptive, abusive act and practice against the Plaintiff by SHELLPOINT and their undisclosed co-conspirators.

223.    Defendant SHELLPOINT refused to respond to the Plaintiff's February 25, 2015 letter sent as a QWR under RESPA as referenced in Exhibit "34" of this complaint. This constitutes one of numerous violations of Section 6 of RESPA (12 U.S.C. Section 2605 (e) (1) (2) (3)) for RESPA required responses to borrower's QWR letters by Defendants SHELLPOINT and RESURGENT over the past three (3) years. Each and every violation will be entered into evidence at trial.

224.    The Plaintiff was compelled by fear of an imminent illegal foreclosure to submit an "all new" UBAF as demanded in SHELLPOINT's Washington's letter to the Plaintiff dated February 16, 2015 (Exhibit "33" of this complaint) in spite of the conclusive evidence supporting the Plaintiff's valid claim his December 31, 2015 UBAF submitted to SHELLPOINT was in fact complete and compliant with all instructions sent to the Plaintiff December 8, 2014 by Defendant SHELLPOINT.

225.    The Plaintiff was left defenseless by SHELLPOINT's wrongful denial of his complete December 31, 2014 UBAF, which violated multiple federal and state of California loss mitigation and consumer protection laws, the "quick-step" execution of an illegal NOD recorded February 5, 2015 and the refusal to answer the Plaintiff's valid QWR's under RESPA regarding SHELLPOINT's illegal actions. In order to protect his home of ten years from an illegal foreclosure, the Plaintiff complied with SHELLPOINT's abusive, deceitful, and unreasonable demands and submitted his fourth (4th) "all new" UBAF to SHELLPOINT's third new SPC appointed in 75 days, Nicholas Sanford, on March 24, 2015, which was confirmed received by SHELLPOINT March 25, 2015 at 9:47 A.M.

226.    The following events occurred prior to the Plaintiff's March 24, 2015 submission of his third "new" UBAF in six months which confirms that Defendant SHELLPOINT's sole focus was on illegal foreclosing on the Plaintiff's home not processing or evaluating the Plaintiff's loan modification request (UBAF's) in compliance with CFPB and HBOR laws and regulations:

a)  SHELLPOINT's Washington's letter to the Plaintiff dated February 16, 2015 (Exhibit "33" of this complaint) does not give a delivery date for the requested documents from the Plaintiff which is mandatory under CFPB and HBOR laws and regulations. In addition, SHELLPOINT's Washington wrongfully instructed the Plaintiff to submit his documentation to a non-existent SPC Nicholas Johnson.

b)  SHELLPOINT's Washington nor SHELLPOINT responded to the Plaintiff's February 25, 2015 QWR letter under RESPA as referenced in paragraphs 213 through 217 and Exhibit "34" of this complaint, in regard to the Plaintiff's December 31, 2014 "complete" UBAF application and SHELLPOINT's Washington's February 16, 2015 letter (Exhibit "33" of this complaint). This is a verifiable violation of RESPA required responses for borrower QWR's.

COMPLAINT

c) On March 3, 2015 the Plaintiff sent a three page letter with approximately 300 pages of enclosures and exhibits to Defendant SHELLPOINT through their foreclosure company, Old Republic, as a QWR under RESPA, HBOR, FDCPA, and California Business and Professions Code 10233(a) in regard to SHELLPOINT's filing and recording their illegal NOD (Exhibit "32" of this complaint). This letter with enclosures was confirmed delivered to Old Republic on March 5, 2015. A copy of this letter with all enclosures and exhibits was delivered directly to SHELLPOINT's loss mitigation department on March 10, 2015 at 10:21 A.M. A copy of the Plaintiff's March 3, 2015 letter, with delivery notices and without enclosures and exhibits, is attached to this complaint as Exhibit "35" and incorporated herein by reference. Copies of enclosures and exhibits that were attached to and made a part of Exhibit "35" will be submitted into evidence at trial.

d) Defendant SHELLPOINT refused to respond to the Plaintiff's March 3, 2015 QWR letter under RESPA as required by federal and state of California law. Defendant SHELLPOINT's refusal to respond in the required time under RESPA regulations for the Plaintiff's QWR caused the deliberate and willful infliction of anxiety, depression, and mental anguish on the (then) 77 year old senior citizen (Plaintiff) and his family in fear of illegally and unjustly losing their home.

e) On March 19, 2015, the Plaintiff received a letter from Defendant SHELLPOINT dated March 12, 2015 stating that the Plaintiff "did not provide us with the documents we requested" in reference to the documents requested in SHELLPOINT's Washington's letter to the Plaintiff dated February 16, 2015 (Exhibit "33" of this complaint) that was received by the Plaintiff on February 23, 2015. SHELLPOINT's Washington's letter of February 16, 2015 (Exhibit "33" of this complaint) did not have a "deadline" delivery date. Refer to paragraph 223 "a" of this complaint. This SHELLPOINT notice to the Plaintiff dated March 12, 2015 constitutes a violation of CFPB and HBOR regulations by not allowing the Plaintiff "reasonable

60

COMPLAINT

time" to deliver the requested documents in light of the fact SHELLPOINT's

Washington's February 16, 2015 letter (Exhibit "33" of this complaint) did not give

the Plaintiff a deadline delivery date and Defendant SHELLPOINT had not

responded to the Plaintiff's QWR letter under RESPA dated February 25, 2015 which

was received by SHELLPOINT February 26, 2015 at 10:49 A.M.

This SHELLPOINT March 12, 2015 letter is further evidence of Defendant

SHELLPOINT's primary and sole intent of foreclosing on the Plaintiff's home and

denying him his lawful consumer protection rights under federal and state of

California laws and regulation.

f)  On March 20, 2015 the Plaintiff received a letter dated March 13, 2015 from

Defendant SHELLPOINT stating: "We are working to gather the requested

information and will forward it to you soon as possible." – In reference to the

Plaintiff's March 3, 2015 letter as referenced in paragraph 223 (c) and Exhibit "35" of

this complaint. SHELLPOINT's March 13, 2015 letter was diabolically sent to the

Plaintiff to deceive, torment, and mislead him that they were working on a required

response to his March 3, 2015 letter (Exhibit "35" of this complaint) challenging the

illegal NOD recorded February 5, 2015; referenced as Exhibit "32" of this complaint.

Defendant SHELLPOINT did not respond to the Plaintiff's QWR letter of March 3,

2015 in the time frame or format required for QWR's under RESPA.

SHELLPOINT's aforereferenced actions are documented proof of the Plaintiff's

allegations that Defendant SHELLPOINT has and is continuing to commit unfair,

deceptive, and abusive acts and practices against a then 77 year old senior citizen

borrower.

227.     On Tuesday, February 24, 2015 the Plaintiff was advised by his bank, Rabobank,

N.A., that unknown parties had attempted to illegally access his company's online bank

accounts, including his client's trust accounts that had several hundreds of thousands of

COMPLAINT

dollars in deposits.  His bank, Rabobank, N.A., had successfully blocked this attempt and put an alert on the Plaintiff's online accounts.

228.     On March 2, 2015, the Plaintiff was notified by the IRS that the mailing address for the Plaintiff's 35 year old business had been changed and they were notifying him to contact them by phone immediately if he did not authorize this address change.

229.     The Plaintiff, who is hearing impaired, placed a call to the IRS on "speaker mode", as advised by the IRS. This call was witnessed by two of the Plaintiff's employees. The Plaintiff was advised during his conversation that in the latter part of February 2015, unknown parties had changed the social security number linked to the Plaintiff's 35 year old sole proprietorship business and they could no longer give the Plaintiff any information on his IRS account unless he had written authorization from the party or parties now illegally linked to his business. The IRS representative refused to release the new social security number or federal tax ID number now linked to the Plaintiff's company.

230.     After a lengthy conversation establishing the Plaintiff's identity and his prior linkage to his business IRS account, the IRS opened an identity theft investigation. They stated they wanted to know who the Plaintiff had given extensive personal and business financial information to over the past two years that would allow unauthorized parties to access and change the information and authorization for the Plaintiff's IRS account. This change required extensive information on the Plaintiff and his company to complete this timely and illegal change. The only two companies that were given this detailed financial and personal information that was necessary to attempt to change these IRS records was Defendants RESURGENT and SHELLPOINT. Since the Plaintiff sent massive amounts of personal and business financial records to the Defendant SHELLPOINT that were repeatedly mishandled or lost, the Plaintiff reported SHELLPOINT as a primary source of sufficient information for unknown parties to illegally access and change the Plaintiff's IRS records.

COMPLAINT

231.     On March 6, 2015 the Plaintiff notified Defendant SHELLPOINT that he had reported SHELLPOINT to the IRS as a primary source of extensive information for leakage of his personal and business records to unauthorized and unknown third parties in a nine (9) page hand written letter with approximately 100 pages of enclosures and exhibits which was received by SHELLPOINT on March 10, 2015 at 1:59 PM.

232.     A copy of the Plaintiff's March 6, 2015 letter to Defendant SHELLPOINT, without enclosures and exhibits, is attached to this complaint as Exhibit "36" and incorporated herein by reference.  The enclosures and exhibits attached to and made a part of the Plaintiff's March 6, 2015 letter will be submitted as evidence at trial.

233.     The Plaintiff notified Defendant SHELLPOINT that he would not submit any copies of his business or client trust account bank statements until the IRS completed its identity theft investigation into the unauthorized changing of the Plaintiff's IRS records and tax ID number. SHELLPOINT's documented history of mishandling, losing, and willful conveyance of the Plaintiff's personal and business documents with identity records to unauthorized third parties will be presented as verifiable evidence at trial. Defendant SHELLPOINT's negligence of releasing unauthorized personal information to third parties has inflicted great harm to the Plaintiff and his 35 year old small business, which violates the FDCPA.

234.     On March 24, 2015 the Plaintiff submitted a fully complete UBAF in compliance with Defendant SHELLPOINT's and the UBAF's instructions and demands for required documentation. This UBAF was indexed, third party verified as to content, double enveloped for security purposes, exclusively and solely addressed to SHELLPOINT SPC Nicholas Sanford with specific delivery authorization conditions to ensure the safe and secure delivery of all of the Plaintiff's confidential personal and business documents to SHELLPOINT designated SPC, Nicholas Sanford.  The Plaintiff's intent was to prevent another unfair and deliberate SHELLPOINT claim of so-called missing documents from his "complete" March 24, 2015 UBAF which was confirmed delivered to SHELLPOINT

63

COMPLAINT

on Thursday, March 26, 2015.  Refer to paragraphs 163 through 167; 170 through 173; and Exhibit "29" of this complaint to review the history of the Plaintiff's procedures for delivering his UBAF's to Defendants RESURGENT and SHELLPOINT, in compliance with their written instructions as well as the instructions referenced in the UBAF applications.

235.     The Plaintiff received a letter dated March 31, 2015 from Defendant SHELLPOINT Escalations Department Representative Hayes Jr., which was received by Plaintiff on April 13, 2015, stating the Plaintiff's March 24, 2015 UBAF received by SHELLPOINT March 26, 2015, was incomplete. SHELLPOINT Hayes Jr.'s letter demanded a new UBAF, social security and bank statement information (that was submitted with the March 24, 2015 UBAF, with third party verification), and rental documentation that was not required according to SHELLPOINT's and the UBAF instructions. These reasons for denial of the Plaintiff's March 24, 2015 UBAF are consistent with a false and invented reasons and excuses used for denial of previous Plaintiff submitted UBAF's as referenced in paragraphs 189 through 191 of this complaint.  A copy of SHELLPOINT's Hayes Jr.'s letter to the Plaintiff is attached to this complaint as Exhibit "37" and incorporated herein by reference.

236.     Defendant SHELLPOINT's Hayes Jr. despicably reassigned the Plaintiff's March 24, 2015 UBAF back to SPC Kim Collinsworth in order to cover up his and Ms. Collinsworth well-documented malfeasance of the CFPB and HBOR laws and regulations, and Defendant SHELLPOINT's illegal NOD recorded February 5, 2015, referenced in Exhibit "32" of this complaint. Defendant SHELLPOINT deviously elevated Hayes Jr.'s control over the Plaintiff's file in an effort to negate SPC Washington's verifiable false reasons for SHELLPOINT's denial of the Plaintiff's December 31, 2014 UBAF in a letter dated February 16, 2015, referenced as Exhibit "33" of this complaint. SHELLPOINT SPC Collinsworth and Representative Hayes Jr.'s

64

history of violations of CFPB and HBOR laws and regulations are partially referenced in paragraphs 73, 74, 79 through 81, 88 through 91, and 170 through 197.

237.    On April 10, 2015 the Plaintiff sent a four (4) page letter with enclosures and exhibits to SHELLPOINT, delivered April 14, 2015 at 6:40 AM, disputing SHELLPOINT's March 30, 2015 denial letter of his March 24, 2015 UBAF and their unreasonable demand for a new UBAF with all new Plaintiff (Borrower) documentation without identifying the documents they claimed were not submitted in his March 24, 2015 UBAF. This letter from SHELLPOINT dated March 30, 2015 was in addition to SHELLPOINT's Hayes Jr.'s letter of March 31, 2015. According to the list of new documentation required by SHELLPOINT in their March 30, 2015 letter, all of the Plaintiff documents submitted in his March 24, 2015 UBAF were not compliant or were missing. This SHELLPOINT ordered "automatic denial" of any UBAF submitted by the Plaintiff is consistent with a false and invented reasons referenced in paragraphs 189 through 191 of this complaint. This SHELLPOINT denial, made six days after SHELLPOINT's receipt of the Plaintiff's March 24, 2015 UBAF, claimed the Plaintiff's time sensitive documents were not compliant which is a verifiable false claim or reason for denial of the Plaintiff's March 24, 2015 UBAF. A copy of the Plaintiff's April 10, 2015 letter, with a copy of SHELLPOINT's March 30, 2015 letter to the Plaintiff, to Defendant SHELLPOINT is attached to this complaint as Exhibit "38" and incorporated herein by reference.

238.    SHELLPOINT's March 30, 2015 letter instructs the borrower to submit his fourth (4th) UBAF in six months to SPC Nicholas Sanford.

239.    The conniving and deceitful SHELLPOINT Representative Hayes Jr. had illegally attempted to change the Plaintiff's SHELLPOINT appointed SPC Nicholas Sanford back to his "handpicked" SPC Collinsworth who, along with Hayes Jr., committed multiple violations of CFPB and HBOR laws and regulations as referenced in paragraphs 173 through 182 of this complaint. This was the first of two attempts SHELLPOINT's Hayes

Jr. made to substitute one of his "handpicked" SHELLPOINT SPC's to control and cover-up his multiple violations of CFPB and HBOR laws and regulations for loss mitigation request and consumer protection laws. The second attempt was Hayes Jr.'s appointment of SPC Pasha McClinton on August 11, 2015 to replace SHELLPOINT SPC Angie Taylor who had been appointed the Plaintiff's SPC a mere three weeks prior to Hayes Jr.'s change to SPC McClinton. SHELLPOINT's Hayes Jr. took this second intentional change to his "handpicked" SPC McClinton for the purpose of controlling the Plaintiff file. Hayes Jr. had filed a knowingly and verifiable false and perjurious answer to the Plaintiff's CFPB complaint against Defendant SHELLPOINT and Hayes Jr. on July 14, 2015, which will be addressed later in this complaint.

240.     On April 16, 2015 the Plaintiff sent a letter dated April 14, 2015 to Defendant SHELLPOINT and Hayes Jr. contesting the illegal actions of SHELLPOINT and Hayes Jr., violations of California Civil Code 2923.7 under HBOR and CFPB laws and regulations, regarding the Plaintiff's March 24, 2015 UBAF concerning the conflicting , and illegal appointment of two SHELLPOINT SPC's to simultaneously evaluate two new UBAF's with conflicting document requirements. These SPC's were appointed by two different SHELLPOINT Escalations representatives: Hayes Jr. and Washington. The Plaintiff's letter was sent as a QWR under RESPA and was confirmed received by SHELLPOINT April 20, 2015 at 11:56 AM.  A copy of the Plaintiff's letter to SHELLPOINT's Hayes Jr. dated April 14, 2015, without approximately eighty pages of enclosures and exhibits which will be entered into evidence at trial, is attached to this complaint as Exhibit "39" and incorporated herein by reference.

241.     Defendant SHELLPOINT and their Representative Hayes Jr. diabolically and deliberately set up an unfair and deceitful scheme to confuse and trap the then 77 year old senior citizen Plaintiff in to submitting the wrong documentation to the wrong SPC in order to declare either or both of the two new UBAF's submitted by the Plaintiff to either or both SPC's as incomplete and fast-track a Notice of Sale ("NOS") on the Plaintiff's

COMPLAINT

home of 10 years. A variation of this scheme was used by SHELLPOINT to fast-track and record an illegal NOD on February 5, 2015 as referenced in paragraphs 202 through 224, and Exhibits "32" and "34" of this complaint.

242.     The confirmation of verifiable implementation of SHELLPOINT's deceitful and evil scheme was exposed in a letter received by the Plaintiff dated April 20, 2015 from SHELLPOINT's Hayes Jr. on April 30, 2015. SHELLPOINT's Hayes Jr. changed the Plaintiff's SPC from his "handpicked" SPC Collinsworth back to SHELLPOINT's representative Rylee Washington's appointed SPC, Nicholas Sanford.  SHELLPOINT's Hayes Jr. then changed and added different required documents than were demanded in SHELLPOINT's March 30, 2015 new UBAF instructions, referenced in paragraphs 234 and 241, and contained in Exhibit "38" of this complaint. These required document conditions were also different from Hayes Jr.'s required documents in his letter dated March 31, 2015.

243.     A copy of SHELLPOINT's Hayes Jr. April 20, 2015 letter is attached to this complaint as Exhibit "40" and incorporated herein by reference. SHELLPOINT's shell game of switching SPC's and required documents for the Plaintiff to submit by a SHELLPOINT required "drop dead" date of April 29, 2015 as referenced in their March 30, 2015 new UBAF demand was undeniable proof of the deliberate unfair, deceptive, abusive acts and practices against the Plaintiff to inflict fear, emotional pain, and suffering while jeopardizing his and his family's health, safety, and welfare.

244.     On May 4, 2015 the Plaintiff sent a letter to Defendant SHELLPOINT dated April 30, 2015 contesting SHELLPOINT and Representative Hayes Jr.'s illegal actions regarding the denial of the Plaintiff's March 24, 2015 UBAF and SHELLPOINT's scheme to purposely confuse and deceive the Plaintiff as referenced in paragraphs 234 through 243 of this complaint. This letter was sent as a QWR under RESPA to SHELLPOINT's Hayes Jr. and was confirmed received by SHELLPOINT on May 6, 2015 at 11:07 AM. A copy of the Plaintiff's April 30, 2015 letter to Defendant

67

SHELLPOINT's Hayes Jr. is attached to this complaint as Exhibit "41" and incorporated herein by reference. This Plaintiff letter of April 30, 2015 has approximately 150 pages of enclosures and exhibits which will be entered into evidence at trial.

245.    On May 11, 2015 the Plaintiff received a letter dated May 5, 2015 from Defendant SHELLPOINT declaring: "We are unable to offer you a loss mitigation option because you did not provide documents requested." This letter does not, again, identify any specific documents SHELLPOINT was declaring as requested but not submitted by the Plaintiff. This is not only a violation of loss mitigation laws and regulations under CFPB and HBOR but conclusive proof of SHELLPOINT and their Representative Hayes Jr.'s unfair, deceitful, and abusive acts and practices against the Plaintiff as referenced in paragraphs 234 through 243 of this complaint. SHELLPOINT's Hayes Jr. had pulled their trip wire on their intentional, devious scheme to trap the Plaintiff and deny him his rights under federal and state of California consumer protection laws to be specifically identified at trial.

246.    On May 11, 2015 the Plaintiff sent a six (6) page letter to Defendant SHELLPOINT dated May 11, 2015 contesting SHELLPOINT's letter dated May 5, 2015, referenced in paragraph 245 of this complaint. This letter was sent as a QWR under RESPA and was confirmed received by SHELLPOINT on May 15, 2015 at 8:33 AM. The Plaintiff's May 11, 2015 letter put Defendant SHELLPOINT on notice that if they attempted to file an illegal NOS based on their scheme referenced in paragraphs 234 through 243 of this complaint, the Plaintiff would file a civil action. A copy of the Plaintiff's May 11, 2015 letter to Defendant SHELLPOINT, with a copy of SHELLPOINT's letter dated May 5, 2015 referenced in paragraph 245 of this complaint as an enclosure to the Plaintiff's May 11, 2015 letter, is attached to this complaint as Exhibit "42" and incorporated herein by reference.

247.    On May 12, 2015 the Plaintiff sent a letter dated May 11, 2015 to Defendant SHELLPOINT and their agent, Old Republic, as a QWR under RESPA for failure to

68

respond to the Plaintiff's letter dated March 3, 2015 sent as a QWR under RESPA as referenced as Exhibit "35" and paragraph 226 (c) of this complaint. Defendant SHELLPOINT's refusal to answer the Plaintiff's March 3, 2015 letter, in the required response times for QWR's under RESPA and the FDCPA, was intentional. Defendant SHELLPOINT had not given the Plaintiff valid documented proof that Defendant FREDDIE MAC, was the owner of the Plaintiff's mortgage, nor had SHELLPOINT given the Plaintiff documented evidence of their authorization to service the Plaintiff's mortgage for any valid documented creditor/beneficiary. A copy of the Plaintiff's May 11, 2015 letter to Defendant SHELLPOINT and their agent Old Republic is attached to this complaint as Exhibit "43" and incorporated herein by reference. Defendant SHELLPOINT's refusal to answer the Plaintiff's vital letter (Exhibit "35") was an unfair, deceitful, and abusive act, with malice, to inflict unwarranted anxiety, fear and depression on a 77 year old Plaintiff and his family.

248.    On May 12, 2015 Defendant SHELLPOINT sent the Plaintiff a letter containing a demand for the fourth "all new" UBAF in eight (8) months. This May 12, 2015 letter did not address any of the issues presented in the Plaintiff's letters sent to Defendant SHELLPOINT, as a QWR's under RESPA, dated April 10, 2015 and April 14, 2015 as referenced in paragraphs 237 through 242 and Exhibits "38" and "39" of this complaint. The Plaintiff received this SHELLPOINT letter and new UBAF on or about May 16, 2015. A copy of SHELLPOINT's May 12, 2015 letter is attached to this complaint as Exhibit "44" and incorporated herein by reference.

249.    The Plaintiff meticulously completed Defendant SHELLPOINT's UBAF in compliance with each and every instruction contained in SHELLPOINT's May 12, 2015 letter, and each and every instruction in the four (4) page UBAF.

250.    The Plaintiff's completed UBAF and supporting documents were indexed and examined by third parties, including a senior Fannie Mae/FREDDIE MAC processor and underwriter who verified each and every document that was submitted to SHELLPOINT

69

with the Plaintiff's UBAF dated May 22, 2015. Third party certification of all documents and contents of the Plaintiff's May 22, 2015 UBAF were completed May 28, 2015 and then shipped exclusively and specifically to Defendant SHELLPOINT's SPC Sanford on May 29, 2015.

251.    The Plaintiff took extreme precautions in shipping his May 22, 2015 UBAF to SHELLPOINT SPC Sanford due to the Plaintiff's well-documented experiences over the past two years of Defendants RESURGENT and SHELLPOINT losing and mishandling the Plaintiff's submitted personal financial records, exposing him and his business to identity theft. The Plaintiff's May 22, 2015 UBAF was prepared and shipped in the secured method of delivery as described in paragraphs 163 through 167 and 170 through 173 of this complaint.

252.    On June 1, 2015 the Plaintiff sent an email letter with enclosures and exhibits to Defendant SHELLPOINT notifying them that the Plaintiff's May 22, 2015 UBAF was shipped on May 29, 2015 with extreme precautions and security measures. A copy of the Plaintiff's June 1, 2015 letter with enclosures and exhibits is attached to this complaint as Exhibit "45" and incorporated herein by reference.

253.    The Plaintiff will be entering into evidence at trial a certified copy of his completed May 22, 2015 UBAF, with supporting documents that were submitted to Defendant SHELLPOINT on May 29, 2015 with documented receipt by Defendant SHELLPOINT on June 1, 2015.

254.    On Monday, June 1, 2015 the Plaintiff received a letter dated May 18, 2015 from Defendant SHELLPOINT Escalations Department Representative Johnny Cano ("Cano").  A copy of SHELLPOINT's Cano's letter to the Plaintiff is attached to this complaint as Exhibit "46" and incorporated herein by reference.

255.    SHELLPOINT's Cano's May 18, 2015 letter states that "The Federal Home Mortgage Loan Corporation 137027 American Home Mortgage is currently the owner" of the Plaintiff's mortgage which contradicts all previous disclosed alleged owners and

holders of the Plaintiff's mortgage sent to the Plaintiff by Defendants RESURGENT and SHELLPOINT prior to May 18, 2015.

256.     SHELLPOINT's Cano's letter demands a new Plaintiff UBAF without the required delivery date for receipt as required by CFPB and HBOR loss mitigation laws and regulations. SHELLPOINT's Cano's May 18, 2015 letter is a devious continuation of Defendant SHELLPOINT's well-documented scheme to declare all Plaintiff submitted loss mitigation UBAF's as incomplete and non-compliant, even if it entails violation of well-defined federal and state of California loss mitigation and consumer protection laws and regulations under CFPB and HBOR. Defendant SHELLPOINT's deceitful secret and abusive acts and practices are partially exposed in Cano's May 18, 2015 letter as follows:

a) SHELLPOINT states that on May 12, 2015 they sent an "Incomplete Notice" to the Plaintiff's March 24, 2015 UBAF which SHELLPOINT received March 26, 2015. This is an admitted violation of the policies and procedures for SHELLPOINT's processing and evaluation of the Plaintiff's UBAF that was disclosed to him in the initial UBAF submission package. This was the first (initial) SHELLPOINT "Incomplete Notice", sent 47 days after the receipt of the Plaintiff's March 24, 2015 UBAF that not only violates SHELLPOINT's disclosed policies and procedures previously sent to the Plaintiff, but additionally violates the laws and regulations of CFPB and HBOR for required completeness notices to be sent to borrowers that have been served with NOD's on their homes prior to submission of their UBAF's.

b) SHELLPOINT's Cano's requested documentation for the Plaintiff's new UBAF contradicts SHELLPOINT's demanded documentation in their letters dated March 30, 2015; March 31, 2015; and April 20, 2015 as referenced in paragraphs 234 through 246 and Exhibits "38", "39", and "41" of this complaint. The Plaintiff had submitted each and every document requested in SHELLPOINT's instruction letter and UBAF instructions as referenced in paragraph 234 and Exhibit "29" of this complaint.

71

257.    SHELLPOINT and their representative, Cano, deceitfully and intentionally added a condition for approval of the Plaintiff's UBAF that they knew the Plaintiff could not and would not comply with in order to set the devious trap to attempt to declare the Plaintiff's new UBAF incomplete and accelerate their scheme to foreclose on the Plaintiff's home.

258.    SHELLPOINT's May 18, 2015 letter required the Plaintiff to submit copies of all new "bank statements for the business" which they were previously notified the Plaintiff would not do under any circumstances due to SHELLPOINT documented record of losing and mishandling the borrower's previously submitted personal, business, and identification documents and records. SHELLPOINT was previously notified the IRS had an ongoing investigation into a recent act of identity theft of the Plaintiff's IRS records.  Refer to paragraphs 227 through 233 and Exhibit "36" of this complaint. The granting of continuing and illegal access to the Plaintiff's SHELLPOINT account records, in violation of the FDCPA and Privacy Act, to unauthorized third parties by SHELLPOINT and their representatives Hayes Jr. as referenced in Exhibits "21" and "25", instilled great fear in the Plaintiff's willingness to submit copies of these business bank statements that could result in the illegal accessing and looting of his business and client trust accounts. Defendant SHELLPOINT and their Representative, Hayes Jr., refused numerous Plaintiff written requests, sent as QWR's under RESPA, demanding the continuing access to the Plaintiff's account records granted to the "Office" of Congressman Kevin McCarthy be rescinded to protect the Plaintiff from identity theft.  SHELLPOINT and Hayes Jr. have refused to take this action in order to continue to harass and torment the now 78 year old Plaintiff and instill unwarranted and willful mental pain and suffering.

c)    SHELLPOINT's Hayes Jr. states in his letter to the Plaintiff dated April 20, 2015, Exhibit "40" of this complaint: "SHELLPOINT MORTGAGE SERVICING recognizes your concerns regarding the documentation previously provided. Please

know that SHELLPOINT takes the privacy of its customer's nonpublic personal information very seriously and has policies and procedures in place to ensure the confidentiality of such information." SHELLPOINT's and Hayes Jr.'s aforereferenced statement is a deliberate and willful false statement of facts to cover up their well-documented malfeasances of FDCPA and the Privacy Act based on the following actions of SHELLPOINT and Hayes Jr.:

1) On August 1, 2015 SHELLPOINT and Hayes Jr. were notified they were not authorized to release the Plaintiff's personal information to third parties as referenced in Exhibit "17" and paragraphs 99 through 102 of this complaint.

2) On August 26, 2015 Defendant SHELLPOINT and Hayes Jr. deliberately and willfully violated the Plaintiff's written August 1, 2015 notice of denial to release the Plaintiff's information to third parties (Exhibit "17" of this complaint) by releasing the Plaintiff's personal information to the "Office of Congressman Kevin McCarthy", as evidenced in Exhibit "21" of this complaint, without directing their letter to a designated secure source of contact in Congressman McCarthy's office, thus exposing the Plaintiff to identity theft.

3) The Plaintiff filed a complaint with Defendants SHELLPOINT and FREDDIE MAC September 22, 2015 as referenced in paragraphs 111 through 158 and Exhibits "17" through "26" of this complaint. Defendant SHELLPOINT refused to respond in the required format for response under RESPA 2605, in regard to written QWR's for the removal and rescission of unauthorized and illegal granting of third parties continuous access of the Plaintiff's personal and financial records by unknown and unidentified parties in the "Office of Congressman Kevin McCarthy."

259.   Defendant SHELLPOINT Canos' letter to the Plaintiff dated May 18, 2015 (Exhibit "46" of this complaint) was received on June 1, 2015, three days after the

73

Plaintiff submitted his May 22, 2015 fully completed UBAF, which was confirmed received by SHELLPOINT on June 1, 2015.

260.    On June 2, 2015, the Plaintiff sent an eight (8) page letter with enclosures and exhibits to SHELLPOINT's Cano contesting Cano's and SHELLPOINT's May 18, 2015 letter (Exhibit "46" of this complaint). This letter was confirmed received by SHELLPOINT on June 8, 2015 at 9:49 AM. A copy of the Plaintiff's letter dated June 1, 2015 to Defendant SHELLPOINT is attached to this complaint as Exhibit "47" and incorporated herein by reference. This June 1, 2015 letter contains approximately eighty (80) pages of enclosures and exhibits which will be entered into evidence at trial.

261.    On May 26, 2015, Defendant SHELLPOINT's Loran Kaufmann ("Kaufmann") sent a letter to the Plaintiff, received by the Plaintiff on June 8, 2015, as a reply to the Plaintiff's March 3, 2015 letter sent as a QWR under RESPA 2605 and the Plaintiff's second demand for response dated May 11, 2015 sent as a QWR under RESPA 2605, referenced in paragraphs 226 (c) and (d) and 247 and exhibit "35" of this complaint. A copy of SHELLPOINT's Kauffman's May 26, 2015 letter is attached to this complaint as Exhibit "48" and incorporated herein by reference.

262.    SHELLPOINT's Kauffman's May 26, 2015 letter is an undisputable violation of RESPA (12 USC 2605 (e) (1) (A) (2) (B) (C)) for answering the Plaintiff's March 3, 2015 QWR letter (Exhibit "35" of this complaint). This violation of RESPA in regard to the Plaintiff's correspondence sent as a QWR under RESPA represents one of multiple violations by Defendant SHELLPOINT over the past two years and soundly defeats SHELLPOINT's Kauffman's written claim on May 26, 2015 "SHELLPOINT MORTGAGE SERVICING maintains that we are in full compliance with all state and federal laws." Each individual violation will be presented as evidence at trial.

263.    SHELLPOINT's May 26, 2015 letter reaffirms the claim that Defendant RESURGENT's NOD dated December 4, 2013, served on the Plaintiff December 9, 2013, was legally valid and in compliance with all state and federal laws. This NOD

74

served by Defendant RESURGENT, which is attested by Defendant SHELLPOINT in their May 26, 2015 letter as a legal notice in compliance with federal and state law, was a deliberate and willful violation of CFR 1024.41 (2) (f) by serving a NOD, first notice, prior to the Plaintiff's mortgage being 120 days delinquent. This is a violation of CFPB laws and regulations as well as HBOR.

264.     SHELLPOINT's attested reaffirmation of Defendant RESURGENT's NOD, dated December 4, 2013, attests to the validity of written statements contained in Defendant RESURGENT's NOD that "RESURGENT MORTGAGE SERVICING, a division of RESURGENT CAPITAL SERVICES LP (RESURGENT) on behalf of RESURGENT CAPITAL SERVICE, the owner and holder of your mortgage, and in accordance with the referenced Deed of Trust/Mortgage ("Security Instrument") and applicable state laws provides you with a formal notice of the following." A copy of RESURGENT's December 4, 2013 NOD is referenced in this complaint as Exhibit "6".

265.     The Plaintiff sent a letter to Defendant RESURGENT December 17, 2013 contesting the illegal filing and service of their NOD dated December 4, 2013 on the Plaintiff December 9, 2013 as referenced in paragraphs 39 through 47 and Exhibit "6" of this complaint. If, in fact, it is proven at trial that Defendant FREDDIE MAC, the alleged but unverified owner of the Plaintiff's mortgage, is the valid documented owner of the Plaintiff's mortgage, then the illegal NOD served on the Plaintiff December 9, 2013 is a libelous act of misrepresentation in violation of federal and state law causing the Plaintiff great emotional and financial harm. SHELLPOINT's reaffirmation and act of attesting RESURGENT's December 4, 2013 NOD and its contents will prove the Plaintiff's allegations of fraudulent misrepresentation by Defendants RESURGENT and RCSLP.

266.     On June 18, 2015 the Plaintiff sent a response letter to SHELLPOINT's Representative Kaufmann as a QWR under RESPA contesting SHELLPOINT's letter of May 26, 2015 (Exhibit "48" of this complaint). A copy of the Plaintiff's letter dated June 18, 2015 is attached to this complaint as Exhibit "49" and incorporated herein by

75

reference.  This letter with approximately 100 pages of enclosures and exhibits will be entered into evidence at trial.

267.     The Plaintiff advised SHELLPOINT's Kaufmann, in his letter dated June 18, 2015 (page 3 of 3), that he was preparing a web portal complaint against SHELLPOINT and their escalations Representative, Hayes Jr., for violation of federal and state of California loss mitigation and consumer protection laws.  The Plaintiff's May 22, 2015 fully completed UBAF, as referenced in paragraphs 248 through 253 of this complaint, had been verified received by SHELLPOINT on June 1, 2015. Defendant SHELLPOINT had not acknowledged receipt of the Plaintiff's May 22, 2015 submitted UBAF, nor notified the Plaintiff of its completeness, in the time required for responses for UBAF's that have recorded NOD's. Defendant SHELLPOINT was in violation of CFPB and HBOR laws and regulations which will be cited and presented at trial. The Plaintiff was fearful that the Defendant SHELLPOINT would use their formatted and invented reasons for denial that were used in his four (4) previous submitted UBAF's referenced in paragraphs 189 through 192 of this complaint.

268.     On July 2, 2015 the Plaintiff sent an email letter with enclosures to SHELLPOINT's Kaufmann giving notice that he was filing a CFPB web portal complaint against SHELLPOINT and their Representative Hayes Jr.  This letter included a draft copy of the cover letter of the CFPB complaint. A copy of the Plaintiff's July 2, 2015 email letter with enclosures is attached to this complaint as Exhibit "50" and incorporated herein by reference.

269.     The Plaintiff was compelled to file this CFPB web portal complaint to protect his and his family's safety, health, and welfare from Defendant SHELLPOINT and their vengeful Representative Hayes Jr.'s unwarranted and illegal personal attacks. Defendant SHELLPOINT had the Plaintiff's fully completed May 22, 2015 UBAF in their possession for thirty two (32) days and had not contacted the Plaintiff in any manner. It was apparent SHELLPOINT was deliberately ignoring the Plaintiff's loss mitigation

COMPLAINT

request/UBAF in order to let time sensitive submitted documents expire and declare it incomplete as described in their schemes referenced in paragraphs 163 through 167; 172 through 177; and 189 through 192 of this complaint.

270.    On July 16, 2015, the Plaintiff received the first response letter from Defendant SHELLPOINT, dated July 7, 2015, regarding the acknowledgement of receipt of the Plaintiff's May 22, 2015 fully completed UBAF. This letter listed five (5) items that SHELLPOINT considered not submitted, completed incorrectly, or non-compliant due to expired time validity.

271.    This July 7, 2015 first response letter to the Plaintiff was sent 37 days after Defendant SHELLPOINT's documented receipt of the Plaintiff's May 22, 2015 UBAF. This first response was made 19 days after the Plaintiff submitted a complaint letter to SHELLPOINT's escalations representative Kaufmann on June 18, 2015 demanding an acknowledgement and notice of completeness in compliance with CFPB and HBOR laws and regulations for loss mitigation request (UBAF's) for loans that were subjected to recorded NOD's. This Plaintiff complaint letter to SHELLPOINT and their Representative Kaufmann are referenced in paragraphs 266 through 267 and Exhibit "49" of this complaint.

272.    SHELLPOINT's July 7, 2015 first notice letter, written by SHELLPOINT's Kaufmann, notified the Plaintiff that SHELLPOINT was replacing their negligent SPC Sanford with a new (second) SPC, Angie Taylor, to evaluate and process the Plaintiff's May 22, 2015 UBAF. This change of SPC's was made without explanation or justification to the Plaintiff.

273.    SHELLPOINT's Kaufmann's July 7, 2015 letter to the Plaintiff, received by the Plaintiff July 16, 2015, on his 78th birthday, stated on page one (1) the following:

> "At this time, there are no third parties authorized to receive information regarding this account on your behalf. Any previously authorized parties have

COMPLAINT

1    since been removed and are no longer eligible to receive information on this

2    account."

3    274.    This stated action by Defendant SHELLPOINT is an unfair, deceitful, and

4    abusive act to nullify the Plaintiff's required written authorization for SHELLPOINT

5    submission of the Plaintiff's personal and business information to authorized third parties

6    identified on page four (4), items 8 and 9 of his signed and dated May 22, 2015 UBAF.

7    Defendant SHELLPOINT cannot evaluate or approve the Plaintiff's May 22, 2015 loss

8    mitigation request (UBAF) without his third party authorization for contact or response

9    being in full force and effect. This deliberate and willful action blocked submission and

10   response from the IRS for the Plaintiff's required IRS Form 4605–T from third party

11   Corelogic as well as Defendant FREDDIE MAC, the CFPB, and credit bureaus, just to

12   identify a few entities known to the Plaintiff. The Plaintiff reserves the right to amend the

13   aforereferenced list of blocked information entities upon discovery. This unjust and

14   conniving action automatically renders the Plaintiff's May 22, 2015 UBAF submission

15   incomplete as well as future UBAF submissions. A copy of SHELLPOINT's July 7, 2015

16   letter is attached to this complaint as Exhibit "51" and incorporated herein by reference.

17   275.    On July 17, 2015 the Plaintiff challenged SHELLPOINT's Kaufmann's letter,

18   referenced in paragraphs 271 through 274 and Exhibit "51" of this complaint, that he

19   received 46 days after Defendant SHELLPOINT's documented receipt of the Plaintiff's

20   May 22, 2015 UBAF.

21   276.    Defendant SHELLPOINT's July 7, 2015 letter proved conclusively that the

22   Plaintiff would never, under any circumstance, receive a fair and equitable evaluation of

23   any loan modification or loss mitigation request submitted to SHELLPOINT that would

24   be evaluated and processed in compliance with CFPB and HBOR laws and regulations.

25   This SHELLPOINT July 7, 2015 letter exemplified the lengths SHELLPOINT would go

26   through to manipulate their initial instructions accompanying the UBAF's sent to the

27   Plaintiff and the twisted and manufactured reasons they would use to deem his fully

28

78

complete and compliant UBAF's as incomplete. This repeated wrongful denial of
multiple submitted UBAF's, sent by the Plaintiff to SHELLPOINT, was taken to cover
up SHELLPOINT's malfeasance of federal and state laws in order to fast track their
single focused devious goal of foreclosing on an innocent homeowner without complying
with these laws. The Plaintiff's letter to Defendant SHELLPOINT dated July 17, 2015 is
attach this complaint as Exhibit "52" and incorporated herein by reference. The
Plaintiff's July 17, 2015 letter to SHELLPOINT was sent as a QWR under RESPA 2605.

277.   A complete certified copy of the Plaintiff's May 22, 2015 UBAF, delivered to
SHELLPOINT on June 1, 2015, will be entered into evidence at trial as undeniable proof
that each and every one of the bullet-point items listed in SHELLPOINT's July 7, 2015
letter, as referenced in paragraphs 270 through 274 and Exhibit "51" of this complaint,
are false or deceitfully manufactured in order to cover-up SHELLPOINT's malfeasances
of federal and state laws.

278.   The Plaintiff's May 22, 2015 UBAF contained all of the supporting, signed and
dated documents required in SHELLPOINT's May 12, 2015 instructions to the borrower
and the UBAF instructions. Each and every supporting document was indexed and third
party certified, as referenced in paragraphs 248 through 253 of this complaint.

279.   A forensic examination of the Plaintiff's May 22, 2015 UBAF, submitted to
Defendant SHELLPOINT, will reveal at trial SHELLPOINT's deliberate, unfair,
deceitful, and abusive acts against this 78 year old senior citizen to inflict unwarranted
intentional anxiety, fear, and mental suffering.

280.   Defendant SHELLPOINT's July 7, 2015 letter demands that the Plaintiff submit a
"new" Profit and Loss Statement for the Plaintiff's sole proprietorship business (bullet
point 1) for the most recent three months, stating that the Plaintiff's signed and dated
profit and loss statement submitted with his May 22, 2015 UBAF was non-compliant.
SHELLPOINT's letter stated: "We show an item called 'Owners Draw' on a letter of
explanation for large deposits, however, the Profit and Loss Statements do not reflect this

COMPLAINT

item." This deceitful and manufactured reason for deeming the Plaintiff's fully compliant profit and loss statement, submitted with the Plaintiff's May 22, 2015 UBAF, as an incomplete and non-compliant item epitomizes the extreme despicable depths SHELLPOINT will go to reject any Plaintiff submitted UBAF request for loan modification.

281.     Any qualified loan processor or underwriter knows that "Owner Draws" are not and expense item in a sole proprietorship business profit and loss statement. "Owners Draws" are never listed as an expense on a sole proprietorship profit and loss statement because they are not an expense to the business. This SHELLPOINT approval requirement is in violation of and contrary to Generally Accepted Accounting Principles (GAAP).

282.     Defendant SHELLPOINT deliberately created this devious condition for approval of the Plaintiff's UBAF knowing it would be impossible for the Plaintiff to comply. Defendant SHELLPOINT refused to eliminate this condition for UBAF approval or answer the Plaintiff's letter sent as a QWR under RESPA dated July 17, 2015 (Exhibit "52" of this complaint).

283.     In SHELLPOINT's July 7, 2015 letter to the Plaintiff, bullet point 2 stated SHELLPOINT wanted an "updated" "Uniform Borrower Assistance Form", "signed and dated with no edits or alterations".

284.     The Plaintiff's May 22, 2015 UBAF, which was 46 days old on the date of SHELLPOINT July 7, 2015 letter, and 10 days old upon SHELLPOINT's receipt of June 1, 2015, was still in compliance even though Defendant SHELLPOINT had ignored and violated the required first response times required by federal and state loss mitigation laws and regulations. The Plaintiff's complaint regarding SHELLPOINT's failure to respond in compliance with CFPB and HBOR loss mitigation laws and regulations are referenced in paragraphs 266 through 267 and Exhibit "49" of this complaint.

COMPLAINT

285.    The Plaintiff's May 22, 2015 UBAF had no edits or alterations as a forensic examination of all four pages of the Plaintiff's May 22, 2015 UBAF will prove at trial. SHELLPOINT invented this nonexistent excuse for denial of the Plaintiff's UBAF to cover-up the documented proof of SHELLPOINT's deliberate malfeasances of CFPB an HBOR laws and regulations by purposely letting time sensitive documents expire then informing the Plaintiff that they are non-compliant and out of date.

286.    SHELLPOINT Kaufmann claimed she sent as an enclosure in her July 7, 2015 letter to the Plaintiff a new UBAF package for the Plaintiff, including a new IRS Form 4605-T. SHELLPOINT's Kaufmann deviously sent the Plaintiff a three (3) page form entitled "Request for Modification and Affidavit (RMA)", which the Plaintiff had never seen, instead of a new UBAF package.

287.    The Plaintiff challenged and questioned this RMA form sent by SHELLPOINT's Kaufmann in her July 17, 2015 letter sent as a QWR under RESPA. The Plaintiff asked Kaufmann for clarification of which form SHELLPOINT was requiring him to submit. The RMA forms sent to the Plaintiff was a photocopy of an RMA application which was light and practically illegible. SHELLPOINT's Kaufmann refused to answer this critical and specific QWR question, in compliance with RESPA regulations, which left the Plaintiff confused and experiencing extreme anxiety and fear that SHELLPOINT would immediately foreclose on his home of 10 years. This was a purposeful, cruel action to emotionally harm the 78 year old senior citizen Plaintiff.

288.    In bullet point three of SHELLPOINT's July 7, 2015 letter to the Plaintiff, SHELLPOINT demanded an all new updated IRS Form 4605-T. This was an outrageous demanded in light of the fact that the Plaintiff had submitted a fully completed IRS Form 4605-T, dated May 22, 2015, in full compliance with Defendant SHELLPOINT's instructions enclosed in their UBAF package entitled "How to complete IRS Form 4605-T" and the instructions contained in line five of IRS Form 4605-T. IRS Form 4605-T states the Plaintiff's fully executed form 4605-T is valid for 120 days from signature date

81

of May 22, 2015 or until September 17, 2015, which is 72 days after the date of SHELLPOINT's July 7, 2015 letter. The Plaintiff's executed May 22, 2015 IRS Form 4605-T was valid, compliant, and in accordance with the provided instructions in SHELLPOINT's UBAF and IRS Form 4605-T.

289.     The Plaintiff hereby alleges that Defendant SHELLPOINT's demand for a new updated IRS Form 4605-T from the Plaintiff, when it is proven compliant with all instructions previously sent to the Plaintiff by Defendant SHELLPOINT and valid under IRS guidelines, that Defendant SHELLPOINT has lost or failed to secure the location of this personal identification document, thus again exposing the Plaintiff to identity theft such as occurred in February of 2015. The basis for this allegation is referenced in paragraphs 227 through 233 and Exhibit "36" of this complaint.

290.     In Defendant SHELLPOINT's July 7, 2015 letter to the Plaintiff, bullet point four (4), SHELLPOINT's Kaufmann demands "Two (2) most recent business bank statements" even though SHELLPOINT had been notified in two notices sent by the Plaintiff that he would not submit any copies of his businesses bank statements as referenced in paragraphs 19 through 24; 31 through 32; 227 through 233; 254 through 260; and Exhibits 5, 17, 21, 22, 36, and 45 of this complaint.

291.     The Plaintiff's refusal to comply with this SHELLPOINT added condition demanding copies of the Plaintiff's business bank statements are summarized as follows:

a) Defendant SHELLPOINT and their Representative Hayes Jr. had deliberately and willfully compromised the safety and security of the Plaintiff's personal financial information by granting unauthorized and continuing access to the Plaintiff's SHELLPOINT account and personal information, in violation of the FDCPA and Privacy Act, to unknown parties on August 26, 2014, thus exposing him to identity theft (refer to Exhibit "21" of this complaint). This act was unauthorized by the Plaintiff as documented in a written notice to SHELLPOINT's Hayes Jr. by the

COMPLAINT

Plaintiff on August 1, 2014 (as referenced in Exhibit "17" of this complaint), 25 days prior to Hayes Jr. and SHELLPOINT's illegal action on August 26, 2014.

b) The continuing demand for copies of the Plaintiff's two (2) business trust account bank statements containing copies of actual checks and clients account numbers for over one hundred (100) of the Plaintiff's investors was an unfair, deceitful, and abusive act against the Plaintiff to attempt to force him to violate his clients rights to privacy under federal and state law. Defendant SHELLPOINT and RESURGENT had been notified multiple times in writing that the Plaintiff could not have in excess of $200.00 of his personal funds in each individual bank trust account for his firm. Defendant SHELLPOINT's Hayes Jr. had used the total balances of the Plaintiff's two business client trust accounts, which contain less than $400.00 of the Plaintiff's personal funds, to wrongfully deny the Plaintiff's April 22, 2013 UBAF when he was employed by Defendant RESURGENT as referenced in paragraphs 21 through 23; 31 to 33; and Exhibit "4" of this complaint.

c) The Plaintiff notified Defendant SHELLPOINT that the Plaintiff's business checking accounts at Rabobank suffered an unsuccessful online attack in February 2015 by unknown parties as well as a successful attack on his IRS account. The IRS is conducting an identity theft investigation. SHELLPOINT had full knowledge and notification of these breaches of the Plaintiff's bank accounts and records as referenced in paragraphs 257 and 258 and Exhibits "36" and "47" of this complaint.

d) According to page two of the instructions in the Plaintiff's May 22, 2015 UBAF, copies of the Plaintiff's business bank statements are not required if the Plaintiff submitted with his May 22, 2015 UBAF a "complete signed and dated individual federal income tax returns and, as applicable, the business tax return" and "most recent signed and dated quarterly profit and loss statement." The Plaintiff submitted with his May 22, 2015 UBAF a complete signed and dated 2013 and 2014 federal individual and business tax returns and most recent signed and dated quarterly profit

83

COMPLAINT

and loss statements, thus eliminating the requirement for copies of his business bank statements for the last two months.

e) Defendant SHELLPOINT deliberately and deceitfully made this added condition for copies of the Plaintiff's business bank statements knowing that the Plaintiff cannot comply without violating federal and state of California rights to financial privacy laws in regards to his business client trust accounts.

292.    In Defendant SHELLPOINT's July 7, 2015 letter to the Plaintiff, bullet point five (5), SHELLPOINT's Kaufmann demands SHELLPOINT's repeated request, beginning May 13, 2014 in SHELLPOINT's Hayes Jr.'s letter to the Plaintiff, referenced in Exhibit "13", the "mortgage statement and lease agreement for the rental property located at 704 Lincoln" "Please contact our office to further discuss this requirement." SHELLPOINT's demand for repeated information on the rental property at 704 Lincoln St, Bakersfield, CA 93308 documents SHELLPOINT's invented reason for claiming the Plaintiff did not submit sufficient income documentation to determine his monthly qualifying income. The SHELLPOINT instructions sent to the Plaintiff on May 12, 2015 with the UBAF package did not ask for or require specific rental property information.  The UBAF submitted to SHELLPOINT dated May 22, 2015 on page two, Rental Income, required the Plaintiff's "most recent filed federal tax return with all schedules including Schedule E – Supplemental Income or Loss. Rental income for qualifying purposes will be 75% of gross rent you reported reduced by the monthly debt service on the property, if applicable."

293.    The Plaintiff not only submitted his complete signed federal 1040 tax return with Schedule E, but also submitted with his May 22, 2015 UBAF the calculation of his net rental income of 704 Lincoln St based on the formula given on the UBAF form, page two, since SHELLPOINT's Hayes Jr.'s letter to the Plaintiff dated April 20, 2015 (Exhibit "40" of this complaint) stated SHELLPOINT was incapable of calculating and

COMPLAINT

evaluating the Plaintiff's "household finances" for the Plaintiff's prior UBAF submitted March 24, 2015.

294.     The requested rental documents were not required as a condition for UBAF approval according to SHELLPOINT's May 12, 2015 instruction letter or the instructions on page two of the Plaintiff's May 22, 2015 UBAF. The Plaintiff foresaw Defendant SHELLPOINT's conniving scheme to deem his May 22, 2015 fully complete UBAF as incomplete by using the non-required rental information as a vehicle for denial of the Plaintiff's UBAF, as they had a history of doing on past submissions of the Plaintiff's UBAF's in order to fast-track a foreclosure on the Plaintiff's home.

295.     The Plaintiff had already submitted to Defendant SHELLPOINT all of the required rental information requested in SHELLPOINT's Kaufmann's July 7, 2015 letter, bullet point five (5), in his May 22, 2015 UBAF received by SHELLPOINT on June 1, 2015, in anticipation of and to thwart SHELLPOINT's devious scheme.

296.     The Plaintiff's equity ownership of 8.5% of the 704 Lincoln St rental property was $675.00 which was sold in an arm's length transaction for $675.00 on December 21, 2015. Calculations of rental income submitted in the Plaintiff's May 22, 2015 UBAF shows that the 704 Lincoln St rental property generated a monthly income of $22.00 when rented. The Plaintiff's equity interest in 704 Lincoln St is documented on Schedule E of his 2014 form 1040 federal tax return submitted to SHELLPOINT on May 22, 2015.

297.     The Plaintiff alleges that Defendant SHELLPOINT lost or intentionally mishandled the Plaintiff documentation regarding the 704 Lincoln St. rental, submitted by the Plaintiff in his May 22, 2015 UBAF, or this UBAF was assigned to an untrained and/or incompetent loan processor without the qualifications to adequately evaluate the Plaintiff's May 22, 2015 UBAF. The ludicrous request for "Owners Draws" to be included on the Plaintiff 's sole proprietorship profit and loss statements in bullet point 1 of SHELLPOINT's July 7, 2015 letter (as referenced in paragraphs 280 through 282 of this complaint) gives credence to the Plaintiff's allegations.

85

298.    Defendant SHELLPOINT refused to answer the Plaintiff's letter dated July 17, 2015, sent to SHELLPOINT's Kaufmann as a QWR under RESPA, as required under federal and state of California consumer protection laws which will be cited at trial.

299.    On July 21, 2015 Defendant SHELLPOINT sent a letter to the Plaintiff stating: "We are unable to offer you a loss mitigation option because you did not provide us with the documents we requested. We have notified you of the specific documents we need and time frames required to provide them to us."

300.    This SHELLPOINT letter of denial of completeness of the Plaintiff's May 22, 2015 UBAF, received by SHELLPOINT on June 1, 2015, documents Defendant SHELLPOINT's quick trigger to foreclose on the Plaintiff's home without complying with CFPB and HBOR laws and regulations. This July 21, 2015 SHELLPOINT denial letter was sent 14 days after SHELLPOINT's Kauffman's first notice of completeness dated July 7, 2015, which was received by the Plaintiff on July 16, 2015. SHELLPOINT's Kaufmann's letter did not give the required "drop dead" delivery time frame required by CFPB and HBOR laws and regulations. SHELLPOINT's July 21, 2015 denial letter was sent a mere three (3) business days after the Plaintiff received Kaufmann's July 7, 2015 letter on July 16, 2015.

301.    On July 27, 2015 the Plaintiff sent a challenge/complaint letter to Defendant SHELLPOINT disputing their denial of completeness letter sent to the Plaintiff July 21, 2015, as referenced in paragraph 299 of this complaint. A copy of the Plaintiff's July 27, 2015 letter, sent as a QWR under RESPA, to Defendant SHELLPOINT is attached to this complaint as Exhibit "53" and incorporated herein by reference.

302.    On July 14, 2015 the Plaintiff filed a 500 plus page complaint with the CFPB against Defendant SHELLPOINT and their Representative, Hayes Jr. for verifiable violations of CFPB and HBOR laws and regulations, and for deliberate and willful vendetta type personal attacks against a 78 year old Plaintiff. A copy of the cover letter for the Plaintiff's 500 plus page CFPB complaint against Defendant SHELLPOINT and

86

COMPLAINT

their Representative Hayes Jr. is attached to this complaint as Exhibit "54" and incorporated herein by reference. A copy of the entire 500 plus page CFPB complaint will be entered into evidence at trial.

303.     On July 28, 2015, Defendant SHELLPOINT sent a letter to the Plaintiff stating they were "working to gather the requested information and will respond within the allotted time frame" in regard to the Plaintiff's CFPB complaint against SHELLPOINT and their Representative Hayes Jr.

304.     On August 12, 2015, Defendant SHELLPOINT replied to the Plaintiff's July 27, 2015 complaint letter referenced in paragraph 301 and Exhibit "53" of this complaint. SHELLPOINT's August 12, 2015 letter to the Plaintiff stated "SHELLPOINT Mortgage has received your complete request for a loss mitigation program", reversing SHELLPOINT's Kaufmann's convoluted letter to the Plaintiff dated July 7, 2015 as referenced in paragraphs 270 through 298 and Exhibits "51" and "52" of this complaint.

305.     A copy of Defendant SHELLPOINT's August 12, 2015 letter to the Plaintiff notifying him that his May 22, 2015 UBAF was "complete" is attached to this complaint as Exhibit "55" and incorporated herein by reference.

306.     On September 1, 2015 the Plaintiff received a letter from Defendant SHELLPOINT dated August 24, 2015 listing nine (9) items that SHELLPOINT demanded be delivered to their Greenville, South Carolina office to the third (3rd) different SPC appointed in 95 days for the Plaintiff's May 22, 2015 fully complete UBAF, Pasha McClinton.

307.     SHELLPOINT's August 24, 2015 letter stated: "Please mail the required documentation to the address below using the enclosed postage paid envelope. If we do not receive this information by September 3, 2015, we will close your request for assistance." A copy of SHELLPOINT's August 24, 2015 letter to the Plaintiff is attached to this complaint as Exhibit "56" and incorporated herein by reference.

87

COMPLAINT

308.    Defendant SHELLPOINT deliberately and maliciously set an unreasonable time frame for the Plaintiff to examine, gather, and submit SHELLPOINT's demanded and required documentation by an absolute "drop dead" date of September 3, 2015. SHELLPOINT's August 24, 2015 letter was not received by the Plaintiff until September 1, 2015. Defendant SHELLPOINT used a bulk rate prepaid envelope to send their August 24, 2015 letter to the Plaintiff. This envelope did not have a post office cancellation stamp to document the date of mailing. SHELLPOINT required the Plaintiff to deliver all demanded and required documentation back to SHELLPOINT in their blue prepaid, bar coded regular envelope addressed to SHELLPOINT's office in Greenville, SC.

309.    Defendant SHELLPOINT knew it would be impossible for the Plaintiff to comply with their contrived, deceitful, and unfair terms and conditions set forth in their August 24, 2015 letter to the Plaintiff. The Plaintiff was given a mere two days from receipt of SHELLPOINT's August 24, 2015 letter, which was mailed from Troy, MI, until the "drop dead" delivery date to SHELLPOINT's Greenville, SC office using their required regular U.S. mail envelope by September 3, 2015. SHELLPOINT's deliberate, willful, and unfair act of giving the Plaintiff an unreasonable timeframe to submit documentation or reply to SHELLPOINT's August 24, 2015 letter in order to keep his loan modification request active, is a documented abusive violation of CFR 1024.41 (c) (2) (ii) of CFPB laws and regulations and California Civil Code 2923.6 (h) under HBOR.

310.    The Plaintiff alleges that Defendant SHELLPOINT's ever growing aggressive, unfair, deceptive, abusive acts and practices against the Plaintiff, such as evidenced in paragraphs 306 through 309 and Exhibit "56" of this complaint, serves as an example of SHELLPOINT's single purpose scheme to foreclose on the Plaintiff's home of 10 years in order to attempt to hide and remove SHELLPOINT's multiple documented violations of federal and state of California loss mitigation loan modification laws and regulations. Defendant SHELLPOINT single and sole plan of action was to foreclose on the Plaintiff's home, not to process or evaluate the Plaintiff's multiple loan modification

COMPLAINT

requests, which began January 15, 2013, in compliance with CFPB and HBOR laws and regulations.

311.    On September 2, 2015 the Plaintiff sent a complaint letter dated September 1, 2015 to Defendant SHELLPOINT regarding SHELLPOINT's letter dated August 24, 2015 (as referenced in paragraphs 306 through 309 and Exhibit "56" of this complaint). The Plaintiff's eleven (11) page letter with enclosures and exhibits was mailed to Defendant SHELLPOINT's Troy, MI office, the originator of SHELLPOINT's August 24, 2015 letter to the Plaintiff (Exhibit "56") by U.S. Express Mail on September 2, 2015. It was delivered by the U.S. Postal Service seven days later to SHELLPOINT on September 9, 2015. A copy of the Plaintiff's September 1, 2015 complaint letter, consisting of eleven (11) pages, with delivery notices to SHELLPOINT, is attached to this complaint as Exhibit "57" and incorporated herein by reference.

312.    The delivery time for the Plaintiff's September 1, 2015 letter, mailed September 2, 2015 via U.S. priority express mail, to Defendant SHELLPOINT's Troy, MI office, took a documented seven days. This establishes the fact that SHELLPOINT's August 24, 2015 letter (Exhibit "56") mailed prepaid bulk regular U.S. mail from Troy, MI took in excess of seven days to be delivered to the Plaintiff.

313.    The Plaintiff received SHELLPOINT's August 24, 2015 letter on September 1, 2015, as referenced in paragraphs 306 to 309 of this complaint. If the Plaintiff could have assembled and completed the SHELLPOINT's demanded documents by September 2, 2015, then returned them to SHELLPOINT's Greenville, SC office in their provided SHELLPOINT blue, bar coded, pre-paid regular mail envelope, it would still be impossible for the Plaintiff to comply with SHELLPOINT's unreasonable demands of a September 3, 2015 "drop dead" delivery date.

314.    The Plaintiff's September 1, 2015 letter to SHELLPOINT was sent as a QWR under RESPA. The Plaintiff was extremely despondent when Defendant SHELLPOINT revealed in their August 24, 2015 letter to the Plaintiff (Exhibit "56" of this complaint)

89

that the Plaintiff's signed and dated IRS Form 4605–T, which was effective and valid until September 17, 2015 and his signed and dated 2014 personal income tax returns (IRS Form 1040) with all schedules along with other personal and financial documents were lost or mishandled by SHELLPOINT and SPC Sanford.  These documents were shipped and submitted with extreme security measures exclusively to SHELLPOINT's SPC, Sanford, on May 29, 2015, which was confirmed received by Defendant SHELLPOINT on June 1, 2015. Defendant SHELLPOINT's August 24, 2015 letter (Exhibit "56") demanded these personal identification documents and the Plaintiff's 2014 federal tax return, which had been previously submitted May 29, 2015 be replaced within 10 days of the date of their August 24, 2015 letter.

315.     The Plaintiff's September 1, 2015 letter to Defendant SHELLPOINT (Exhibit "57" of this complaint) demanded SHELLPOINT respond to this QWR letter under RESPA as to the whereabouts of these previously submitted documents. Defendant SHELLPOINT refused to answer the Plaintiff's September 1, 2015 QWR letter. SHELLPOINT had meticulously set their intentional consumer bear trap to try to get rid of the 78 year old senior citizen in a despicable, conniving, and abusive act in violation of multiple federal and state of California laws.

316.     On September 10, 2015, Defendant SHELLPOINT quick triggered their premeditated vicious and illegal consumer bear trap, with intent to destroy the Plaintiff's rights under federal and state of California consumer protection laws, by denying the Plaintiff's May 22, 2015 fully completed UBAF. SHELLPOINT's September 10, 2015 denial letter stated: "We are unable to offer you a loss mitigation option because you did not provide us with the documents requested. We have notified you of the specific documents we need and time frames required to provide them to us." A copy of SHELLPOINT's September 10, 2015 letter is attached to this complaint as Exhibit "58" and incorporated herein by reference.

COMPLAINT

317.     The Plaintiff alleges that Defendant SHELLPOINT has never shown intent to offer the Plaintiff fair and honest consideration for loss mitigation in compliance with CFPB and HBOR laws and regulations. SHELLPOINT's September 10, 2015 letter of denial of the Plaintiff's May 22, 2015 complete UBAF was submitted 17 days after their letter dated August 24, 2015 (Exhibit "56" of this complaint) and a mere nine days after the delivery of SHELLPOINT's August 24, 2015 letter to the Plaintiff on September 1, 2015.

318.     The Plaintiff's complaint letter dated September 1, 2015 (Exhibit "57" that was mailed via U.S. Priority Express mail on September 2, 2015 to SHELLPOINT was confirmed delivered to SHELLPOINT on September 9, 2015, as evidenced by documented tracking records. If the Plaintiff had mailed SHELLPOINT's required Plaintiff documents in SHELLPOINT's prepaid, blue, bar coded regular mail envelope as demanded and instructed in their August 24, 2015 letter (Exhibit "56") it is inconceivable that it would have been delivered prior to SHELLPOINT's September 10, 2015 denial of the Plaintiff's complete May 22, 2015 UBAF. SHELLPOINT's scheme to fast-track a foreclosure on an innocent 78 year old senior citizen's home is well-documented in this complaint. SHELLPOINT undeniably violated CFR 1024.41 (c) (2) (ii) and California Civil Code 2923.6 (h) of HBOR (unreasonable response time).

319.     Defendant SHELLPOINT purposely ignored the Plaintiff's September 1, 2015 QWR letter (Exhibit "57"), which was confirmed received by SHELLPOINT September 9, 2015, in order to "trip wire" their illegal denial letter of the Plaintiff's May 22, 2015 letter on September 10, 2015.

320.     On September 29, 2015, the Plaintiff received a letter from SHELLPOINT's Kaufmann dated September 10, 2015, the same date as SHELLPOINT's September 10, 2015 letter of denial of the Plaintiff's May 22, 2015 UBAF referenced in paragraphs 316 through 319 and Exhibit "58" of this complaint. It is obvious that SHELLPOINT's Kaufmann's letter to the Plaintiff, dated September 10, 2015, was purposely backdated.

91

COMPLAINT

It does not take 19 days for a letter mailed from Houston, Texas to be delivered to the Plaintiff's Bakersfield, CA P.O. Box as verified by prior SHELLPOINT mailings to the Plaintiff.

321.　　Ms. Kaufmann's September 10, 2015 letter contained SHELLPOINT's standard "consumer trap" demands for documentation that was not required in the original instructions accompanying SHELLPOINT's UBAF's, claiming fully compliant documents were not completed correctly, let submitted time sensitive documents expire, and claimed the Plaintiff failed to submit documents which were submitted with third party certification. A copy of SHELLPOINT Kaufmann's September 10, 2015 letter, with enclosures, is attached to this complaint as Exhibit "59" and incorporated herein by reference.

322.　　SHELLPOINT's Kaufmann's letter was a response to the Plaintiff's July 17, 2015 complaint letter sent as a QWR under RESPA, and constitutes a documented violation of RESPA response times for QWR's.

323.　　This September 10, 2015 response letter (Exhibit "59") demanded the Plaintiff submit a new fully executed IRS Form 4506-T. This SHELLPOINT form purposely contained incomplete, preprinted transcript information on Line 5 which does not comply with the IRS Form 4506-T directions or SHELLPOINT's accompanying instructions titled "How to complete IRS Form 4506-T." This was repeatedly sent to the Plaintiff with every UBAF package in order to deem his submitted UBAF's incomplete.

324.　　The IRS will not accept SHELLPOINT's preprinted, defective, and incomplete IRS Form 4506-T because it does not have the IRS required phone number for third parties requesting and receiving the Plaintiff's transcript of federal income tax and personal information on Line 5 of SHELLPOINT's preprinted IRS Form 4506-T which is required in order to protect the taxpayer from identity theft.

325.　　Defendant SHELLPOINT's instructions "How to complete IRS Form 4506-T", sent multiple times to the Plaintiff, instructed the Plaintiff to put phone number 866-418-

92

4596 on Line 5 of IRS Form 4506-T or his submitted Form 4506-T would be deemed non-compliant. SHELLPOINT has used this consumer trap "incomplete" or "non-compliant" excuse to turn down multiple Plaintiff submitted UBAF over the past two years. The Plaintiff notified Defendant SHELLPOINT that their preprinted IRS Form 4506-T is defective, incomplete, and non-compliant with the Line 5 instructions. The Plaintiff also notified Defendant SHELLPOINT that their instructions "How to complete IRS Form 4506-T" for filling out Line 9 was misleading and non-compliant with the IRS instructions for filling out Line 9.

326.     Defendant SHELLPOINT has not corrected their defective preprinted, non-compliant IRS Form 4506-T, nor their misleading instructions, in order to continue to purposely use it for denial of the Plaintiff's UBAF's. This constitutes further evidence of SHELLPOINT's intentional, unfair, deceptive, and abusive acts and practices against the Plaintiff.

327.     SHELLPOINT's Kaufmann's September 10, 2015 letter (Exhibit "59") states: "You previously submitted a request to our office to cease and desist communication with you via telephone and thus we have been unable to contact you to discuss the additional documentation and the requirements each document must satisfy and/or the information your documentation should reflect. As a result of the cease and desist request, your Single Point Contact (both current and previous) cannot contact you to advise of the status of the loan modification or documents needed."

328.     SHELLPOINT's and Kaufmann's statements in paragraph four of the September 10, 2015 letter (Exhibit "59") is a verifiable false statement based on the following:

A) SHELLPOINT's Hayes Jr. in a letter dated April 20, 2015 to the Plaintiff (Exhibit "40" of this complaint) notified the Plaintiff of SHELLPOINT's conditions for acceptance of a new UBAF as referenced in "Revised Uniform Borrower Assistance Form" paragraph five, "Page 4 (signature page) of the UBAF had several sections

93

COMPLAINT

edited and/or marked out. Unfortunately, we cannot accept a UBAF that has been altered and edited in this manner."

B) The Plaintiff was forced to rescind his cease and desist order for no SHELLPOINT communication via telephone, in writing, on May 22, 2015, on page four of his UBAF dated May 22, 2015. Item 10 of the Plaintiff's signed, dated, unedited and unaltered Page 4 of his May 22, 2015 UBAF granted SHELLPOINT authorization to contact the Plaintiff "concerning this request for mortgage assistance at any telephone number, including mobile telephone number or e-mail address I have provided to the lender/servicer/or authorized third party." Defendant SHELLPOINT had the Plaintiff's written authorization in their possession on June 1, 2015 to contact the Plaintiff via telephone.

C) If Defendant SHELLPOINT is claiming the Plaintiff's cease and desist communication via telephone order was still in full force and effect on the date of their September 10, 2015 letter (Exhibit "59" of this complaint) to the Plaintiff, they are admitting that SHELLPOINT willfully violated the cease and desist order on August 20, 2015.

329.    On August 20, 2015 the Plaintiff received on his mobile phone, (661) 204-4646, a telephone call from SHELLPOINT's insurance department at 10:33 AM from (877) 491-7277 which went to his voicemail. SHELLPOINT's representative, Sachel, left a voicemail, which was recorded by the Plaintiff, requesting he call SHELLPOINT and use response code ID 082015.

330.    The Plaintiff returned SHELLPOINT's call from SHELLPOINT's Troy, MI office, (877) 491-7277 at 12:20 PM, and talked to SHELLPOINT's representative for eleven (11) minutes regarding the Plaintiff's homeowner's insurance policy which the Plaintiff had paid. This phone call was also "screen shot" and will be entered into evidence at trial.

94

331.  SHELLPOINT's Kaufmann's September 10, 2015 letter (Exhibit "59") demanded an updated "Profit and Loss Statement for most recent three months." SHELLPOINT's Kaufmann did not rescind or remove the SHELLPOINT's requirement for "Owners Draws" to show as an expense item for the Plaintiff's sole proprietorship business, thus making it impossible for the Plaintiff to comply. Refer to paragraphs 280 through 282 and Exhibits "51" and "52" of this complaint.

332.  SHELLPOINT's Kaufmann asked for "Two (2) most recent months of bank statements" including the Plaintiff's business and business client trust accounts in spite of the fact the Plaintiff refused to submit them because Defendant SHELLPOINT and their Representative Hayes Jr. had deliberately and willfully compromised the security of the Plaintiff's personal records and documents to unknown third parties on August 26, 2015, in violation of the Plaintiff's written notice denying SHELLPOINT's authorization to release the Plaintiff's personal account information to said unknown third parties as referenced in paragraphs 99 through 115 and Exhibits "17" and "21" of this complaint.

333.  SHELLPOINT and their Representative, Hayes Jr., refused to rescind their granting of continuing unauthorized access to the Plaintiff's SHELLPOINT personal and financial records (as referenced in Exhibit "21" of this complaint), thus exposing the Plaintiff further to identity theft. Refer to Exhibits "36" and "46" of this complaint.

334.  SHELLPOINT's Kaufmann's September 10, 2015 letter (page two of Exhibit "59" of this complaint) demands the Plaintiff re-submit his "Tax returns for 2013 and 2014. We need both personal and business returns." These required federal tax returns were submitted with the Plaintiff's May 22, 2015 UBAF using extreme security delivery measures to SHELLPOINT's SPC Nicholas Sanford on June 1, 2015 as referenced in paragraphs 248 through 253 of this complaint. SHELLPOINT Kaufmann's September 10, 2015 letter proves conclusively that SHELLPOINT lost or mishandled the Plaintiff's tax returns, thus exposing him even further to identity theft. Defendant SHELLPOINT has lost and mishandled multiple Plaintiff submitted personal identification and sensitive

95

financial records over the past two years which will be identified and submitted as evidence at trial.

335.     SHELLPOINT's Kaufmann's September 10, 2015 letter was a devious concoction of manufactured approval conditions for the Plaintiff's fully completed May 22, 2015 UBAF that she and SHELLPOINT had created to ensure the Plaintiff could not comply with in order to cover-up SHELLPOINT's malfeasance of federal and state of California loss mitigation laws and regulations and "fast-track" their single purpose goal of foreclosing on the Plaintiff's home.

336.     SHELLPOINT's Kaufmann enclosed in her September 10, 2015 letter (Exhibit "59" of this complaint) a letter dated August 11, 2015 from Defendant SHELLPOINT to the Plaintiff that was SHELLPOINT's response of the Plaintiff's 500 plus page complaint filed with the CFPB against SHELLPOINT and Representative Hayes Jr. on July 14, 2015 as referenced in paragraphs 268 and 302 and Exhibit "54" of this complaint. A copy of SHELLPOINT's August 11, 2015 letter to the Plaintiff, delivered September 29, 2015, is attached to this complaint as Exhibit "60" and incorporated herein by reference.

337.     Defendant SHELLPOINT had despicably assigned SHELLPOINT's Hayes Jr. to respond to the CFPB complaint filed by the Plaintiff against SHELLPOINT and Hayes Jr. on July 14, 2015 (Exhibit "54" of this complaint), thus denying the Plaintiff fair and impartial evaluation and investigation of the salient and valid accusations against SHELLPOINT and Hayes Jr., including Hayes Jr.'s well-documented vengeful personal attacks against the Plaintiff in retaliation for the Plaintiff's reporting of SHELLPOINT's and Hayes Jr.'s multiple violations of federal and state of California laws and regulations to federal and state regulators over the past two years.

338.     SHELLPOINT's Hayes Jr.'s August 11, 2015 letter to the Plaintiff (Exhibit "60" of this complaint) in response to the Plaintiff's July 14, 2015 CFPB complaint (Exhibit "54" of this complaint) was never delivered or mailed to the Plaintiff until it was sent as an enclosure in SHELLPOINT's Kaufmann's September 10, 2015 letter (Exhibit "59" of

96

this complaint). The Plaintiff will provide conclusive evidence at trial that he did not receive SHELLPOINT Hayes Jr.'s August 11, 2015 letter until September 29, 2015. The Plaintiff alleges that SHELLPOINT's Hayes Jr. intentionally withheld the mailing of his August 11, 2015 letter to the Plaintiff because of the false and perjurious statements contained in his response to the Plaintiff's CFPB complaint dated July 14, 2015.

339.    In SHELLPOINT's Hayes Jr.'s August 11, 2015 letter (Exhibit "60" of this complaint), on page one, paragraph three, Hayes Jr. intentionally misquotes the Plaintiff's complaint against SHELLPOINT and himself (Hayes Jr.). This false, self-serving, perjurious quote attributed to the Plaintiff is easily verified as an intentional false statement by SHELLPOINT and Hayes Jr. by comparing it to the actual stated complaint submitted to the CFPB by the Plaintiff on July 14, 2015 (Exhibit "54" of this complaint) and CFPB record in case number 150701-000810. The Plaintiff never made Hayes Jr.'s quoted statements in Exhibit "54" of this complaint.

340.    The Plaintiff has documented over the past two years the conniving Hayes Jr.'s intentional misquoting of the Plaintiff's written statements, then using these deliberate misstatements of the Plaintiff's actual statements to cover up his and his prior employer, Defendant RESURGENT, and present employer, SHELLPOINT's, multiple documented malfeasances of federal and state of California loss mitigation laws and regulations. Hayes Jr.'s intentional cover-up and miss-quotations of the Plaintiff's actual statements are then used by SHELLPOINT Hayes Jr. to manipulate a verifiable false answer to these malfeasances to deceive regulators. Each and every incident of intentional misquotation of actual Plaintiff written statements to the Plaintiff, third parties, and regulators by the Defendant SHELLPOINT and Hayes Jr. will be entered into evidence at trial.

341.    In SHELLPOINT's Hayes Jr.'s letter of August 11, 2015 (Exhibit "60" of this complaint), on page two, he created the excuse for SHELLPOINT documented mishandling of the Plaintiff's May 22, 2015 UBAF by falsely stating: "You previously submitted a request to our office to cease and desist further communication with you via

97

telephone and thus we have been unable to contact you to discuss our need for additional documentation requirements each document must satisfy and/or the information your documentation should reflect." Hayes Jr. then substitutes SHELLPOINT's Kaufmann's appointed SPC Angie Taylor with his handpicked SPC, Pasha McClinton, the third successor SPC appointed in 90 days for the Plaintiff's May 22, 2015 UBAF.

342.     SHELLPOINT's Hayes Jr.'s created statement in paragraph 341 was mimicked in SHELLPOINT Kaufmann's letter of September 10, 2015, page one, and Exhibit "59" of this complaint which was proven to be a false statement as referenced in paragraphs 327 through 330 of this complaint.

343.     SHELLPOINT's Hayes Jr.'s statement in his August 11, 2015 letter (Exhibit "60") regarding the Plaintiff cease and desist communication via telephone order, which was served on Mr. Hayes Jr. October 7, 2013, under three separate modes of a certified delivery including certified mail, is a documented example of Hayes Jr.'s continuing abusive, deceitful, and vengeful actions to inflict unjustified emotional pain on the Plaintiff and his family in retaliation for the Plaintiff reporting Hayes Jr., and Defendants RESURGENT and SHELLPOINT's malfeasance of federal and state of California consumer protection laws to regulators. A copy of the Plaintiff's October 7, 2013 letter to Wendell Hayes Jr. of RESURGENT MORTGAGE SERVICING is attached to this complaint as Exhibit "61" and incorporated herein by reference.

344.     Hayes Jr. negligently failed to register the Plaintiff's' legal notification of "Don't Call" phone numbers listed in the Plaintiff's October 7, 2013 letter into Defendant RESURGENT's system. Hayes Jr.'s documented negligence caused the despicable and illegal phone call by a RESURGENT collector from Houston, TX to the Plaintiff on Christmas Eve day, December 24, 2013, which caused irreparable damage to the Plaintiff and his family. The vicious 17 minute RESURGENT phone call to the Plaintiff was screen shot on the Plaintiff's phone and recorded. Since the Plaintiff is hearing impaired, this phone call which was received while the Plaintiff was home, was on a speaker mode.

COMPLAINT

The Plaintiff's wife overheard this illegal abusive RESURGENT phone call and suffered a debilitating mental breakdown from which she has never fully recovered.

345.      The Plaintiff was emotionally devastated by Defendant RESURGENT's deliberate and willful Christmas Eve day call to his home caused by the negligence of RESURGENT Representative Hayes Jr. The Plaintiff spent Christmas Day caring for his wife following her breakdown. On Christmas evening the Plaintiff wrote a seven page complaint letter to Defendant RESURGENT. This complaint letter was sent to Defendant RESURGENT on December 26, 2013 and was confirmed delivered December 27, 2013. Defendant RESURGENT ignored the Plaintiff's December 25, 2013 complaint letter and refused to respond or apologize for their deliberate, grievous, and illegal actions which displays Defendants RESURGENT's and their representatives willful failure to comply with federal and state of California consumer protection laws and purposely resort to a personal attack on the senior citizen Plaintiff. A copy of the Plaintiff's December 25, 2013 letter to Defendant RESURGENT is attached to this complaint as Exhibit "62" and incorporated herein by reference. RESURGENT's illegal act on December 24, 2013 is also referenced in paragraphs 48 through 52 of this complaint.

346.      The Plaintiff alleges that Defendant RESURGENT's Hayes Jr., who was located in RESURGENT's Houston, Texas offices, which was the origin of the illegal and vicious December 24, 2013 phone call to the Plaintiff referenced in paragraphs 344 and 345, and Exhibit "62" of this complaint, was involved in and/or orchestrated this vengeful act on the Plaintiff.

347.      RESURGENT's Hayes Jr., who had failed to respond to the Plaintiff's QWR letter under RESPA 2605, dated September 27, 2013 as referenced in paragraphs 34 and 35 and Exhibit "5" of this complaint, suddenly decided to reply to the Plaintiff's September 27, 2013 letter on December 24, 2013. Hayes Jr.'s letter of December 24, 2013, and the vindictive and illegal RESURGENT phone call of the same date, took

COMPLAINT

place on a day that Defendant RESURGENT closed their Houston, TX office early for Christmas.

348.     The Plaintiff received a letter from Defendant RESURGENT's Hayes Jr. dated January 27, 2014 evidencing Defendant RESURGENT and Hayes Jr.'s total disregard for compliance with federal and state of California consumer protection laws for the phone call placed to the Plaintiff on December 24, 2013. RESURGENT's Hayes Jr.'s January 27, 2014 letter states: "Lastly, we acknowledge your request to cease all communication with you via telephone. As a result, please know that you may experience some delay in receiving important information regarding your loan and that we will continue to communicate with you by mail. Please know that that we regret any inconvenience this may have caused you." A copy of this letter from RESURGENT Hayes Jr. to the Plaintiff dated January 27, 2014 is attached to this complaint as Exhibit "63" and incorporated herein by reference.

349.     RESURGENT Hayes Jr.'s January 27, 2014 letter (Exhibit "63") validates the Plaintiff's claim of negligence on the part that Hayes Jr. and RESURGENT failed to comply with the Plaintiff's October 7, 2013 notice to cease and desist phone calls to the Plaintiff's specific phone numbers which were confirmed received by RESURGENT on October 7, 2013 and October 11, 2013.

350.     This Plaintiff's notice was to go into effect October 7, 2013 but RESURGENT and their Representative, Hayes Jr., did not implement this cease and desist action until January 27, 2014. This is a documented violation of federal and state of California consumer protection laws to be identified at trial. Defendant RESURGENT and their representative Hayes Jr.'s negligence led to the illegal phone attack on December 24, 2013 against the Plaintiff (paragraphs 343 through 350 and Exhibits "5", "61", "62" and "63" of this complaint).

351.     On November 24, 2014, the Plaintiff sent a desperate plea to Defendant SHELLPOINT to confirm that his cease and desist notice for SHELLPOINT

COMPLAINT

representatives to call his specific phone numbers was still in full force and effect. The

Plaintiff and his wife were fearful that SHELLPOINT's representatives, many of whom

were employed previously by Defendant RESURGENT, would again repeat their

despicable illegal and vengeful acts on the one year anniversary of the prior phone attack

as referenced in paragraphs 343 through 350 and Exhibits "61" through "63" of this

complaint. The Plaintiff's November 24, 2014 eight (8) page letter sent as a QWR under

RESPA via US express mail with tracking is attached to this complaint as Exhibit "64"

and incorporated herein by reference. Defendant SHELLPOINT refused to acknowledge

or answer the Plaintiff's desperate plea for response to his November 24, 2014 letter

(Exhibit "64").

352.     On December 3, 2014 the Plaintiff's wife was hospitalized for a self-inflicted

wound and placed on suicide watch at the hospital. This incident was reported to

Defendant SHELLPOINT on December 31, 2014. Defendant SHELLPOINT refused to

verify the Plaintiff's cease and desist communication via telephone was ever in effect

with SHELLPOINT until the Plaintiff's receipt of SHELLPOINT's Hayes Jr.'s letter of

August 11, 2015 (Exhibit "60"). This was two months after the Plaintiff released this

"cease and desist" in a signed and dated directive on page four, item 10 of the Plaintiff's

May 22, 2015 UBAF as referenced in paragraphs 327 through 330 and 341 through 352

of this complaint.

353.     The Plaintiff alleges that Defendant SHELLPOINT's refusal to confirm the

Plaintiff's cease and desist order for communication via telephone (Exhibit "64"), sent as

a QWR under RESPA, was intentionally ignored by Defendant SHELLPOINT in order to

continue their vengeful plan of instilling anxiety and fear in the Plaintiff in retaliation for

his reporting to the CFPB SHELLPOINT's well documented malfeasance of federal and

state of California consumer protection laws. SHELLPOINT's refusal to answer the

Plaintiff's November 24, 2014 letter (Exhibit "64") sent as a QWR under RESPA 2605.

COMPLAINT

This is a willful violation of RESPA 2605 which resulted in SHELLPOINT's negligent failure to protect the Plaintiff and his family's health, safety and welfare.

354.     Defendant SHELLPOINT sent a letter dated December 8, 2014, which was received by the Plaintiff on December 22, 2014, demanding a whole new UBAF with all new supporting documentation with a "drop dead" delivery date of January 7, 2015 without identifying a required SPC for delivery of the UBAF and personal financial supporting documents. SHELLPOINT intentionally delayed appointing a required SPC for the Plaintiff's December 8, 2014 demanded UBAF until December 19, 2014, six days prior to Christmas, but delayed mailing the December 19, 2014 notice to the Plaintiff until December 22, 2014. This December 19, 2014 notice was received by the Plaintiff on Saturday, December 27, 2014. This deceitfully planned December 8, 2014 UBAF demand, delivered to the Plaintiff December 22, 2014, was carefully orchestrated to give the Plaintiff an unreasonable nine (9) business days, excluding Christmas Eve day and New Year's Day, to complete the UBAF, gather the required date sensitive supporting documentation, and deliver it to SHELLPOINT's newly appointed SPC, Fred Williams, by January 7, 2015.

355.     Defendant SHELLPOINT purposely did not take into consideration holiday mailing delays, since they send every letter via U.S. regular mail, or the fact that the Plaintiff was unfairly forced to work on SHELLPOINT's demanded December 8, 2014 UBAF during the holidays in order to comply with the drop dead delivery date and the fact that many businesses were closed for the holidays. SHELLPOINT's deceitful actions caused extreme anxiety, fear, and depression on the Plaintiff who was caring for and protecting his wife from possible SHELLPOINT attacks. SHELLPOINT was clearly attempting to set up an unfair, deceptive, and planned Plaintiff default of the "drop dead" delivery date of January 7, 2015 in order to initiate "quick-step" NOD and foreclose on the Plaintiff's home of 10 years. All documented evidence will be presented at trial.

COMPLAINT

356.     Defendant SHELLPOINT's September 10, 2015 letter (Exhibit "59") and letter of August 11, 2015 (Exhibit "60") reaffirms all statements made by their representative Kaufmann and Hayes Jr. in their copied letters to the Plaintiff as enclosures to their respective letters dated September 10, 2015 and August 11, 2015.

357.     Defendant SHELLPOINT has reaffirmed and certified all statements made by SHELLPOINT representatives Kaufmann and Hayes Jr. in their following enclosure letters sent to the Plaintiff in SHELLPOINT's Kaufmann's September 10, 2015 letter (Exhibit "59"):

   a)   SHELLPOINT's Hayes Jr.'s letter dated August 11, 2015 – Exhibit "60" to Plaintiff Kenneth G Beavers;

   b)   SHELLPOINT Hayes Jr.'s letter dated August 26, 2014 – Exhibit "21" to the Office of California Congressman Kevin D. McCarthy;

   c)   SHELLPOINT Hayes Jr.'s letter dated May 13, 2014 – Exhibit "13" to Plaintiff Kenneth G Beavers;

   d)   SHELLPOINT's Kaufmann's letter dated July 7, 2015 – Exhibit "51" to Plaintiff Kenneth G Beavers.

358.     The reaffirmation of all referenced letters, paragraphs 356 and 357 a) through d), are effective as of September 10, 2015 as evidenced in Exhibits "59" and "60".

359.     On September 30, 2015, the Plaintiff sent an email letter to Defendant SHELLPOINT's Kaufmann advising her and SHELLPOINT that he was sending a formal complaint letter to SHELLPOINT against SHELLPOINT Representative Hayes Jr. for his intentional false and perjurious statements regarding SHELLPOINT's wrongful denial of the Plaintiff's May 22, 2015 UBAF that are contained in Hayes Jr.'s August 11, 2015 letter (Exhibit "60" of this complaint) in response to the Plaintiff's July 14, 2015 CFPB complaint (Exhibit "54" of this complaint). The Plaintiff also gave notice to SHELLPOINT that he was filing a new CFPB complaint against SHELLPOINT's Hayes Jr. and SHELLPOINT based on the fact that Hayes Jr. and SHELLPOINT never mailed

COMPLAINT

their August 11, 2015 letter (Exhibit "60") to the Plaintiff knowing he would immediately challenge this deceitful, unfair, and perjurious letter filed with purposeful misstatement of facts contrary to documented evidence of SHELLPOINT's malfeasance of CFPB and HBOR laws and regulations which shall be identified at trial.

360.     On October 13, 2015, the Plaintiff sent a formal complaint letter to Defendant SHELLPOINT's Kaufmann challenging SHELLPOINT's and her September 10, 2015 letter to the Plaintiff (Exhibit "59" of this complaint) and challenging Kaufmann's enclosure letter and SHELLPOINT Hayes Jr.'s August 11, 2015 letter (Exhibit "60" of this complaint).

361.     The Plaintiff's six (6) page letter, with approximately 200 pages of enclosures and exhibits, dated October 13, 2015 which was sent to SHELLPOINT's Kaufmann via US express mail with tracking, is attached to this complaint as Exhibit "65" and incorporated herein by reference. All of Exhibit 65's supporting enclosures and exhibits will be admitted into evidence at trial.

362.     The Plaintiff's October 13, 2015 letter to SHELLPOINT's Kaufmann, sent as a QWR under RESPA 2605, demanded the following actions be taken by SHELLPOINT in order to resolve continuing problems the Plaintiff had encountered with SHELLPOINT over the past two years in receiving equitable, fair, unbiased evaluations of his six (6) fully completed UBAF's submitted to Defendants RESURGENT and SHELLPOINT when requesting consideration for a loan modification.

363.     The following demands were made as a QWR under RESPA:

    1)     "Wendell Hayes Jr.. is to be removed from any and all contact with my file and personal information immediately with written confirmation of SHELLPOINT's action";

    2)     "A personal meeting will be scheduled at a SHELLPOINT office with a supervising executive over Wendell Hayes Jr. Mr. Hayes Jr. shall not be present. I will travel to the SHELLPOINT office of your designation with my

COMPLAINT

documentation of Mr. Hayes Jr.'s personal negligence and intentional personal attacks of retaliation. I will require about a 4 hour meeting. I'm unavailable the weeks of October 9 through October 23";

3) "A complete review of my May 22, 2015 UBAF by a qualified underwriter that complies with CFPB laws and regulations, and California Civil Codes. This underwriter is to be qualified as a senior FREDDIE MAC, Fannie Mae underwriter. This is my fourth request for review of my file by a qualified SHELLPOINT underwriter."

The Plaintiff has been subjected to numerous false, misleading, and conflicting letters and notifications over the past two years, all under the control of SHELLPOINT's Hayes Jr. and his Houston, Texas escalations department team.

364.    Defendant SHELLPOINT refused to answer the Plaintiff's October 13, 2015 letter sent as a QWR under RESPA 2605 (Exhibit "65" of this complaint). Defendant SHELLPOINT falsely stated in their September 10, 2015 letter (Exhibit "59" of this complaint) that SHELLPOINT's SPC's could not contact the Plaintiff because of a proven imaginary cease and desist order, but, however, refused to respond to a written demand for a personal meeting at any designated SHELLPOINT office, not under the control or influence of SHELLPOINT's Hayes Jr., to resolve the Plaintiff's and SHELLPOINT's issue regarding his submitted UBAF's which were continually being ignored to let time sensitive supporting documents expire or denied for false reasons. Defendant SHELLPOINT's refusal to meet with the Plaintiff supports his allegations that Defendant SHELLPOINT had no intentions of ever fairly processing or evaluating any Plaintiff submitted UBAF in compliance was CFPB and HBOR loss mitigation laws and regulations. The SHELLPOINT refusal for a personal meeting with the Plaintiff at any SHELLPOINT office not under the control of their Representative Hayes Jr., who has a verified, documented personal vendetta against the Plaintiff for reporting him to regulators, is hereby validated as an unfair, deceitful, and abusive act to deny the Plaintiff

COMPLAINT

of his rights under federal and state of California laws including, but not limited to: ECOA, FDCPA, The Privacy Act and RESPA 2605.

365.     Between September 1, 2015 and November 9, 2015, Defendant SHELLPOINT stepped up their unfair, deceitful, and abusive acts on the Plaintiff and his family by physically harassing and terrorizing the Plaintiff to force the Plaintiff from his home in order to complete their planned single purpose goal to foreclose. The following events gives conclusive proof that Defendant SHELLPOINT had no intention of processing or evaluating any Plaintiff submitted loss mitigation or loan modification request in compliance with CFPB and HBOR laws and regulations.

366.     On September 10, 2015, Defendant SHELLPOINT sent a response letter to the Plaintiff's September 1, 2015 letter (Exhibit "57" of this complaint) requesting a reasonable time to submit documents that SHELLPOINT demanded in their August 24, 2015 letter (Exhibit "56" of this complaint).

367.     The Plaintiff did not receive SHELLPOINT's August 24, 2015 letter (Exhibit "56") until September 1, 2015, which contained a September 3, 2015 drop-dead date for delivery of documents. This was a deliberate violation of CFR 1024.41 et seq and California Civil Code 2923.6 et seq in order to trip wire the denial of the Plaintiff's fully completed May 22, 2015 UBAF.

368.     On September 18, 2015 Defendant SHELLPOINT sent the Plaintiff a written notice that they were raising the Plaintiff's monthly mortgage payment by $502.34 in accordance with the note terms on the Plaintiff's mortgage. The Plaintiff had warned Defendants RESURGENT and SHELLPOINT that this ticking time bomb was jeopardizing the Plaintiff's ability to pay his already unaffordable mortgage payments on August 13, 2013 in a written notification to RESURGENT's Hayes Jr.  Hayes Jr., who now is a representative for Defendant SHELLPOINT, confirmed that SHELLPOINT was notified about the Plaintiff's August 13, 2013 pending payment increase on December 1, 2015 in his and SHELLPOINT's unauthorized, illegal letter to "The Office of Kevin

COMPLAINT

McCarthy" dated August 26, 2014 (Exhibit "21" of this complaint). Defendant SHELLPOINT used Hayes Jr. as an attack dog to set up a secret program to deny all Plaintiff submitted UBAF's by claiming the Plaintiff did not submit requested documents; letting submitted time sensitive documents expire; and inventing additional and illegal reasons for denial, which violated multiple CFPB and HBOR laws and regulations, in order to wrongfully declare the Plaintiff's UBAF's as incomplete and foreclose on the Plaintiff's home.

369.    The increase of the Plaintiff scheduled mortgage payment on December 1, 2015 without giving the Plaintiff's loss mitigation/loan modification request (which was initiated January 15, 2013) fair and equitable evaluation in compliance with CFPB and HBOR laws and regulations is further conclusive evidence of Defendants RESURGENT and SHELLPOINT's intentional unfair, deceptive, and abusive acts and practices against the Plaintiff.

370.    On October 17, 2015 the Plaintiff and his family were the victims of SHELLPOINT's hired agent's intentional intrusion of their home property without notification or any forewarning. This was the second such SHELLPOINT agent intrusion of the Plaintiff's home and property which inflicted great fear and trauma to the Plaintiff's wife's mental condition after her mental collapse caused by the devastating RESURGENT collectors illegal phone call on December 24, 2013 referenced in paragraphs 48 through 52 and 346 through 352 of this complaint. The Plaintiff and his wife were already living in fear of additional SHELLPOINT illegal phone attacks after SHELLPOINT purposely ignored and refused to respond to the Plaintiff's impassioned plea for SHELLPOINT's confirmation of his cease and desist order for communication via telephone to his specific phone numbers in his letter, dated November 24, 2014, to SHELLPOINT, sent as a QWR under RESPA (Exhibit "64" of this complaint) and as referenced in paragraphs 355 and 356 this complaint.

371.     The Plaintiff caught the SHELLPOINT hired intruder, photographed her and her identification badge, as well as her phone showing SHELLPOINT's order to initiate surveillance of the interior and exterior of the Plaintiff's home with authorization to Trespass. The intruder was standing in the Plaintiff's driveway photographing his house and his automobile parked in the driveway.

372.     The Plaintiff sent an email letter of protest and warning to Defendant SHELLPOINT on October 20, 2015 with photographs. Defendant SHELLPOINT refused to respond or curtail surveillance of the Plaintiff's home. The Plaintiff's wife was traumatized by this despicable SHELLPOINT hired intruder's invasion of her home and had to be sedated.

373.     On November 7, 2015 the Plaintiff caught another intruder attempting to invade the Plaintiff's home property, who was also photographing the Plaintiff's home and automobile in the driveway. It was apparent to the Plaintiff this was another SHELLPOINT hired invasion of the Plaintiff's property and privacy to inflict fear, harass, and terrorize the Plaintiff and his wife in order to force them to abandon their home instead of continuing to seek a loan modification.

374.     The Plaintiff filed a complaint with the Bakersfield, CA police department on November 9, 2015 which was copied to Defendant SHELLPOINT who refused to acknowledge the Plaintiff's complaint or rescind the October 9, 2015 SHELLPOINT order for surveillance of the Plaintiff's home. The Plaintiff was devastated by SHELLPOINT's abusive actions and lived in constant fear that SHELLPOINT's agents would again attack unannounced and destroy his wife's mental health, safety, and welfare. A copy of the police complaint filed with the Bakersfield, CA police department dated November 9, 2015 and the enclosed copy of the Plaintiff's letter and photographs to Defendant SHELLPOINT dated October 20, 2015 are attached to this complaint as Exhibit "66" and incorporated herein by reference.

COMPLAINT

375.     On November 5, 2015 Defendant SHELLPOINT executed a Substitution of Trustee to Clear Recon Corp for the purpose of filing a Notice of Sale. This contradicts SHELLPOINT's prior notification to the Plaintiff that the duly appointed trustee for the Plaintiff's mortgage was Old Republic Default Management Services recorded February 5, 2015 in their NOD. The SHELLPOINT action to set up a Notice of Sale of the Plaintiff's home is conclusive evidence that SHELLPOINT had no intention of answering the Plaintiff's October 13, 2015 letter sent as a QWR under RESPA (Exhibit "65" to this complaint) or grant the demanded personal meeting in any of their offices not under the control or influence of SHELLPOINT's Hayes Jr. to resolve communication and evaluation issues regarding the Plaintiff's past and future UBAF's.

376.     Defendant SHELLPOINT's cowardly act of refusing to respond to the Plaintiff's demands for a personal meeting defeats their alleged and false claims they cannot communicate with Plaintiff in regard to their UBAF conditions. SHELLPOINT's single purpose is proven to be a "foreclosure only" solution as alleged by the Plaintiff since September 27, 2013 and as referenced in Exhibit "5", page 5 of 8, paragraph 4 and page 7 of 8 – paragraph 6 of this complaint.

377.     On October 26, 2015 the Plaintiff sent a fourth letter to Defendant FREDDIE MAC in a continuing effort to get a direct response from FREDDIE MAC as advised in an "Important Notice" served on the Plaintiff via certified mail by Defendant RESURGENT as a part of their NOD dated December 4, 2013 (Exhibit "6" of this complaint) and in compliance with the agreement between FREDDIE MAC and Congressman Kevin D. McCarthy, which was ratified by the Plaintiff on or about July 30, 2014. Refer to Exhibit "17" in paragraphs 99 through 102 of this complaint.

378.     The Plaintiff's October 26, 2015 letter to Defendant FREDDIE MAC asked, for the fourth time in eight months, for documented proof or claim of any ownership that FREDDIE MAC may have in the Plaintiff's mortgage, and if so, claimed documented proof of Defendants SHELLPOINT and their predecessor RESURGENT's authorization

109

COMPLAINT

to act as the agent (loan servicer) for the Plaintiff's mortgage. The scope of the Plaintiff's demand for response by Defendant FREDDIE MAC was again limited to proof of or claim of ownership of the Plaintiff's mortgage and documentation of their authorized agent (loan servicer) to act on their behalf as were the three previous demands in letters/binders dated April 4, 2014; July 10, 2014; and September 22, 2014 (Exhibits "11", "15", and "25" respectfully of this complaint).

379.    A copy of the Plaintiff's October 26, 2015 letter to Defendant FREDDIE MAC, without enclosures and exhibits, is attached to this complaint as Exhibit "67" and incorporated herein by reference. All enclosures and exhibits consisting of approximately 500 pages included in the Plaintiff's October 26, 2015 letter to Defendant FREDDIE MAC will be entered into evidence at trial.

380.    Defendant FREDDIE MAC has never directly made claim to the Plaintiff that they own any whole or partial interest in the Plaintiff's' mortgage. They have not stated that they have any association or agent agreement with Defendants RESURGENT and SHELLPOINT. The Plaintiff has shown extensive due diligence in seeking valid documented verification that FREDDIE MAC is his creditor as advised in the "Important Information" notice sent to him December 4, 2015 via certified mail by Defendant RESURGENT (Exhibit "5" of this complaint). Defendant FREDDIE MAC promised Congressman Kevin D. McCarthy that they would contact the Plaintiff directly if they claimed ownership as referenced in Exhibit "17" and paragraphs 99 through 102 of this complaint.

381.    Since Defendant FREDDIE MAC has not responded to four direct written requests by the Plaintiff for proof of, or claim of, ownership of the Plaintiff's mortgage by FREDDIE MAC, the Plaintiff is led to believe and alleges that FREDDIE MAC is not the clear title, valid owner of the Plaintiff's mortgage. The Plaintiff also alleges that Defendants RESURGENT and SHELLPOINT have both purposely refused multiple Plaintiff QWR requests under RESPA and FDCPA for written documented proof for their

COMPLAINT

right to service the Plaintiff's mortgage or act as an authorized agent for any of the multiple alleged owners identified in this complaint. Any claims by Defendants SHELLPOINT or RESURGENT that they are or were an authorized loan servicer or agent for any creditor are unproven, invalid, and an intentional misrepresentation of their authority to evaluate the multiple Plaintiff UBAF's (6) submitted to them since April 25, 2013 for any of the multiple alleged creditors (owners) of the Plaintiff's mortgage disclosed or undisclosed in this complaint.

382.    On November 9, 2015, the Plaintiff filed a new web portal complaint with CFPB (case number 151109-001456) against SHELLPOINT and their Representative, Hayes Jr., for responding to the Plaintiff's July 14, 2015 CFPB complaint, Exhibit "54" of this complaint, as referenced in paragraphs 336 through 356 of this complaint, with multiple, intentional and verifiable false reasons for wrongfully denying the Plaintiff's May 22, 2015 UBAF. These false reasons for denial were authored by SHELLPOINT's Hayes Jr. who has a documented history of extreme personal prejudices against the Plaintiff which denied the Plaintiff of his legal rights under ECOA.

383.    A copy of the Plaintiff's November 9, 2015 CFPB web portal complaint is attached to this complaint as Exhibit "68" and incorporated herein by reference. The Plaintiff will enter into evidence approximately 100 pages of enclosures and exhibits made a part of Exhibit "68" at trial.

384.    After the Plaintiff received multiple correspondence from Defendants RESURGENT and SHELLPOINT's escalations representatives: Hayes Jr., Washington, Cano, and Kaufmann beginning on September 9, 2013, the Plaintiff realized and alleges these RESURGENT and SHELLPOINT escalations representatives all located in Defendants RESURGENT / SHELLPOINT's Houston, Texas offices had formed an alliance and conspired to deny any and all of the Plaintiff's fully completed UBAF's by any method, legal or illegal. None out of the six (6) Plaintiff's UBAF's submitted between April 24, 2013 through May 22, 2015 that were escalated to Defendants

111

RESURGENT's and SHELLPOINT's Houston, Texas office were processed or evaluated in compliance was CFPB and HBOR laws and regulations for loss mitigation/loan modification or in accordance with FREDDIE MAC underwriting guidelines.

385.     The Plaintiff filed his CFPB web portal complaint in an attempt to force written responses from Defendant SHELLPOINT to his multiple ignored QWR letters to SHELLPOINT regarding critical and salient questions regarding his wrongfully denied May 22, 2015 UBAF. The intentional, unfair, deceitful and false reasons for denial of the Plaintiff's May 22, 2015 UBAF are now on record with the CFPB, an impartial holder and trustee of the Plaintiff's complaints and SHELLPOINT escalations representative's Hayes Jr., Kaufmann, and Washington's false answers to the Plaintiff.

386.     On November 25, 2015, Defendant SHELLPOINT's sent a letter to the Plaintiff stating "Due to the complex nature of the matter, SHELLPOINT respectfully requests additional time to respond fully to your inquiry." This response to the CFPB complaint dated November 25, 2015 was mailed to the Plaintiff November 30, 2015.

387.     On November 17, 2015 the Plaintiff sent a letter via email to Defendant SHELLPOINT as a second and final demand for response to the Plaintiff's letter dated October 13, 2015 (Exhibit "65" of this complaint). This letter sent to SHELLPOINT's Kaufmann as a QWR under RESPA gave her and SHELLPOINT notice that they had used 31 days of the Plaintiff's 60 day demand for response or the Plaintiff would be forced to initiate a civil action. The Plaintiff's drop-dead date to respond was December 16, 2015. A copy of the Plaintiff's November 17, 2015 letter to SHELLPOINT's Kaufmann is attached to this complaint as Exhibit "69" and incorporated herein by reference.

388.     Defendant SHELLPOINT ignored the Plaintiff's October 13, 2015 letter sent as a QWR under RESPA 2605 (Exhibit "65" of this complaint) as well as the Plaintiff's November 17 reminder/warning letter sent as a QWR under RESPA (Exhibit "69" of this complaint).

COMPLAINT

389.     On December 18, 2015 the Plaintiff sent an email letter to SHELLPOINT's Kaufmann that SHELLPOINT had not responded to the Plaintiff's October 13, 2015 letter in the Plaintiff's required time frame, referenced in Exhibit "65" of this complaint, or the required response compliance time for a QWR under RESPA 2605. Defendant SHELLPOINT ignored the Plaintiff's demands for a personal meeting at any designated SHELLPOINT office not under the control or influence of Hayes Jr. but still continued to allege that they could not contact the Plaintiff via telephone because of the Plaintiff's written cease and desist order which was issued prior to May 22, 2015. The cease and desist order was rescinded as evidenced in Exhibit "65" of this complaint.

390.     Defendant SHELLPOINT continued their despicable, unfair, abusive acts and practices by allowing their Representative Hayes Jr. control over the Plaintiff's loan modification request and personal information in spite of Hayes Jr.'s continuing, verifiable, vindictive personal attacks on the Plaintiff as evidenced in this complaint.

391.     Defendant SHELLPOINT refused to answer the Plaintiff's vital underwriting issues regarding his May 22, 2015 UBAF. SHELLPOINT continued to demand the Plaintiff execute SHELLPOINT's defective preprinted 4506-T which is unacceptable by the IRS, and illegally alter his profit and loss statements to show "owner draws" to be an expense item on his profit and loss statements for his sole proprietorship business (as referenced in Exhibit "65" of this complaint). These SHELLPOINT demands were never addressed, revised, or rescinded.

392.     In addition, SHELLPOINT refused to answer the Plaintiff salient questions, sent as a QWR under RESPA, in his October 13, 2015 letter (Exhibit "65", page five of six of this complaint) concerning SHELLPOINT's Kaufmann's claim in her September 10, 2015 letter (Exhibit "59" of this complaint) that SHELLPOINT did not have the Plaintiff's signed and dated 2013 and 2014 personal and business tax returns which were submitted with extreme security measures to SPC Sanford on June 1, 2015 with third party verification, as referenced in paragraphs 249 through 253 of this complaint.

SHELLPOINT's loss or mishandling of these personal identification documents again exposed the Plaintiff to additional identity theft such as occurred in February 2015 as referenced in Exhibit "36" of this complaint.

393.     The Plaintiff notified Defendant SHELLPOINT's Kauffman in his December 18, 2015 letter that he was preparing a civil action against SHELLPOINT for failure to respond to the Plaintiff's October 13, 2015 letter in compliance with RESPA 2605; letters sent as a QWR under RESPA 2605. A copy of the Plaintiff December 18, 2015 letter is attached to this complaint as Exhibit "70" and incorporated herein by reference.

394.     Upon the Plaintiff's receipt of SHELLPOINT's Hayes Jr.'s letter of response to the Plaintiff's July 14, 2015 CFPB complaint (Exhibit "54") dated August 11, 2015 (Exhibit 60") the Plaintiff initiated an investigation into the deliberate false statements made by SHELLPOINT's Hayes Jr. in regard to his and SHELLPOINT's unauthorized and illegal letter sent to "The Office of Congressman Kevin McCarthy" on August 26, 2014 (Exhibit "21" of this complaint). SHELLPOINT's August 11, 2015 letter (Exhibit "60") authored by Hayes Jr. states "SHELLPOINT has received similar inquiries regarding this matter, where one was forwarded to our office by the office of Congressman Kevin McCarthy."

395.     This was an intentional false statement to attempt to cover-up SHELLPOINT Hayes Jr.'s deliberate and willful violation of the FDCPA and Privacy Act by sending their August 26, 2014 letter (Exhibit "21") to the "Office of Congressman Kevin D. McCarthy". This deceptive act was a willful violation of the Plaintiff's written denial of authorization for SHELLPOINT to respond for Defendant FREDDIE MAC and for SHELLPOINT's disclosure of personal financial information to unauthorized third parties as referenced in Exhibit "17" and paragraphs 99 through 105 and 111 through 115 of this complaint.

396.     The Plaintiff's investigation into SHELLPOINT's Hayes Jr.'s statements in his August 11, 2015 CFPB response letter (Exhibit "60") not only were proven to be false,

114

COMPLAINT

but insinuates and accuses Congressman Kevin D. McCarthy's office of violating the Privacy Act. Congressman Kevin D. McCarthy office never forwarded any of the Plaintiff's information or inquiries directly to SHELLPOINT. The Plaintiff would have been required to execute a "Constituent Services Release and Information Form" granting authorization to Congressman McCarthy's office to release any of the Plaintiff's inquiries or personal information to SHELLPOINT. The Plaintiff did not and never would have granted this authorization.

397.     The Plaintiff sent his findings to Defendant SHELLPOINT on December 16, 2015 in a certified letter dated December 14, 2015. A copy of the Plaintiff December 14, 2015 letter is attached to this complaint as Exhibit "71" and incorporated herein by reference.

398.     SHELLPOINT's Hayes Jr.'s conniving and deceptive statements in his August 11, 2015 letter (Exhibit "60") intentionally contradicts the statements that are memorialized in his initial illegal letter dated August 26, 2014 to the office of Congressman Kevin McCarthy (Exhibit "21") and his letter to the Plaintiff dated November 5, 2014 (Exhibit "26" of this complaint). It is despicable that SHELLPOINT and Hayes Jr. would try to unjustly accuse a United States Congressman of violating the Privacy Act, a federal crime, to attempt to cover up their well-documented malfeasances of FDCPA and Privacy Act to unjustly discredit and embarrass the Plaintiff.

399.     On December 23, 2015, Defendant SHELLPOINT celebrated their third annual desecration of the Plaintiff's religious Christmas holiday by sending the demand for an all new UBAF, dated December 23, 2015 which was received by the Plaintiff January 4, 2016. The SHELLPOINT UBAF letter/package included the same devious traps used for denial of the Plaintiff's prior four completed UBAF's wrongfully denied by SHELLPOINT. SHELLPOINT demanded the Plaintiff submit the following documentation:

a)  Signed and dated IRS Form 4506–T which was again the preprinted defective IRS Form 4506–T sent with all previous SHELLPOINT UBAF to the Plaintiff lacking the

COMPLAINT

required phone number on Line 5, which also contradicts and violates SHELLPOINT's instructions of "How to complete IRS Form 4506–T." If the Plaintiff added the required phone number on Line 5 of his IRS Form 4506–T as instructed by SHELLPOINT and the IRS, SHELLPOINT would declare it was an altered and edited form and as such, an incomplete and non-compliant form according to SHELLPOINT escalations Representative Kaufmann and Hayes Jr. in SHELLPOINT's written rejection of the Plaintiff's May 22, 2015 UBAF as referenced in SHELLPOINT's letters dated July 7, 2015 (Exhibit "51"); August 11, 2015 (Exhibit "60"); and September 10, 2015 (Exhibit "59" of this complaint). The Plaintiff went to the local Bakersfield office of the IRS twice with SHELLPOINT's defective preprinted IRS form 4506–T with Line 5 lacking a 3rd party required phone number. The IRS representative stated IRS could not accept SHELLPOINT's IRS Form 4506–T preprinted Line 5 form unless it had the required phone number in order to protect the tax payer from identity theft. They also said the Plaintiff's May 22, 2015 Form 4506–T was acceptable with his hand written phone number on Line 5 as instructed because the phone number can be verified by the IRS.

b) SHELLPOINT demanded an updated profit and loss statement on the Plaintiff's sole proprietorship business which was to show "owners draws" as an expense item. This SHELLPOINT requirement was conveyed to the Plaintiff in writing by SHELLPOINT's Kaufmann on July 7, 2015 as referenced in Exhibit "51" of this complaint. The Plaintiff cannot comply because "owner's draws" are not an expense-able item on a sole proprietorship profit and loss statement and violates Generally Acceptable Accounting Practices (GAAP). The Plaintiff challenged this SHELLPOINT profit and loss statement requirement in his letter dated July 17, 2015 (Exhibit "52" of this complaint) sent as a QWR under RESPA. Defendant SHELLPOINT refused to revise or eliminate this consumer trap requirement in order to deny any Plaintiff submitted UBAF's in the future as incomplete and non-

COMPLAINT

compliant. This all new UBAF had a "drop dead" submission date of January 22, 2016.

400.    On January 6, 2016, the Plaintiff sent a complaint letter to Defendant SHELLPOINT as a QWR under RESPA 2605 et seq via certified mail regarding their December 23, 2015 letter demanding an all new UBAF and SHELLPOINT's failure to respond to the Plaintiff's October 13, 2015 letter Exhibit "65" and November 9, 2015 CFPB complaint against SHELLPOINT and Hayes Jr. (Exhibit "68" of this complaint). A copy of SHELLPOINT's December 23, 2015 letter to the Plaintiff is attached to this complaint as Exhibit "72" and incorporated herein by reference. A copy of the Plaintiff's letter to Defendant SHELLPOINT dated January 6, 2016 is attached to this complaint as Exhibit "73" and incorporated herein by reference.

401.    On January 11, 2016, the Plaintiff received a first response from Defendant SHELLPOINT via the CFPB web portal to the Plaintiff's November 9, 2015 CFPB complaint (Exhibit "68").

402.    A copy of SHELLPOINT's response letter to the Plaintiff, erroneously dated January 8, 2015, which was delivered via the CFPB web portal on January 11, 2016 to the Plaintiff is attached to this complaint as Exhibit "74" and incorporated herein by reference.

403.    It was evident to the Plaintiff that even though the January 8, 2015 SHELLPOINT letter (Exhibit "74"), was signed "Escalations Department - SHELLPOINT Mortgage SERVICING" it was authored and composed again by Hayes Jr. who was a subject of the Plaintiff's November 9, 2015 CFPB complaint (Exhibit "68"). This was again an unfair, deceptive, and abusive act and practice against the Plaintiff to deny him fair, honest, and impartial treatment under federal and state of California consumer protection laws to be referenced at trial.

404.    Defendant SHELLPOINT's January 8, 2015 response (Exhibit "74") did not address any of the four QWR items identified in the Plaintiff's October 13, 2015 letter

117

(Exhibit "65"), sent under RESPA 2605 et seq. The Plaintiff's request for a personal meeting at any designated SHELLPOINT office not under the control or influence by SHELLPOINT's Hayes Jr. was deliberately being ignored and stonewalled by a conspiracy of escalations representatives led by Hayes Jr. in SHELLPOINT's Houston, Texas office, thus denying the Plaintiff his rights under federal and state of California consumer protections laws.

405.    Defendant SHELLPOINT's escalations department's statement in their January 8, 2015 CFPB response letter to the Plaintiff (Exhibit "74") regarding their claim that the Plaintiff's cease and desist communication via telephone order, prior to the Plaintiff's release on May 22, 2015, in writing, on page four of the UBAF, prevented their SPC's phone communication with the Plaintiff have been proven false in the Plaintiff's October 13, 2015 letter to SHELLPOINT's Kaufmann (Exhibit "65" of this complaint). Exhibit "65" was made a part of the Plaintiff's November 9, 2015 CFPB complaint (Exhibit "68" of this complaint).

406.    Defendant SHELLPOINT's January 8, 2015 CFPB response proved conclusively they had no intention to communicate with the Plaintiff either by phone or in the Plaintiff demanded personal meeting to resolve the problems the Plaintiff was encountering with the unethical, unfair, deceptive team of conspirators, led by SHELLPOINT's Hayes Jr., located in Defendant SHELLPOINT's Houston, Texas offices. SHELLPOINT's single purpose goal is to foreclose on the Plaintiff's home of 10 years.

407.    Defendant SHELLPOINT's Houston, Texas office submitted a new proposed scheme to trap the Plaintiff and create a potential major negative financial disaster on the Plaintiff and his family. In Defendant SHELLPOINT January 8, 2015 dated CFPB web portal response to the Plaintiff, SHELLPOINT included their new consumer trap scheme on the Plaintiff in the form of a proposed Streamlined Loan Modification Solicitation Letter ("SMSL") dated January 4, 2016 which had a drop-dead acceptance date of Monday, January 18, 2016, a national holiday. SHELLPOINT required the Plaintiff to

118

respond by phone knowing they would refuse to talk to him about his file as previously planned.

408.     SHELLPOINT's sent their January 4, 2016 dated SMSL as an enclosure in their Friday, January 8, 2015 response letter (Exhibit "74" of this complaint) that was delivered to the Plaintiff Monday January 11, 2016, as documented in the CFPB web portal records. The Plaintiff was given a mere four business days to perform his due diligence evaluation of the financial consequences of accepting the terms and conditions of SHELLPOINT's SMSL and the effect it would have on him and his family. This unreasonable response time imposed on the Plaintiff by the planned "consumer trap" of Defendant SHELLPOINT was in clear violation of CFR 1024.41 et seq and California Civil Code 2923.6 (5) (h) under HBOR-reasonable response time. This planned deceit is documented evidence of Defendant SHELLPOINT's continuing pattern of unfair, deceptive, abusive acts and practices against the 78 year old Plaintiff to trap him into a potentially unwise decision without the benefit of a fair and reasonable due diligence period to seek legal counsel.

409.     The Plaintiff contacted his purchase money second mortgage lender, Citi Mortgage, who strongly advised the Plaintiff to seek legal counsel because the acceptance and execution of the SHELLPOINT SMSL could have major negative financial consequences for the Plaintiff by affecting the existing purchase money status of his existing first mortgage's non-deficiency judgment exemption under California law. The representative for Citi Mortgage stated they would not agree to SHELLPOINT's SMSL because it would increase the potential balance of the first mortgage and negatively affect their [Citi Mortgage's] protective equity. Defendant SHELLPOINT was previously notified Citi Mortgage's purchase money second note was all due and payable in November 2020.

410.     On January 15, 2016 the Plaintiff sent a protest letter to Defendant SHELLPOINT regarding their January 8, 2015 CFPB web portal delivered letter (Exhibit "74") which

119

COMPLAINT

the Plaintiff received January 11, 2016. The letter was sent as a QWR under RESPA 2605 via US express mail and by email. A copy of the Plaintiff's January 15, 2016 letter to Defendant SHELLPOINT is attached to this complaint as Exhibit "75" and incorporated herein by reference.

411.    The Plaintiff's January 15, 2016 letter (Exhibit "75"), outlined and exposed SHELLPOINT and their Representative Hayes Jr.'s unfair, deceitful, and abusive acts against the Plaintiff by deliberately and unfairly evaluating the Plaintiff's May 22, 2015 fully completed UBAF. SHELLPOINT has refused to respond to the Plaintiff's October 13, 2015 letter to SHELLPOINT's Kauffman (Exhibit "65") sent as a QWR under RESPA which was included in the Plaintiff's November 9, 2015 CFPB web portal complaint (Exhibit "68" of this complaint) thus verifying SHELLPOINT refuses to comply with federal and state of California consumer protection laws.

412.    On January 15, 2016 the Plaintiff received a letter from Defendant SHELLPOINT's Houston, Texas escalations office dated January 11, 2016 in response to the Plaintiff December 18, 2015 letter to SHELLPOINT (Exhibit "70" of this complaint). SHELLPOINT disclosed and notified the Plaintiff for the third time in 12 months that "New Penn Financial LLC is currently the owner of the account ending in 7956. SHELLPOINT MORTGAGE SERVICING began servicing the loan on behalf of the owner referenced above on or about March 1, 2014."

413.    Defendant SHELLPOINT made this same claim and gave written notice to the Plaintiff on February 16, 2015, in a letter sent from SHELLPOINT's Houston Texas escalations office, written by SHELLPOINT's Washington (Exhibit "33" of this complaint). The third claim that SHELLPOINT owned the Plaintiff's mortgage was sent to the Plaintiff in a SHELLPOINT letter dated September 3, 2015 from Defendant SHELLPOINT's Troy, Michigan office.

414.    Defendant SHELLPOINT has given the Plaintiff three (3) written notices over a 12 month period beginning February 16, 2015 that New Penn Financial LLC is the owner

120

COMPLAINT

and holder of the Plaintiff's mortgage, not FREDDIE MAC. A copy of Defendant SHELLPOINT's January 11, 2016 letter to the Plaintiff is attached to this complaint as Exhibit "76" and incorporated herein by reference.

415.     Defendant SHELLPOINT reaffirmed their statements to the Plaintiff in their letters dated January 8, 2015 (Exhibit "74"), January 4, 2016 (also contained in Exhibit "74"); August 11, 2015 (Exhibit "60"); August 26, 2014 (Exhibit "21"); May 13, 2014 (Exhibit "13"); and September 28, 2012 (to be presented at trial).

416.     In SHELLPOINT's January 11, 2016 letter to the Plaintiff, Exhibit "76" of this complaint, Defendant SHELLPOINT, led by their Houston, TX Escalations Department which is supervised by Hayes Jr., proved they had no intention of ever evaluating or processing any loan modification or loss mitigation request of the Plaintiff in compliance with CFPB or HBOR laws and regulations. This is evidenced in their schemes referenced in paragraphs 399 through 409 of this complaint.

417.     The Plaintiff could not complete SHELLPOINT''s sixth request, Exhibit "72", for an "all new UBAF" because SHELLPOINT and SHELLPOINT's appointed SPC for the Plaintiff's file refused to answer the Plaintiff's QWR letter, sent under RESPA 2605, dated October 13, 2015, Exhibit "65" and paragraphs 360 through 363 of this complaint, containing specific QWR questions regarding SHELLPOINT's underwriting and the Plaintiff's request for clarification of requested and required documents for approval. Without this clarification, requested in the Plaintiff's October 13, 2015 letter, it was impossible for the Plaintiff to complete a valid UBAF with conforming required documentation for "completeness" by the drop dead submission date of January 22, 2016, or any date. The Plaintiff did not receive SHELLPOINT's December 23, 2015 sixth UBAF request until January 4, 2016, the same day Defendant SHELLPOINT allegedly prepared the January 4, 2016 SMSL contained in Exhibit "74" of this complaint, which was delivered to the Plaintiff January 11, 2016 through the CFPB web portal and January 15, 2016 via US regular mail.

COMPLAINT

418.     These two simultaneously delivered documents, December 23, 2015 (New UBAF) and January 4, 2016 (SMSL), were conflicting and intentionally created to confuse and deceive the 78 year old senior citizen Plaintiff to accelerate an illegal foreclosure sale on his home of ten years. The Plaintiff had been notified August 12, 2015 that his May 22, 2015 UBAF delivered to Defendant SHELLPOINT June 1, 2015 was complete! (Refer to Exhibit "55" of this complaint). The SHELLPOINT letter to the Plaintiff dated December 23, 2105 states his May 22, 2015 UBAF was incomplete and non-compliant. SHELLPOINT subsequently notified the Plaintiff in their January 4, 2016 SMSL letter (Exhibit "74" of this complaint), delivered to the Plaintiff January 11, 2016, that he is approved for a SMSL based on the wrongfully alleged "incomplete" Plaintiff UBAF submitted May 22, 2015. The December 23, 2015 and January 4, 2016 SHELLPOINT letters purposely violated California Civil Code 2923.6 (h) and CFR 1024.41 (c)(2)(ii), unreasonable response time, for the Plaintiff to respond in order for SHELLPOINT to unlawfully foreclose on the Plaintiffs home.

419.     SHELLPOINT's SMSL dated January 4, 2016, delivered through the CFPB web portal January 11, 2016 and also by letter to the Plaintiff January 15, 2016, despicably required a response to their SMSL letter in writing by Monday, January 18, 2016, Martin Luther King Day, a federal holiday, which was impossible for the Plaintiff to comply with. The other SHELLPOINT required alternative was by a phone call to SHELLPOINT which, as evidence at trial will prove, SHELLPOINT was prepared to reject based on an obsolete, invalid, rescinded "Don't Call Notice" regarding the Plaintiff's file. Defendant SHELLPOINT refused to respond to the Plaintiff's QWR request letter for a personal meeting as referenced in the Plaintiff's unanswered letter to SHELLPOINT's Kaufman October 13, 2015, Exhibit "65" of this complaint, by offering a sham SMSL.

420.     On January 25, 2016 the Plaintiff disputed Defendant SHELLPOINT's CFPB web portal response Dated January 8, 2015, which was delivered through the CFPB web portal to the Plaintiff Monday January 11, 2016 (Exhibit "74" of this complaint). The

COMPLAINT

SHELLPOINT SMSL dated January 4, 2016, delivered to the Plaintiff Monday January 11, 2016, was a carefully concocted, deceitful sham to evade answering the Plaintiff's October 13, 2015 QWR letter to SHELLPOINT's Kaufmann's letter, Exhibit "65" as referenced in paragraphs 360 through 364 of this complaint. SHELLPOINT was attempting to cover up massive multiple violations of HBOR and CFPB laws and regulations by SHELLPOINT's appointed SPC's and their Houston TX escalation team supervised by Hayes Jr., pertaining to the Plaintiff's loss mitigation and loan modification request beginning in February 2014, as evidenced in this complaint.

421.    This referenced January 4, 2015 SMSL is not only a violation of California Civil Code 2923.6 (h) and CFR 1024.41 (c)(2)(ii); unreasonable response time for the Plaintiff to respond, but is also exposed as a deliberate sham offer to modify the Plaintiff's loan by not identifying any verifiable beneficiary/creditor of the Plaintiff's mortgage or SHELLPOINT's authorization to offer a SMSL from any verifiable beneficiary/creditor.

422.    In SHELLPOINT's January 8, 2015 CFPB web portal CFPB letter, Exhibit "74" of the complaint, to the Plaintiff they allege that Defendant FREDDIE MAC aka FEDERAL HOME LOAN MORTGAGE CORPORATION "is currently the owner of account number ending in 9346." Defendant FREDDIE MAC has refused to claim or verify they own the Plaintiff's mortgage or that Defendant SHELLPOINT is their authorized agent. The Plaintiff sent four (4) written requests to Defendant FREDDIE MAC for verification of any FREDDIE MAC claim of ownership of the Plaintiff's mortgage and if so claimed the identification of FREDDIE MAC's verifiable authorized agent (loan servicer). The Plaintiff was advised and instructed on December 4, 2013 (see Exhibit "6" of this complaint), by former alleged loan servicer Defendant RESURGENT to directly contact Defendant FREDDIE MAC. The Plaintiff's letters to Defendant FREDDIE MAC are evidenced in Exhibit's 11, 15, 22 and 67 of this complaint. FREDDIE MAC refuses to claim ownership of the Plaintiff's mortgage.

COMPLAINT

423.     In SHELLPOINT's January 11, 2016 letter to the Plaintiff, Exhibit "76" of this complaint, SHELLPOINT notified the Plaintiff that "New Penn Financial, LLC is currently the owner of account number ending in 7956. Shellpoint Mortgage Servicing ("SHELLPOINT") began servicing the loan on behalf of the owner referenced above on or about March 1, 2014." SHELLPOINT sent a copy of their January 8, 2015 letter, Exhibit "74" of this complaint, to the Plaintiff as an enclosure.

424.     The two aforereferenced letter's dated January 8, 2015 and January 11, 2016 in Exhibits "74" and "76" respectively, and paragraphs 419 through 424 of this complaint, proves conclusively the allegations of the Plaintiff that SHELLPOINT's January 4, 2016 SMSL, Exhibit "74" of this complaint, is a verifiable sham offer based on California Civil Codes and CFPB laws and regulations referenced in paragraph 418 of this complaint and by SHELLPOINT's refusal to identify a valid, verifiable owner and loan servicer for the Plaintiff's mortgage. Beginning in February 2014, the Plaintiff sent more than ten (10) QWR letters under RESPA 2605 and the FDCPA demanding verification of a valid documented creditor and proof of authorization for SHELLPOINT to the Plaintiff's mortgage. SHELLPOINT refused to answer with verifiable proof, as required RESPA 2605, FDCPA and California Rosenthal FDCPA.

425.     A copy of the Plaintiff's January 25, 2016 CFPB web portal response disputing SHELLPOINT's response to the Plaintiff's November 9, 2015 CFPB complaint (Exhibit "68"), is attached to this complaint as Exhibit "77" and incorporated herein by reference.

426.     The Plaintiff's January 25, 2016 CFPB response disputed and protested Defendant SHELLPOINT's CFPB web portal response erroneously dated January 8, 2015, Exhibit "74", as non-responsive and in violation of RESPA 2605 by not responding to the Plaintiff's specific QWR questions in his November 9, 2015 CFPB web portal complaint, Exhibit "68" of this complaint, and by offering a bogus SMSL, Exhibit "74" of this complaint, to circumvent compliance with CFPB, HBOR and other applicable federal and state of California laws and regulations to be identified and referenced at trial.

COMPLAINT

427.    The Plaintiff attached his January 15, 2016 letter to SHELLPOINT, Exhibit "75", to his January 25, 2016 CFPB complaint, Exhibit "77", as a part of his January 25, 2016 CFPB web portal dispute of SHELLPOINT's devious non-responsive reply through the CFPB web portal referenced in paragraphs 401 through 411 of this complaint, which is memorialized in CFPB complaint case number 151109-001456.

428.    On February 9, 2016, Defendant SHELLPOINT responded to the Plaintiff's CFPB disputed reply to his November 9, 2015 CFPB complaint, Exhibit "68" of this complaint, delivered to the Plaintiff January 11, 2016 through the CFPB web portal, Exhibit "74", which was challenged January 25, 2016, Exhibit "77" of this complaint, referenced in paragraphs 425 through 427. This SHELLPOINT February 9, 2016 response letter was authored by SHELLPOINT's escalations representative Washington, located in Houston TX, who delivered the SHELLPOINT response through the CFPB web portal and by US regular mail in a letter dated February 18, 2016 sent from Houston, TX. A copy of SHELLPOINT's Washington's response to the Plaintiff's January 25, 2016 CFPB dispute of SHELLPOINT's January 8, 2015 dated CFPB response, Exhibit "77", dated February 9, 2016 is attached to this complaint as Exhibit "78" and incorporated herein by reference, along with SHELLPOINT's escalation department's letter to the Plaintiff dated February 18, 2016 with SHELLPOINT's CFPB February 9, 2016 CFPB delivered response as an enclosure.

429.    Defendant SHELLPOINT and their escalations representative Washington deceptively attempted to trap the 78 year old senior citizen Plaintiff and extort money from him by enticing him to send them "trial period plan payments" on an expired SMSL, allegedly approved by an undisclosed, unverified creditor, and without proof of verification of authorization from any verifiable creditor/owner to make any such offer to the Plaintiff.

430.    As evidenced in this complaint, Defendant FREDDIE MAC had refused four multi page written requests from the Plaintiff for FREDDIE MAC's claim and proof of

125

COMPLAINT

their alleged ownership of the Plaintiff's mortgage and if so claimed identification of
their authorized agent (loan servicer) to act on their behalf, as evidenced in Exhibit "11",
"15" and "22" of this complaint. The fourth letter from the Plaintiff to the Defendant
FREDDIE MAC dated October 26, 2015 will be presented at trial. Defendant FREDDIE
MAC never directly responded to any of the Plaintiff's demands and requests for claim or
proof of ownership of his mortgage referenced above as negotiated and promised in July
2014. (Refer to Exhibit "17" of this complaint.)

431.    Defendant SHELLPOINT's bogus January SMSL dated January 4, 2016, Exhibit
"74" was issued to the Plaintiff for the sole purpose of covering up violations of federal
and state of California consumer protection laws as well as CFPB and HBOR laws and
regulations previously cited. A forensic disclosure of SHELLPOINT's specific violations
will be identified and referenced at trial.

432.    On February 23, 2016 the Plaintiff disputed Defendant SHELLPOINT's
responses, Exhibit "78" of this complaint, dated February 9, 2016 and February 18, 2016
by filing a dispute response to SHELLPOINT's February 9, 2016 response through the
CFPB fax, at 1-855-237-2392, since the CFPB web portal was not working. This dispute
response complaint is dated February 22, 2016. A copy of the Plaintiff's February 22,
2016 dispute response complaint against SHELLPOINT's February 9, 2016 CFPB web
portal response, Exhibit "78", is attached to this complaint as Exhibit "79" and
incorporated herein by reference. (CFPB case number 160125-001527.)

433.    Defendant SHELLPOINT acknowledged receipt of the Plaintiff's February 22,
2016, CFPB filed SHELLPOINT response complaint, Exhibit "79" of this complaint, in
writing on February 25, 2016. Defendant SHELLPOINT's February 25, 2016 letter
states: "We are working to gather the requested information and will forward it to you
within the allotted time frame. If you have any additional questions or concerns please
contact our customer service department at 866-316-4711." A copy of Defendant
SHELLPOINT's letter the Plaintiff confirming receipt of the Plaintiff's February 22,

COMPLAINT

2016 CFPB complaint dated February 25, 2016 is attached to this complaint as Exhibit "80" and incorporated herein by reference.

434.    On March 8, 2016 Defendant SHELLPOINT authorized unknown agent's and/or representatives of SHELLPOINT, who had the Plaintiff's home under surveillance since October 9, 2015 as referenced in Exhibit "66" and paragraphs 370 through 374 of this complaint, to launch a sneak attack on the Plaintiff's home to post an unsigned, undated and unrecorded Notice of Trustee's Sale in order to instill fear and terrorize the Plaintiff and his wife out of their home of ten years. SHELLPOINT'S authorized sneak intruder invaded the Plaintiff's property after laying in wait until the Plaintiff's wife's caregiver and body guard left the Plaintiff's home at 4:00 pm knowing, from their months of surveillance, that the Plaintiff usually arrived home at approximately 5:30 pm. The SHELLPOINT authorized intruder proceeded, in this known window period, to walk past two "No Solicitor" signs, ignored the Plaintiff's wife's handwritten "Don't knock or ring the door bell sign" then proceeded to post his Notice of Sale all over the front door, ring the door bell multiple times, and knock loudly on the front door terrifying the Plaintiff's wife. The Plaintiff's wife had to be sedated and again placed on suicide watch.

435.    The Plaintiff filed a complaint in a letter dated March 8, 2016 delivered to SHELLPOINT via email to loanservicing@shellpointmtg.com on March 9, 2016, with photos; and by US express mail on March 11, 2016, reporting this despicable premeditated sneak attack on the Plaintiff's home and family. A copy of the Plaintiff's March 8, 2016 letter is attached to this complaint as Exhibit "81" and incorporated herein by reference.

436.    SHELLPOINT's authorized representatives deliberately and willfully invaded the Plaintiff's home property for the third time in six months in violation of posted signs, written notices of denial to trespass, and the Plaintiff's reports of their illegal action to the Bakersfield City Police Department with full knowledge of the Plaintiff's wife's deteriorating mental condition. These hostile attacks, which were reported to

COMPLAINT

SHELLPOINT, were with malice to vengefully harass, intimidate and terrorize the Plaintiff and his wife from their home of ten years.

437.     The hostile premeditated sneak attack on the Plaintiff's home property by SHELLPOINT authorized representatives on March 8, 2016, as referenced in paragraphs 434 through 436 of this complaint, proves conclusively all of the Plaintiff's allegations that Defendant SHELLPOINT's escalation department's representatives in Houston TX conspired and created a devious scheme to trick the 78 year old Plaintiff by issuing a "bogus" SMSL, which violated CFPB and HBOR laws and regulations previously referenced in paragraph 421 of this complaint, in order to trap him with their single purpose goal of forcing a Notice of Sale and to conduct a fast track illegal foreclosure to cover up their well documented malfeasances of multiple CFPB and HBOR laws and regulations.

438.     These Plaintiff allegations are evidenced by SHELLPOINT's actions as follows:

A)  The SHELLPOINT issued January 4, 2016 SMSL, Exhibit "74", does not identify a creditor or evidence any proof of authorization for SHELLPOINT to make a valid SMSL offer to the Plaintiff from any documented valid creditor.

B)  SHELLPOINT's alleged SMSL January 4, 2016 offer to the Plaintiff, delivered January 11, 2016, contained a "drop dead" expiration date for the Plaintiff's response in a mere four business days from the Plaintiff's date of receipt of the letter. This is a violation of California Civil Code 2923.6 (h) and CFR 1024.41 (c)(2)(ii); unreasonable time to respond. This was a premeditated action by SHELLPOINT. The SMSL offer expired January 18, 2016 which made it invalid after that date.

C)  SHELLPOINT and their escalation representative Hayes Jr., of their Houston TX office, had acknowledged that in August 2013, the Plaintiff had notified SHELLPOINT's predecessor, Defendant RESURGENT, and Hayes Jr., then an escalations representative of RESURGENT that Citi Mortgage was a purchase

128

money second mortgage holder with an approximate sixty-nine thousand dollar ($69,000) second (2nd) mortgage which was all due and payable by balloon payment in November 2020. SHELLPOINT ignored this fact when issuing their alleged SMSL.

D) Defendant SHELLPOINT's bogus SMSL offered the 78 year old Plaintiff a 40 year modified mortgage, which would nullify the Plaintiff's "purchase money" exemption, exposing the Plaintiff to a deficiency judgment in case of default and a lender judicial foreclosure. SHELLPOINT failed to disclose this salient fact to the Plaintiff.

E) Defendant SHELLPPOINT knew the Plaintiff would encounter significant catastrophic financial consequences if he executed the January 4, 2016 SMSL, and therefore put a short fuse expiration date on their alleged SMSL in order to deny the Plaintiff fair and reasonable time to perform his rightful due diligence period as required by CFPB and HBOR laws and regulations. SHELLPOINT attempted to entice and trick the Plaintiff with the bogus SMSL by offering the Plaintiff a SMSL modification with an unverified balance of approximately four hundred seventy thousand dollars ($470,000), at four percent (4%) interest, for 40 years, (the Plaintiff would be 118 years old at the time of maturity), knowing the Plaintiff's property had a value of less than two hundred fifty thousand dollars ($250,000). This SHELLPOINT escalation department SMSL offer, from their Houston TX office, was programmed for an automatic default to trip wire a judicial foreclosure and a major deficiency judgment if the 78 year old senior citizen blindly accepted this alleged SMSL without a reasonable due diligence period.

F) Defendant SHELLPOINT had knowledge of the Plaintiff's existing Citi Mortgage purchase money note and deed of trust, with a then approximate balance of sixty five thousand dollars ($65,000), which was all due and payable November 2020.

129

COMPLAINT

A copy of the Plaintiff's Citi Mortgage purchase money note and deed of trust is attached to this complaint as Exhibit "82" and incorporated herein by reference. SHELLPOINT's escalations office knew that the Plaintiff could not meet the Citi Mortgage balloon payment due November 2020. With this knowledge SHELLPOINT programmed their January 4, 2016 SMSL, Exhibit "74" of this complaint, for automatic default in November 2020 to again trip wire a judicial foreclosure and major deficiency judgment.

G) The combined Plaintiff first and second mortgages on the Plaintiff's home are in excess of five hundred thirty thousand dollars ($530,000) or approximately two hundred eighty thousand dollars ($280,000) more than the security value of the Plaintiff's home. The Plaintiff contacted Citi Mortgage, the second mortgage holder, as referenced in Exhibit "75", Pages 2 through 4 of this complaint, on January 13, 2016, who strongly recommended the Plaintiff consult his attorney in regard to financial consequences to the Plaintiff of entering into the alleged SHELLPOINT SMSL. Citi Mortgage informed the Plaintiff that his "purchase money" second mortgage note and deed of trust was all due and payable in November 2020. Citi Mortgage stated they would not approve this SHELLPOINT SMSL offer because the Plaintiff could never satisfy their debt.

H) SHELLPOINT refused to offer the Plaintiff a written amended SMSL containing the identification of a documented, valid creditor with a written amended expiration date in compliance with CFPB and HBOR laws and regulations. SHELLPOINT attempted to extort money from the Plaintiff by demanding trial period plan payments on the expired offer as referenced in exhibits "77", "78" and "79", and paragraph 429 of this complaint, that contained an illegal response time period.

I) SHELLPOINT's January 4, 2016 bogus SMSL contained "weasel clauses" aimed at nullifying any Plaintiff acceptance of this SMSL after illegally extorting money

COMPLAINT

from the Plaintiff, then declaring his SMSL null and void in order to continue to foreclose on the Plaintiff's home. Evidence of these allegations will be proven at trial.

439.    The Plaintiff has alleged since September 2013 that Defendant RESURGENT and SHELLPOINT's single purpose goal was to foreclose the Plaintiff out of his home. Both Defendants RESURGENT and SHELLPOINT refused to evaluate the Plaintiffs six fully complete UBAF's in compliance with CFPB and HBOR laws and regulations for loss mitigation as well as applicable federal and state of California consumer protection laws as referenced in this complaint. These violations of federal and state of California laws and regulations will be identified at trial.

440.    Conclusive proof of the Plaintiff's allegations is proven in Exhibit "80", and paragraphs 432 through 438 of this complaint. On Monday, March 7, 2016, the Plaintiff received Defendant SHELLPOINT's acknowledgment of the Plaintiff's February 23, 2016 CFPB dispute (Exhibit "79" of this complaint), dated February 23, 2016, with a SHELLPOINT postage meter date of Friday, February 26, 2016, that was mailed from Troy MI, stating SHELLPOINT was "working" on the Plaintiff's CFPB complaint against SHELLPOINT and their bogus SMSL. Defendant SHELLPOINT deceitfully and deliberately had no intention of ever offering the Plaintiff any valid loan modification before filing their notice of sale, or answering the Plaintiff's CFPB complaint.

441.    This allegation is undeniably proven by the fact that SHELLPOINT had ordered the recording and serving of their illegal notice of sale on the Plaintiff's home after receipt of the Plaintiff's CFPB complaint (Exhibit "79") on February 25, 2016 and after notifying the Plaintiff they were working on the Plaintiff's February 23, 2016 CFPB complaint (Exhibit "79") regarding SHELLPOINT's expired and unreasonable bogus SMSL offer dated January 4, 2016 (portion of Exhibit "74" of this complaint). The Plaintiff alleges that Defendant SHELLPOINT had a pattern, and secret policy and procedure, in their Houston TX escalation department and in their Troy MI offices to use

131

delayed mailings of notices and responses to the Plaintiff using in house postage meters
as well as putting unfair, unreasonable, and illegal response times on multiple letters and
notices sent to the Plaintiff in violation of CFR 1024.41, et seq., and California Civil
Code 2923.6 (5)(h) under HBOR as previously referenced in this complaint in paragraphs
71 through 441.

442.     The Plaintiff did not receive a signed, dated, and recorded first legal notice of sale
(NOS) until March 28, 2016. A copy of SHELLPOINT's NOS dated March 8, 2016, not
recorded until March 14, 2016, and not postage meter stamped until March 21, 2016, as
well as a copy of the unsigned, undated, illegal notice of sale maliciously skewed all over
the Plaintiff's front door of his home March 8, 2016 is attached to this complaint as
Exhibit "83" and incorporated herein by reference.

443.     Defendant SHELLPOINT's March 8, 2016 NOS was a violation of California
Civil Codes under HBOR including, but not limited to, California Civil Codes 2924.17;
2923.5, dual tracking; 2923.55; 2923.6 (c)-(h); 2923.7 (a)-(e); and 2924 (a)(1)(D)(6) ,
which will be proven at trial.

444.     On March 31, 2016 the Plaintiff received a letter dated March 21, 2016 from
Defendant SHELLPOINT's Houston TX escalation department in response to the
Plaintiff's February 23, 2016 CFPB dispute complaint (Exhibit "79") regarding
SHELLPOINT's bogus and unreasonable SMSL dated January 4, 2016 (Exhibit "74" of
this complaint). A copy of Defendant SHELLPOINT's letter to the Plaintiff, dated March
21, 2016 (postmarked March 22, 2016 and received by the Plaintiff on March 31, 2016),
is attached to this complaint as Exhibit "84" and incorporated herein by reference.

445.     Defendant SHELLPOINT's March 21, 2016 letter (Exhibit "84" of this
complaint) gave first notice to the Plaintiff that SHELLPOINT was cancelling and
withdrawing their bogus January 4, 2016 dated SMSL, which violated California civil
codes and CFPB laws and regulations as referenced in paragraphs 418 and 421, and
Exhibits "75", "77" and "79" of this complaint. SHELLPOINT refused the Plaintiff's

132

COMPLAINT

multiple written demands for a revised SMSL identifying his valid documented creditor/beneficiary for his mortgage and SHELLPOINT's authorization to issue a SMSL from said valid creditor with a reasonable expiration date for his response, in compliance with CFPB and HBOR laws and regulations previously cited in Exhibit "75". SHELLPOINT's action of canceling and withdrawing their January 4, 2016 SMSL robbed the 78 year old senior citizen Plaintiff of his fair, reasonable and legal right to conduct his due diligence regarding SHELLPOINT's alleged January 4, 2016 SMSL in order to protect his home of ten years and he and his family's health, safety and welfare. The Plaintiff's second mortgage holder, Citi Mortgage, on January 13, 2016 had warned the Plaintiff to seek legal counsel prior to agreeing to or executing SHELLPOINT's alleged SMSL. Defendant SHELLPOINT was notified about Citi Mortgage's warning to the Plaintiff as proven in Exhibit "75" of this complaint.

446.    SHELLPOINT's March 21, 2016 first notice letter of cancellation of the alleged January 4, 2016 SMSL (Exhibit "74" of this complaint) sent to the Plaintiff March 22, 2016, was issued fourteen (14) days after SHELLPOINT's recording of an illegal NOS on the Plaintiff's home. The Plaintiff did not receive SHEELPOINT's notice of cancellation of their January 4, 2016 alleged SMSL until March 31, 2016, seventeen (17) days after the recording of SHELLPOINT's March 8, 2016 NOS (Exhibit "83"). The Plaintiff alleges that SHELLPOINT's March 21, 2016 letter to the Plaintiff (Exhibit "84" of this complaint) is conclusive proof that Defendant SHELLPOINT's January 4, 2016 dated SMSL (Exhibit "74") was bogus from the date of issuance, and used as an obvious deceitful scheme to avoid answering the Plaintiff's QWR letter dated October 13, 2015 (Exhibit "65" of this complaint) which is memorialized in the CFPB web portal complaint filed by the Plaintiff against SHELLPOINT and their escalations representatives, including supervisor Hayes, Jr., on November 9, 2015, as referenced in Exhibits "65", "68", "75" and 77 of this complaint. SHELLPOINT's refusal to answer the Plaintiff's October 13, 2015 QWR letter (Exhibit 65) made the submission of any

133

compliant Plaintiff UBAF impossible. This fact is addressed and referenced in Exhibits "65", "68", "73", "75", "77" and "79" of this complaint. SHELLPOINT's refusal to respond to the Plaintiff's 13, 2015 QWR letter in compliance with RESPA 2605 response requirement's is a deliberate and willful unfair, deceitful, abusive action denying the Plaintiff of his rights under applicable federal and state of California consumer protection laws, and CFPB and HBOR laws and regulations to be referenced at trial.

447.    The Plaintiff alleges that Defendants RESURGENT and SHELLPOINT never had any intentions of fairly evaluating any loss mitigation or loan modification of the Plaintiff's loan in compliance with CFPB and HBOR laws and regulations. SHELLPOINT's sole, evergreen, purpose was to deny any and all of the Plaintiff's seven (7) fully complete and compliant loan modification request applications and submitted UBAF's to vindictively foreclose on the Plaintiff's home of ten years out of retaliation for the Plaintiff reporting of Defendant's RESURGENT and SHELLPOINT's multiple grievous malfeasances of federal and state consumer protection laws. These referenced malfeasances are meticulously documented in this complaint and have been sent to federal and state regulators. SHELLPOINT's theme and battle cry toward the Plaintiff's loan modification requests has always been "FORECLOSURE ONLY" led by Houston TX escalation representative Hayes, Jr. since September 2013 as their actions in this complaint confirm.

448.    Defendant SHELLPOINT's escalation department's March 21, 2016 letter (Exhibit "84"), received by the Plaintiff March 31, 2016, stated their intent was "to discuss your available options, we respectfully request you to call the designated single point of contact, Ruby Fielder, at (866) 825-2175, extension 7604, for further assistance." "Should you have further questions, you may contact SHELLPOINT's escalations department at (888) 536-9761 Monday through Friday between the hours of 8:00 am and 5:00 pm (EST)." Each and every written correspondence from Defendant SHELLPOINT and their escalations department since the Plaintiff submitted his May 22, 2015 fully

134

completed UBAF on May 29, 2015, which rescinded his prior notice to cease and desist all telephone calls to specific Plaintiff telephone numbers referenced in paragraphs 36 through 38 and 48 through 52, and Exhibits "59", "60", "61" and "65" of this complaint, advised or requested the Plaintiff call various referenced SHELLPOINT departments, or specific representatives by telephone.

449.     On August 20, 2015 the Plaintiff received a telephone call to his personal cell phone (661) 204-4646 requesting he call SHELLPOINT's Troy MI office regarding his required fire insurance policy and his loan file. This August 20, 2015 SHELLPOINT telephone call was from SHELLPOINT representative Sachel at 10:33 am pacific time, from phone number (877) 491-7277, which went to the Plaintiff's voice mail, requested he call SHELLPOINT about his file and instructed him to use response code ID 082015. This telephone call, which was screenshot and recorded on the Plaintiff's Apple i-Phone, (661) 204-4646, and permanently stored; as is the Plaintiff's return telephone call to SHELLPOINT on August 20, 2015 at 12:20 pm pacific time as referenced in paragraphs 327 through 330, and Exhibit's "65" and "68" of this complaint.

450.     On April 4, 2016 at 12:55 pm,, pacific time the Plaintiff place a telephone call to SHELLPOINT SPC Ruby Fielder as advised and recommended in SHELLPOINT's March 21, 2016 letter, mailed March 22, 2016 (Exhibit "84" of this complaint), which was received by the Plaintiff March 31, 2016 in order "to discuss your available options" and "for future assistance", as referenced in Paragraph 448 and Exhibit "84" of this complaint. SPC Fielder did not answer the Plaintiff's call. The Plaintiff left a voice mail message for SPC Fielder to return his call to his cell phone (661) 204-4646. This Plaintiff phone call to SPC Fielder was screen shot on the Plaintiff's cell phone, which is preserved.

451.     At 6:34 pm, pacific time, April 4, 2016, the Plaintiff received a return telephone call from SHELLPOINT SPC Fielder in response to the Plaintiff's April 4, 2016 12:55 pm, pacific time, phone call referenced in Paragraph 450. SHELLPOINT SPC Fielder's

135

COMPLAINT

call was placed from Houston TX, phone number (832) 775-7604 at 8:34 pm, central time, three and one half hours after SHELLPOINT's notice of office hours stating SHELLPOINT closed at 5:00 pm, central time; and five and one half hours after the Plaintiff left his request for a call back. SPC Fielder opened her conversation with the Plaintiff that she was returning his telephone call that he made at 2:55 pm, central time, regarding his file. She performed SHELLPOINT's standard disclosures of being a "collector of debt" and informed him their conversation may be recorded for quality assurance purposes. The Plaintiff was also recording the conversation on his Apple i-Phone.

452.     SPC fielder proceeded to inform the Plaintiff she could not talk to the Plaintiff about his file because of his previous cease and desist telephone calls to specific Plaintiff telephone numbers. The Plaintiff had initiated a "cease and desist order" to specific phone numbers with former alleged loan servicer escalation representative Hayes, Jr., employed by Defendant RESURGENT, on October 7, 2013 (Exhibit "61"). This notification was first implemented by RESURGENT's Hayes, Jr., on January 27, 2014 (Exhibit "63" of this complaint). The Plaintiff rescinded this notice in writing May 22, 2015 at the advice and instruction of SHELLPOINT's Hayes, Jr. in his letter to the Plaintiff dated April 20, 2015 (Exhibit 40 of this complaint). The Plaintiff, blindsided and stunned by this false statement by SHELLPOINT's SPC Fielder, suddenly realized he was being deceitfully, purposely, and illegally set up by SHELLPOINT's Houston TX escalations department for an unlawful scheduled foreclose sale Monday April 11, 2016. It was evident to the Plaintiff that this SHELLPOINT after hours late night call from Houston TX to his cell phone at 6:34 pm pacific time was a premeditated devious trap organized, supervised and controlled by SHELLPOINT's notorious and vengeful Hayes, Jr., as confirmed by the following occurrences:

A)   The Plaintiff challenged SPC Fielder's statement that she could not talk to him about his file because of the alleged active cease and desist phone call notice that

136

COMPLAINT

was in effect on his loss mitigation requests and file. The Plaintiff challenged SPC Fielder's statements on the following grounds:

1) The cease and desist order regarding telephone calls to the Plaintiff was rescinded in writing by the Plaintiff May 22, 2015 as evidenced on page 4, item 10, of the Plaintiff's unaltered, and unedited UBAF, dated May 22, 2015, as advised and instructed by SHELLPOINT's Hayes, Jr., in his letter of April 20, 2015 (Exhibit 40 of this complaint). SPC Fielder stated to the Plaintiff that she was putting his telephone call on hold in order to search her computer for the Plaintiff's May 22, 2015 UBAF application containing the referenced written rescission of the Plaintiff's cease and desist phone call order. When Ms. Fielder returned she informed the Plaintiff she could not find the Plaintiff's May 22, 2015 UBAF that was confirmed received by Defendant SHELLPOINT June 1, 2015. SPC Fielder repeated she could not talk to the Plaintiff about his file because this alleged cease and desist phone notice was still in effect according to SHELLPOINT's records.

2) The Plaintiff again challenged SPC Fielder's false statement that SHELLPOINT had an active cease and desist telephone call notice in effect and could not contact the Plaintiff by phone. The Plaintiff informed SPC Fielder that on August 20, 2015 the Plaintiff received a telephone call from SHELLPOINT's Troy MI office representative Sachel regarding the Plaintiff's homeowner's fire insurance policy which had been recorded and preserved on the Plaintiff's voice mail, and the Plaintiff returned this telephone call from SHELLPOINT's Sachel on the same date, which the Plaintiff recorded. SPC Fielder was then challenged by the Plaintiff that either her statement about SHELLPOINT having an effective and valid cease and desist order for telephone calls to the Plaintiff after May 22, 2015 was false or SHELLPOINT had deliberately and illegally violated this alleged effective cease and desist order on August 20, 2015 by the SHELLPOINT telephone call to the Plaintiff. SPC Fielder again put the Plaintiff's call on hold

137

and when she returned stated that she didn't have any record of the August 20, 2015 SHELLPOINT call to the Plaintiff and still could not talk to him about his file.

3) The Plaintiff knew at this point the vengeful Hayes, Jr. was directly involved in this SHELLPOINT after hours return telephone call scheme to vengefully drive the Plaintiff out of his home of ten years. The Plaintiff asked SPC Fielder directly, for the record; if SHELLPOINT Hayes, Jr. still had access or was involved in the Plaintiff's file. She stated "no" but then stated "Mr. Hayes is my supervisor." The Plaintiff's suspicions were then confirmed.

4) SPC Fielder stated and restated multiple times to the Plaintiff in her conversation that there was nothing she could do for the Plaintiff, and repeatedly emphasized to the Plaintiff the sale of his home was set for Monday, April 11, 2016. She continually referenced SHELLPOINT's alleged active cease and desist phone call notice that the Plaintiff had rescinded May 22, 2015. The Plaintiff's allegations and statements contained in Paragraph 452, subsections 1 through 4, are referenced in Exhibit's "65", "68", "69", "70", "73" and "75", and paragraphs 320, and 327 through 353 of this complaint.

5) The Plaintiff called SPC Fielder as specifically instructed and induced to do in SHELLPOINT's March 21, 2016 letter (Exhibit "84" of this complaint), sent by SHELLPOINT's Houston TX escalations department. The Plaintiff's telephone voice message to SPC Fielder, as referenced in Paragraph 450 of this complaint, authorized SHELLPOINT SPC Fielder to return his telephone call of April 4, 2016 to discuss his file and loss mitigation options to save his home of ten years. This recorded voice mail authorized SHELLPOINT and SPC Fielder to talk to the Plaintiff about his file and the crucial problem of imminent loss of his home through foreclosure scheduled for Monday, April 11, 2016. Said authorization is confirmed and supported by federal law and state of California civil code to be

COMPLAINT

cited at trial. Defendant SHELLPOINT deliberately and willfully elected not to talk to the Plaintiff after despicably inducing him to call SPC Fielder for assistance in order to illegally force him from his home and foreclose Monday, April 11, 2016 at 10:00 am, pacific time, as scheduled.

453.     The Plaintiff alleges, based on SHELLPOINT and SHELLPOINT's SPC Fielder's refusal to talk to the Plaintiff about his file or his options to save his home, as referenced in paragraphs 448 through 452 and Exhibit "84" of this complaint; referencing an alleged active cease and desist telephone call notice initiated by the Plaintiff October 7, 2013, which was rescinded May 22, 2015, that SHELLPOINT's SMSL dated January 4, 2016 delivered to the Plaintiff January 11, 2016, was a deliberate, deceitful sham offer by demanding a telephone call to SHELLPOINT phone number (866) 825-2174 knowing that they were prepared to reject it in order to let their bogus SMSL expire January 18, 2016, a federal holiday (refer to paragraphs 418 through 427, and Exhibit "74", "75" and "76" of this complaint). Defendant SHELLPOINT intentionally deceived and continually misrepresented to the Plaintiff that he could call SHELLPOINT for assistance to save his home of ten years, when, in fact, SHELLPOINT had intentionally black listed the Plaintiff from phone calls to his appointed SHELLPOINT's SPC's and representatives in regard to his options for loss mitigation, including the alleged SMSL referenced in Exhibit "74" of this complaint.

454.     Defendant SHELLPOINT had "black listed" all Plaintiff communication with SHELLPOINT, except written communication, as of October 2015, after SHELLPOINT received the Plaintiff's October 13, 2015 "QWR" letter under RESPA 2605 (Exhibit "65" of this complaint), in which the Plaintiff demanded a personal meeting at any SHELLPOINT office designated, not under the control of Hayes, Jr., to resolve all issues concerning his wrongfully denied multiple UBAF's. Defendant SHELLPOINT refused to answer the Plaintiff's October 13, 2015 letter, a documented violation of RESPA 2605, et seq., or to arrange a personal meeting with the Plaintiff. Defendant SHELLPOINT's

139

refusal to communicate with the Plaintiff in a personal meeting or by telephone as referenced in paragraphs 450 through 452, and Exhibit "65" and "75" of this complaint, while intentionally and fraudulently inducing him to call their company was a misrepresentation of their intentions to assist and discuss the Plaintiff's loss mitigation request and file to avoid foreclosure is absolute documented and undeniable proof of SHELLPOINT's unfair, deceptive, and abusive acts and practices against the 78 year old senior citizen Plaintiff to inflict illegal, unwarranted, and irreparable emotional and financial pain and suffering on the Plaintiff, jeopardizing his and his wife's health, safety and welfare.

455.    The Plaintiff had made an impassioned plea for confirmation that his SHELLPOINT cease and desist phone notice was in effect on November 24, 2014 in order to protect him and his wife from illegal phone calls on the one year anniversary of the devastating Christmas eve day illegal phone call made December 24, 2013 by Defendant RESURGENT. The Plaintiff sent his November 24, 2014 letter to SHELLPOINT SPC Collinsworth as a "QWR" under RESPA 2605 (refer to paragraphs 351 through 354, and Exhibit "64"). Defendant SHELLPOINT refused to reply to the Plaintiff's November 24, 2014 letter and his plea for confirmation that the cease and desist notice, which was rescinded May 22, 2015, was in effect for the Christmas holiday season for December 2014 in order that the Plaintiff and his family could peacefully enjoy the birth of our Savior, Jesus Christ.  The Plaintiff's wife was hospitalized on December 3, 2014 and put on suicide watch which was documented and reported to Defendant SHELLPOINT in the Plaintiff's December 31, 2014 UBAF, confirmed received by SHELLPOINT January 2, 2015, as referenced in paragraphs 197, 198 and 351 through 355 of this complaint. A copy of the Plaintiff's December 31, 2014 UBAF containing his hardship letter, household expense worksheet, and photo's of his wife's wounds and medical bills from December 3, 2014 will be entered into evidence at trial. These events took place prior to the SHELLPOINT authorized physical attacks and

140

COMPLAINT

surveillance of the Plaintiff's home between April 2015 and March 8, 2016, which caused prolonged, irreparable deterioration of the Plaintiff's wife's mental health, safety and physical welfare, resulting in multiple hospitalizations and suicide watches. These attacks were reported to SHELLPOINT who took no action to cease or correct these illegal actions. They were also reported to the Bakersfield, CA police department (refer to Exhibit "66" of this complaint). SHELLPOINT's actions were willful, deliberate and vengeful to harass and terrorize the Plaintiff and his wife.

456.     Defendant SHELLPOINT's authorized and illegal sneak attack on the Plaintiff's home March 8, 2016 after laying in wait until the Plaintiff's wife's caregiver and bodyguard left the Plaintiff's home, as referenced in paragraphs 434 through 437 and Exhibit "83" of this complaint, was undeniably documented by SHELLPOINT's appointed attacker who photographed the entire front of the Plaintiff's home and posted the color photos on the internet for the Plaintiff foreclosure sale on www.auction.com. The Plaintiff's wife's caregiver/bodyguard always parked in front of the Plaintiff's home where there is only one parking space. The Plaintiff always parked in the driveway of his home. No cars are parked in front of or in the Plaintiff's driveway in these photos. The Plaintiff's wife's car is always parked in the Plaintiff's one and one half car garage, which will not accommodate two automobiles. These photos from auction.com foreclosure web page used by Clear Recon Corp for the foreclosure on the Plaintiff's home at 3716 Crest Drive, Bakersfield, CA will be presented at trial and conclusively prove the Plaintiff's allegations of Defendant SHELLPOINT's authorized illegal and vicious sneak attack on the Plaintiff's home and family.

457.     When the Plaintiff received Defendant SHELLPOINT's first legal service of the illegal signed and dated NOS recorded March 14, 2016, mailed to the Plaintiff March 21, 2016 via US certified mail, seven days after electronic recording at the Kern County California Recorders, on March 28, 2016 the Plaintiff filed a cease and desist letter and evidence binder dated March 31, 2016 to Defendant SHELLPOINT and Clear Recon

COMPLAINT

Corp challenging Defendant SHELLPOINT's scheduled foreclosure, Monday April 11, 2016 at 10:00 AM. This March 31, 2016 cease and desist letter was copied to Kamala D. Harris, California State Attorney General.

A copy of the Plaintiff's March 31, 2016 cease and desist letter to Defendant SHELLPOINT and alleged Trustee, Clear Recon, is attached to this complaint as Exhibit "85" and incorporated herein by reference. The enclosure documents and exhibits contained in the Plaintiff's March 31, 2016 letter/binder referenced in this paragraph, paragraph 456, and Exhibit "85", conclusively prove Defendant SHELLPOINT's deliberate, willful and illegal March 14, 2016 NOS was a violation of HBOR. Uncontestable proof will be entered into evidence at trial.

458.     The Plaintiff's March 31, 2016 cease and desist letter, Exhibit "85" of this complaint, demanding Defendant SHELLPOINT stop their illegal foreclosure, which was in violation of the loss mitigation laws and regulations of HBOR, including dual tracking, was confirmed received by Defendant SHELLPOINT on April 5, 2016 at 10:00 AM.

459.     Defendant SHELLPOINT confirmed receipt of the Plaintiff's March 31, 2016 cease and desist letter, Exhibit "85", in a letter dated April 5, 2016 stating "we are working to gather the requested information and will forward it to you as soon as possible. If you have any additional questions or concerns, please contact our customer service department at 866-316-4711". This letter was in house postage metered April 6, 2016 and not received by the Plaintiff until April 12, 2016, one day after the SHELLPOINT's scheduled foreclose sale. SHELLPOINT's April 6, 2016 letter despicably induces and taunt's the Plaintiff to call their company when it has been documented that SHELLPOINT had no intention of talking to the Plaintiff, as verified in paragraphs 450 through 454 of this complaint.

460.     On April 4, 2016, the Plaintiff sent a QWR letter under RESPA 2605 and HBOR via e-mail, USP express mail, and by fax, to Defendant SHELLPOINT, confirmed received by SHELLPOINT April 7, 2016 at 11:07 AM, protesting the refusal of

142

SHELLPOINT and SHELLPOINT SPC Fielder, located in SHELLPOINT's Houston TX office, supervised by the despicable, devious and notorious Wendell Hayes, Jr., to discuss the Plaintiff's loan modification request file. Refer to paragraphs 444 through 457, and Exhibit "84" of this complaint.

A copy of the Plaintiff's April 4, 2016 QWR letter to Defendant SHELLPOINT is attached to this complaint as Exhibit "86" and incorporated herein by reference. All enclosures and exhibits to the Plaintiff's April 4, 2016 letter to Defendant SHELLPOINT will be entered into evidence at trial. Included in the Exhibit's submitted as a part of Plaintiff's Exhibit "86" of this complaint will be the August 11, 2005 State of Texas Memorandum Opinion for Case No. 14-05-00636-CR, 339th District Court, Harris County Texas Trial Court Cause No. 1022160, regarding a denial of right to appeal "a plea of no contest to assault" by a Wendell Hayes, Jr.

461.    The Plaintiff confronted SHELLPOINT escalation department supervisor Wendell Hayes, Jr. in writing on November 16, 2015 about this grievous criminal matter, referenced in paragraph 458. Mr. Hayes, Jr. has never denied he is the referenced party sentenced to prison for two years as referenced in the aforementioned Memorandum Opinion filed August 11, 2005. A copy of the Plaintiff's November 16, 2015 letter to Defendant SHELLPOINT's Hayes, Jr. is attached to this complaint as Exhibit "87" and incorporated herein by reference. The Plaintiff alleges that SHELLPOINT escalation department supervisor Hayes Jr., formerly the Plaintiff's escalations department appointed representative for Defendant RESURGENT beginning in August 2013, has engaged in an abusive, aggressive, personal and vindictive manner against the 78 year old senior citizen Plaintiff; consistent with the behavior of a notorious individual accused of assault that presumably served prison time. Mr. Hayes, Jr.'s multiple illegal violations of federal and state of California consumer protection laws while acting as a representative for Defendants RESURGENT and SHELLPOINT have escalated over the past two and one half years into a well documented "personal vendetta" against the Plaintiff in order to

143

jeopardize and destroy the Plaintiff and his family's health, safety and welfare, as evidenced in this complaint.

462.     On April 6, 2016 the Plaintiff sent an "URGENT" appeal to Clear Recon Corp, Defendant SHELLPOINT and the office of Kamala D. Harris, California Attorney General, protesting the illegal foreclosure sale of the Plaintiff's home of ten years, 3716 crest Drive, Bakersfield, CA, scheduled for Monday, April 11, 2016 at 10:00 AM. This scheduled sale was a clear action of deceit, fraud and premeditated violation of HBOR and CFPB laws and regulations by Defendant SHELLPOINT, Clear Recon Corp and unknown Does, which will be identified at trial. A copy of the Plaintiff's April 6, 2016 letter to Defendant SHELLPOINT, Clear Recon Corp and Kamala Harris' office, California Attorney General, are attached to this complaint as Exhibit "88" and incorporated herein by reference.

463.     On April 4, 2016 the Plaintiff, after his telephone conversation with SHELLPOINT SPC Fielder, referenced in paragraphs 444 through 458, and Exhibits "84" and "86" of this complaint, the Plaintiff realized that he must give up and leave his home of ten years after a three year battle with Defendants RESURGENT and SHELLPOINT by the Monday, April 11, 2016 10:00 AM foreclosure sale, as emphasized repeatedly by SPC Fielder April 4, 2016, or face eviction. The Plaintiff was being illegally forced out of his home a mere 13 days after receiving first legal notice of SHELLPOINT's March 14, 2016 recorded NOS, not mailed until March 21, 2016, and not received by the Plaintiff until March 28, 2016. The Plaintiff suffering from overwhelming depression that he had been deviously and illegally tricked and trapped by SHELLPOINT's immoral and deceitful Houston, TX escalations office, led by Hayes Jr., informed his wife on April 5, 2016. The Plaintiff was in desperate fear his wife could not mentally survive such devastating news. The Plaintiff and his wife had no relative that could help him single handedly perform the monumental task of moving to a new residence on such short notice, running his struggling small business, while watching

144

over his wife, who was on suicide watch again after the March 8, 2016 SHELLPOINT authorized attack on the Plaintiff's home as referenced in paragraphs 434 through 437, and Exhibit "83" of this complaint.

464.    The Plaintiff, on April 5, 2016, asked a prior neighbor and one his clients for advice and guidance. These neighbors and clients, who the Plaintiff had confided in over the past two years, and whom had knowledge of and had witnessed one of SHELLPOINT's illegal surveillance of Plaintiff's home, rallied to the Plaintiff's and his wife's rescue. By word of mouth the Plaintiff's and his wife's friends, neighbors, clients, and even one of the Plaintiff's fiercest competitors, outraged by SHELLPOINT's prolonged attacks and illegal actions, responded in an overwhelming show of volunteered assistance that the Plaintiff and his wife never knew existed in these times. An armada of trucks of all sizes, some with flat bed trailers to haul the Plaintiff's wife's small nursery of plants, came from 30 to 35 miles away from small farming communities. They helped the Plaintiff hastily move into a house under renovations with no kitchen, and no flooring in 40% of the house, and to newly rented self storage. The prior neighbor had arranged for a friend of his, who owned a moving company, to move all of the large furniture on short notice and at a huge discount for the Plaintiff.

465.    On April 6, 2016, one of the movers reported to the Plaintiff his wife had closed the master bedroom door and was crying uncontrollably. The Plaintiff's worst fears had come true. The Plaintiff had to sedate his wife and remove her from the home. She suffered another mental breakdown. The Plaintiff and his wife's caregiver/bodyguard activated their suicide watch procedure for the fifth time in eleven months; triggered by fear of actions initiated by Defendant SHELLPOINT. By Friday, April 8, 2016, these miracle workers, who left their regular jobs to help, completed this monumental task as Defendant SHELLPOINT was well aware. The SHELLPOINT authorized "surveillance team" was spotted parked across the street from the Plaintiff's home photographing the movers and their trucks.

COMPLAINT

466.     On Friday, April 8, 2016, the Plaintiff had miraculously completed his SHELLPOINT forced move. The Plaintiff, out of respect and love for his neighbors, secured the property, posted additional "no trespassing" signs, left the water and electricity on until April 15, 2016 to protect the home and plants which were on timer. The interior of the home was left clean, with all blinds closed and all doors locked. The Plaintiff would not compromise his principles and values by engaging in the low life deceitful, illegal acts and practices of the immoral employees and representatives in Defendant SHELLPOINT's Houston TX escalations office, in particular Wendall Hayes, Jr. The Plaintiff sent to Defendant SHELLPOINT on April 8, 2016, an express mail letter containing the keys to the 3716 Crest Drive property, photographs of the clean interior of the vacant property, and the new no trespassing sign posted on the front door, as well as instructions for operating systems for the home. A copy of the Plaintiff's April 8, 2016 letter to Defendant SHELLPOINT, copied to: Kamala Harris, California Attorney General; Kevin D. McCarthy, Majority leader of US House of Representatives, the CFPB, and FREDDIE MAC is attached to this complaint as Exhibit "89" and incorporated herein by reference. The Plaintiff's April 8, 2016 letter to Defendant SHELLPOINT was confirmed received by SHELLPOINT Monday, April 11, 2016 at 7:41 AM (EST), or 4:41 AM pacific time; 5 hours prior to the scheduled foreclosure sale on the Plaintiff's home.

467.     The Plaintiff checked Clear Recon Corp's foreclosure website, www.auction.com, for the latest up to date status of the scheduled foreclosure sale on his home, as instructed by SHELLPOINT's and Clear Recon Corp's March 14, 2016 recorded NOS, Mailed March 21, 2016, received by the Plaintiff March 28, 2016, using the assigned case 500482-CA-ORD or phone number (800) 280-2832. The Plaintiff checked by telephone and auction.com website, Friday, April 8, 2016 between 4:00 PM and 4:15 PM, and again Monday, April 11, 2016 between 8:05 AM and 8:15 AM. The status of the sale was confirmed as scheduled for sale at 10:00 AM pacific time. Clear Recon Corp advised the

146

COMPLAINT

Plaintiff on April 6, 2016 that they do not have an email address and all correspondence has to be done by phone at (858) 750-7600, or by fax at (858) 412-2190 in addition to a sales information line at (800)280-2832. It was obvious Clear Recon Corp didn't want any email communication records that would possibly expose their violations of HBOR and applicable state of California foreclosure laws and regulations.

468.     The Plaintiff attended the scheduled foreclosure sale of April 11, 2016 at 10:00 AM in order to meet and confer with any unsuspecting successful bidder. The Auctioneer at the sale stated the sale had just been "postponed at the beneficiary's request". This SHELLPOINT action confirms the Plaintiff's allegations that Defendant SHELLPOINT deliberately and diabolically forced, tricked, harassed, and terrorized the 78 year old senior citizen Plaintiff and his wife to abandon their home of ten years. This SHELLPOINT programmed no modification - foreclosure only  scheme led by SHELLPOINT's Houston TX escalations office, and the notorious Hayes, Jr. is the ultimate documented proof of SHELLPOINT's unfair, deceitful and abusive acts and practices against the Plaintiff and his wife over the past two and one half years.

469.     On April 12, 2016, the Plaintiff wrote a certified complaint letter to Defendant FREDDIE MAC notifying them of SHELLPOINT's illegal actions of recording an illegal NOS in violation of HBOR and CFPB laws and regulations for loss mitigation and causing the Plaintiff's forced abandonment of his home of ten years at 3716 Crest Drive in order to protect he and his wife's health, safety and welfare from well documented physical attacks on his home, as evidenced in this complaint. This April 12, 2016 letter to Defendant FREDDIE MAC called for FREDDIE MAC, the alleged but unverified owner and holder of the Plaintiff's mortgage, to investigate, for the fourth time, SHELLPOINT and their representative Hayes, Jr.'s well documented illegal, vengeful actions against the Plaintiff.

470.     Defendant FREDDIE MAC refused to answer this Plaintiff letter continuing their pattern of non-response beginning with the first letter dated April 4, 2014, Exhibit "11"

147

of this complaint. Defendant FREDDIE MAC has never claimed or proven they ever held any verifiable, documented ownership of the Plaintiff's mortgage or that Defendants RESURGENT and/or SHELLPOINT were ever an authorized agent of FREDDIE MAC. A copy of the Plaintiff's certified mailed April 12, 2016 letter to Defendant FREDDIE MAC is attached to this complaint as Exhibit "90" and incorporated herein by reference.

471.    On Monday, April 25, 2016, the Plaintiff received a letter dated April 15, 2016, but not mailed until April 18, 2016, in response to the Plaintiff's April 4, 2016 letter (Exhibit "84" of this complaint), stating "we are working to gather the requested information and will forward to you as soon as possible. If you have any additional questions or concerns, please contact our customer service department at 866-316-4711."

472.    This SHELLPOINT April 15, 2016 letter to the Plaintiff again despicably advises the Plaintiff to call their representatives when, in fact, Defendant SHELLPOINT knows they are going to refuse to talk to him about his file. The Plaintiff received Defendant SHELLPOINT's April 15, 2016 letter, in house postage meter stamped Monday, April 18, 2016, on Monday, April 25, 2016, after Defendant SHELLPOINT and Clear Recon Corp completed their rescheduled April 25, 2016 10:00 AM foreclosure sale on the Plaintiff's home originally scheduled for April 11, 2016 at 10:00 AM. Defendant SHELLPOINT had no intention of answering the Plaintiff's QWR April 4, 2016 letter, under RESPA 2605, to Defendant SHELLPOINT (Exhibit "86" of this complaint) as described in paragraphs 458 through 460, before successfully completing their illegal foreclose sale on April 25, 2016 in clear violation of CFPB and HBOR laws and regulations referenced in this complaint.

473.    On April 14, 2016 the Plaintiff received a certified mail letter from Clear Recon Corp dated April 11, 2016, giving first legal notice that the foreclosure sale on his home at 3716 Crest Drive, Bakersfield, CA was postponed from April 11, 2016 and was rescheduled for Monday, April 25, 2016. This Clear Recon Corp letter to the Plaintiff was sent to his Post Office Box 5130, Bakersfield, CA 93388 because, as Defendant

COMPLAINT

SHELLPOINT and Clear Recon Corp was aware, the Plaintiff had been forced to abandon his home of ten years on April 8, 2016. A SHELLPOINT surveillance team had witnessed and photographed the Plaintiff's forced move as referenced in the Plaintiff's April 8, 2016 letter to Defendant SHELLPOINT (Exhibit "89" of this complaint).

474.    On April 19, 2016 the Plaintiff received a letter of response from Kamala D. Harris, Attorney General of the State of California, Department of Justice, to his complaint letter of March 31, 2016 as referenced in paragraph 462 and Exhibit "88" of this complaint. Attorney General Kamala Harris recommended the Plaintiff redirect his complaint for violation of HBOR laws and regulations to the California Department of Business Oversight Consumer Services office.

475.    On April 15, 2016 the Plaintiff sent a second complaint letter to Kamala D. Harris, Attorney General of the State of California, with enclosures and exhibits referencing the illegal actions of Defendant SHELLPOINT and their agents resulting in forced abandonment of the Plaintiff's home of ten years, at 3716 crest Drive, Bakersfield, CA. A copy of the Plaintiff's April 15, 2016 letter to Kamala D. Harris, Attorney General of the State of California is attached to this complaint as Exhibit "91" and incorporated herein by reference.

476.    On April 19, 2016 the Plaintiff refiled his complaints against Defendant SHELLPOINT and Clear Recon Corp (Exhibits "85", "88", and "91" of this complaint) with the California Department of Business Oversight Consumer Services Office. A copy of the Plaintiff's April 19, 2016 complaint letter is attached to this complaint as Exhibit "92", and incorporated herein by reference.

477.    After Defendant SHELLPOINT and Clear Recon Corp harassed and terrorized the Plaintiff into abandoning his home on Friday, April 8, 2016, and after SHELLPOINT and Clear Recon Corp postponed the Monday, April 11, 2016, 10:00 AM foreclose sale at the last minute, Clear Recon Corp posted the opening bid on the foreclosure of the Plaintiff's home at an estimated one hundred eighty thousand dollars ($180,000) on auction.com for

COMPLAINT

the rescheduled foreclosure sale on Monday, April 25, 2016. A copy of Clear Recon Corp's web posting of the foreclosure sale with an estimated opening bid of $180,000 with photos of the Plaintiff's home located at 3716 Crest Drive, showing no automobiles in the driveway or parked in front of the property, is attached to this complaint as Exhibit "93" and incorporated herein by reference.

478.    The web posted photos in Exhibit "93" prove conclusively the physical sneak attack on the Plaintiff's home March 8, 2016 to post Clear Recon Corp's unsigned, undated, illegal Notice of Sale on the Plaintiff's front door as described in paragraphs 456 through 457, and Exhibit "83" of this complaint, which terrorized the Plaintiff's wife.

479.    This Clear Recon Corp estimated opening bid of $180,000 on the Plaintiff's home was authorized by Defendant SHELLPOINT. This estimated opening bid was approximately $227,000 less than the principal balance of approximately $407,000 on the Plaintiff's mortgage, and $291,500 less than Defendant SHELLPOINT claimed the Plaintiff owed on his mortgage. This SHELLPOINT estimated opening foreclosure bid of $180,000 proves conclusively the Plaintiff's allegations beginning in September 2013 that Defendants RESURGENT and SHELLPOINT, led by their common escalations department representative Hayes, Jr., had no intention of ever evaluating or processing the Plaintiff's multiple fully compliant UBAF's in compliance with CFPB and HBOR laws and regulations, or their own original instructions and original document request. Defendants RESURGENT and SHELLPOINT's single purpose deceitful and vindictive goal was to foreclose the senior citizen Plaintiff out of his home and sell the property to a "house flipper" out of retaliation for the Plaintiff's reporting of their continual unlawful violations of federal and state of California consumer protection laws to be identified at trial.

480.    On Monday, April 25, 2016 the Plaintiff attended the 10:00 AM scheduled foreclosure sale of 3716 Crest Drive, Bakersfield, CA. There were approximately sixty to seventy people in attendance for the sale of multiple properties by auction.com. The

COMPLAINT

auctioneer that cried the foreclosure sale announced the property address for the sale but disclosed the owner of the Plaintiff's mortgage only as the "beneficiary". The opening bid by the beneficiary was the estimated one hundred eighty thousand dollars (180,000). No one bid on the Plaintiff's house. The auctioneer then deviously raised the beneficiary's bid in ten thousand dollar increments, starting with $190,000 up to $220,000, and then one final creditor (beneficiary) bid of $255,549. The Auctioneer then pleaded for someone to bid "one penny" over the beneficiary's final bid, to no avail. The property was then Trustee's deeded to Shellpoint Mortgage Servicing who had claimed over the past two years, in written correspondence to the Plaintiff, multiple unverified owners and holders of the Plaintiff's mortgage who were allegedly the authorized owners entitled to foreclose and gain title to the Plaintiff's property through foreclosure. Defendant SHELLPOINT had refused to answer over ten (10) written demands for proof of Defendant SHELLPOINT's authorization to act as agent for or loan servicer for any documented valid creditor (owner and holder of the Plaintiff's mortgage) beginning March 14, 2014, as shown in Exhibit 10 of this complaint. All written requests were sent as "QWR's" under RESPA 2605, the FDCPA, and other applicable federal and state of California consumer protections laws to be identified at trial. A copy of the TRUSTEE'S DEED UPON SALE, signed by Clear Recon Corp, granting ownership of 3716 Crest Drive to Defendant SHELLPOINT, dated April 27, 2016 but not recorded until May 4, 2016 is attached to this complaint as Exhibit "94", and incorporated herein by reference.

481.    It was evident that when none of the 60 to 70 attendees present at the foreclosure sale would not bid the minimum bid of one hundred eighty thousand dollars and one penny for the property at 3716 Crest Drive, Bakersfield, CA, after three cries for the minimum bid, Defendant SHELLPOINT and their unknown, and yet to be discovered, co-conspirators calculated, deceitful and devious scheme to sell the Plaintiff's home to a "house flipper" was thwarted. Defendant SHELLPOINT and co-conspirator Clear Recon Corp hastily realized they were trapped and started raising the creditor's bids to an

COMPLAINT

inflated $255,549 to try to save face and try to preserve value for a future sale of the property. The public and professional real estate investors has served public notice to Defendant SHELLPOINT and their unidentified, and yet to be discovered co-conspirators, that the real world value of the property at 3716 Crest Drive, Bakersfield, CA was less than $180,000 which was nowhere near the desperately inflated $255,549 SHELLPOINT final bid.

482.     Defendant SHELLPOINT, led by their Houston, TX escalations department's representatives, supervised by Hayes, Jr., and SHELLPOINT's unidentified and yet to be discovered co-conspirators, in their deliberate and willful quest for vengeance against the 78 year old senior citizen Plaintiff for reporting their multiple continuing and willful violations of federal and state of California loss mitigation laws and regulations, as well as applicable consumer protection laws to federal and state regulators, has resulted in devastating, grave, irreparable financial harm to the Plaintiff, as well as the unidentified, unverified valid owner and holder of the Plaintiff's first mortgage. SHELLPOINT's afore referenced actions, well documented in this complaint, were deliberate, deceitful, illegal and vengeful, as well as calculated and enacted with malice.

483.     Defendant SHELLPOINT chose to force an illegal foreclosure on the Plaintiff's home by using trickery and deceit over the past two years instead of evaluating and processing the Plaintiff's six (6) fully complete and compliant UBAF's in compliance with CFPB and HBOR laws and regulations.  The Plaintiff's initial request for loan modification on January 15, 2013 cited and noticed Defendant RESURGENT as a major hardship for requiring mortgage payment modification the evidence of expanding soil subsidence affecting the property and its amenities, with photos and bids from licensed contractors for repairs in excess of $30,000. This was addressed in the Plaintiff's hardship letters in his April 24, 2013 UBAF to Defendant RESURGENT, and addressed in a RESURGENT required independent appraisal made on the property at 3716 Crest Drive in June 2013. Over the past three years the escalating subsidence problem the

COMPLAINT

Plaintiff was trying to resolve to protect his family's safety was deteriorating to the point that an assessment made in January 2016 estimated the cost to rectify this unresolved problem to be between $70,000 and $90,000. The unidentified, unverified valid owner and holder of the Plaintiff's mortgage has been unjustly damaged by Defendant RESURGENT and SHELLPOINT's grievous, illegal actions against the 78 year old senior citizen Plaintiff over the past three years as a result of their well documented violations of federal and state of California loss mitigation laws and regulations, their growing hatred for the Plaintiff, and their quest for revenge.

484.     The Plaintiff has continued to pay the purchase money second mortgage holder CitiMortgage, a division of CitiBank, a member of the FDIC, after the loss of his home even though CitiMortgage is now an unsecured creditor due to Defendant SHELLPOINT's illegal and vengeful foreclosure on April 25, 2016. CitiMortgage has been damaged and defrauded out of their equity security by Defendant SHELLPOINT's illegal actions.

485.     On April 27, 2016, two days after illegally foreclosing on the Plaintiff's home at 3716 Crest Drive, Defendant SHELLPOINT sent the Plaintiff a letter, mailed April 28, 2016, in reply to the Plaintiff's QWR letter of April 4, 2016, Exhibit "86" of this complaint, stating "we are working to gather the requested information and will respond within the allotted time frame"; "If we can be of any further assistance, please contact our customer service department at 866-316-4711." This deceitful, unfair and abusive letter deliberately and despicably sent to the Plaintiff's home again induces him to call SHELLPOINT knowing they will not talk to him as evidence in Exhibits "86" and "88" of this complaint. Defendant SHELLPOINT's in house postage meter stamped April 28, 2016 letter, dated April 27, 2016, was received by the Plaintiff on May 9, 2016.

486.     On April 28, 2016, three days after Defendant SHELLPOINT illegally foreclosed on the Plaintiff's home at 3716 Crest Drive, Bakersfield, CA, SHELLPOINT composed a letter to the Plaintiff containing a request for an all new UBAF with all new updated

153

documentation. This letter was sent to the Plaintiff by Defendant SHELLPOINT's escalations department in Houston, TX. The Plaintiff received Defendant SHELLPOINT's April 28th letter on May 11, 2016. A copy of Defendant SHELLPOINT's letter to the Plaintiff, dated April 28, 2016, three days after SHELLPOINT's completion of their illegal, vengeful foreclosure on the Plaintiff's home at 3716 Crest Drive, Bakersfield, CA is attached to this complaint as Exhibit "95", and incorporated herein by reference.

487.     The SHELLPOINT April 28, 2016 letter to the Plaintiff, Exhibit "95", was a despicable vengeful act to torment, gloat, and inflict one last abusive, deceitful attack on the 78 year old senior citizen Plaintiff and his wife to intentionally and maliciously inflict mental anguish and harm, jeopardizing the Plaintiff and his wife's health and welfare. The escalations department of Defendant SHELLPOINT's Houston, TX office intentionally and illegally had "trip wired" the documented forced abandonment of the Plaintiff's home on April 4, 2016, as referenced in paragraphs 450 through 455, and Exhibits "86", "88", "89", and "91" of this complaint. Defendant SHELLPOINT tricked and forced the Plaintiff into abandoning his home of ten years with statements made by SHELLPOINT's Houston, TX escalations department's SPC Ruby Fielder in her after business hours phone call to the Plaintiff repeatedly stating there was nothing she could do for him, she could not talk to him about his file, and the foreclosure sale was scheduled for Monday, April 11, 2016 at 10:00 AM. Defendant SHELLPOINT's Houston, TX escalations department knew the Plaintiff's home was foreclosed upon on April 25, 2016. This unfair, deceptive, and abusive act inflicted grave, irreparable mental pain and torment on the Plaintiff and his wife while the escalation department of Defendant SHELLPOINT's Houston, TX office were gloating and celebrating their illegal acts and practices that completed their single purpose goal of driving the senior citizen Plaintiff and his wife out of their home through an illegal foreclosure.

COMPLAINT

488.    Defendant SHELLPOINT's escalations department's evil, despicable letter to the Plaintiff, dated April 28, 2016, Exhibit "95" of this complaint, again proves that Defendant SHELLPOINT is incapable of complying with CFPB and HBOR laws and regulations, the Privacy Act by exposing the Plaintiff to identity theft, in addition to purposely sending to the wrong loss mitigation application. The sending of the wrong application identifies the SHELLPOINT escalation department representative that ruthlessly and maliciously authored the SHELLPOINT escalations department letter of April 28, 2016 to the Plaintiff. The following proves the Plaintiff's allegations of willful and deliberate acts and practices by SHELLPOINT's escalations department Houston, TX office against the Plaintiff.

    a)   Defendant SHELLPOINT deliberately and willfully sent their April 28, 2016 letter to the Plaintiff with full knowledge that the Plaintiff had been forced to abandon his home on April 8, 2016, as referenced in Exhibit's "86", "88", and "89" of this complaint, and was foreclosed out of his property at 3716 Crest Drive, Bakersfield, CA on April 25, 2016 (Exhibit "94").

    b)   The April 28, 2016 SHELLPOINT letter, (Exhibit "95"), to the Plaintiff did not identify a designated SPC as required by CFPB and HBOR laws and regulations.

    c)   SHELLPOINT's April 28, 2016 letter to the Plaintiff, Exhibit "95", instructs the Plaintiff in bullet point one to complete and submit their "Uniform Borrowers Assistance Form (Enclosed)." Defendant SHELLPOINT's escalations department did not send a four page UBAF that the Plaintiff had completed five (5) previous times over the past two years, but instead sent a faded three page Request for Modification and Affidavit (RMA). This wrong loss mitigation application identified the SHELLPOINT escalations representative that authored the despicable and vengeful SHELLPOINT April 28,2 016 letter to the Plaintiff, Exhibit "95" of this complaint, as SHELLPOINT representative Kaufmann who sent a similar faded RMA instead of a referenced UBAF in her letter to the

COMPLAINT

Plaintiff dated July 7, 2016, Exhibits "51", "52", and "53", and paragraphs 266 through 289 of this complaint. SHELLPOINT representative Kaufmann is the only SHELLPOINT representative that ever sent a RMA to the Plaintiff at any time over the past two years. SHELLPOINT escalation department representative Kaufmann, part of SHELLPOINT's unethical, notorious Houston, TX based team, led by Hayes, Jr., had a previous history of being dishonest, unfair and purposely deceitful in her actions against the Plaintiff, including wrongfully declaring the Plaintiff's fully complete May 22, 2016 UBAF incomplete, as referenced in paragraphs 261 through 304; 320 through 337; 357 through 365; 384 through 393, and Exhibits "48" through "55", "59", "65", "69", and "70" of this complaint. Escalations department representative Kaufmann has a well documented history of continual violations of multiple CFPB, HBOR, and RESPA 2605 laws and regulations as referenced in this complaint which were reported to Defendants FREDDIE MAC and SHELLPOINT, and memorialized in the Plaintiff's CFPB complaint of November 9, 2015, Exhibit "66" of this complaint. Escalations representative Kaufman's unfair, deceptive and abusive actions against the Plaintiff between May 26, 2015 and April 28, 2016 are aggressive, calculated, and deliberately executed, with co-conspirators in SHELLPOINT's Houston, TX escalations department office, to inflict grievous, unwarranted emotional and mental harm to the 78 year old Plaintiff and his wife out of vengeance for the Plaintiff reporting her and her SHELLPOINT Houston, TX escalation team's illegal activities, as documented in this complaint, to federal and state of California regulators.

d) SHELLPOINT's April 28, 2016 letter to the Plaintiff, Exhibit "95", contained a blank IRS Form 4506-T with instructions stating "For assistance with completing this form, please refer to the enclosed document entitled "How to complete IRS Form 4506-T". This SHELLPOINT April 28, 2016 letter to the Plaintiff did not

COMPLAINT

include the referenced "How to Complete IRS Form 4506-T" instruction. The Plaintiff had previously completed Defendant SHELLPOINT's preprinted line 5 IRS Form 4506-T as instructed by SHELLPOINT's and IRS instructions, only to have it declared non-compliant due to the Plaintiff adding the required phone number. SHELLPOINT's escalations supervisor Hayes, Jr., declared the Plaintiff's addition of the required phone number on line 5 of IRS Form 4506-T on SHELLPOINT's defective preprinted information as an edited, altered, non-compliant Plaintiff executed document. Refer to paragraphs 323 through 326, and Exhibit "67" of this complaint. A wrongfully executed IRS from 4506-T exposes the Plaintiff to identity theft as SHELLPOINT has done deliberately and willfully in the past, as documented in this complaint.

e) SHELLPOINT's April 28, 2016 letter to the Plaintiff despicably instructs the Plaintiff to "call our loss mitigation department directly at (866) 825-2174 or SHELLPOINT's escalations department at (888) 467-1187 for further information about the Plaintiff's file" when, deceitfully, SHELLPOINT knows they will not talk to the Plaintiff about his file as referenced in paragraphs 448 through 455, and Exhibit's "86", "88", and "89" of this complaint.

489.   On April 29, 2016 the Plaintiff received a letter from the California Department of Business Oversight, dated April 26, 2016, confirming they had opened an investigation of the Plaintiff's complaint against Defendant SHELLPOINT's violation of HBOR regarding the forced abandonment of his home on April 8, 2016, and the illegal notice of sale recorded March 8, 2016 referenced in Exhibit "92" of this complaint. The complaint number assigned is 18223. A copy of the Department of Business Oversight letter dated April 26, 2016 is attached to this complaint as Exhibit "96", and incorporated herein by reference.

490.   On May 24, 2016 the Plaintiff received a letter dated May 11, 2016, via e-mail, from SHELLPOINT escalation department Houston, TX representative Loran Kaufmann,

COMPLAINT

cc'd to the State of California Department of Business Oversight, in response to the Plaintiff's complaint No. 18223 filed with the Department of Business Oversight on April 19, 2016, Exhibit "92" of this complaint. Defendant SHELLPOINT's Kaufmann deliberately and willfully back dated her letter, delivered to the Plaintiff on May 24, 2014, thirteen (13) days because she and SHELLPOINT were given fifteen (15) days from the Department of Business Oversight's April 26, 2016 letter (Exhibit "96") to respond to the Plaintiff's complaint number 18223, which expired May 11, 2016. A copy of SHELLPOINT's and escalation representative Kaufmann's backdated, e-mailed, May 11, 2016 letter to the Plaintiff and Department of Business Oversight, delivered May 24, 2016, is attached to this complaint as Exhibit "97", and incorporated herein by reference.

491.     The referenced deliberate and illegal back dating of correspondence to the Plaintiff is an unfair, deceitful and abusive act and practice utilized by SHELLPOINT and their Houston, TX based escalations teams as a regular procedure to cover up willful violations of federal and state of California loss mitigation laws and regulations required by the CFPB, HBOR, RESPA 2605 and the FDCPA, to name a few. SHELLPOINT's Kaufmann had also backdated her letter dated September 10, 2015 to the Plaintiff, as referenced in paragraphs 320 through 331, and Exhibits "59" and "65" of this complaint.

492.     Defendant SHELLPOINT's escalations department representative Kaufmann, who has well documented personal vindictive prejudices against the Plaintiff, resorted to responding to the Plaintiff's Department of Business Oversight April 19, 2016 complaint (Exhibit "97") with knowingly false and perjurious statements, half truths, and intentional material omissions. SHELLPOINT representative Kaufmann did reaffirm and recertify all of the false and perjurious statements in written correspondence to the Plaintiff with her letter of May 11, 2016 enclosures of exhibits as being truthful and accurate. The documented violations of federal and state of California loss mitigation and consumer protection laws contained in and attached to SHELLPOINT's Kaufmann's backdated May 11, 2016 letter, delivered via e-mail on May 24, 2016, and its enclosures are now

158

memorialized in the records of the Plaintiff's complaint No. 18223 with the Department of Business Oversight. A partial list of recertification and reaffirmation of SHELLPOINT written responses to the Plaintiff are as follows: Exhibits received as enclosures in SHELLPOINT's Kaufmann's May 11, 2016 backdated letter, in order of receipt, are identified as Exhibits: "4"-(without enclosures), "74", "60", "21", "11", "13", "46", "51", "84", "59", "40", "33", "7"-(without vital salient enclosures to be identified at trial), "26", and "76" of this complaint.

493.     All of the chronicled exhibits in paragraph 492, in addition to other Plaintiff submitted documents, are now reported and memorialized in CFPB and Department of Business Oversight records.

494.     On June 6, 2016 the Plaintiff received a letter from the Department of Business Oversight, dated May 31, 2016, stating that based on SHELLPOINT's response they considered the complaint resolved. The Plaintiff contests the finding due to false and perjurious statements and material omissions contained in SHELLPOINT's back dated May 11, 2016 response received by the Plaintiff May 24, 2016. The Plaintiff has no legal alternative but to file a civil action against the parties and co-conspirators named in this complaint as identified in following causes for action.


FIRST CAUSE OF ACTION

FRAUD BASED ON DECEIT AND MISREPRESENTATION

495.     The allegations of paragraphs 1 through 494 are re-alleged and incorporated herein by reference. This action is against Defendants RESURGENT, RCSLP, and SHELLPOINT.

496.     The Defendants claimed, and notified the Plaintiff that "we have serviced your loan in accordance with the original agreement and all applicable state laws and federal regulations", or a variation of said statement multiple times between 2013 and 2016.

COMPLAINT

497.     The Plaintiff was led to believe and trusted that the named Defendant's would, over the course of his request for loan modification beginning in January 15, 2013, abide by all applicable federal and state of California loan servicing laws and regulations regarding the original mortgage loan agreements, including, but not limited to, the initial RESPA Servicing Disclosure signed by the Plaintiff with his final loan disclosures, Note and Deed of Trust dated October 8, 2005. The execution of the RESPA Servicing Disclosure by the Plaintiff was made a condition of and was a part of the granting of the Plaintiff's loan by American Brokers Conduit, the original lender.

498.     The evidence in this complaint proves, beyond a reasonable doubt, these statements by the defendants were deliberate and willfully false statements to attempt to cover up grievous multiple malfeasances of federal and state of California laws and regulations, including, but not limited to, CFPB and HBOR loss mitigation and consumer protection laws, beginning on or about January 23, 2013.

499.     These referenced statements in paragraph 496 were deliberately made by the Defendants to fraudulently deceive the Plaintiff, regulators and the Plaintiff's Congressman, Kevin D McCarthy, to identify the known recipients of these deliberately false statements by the Plaintiff at the time of this complaint. The Plaintiff reserves the right to amend this list of known recipients upon discovery.

500.     Defendants RESURGENT and SHELLPOINT, individually and collectively, delivered and disclosed to the Plaintiff in their UBAF loan modification packages a document entitled "Frequently Asked Questions". A copy of the "Frequently Asked Questions" disclosure, sent multiple times to the Plaintiff, is hereby attached to this complaint as Exhibit "98" and incorporated herein by reference.

501.     Defendants RESURGENT and SHELLPOINT in this notice, Exhibit "98", disclosed to the Plaintiff, and the Plaintiff believed, "we will contact you within three business days of our receipt of your borrower response package to confirm that we have received your package and will review it to determine whether it is complete. Within five

COMPLAINT

business days of receipt of your request, we will send you a notice of incompleteness in the event there is any missing information or documentation that you must still submit." Refer to Exhibit "98", item 5.

502.     California Civil Code Section 2923 6 (f) requires that following the denial of a first lien loan modification the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial. If it is incomplete the notice shall state the additional documents and information required to make it complete, and the deadline for completing the application (UBAF). Defendant SHELLPOINT violated this civil code, repeatedly, after denial of each and every Plaintiff UBAF submission.

503.     Upon receipt of an incomplete loss mitigation application (UBAF) the loan servicer shall exercise reasonable diligence to obtain information from the borrower (12 CFR 1024.41 (b)(1)).

504.     A loan servicer cannot evade the requirements to evaluate the Plaintiff's complete loss mitigation applications (multiple UBAF's); California Civil Code (12 CFR 1024.41 (c)(2)(i)).

505.     The Plaintiff believed and trusted Defendants RESURGENT and SHELLPOINT statements in Exhibit "98" that his loss mitigation application(s), UBAF(s) would be evaluated and processed in compliance with all federal and state of California loss mitigation laws and regulations as disclosed and promised multiple times, in writing, to the Plaintiff between April 2013 to the date of this complaint.

506.     None of the six (6) loss mitigation applications and requests submitted by the Plaintiff to Defendants RESURGENT and SHELLPOINT beginning on or about January 15, 2013 through May 29, 2015 were evaluated as disclosed in Exhibit "98" or evaluated in compliance with federal and state of California loss mitigation laws and regulations as cited in paragraphs 496 through 503 of this complaint. All loss mitigation applications, UBAF's, submitted by the Plaintiff to the Defendants SHELLPOINT and RESURGENT were in compliance with the original instructions for a complete UBAF. All six (6)

COMPLAINT

Plaintiff UBAF's were deemed incomplete for undisclosed reasons, a violation of California Civil Code 2923.6 (f). Defendants RESURGENT and SHELLPOINT's willfully misrepresented the information and documents necessary for the Plaintiff to obtain fair and equitable consideration and evaluation of his six (6) loss mitigation request applications, UBAF's, over a three year period by deliberately changing the required documentation after their denials of the Plaintiff's UBAF's for incompleteness. These changed required information and documentation conditions were conflicting, contrary to, and undisclosed in, the defendant's original instructions sent to the Plaintiff prior to Defendants RESURGENT and SHELLPOINT's non-compliant denial letters which were in violation of California Civil Code 2923.6 (f).

507.     The Plaintiff hereby alleges that Defendants RESURGENT and SHELLPOINT deceitfully, deliberately, repeatedly and willfully misrepresented the information and required documents the Plaintiff was required to submit in and with his aforereferenced six (6) UBAF's for approval of his loss mitigation requests. The Plaintiff's six (6) submitted UBAF's were all compliant with all of Defendants RESURGENT and SHELLPOINT's original instructions and requested documentation. Defendants RESURGENT and SHELLPOINT's actions were in violation of referenced federal and California civil codes, as well as the Defendants disclosures and notices sent to the Plaintiff as referenced in this First Cause of Action, paragraphs 495 through 506.

508.     The Plaintiff repeatedly challenged the Defendant's illegal, non-compliant, denial letters by written challenge letters which were sent as "QWR"s under Section 6 of RESPA 12 USC Section 2605, which Defendants RESURGENT and SHELLPOINT refused to answer in a format that is compliant and required for "QWR"s as cited in Section 6 of RESPA (12 USC Section 2605 (e)(B)(2)(B)(C). The now 79 year old senior citizen Plaintiff has suffered extreme mental anguish and depression from Defendants RESURGENT and SHELLPOINT's continual violation of the referenced federal and state of California loss mitigation and consumer protection laws and regulations over the

162

COMPLAINT

past three years. The Plaintiff has spent hundreds of hours away from his small business and his family, and has spent thousands of dollars attempting to save his home of ten (10) years. The Plaintiff did not receive fair and equitable evaluation of his six (6) submitted, fully complete and compliant loss mitigation applications from Defendants RESURGENT, RCSLP, and SHELLPOINT, in compliance with the referenced federal and state of California loss mitigation and consumer protection laws. The Plaintiff estimates the Defendant's illegal actions caused by these aforereferenced misrepresentations has resulted in his small business suffering in excess of three hundred thousand dollars ($300,000) in actual losses and potential income as a result of the Defendant's illegal actions.

509.    The Plaintiff hereby restates his allegations that Defendants RESURGENT, RCSLP and SHELLPOINT had no intention of ever evaluating or processing the Plaintiff's loss mitigation applications (UBAF's) or requests in compliance with Federal or state of California laws and were "single focused" on foreclosing the Plaintiff out of his home of ten (10) years to attempt to cover up their massive well documented malfeasances of federal and state of California consumer protection laws. These were deliberate and willful vengeful actions of retaliation against the Plaintiff for his continual reporting of the Defendant's malfeasances to federal and state regulators, Congressman McCarthy, and Defendant FREDDIE MAC.

510.    On August 12, 2015 Defendant SHELLPOINT sent the Plaintiff a notice of completeness of his May 22, 2015 UBAF, submitted May 29, 2015, which gave the Plaintiff great hope and relief he could save his home of ten years (Refer to Exhibit "55" of this complaint). The escalations department of SHELLPOINT located in Houston TX, led by representatives Hayes, Jr. and Kaufmann, immediately, in a deliberate, willful deceitful act crushed the Plaintiff's hopes by overturning this August 12, 2015 SHELLPOINT completeness notice to the Plaintiff, Exhibit "55", as evidenced SHELLPOINT's Kaufmann's letter to the Plaintiff dated September 10, 2015, Exhibit

163

COMPLAINT

"59" of this complaint. SHELLPOINT's Kaufmann's letter of September 10, 2015, Exhibit "59", was challenged by the Plaintiff October 13, 2015, Exhibit "65" of this complaint. This SHELLPOINT August 12, 2015 completeness letter to the Plaintiff showcases the willful destructive, negligent, misrepresentations by Defendant SHELLPOINT to inflict great mental anguish and hopeless despair on the 78 year old Plaintiff and his wife. This despicable SHELLPOINT misrepresentation gives conclusive evidence of SHELLPOINT's single purpose goal of foreclosure only as a means to humiliate and destroy the Plaintiff out of retaliation for the Plaintiff reporting SHELLPOINT's illegal actions of deliberately and willfully violating federal and state of California loss mitigation laws and regulations. Defendant SHELLPOINT then stepped up their vindictive physical attacks on the Plaintiff and his home beginning October 17, 2015. Refer to Paragraph 370 through 374 and Exhibit "66" of this complaint.

511.    The Plaintiff's initial allegation of the Defendant's "foreclosure only" intentions was made in the Plaintiff's letter dated September 27, 2013 to Defendant RESURGENT's escalation department representative Hayes, Jr. as referenced in Exhibit "5" and paragraphs 31 through 35 of this complaint. Defendants RESURGENT and SHELLPOINT used their deceitful misrepresentation of required documents and information for loan modification approval as a weapon for denial of each of the Plaintiff's fully complete and compliant UBAF's.

512.    On or about July 15, 2013 the Plaintiff became suspicious of Defendant RESURGENT's methods of evaluating his April 22, 2013 UBAF when it was verbally denied by phone, a violation of California Civil Code 2923.6(f), and which is not in compliance with multiple federal and state of California loss mitigation laws and regulations.

513.    On or about August 13, 2013 the Plaintiff made a written demand, as a "QWR" under RESPA, to Defendant RESURGENT for the identity and direct contact information for the Plaintiff's creditor. A copy of the Plaintiff's August 13, 2013 letter to Defendant

COMPLAINT

RESURGENT is attached to this complaint as Exhibit "99" and incorporated herein by reference.

514.     On September 9, 2013 Defendant RESURGENT's Hayes, Jr. responded to the Plaintiff's August 13, 2013 letter, Exhibit "99" of this complaint, stating RESURGENT "is servicing the loan on behalf of Federal Home Loan Mortgage Corporation" (FREDDIE MAC). This letter, Exhibit "4" of this complaint, did not give any direct contact information as demanded by the Plaintiff in his August 13, 2013 QWR letter. Defendant RESURGENT's letter, Exhibit "4", alleging Defendant FREDDIE MAC was the Plaintiff's documented valid creditor was compromised by a copy of the Plaintiff's mortgage note, Exhibit "2" of this complaint, which was sent as an enclosure with RESURGENT's September 9, 2013 letter, Exhibit "4" of this complaint.

515.     Defendant RESURGENT for the first time disclosed to the Plaintiff that the original lender, American Brokers Conduit, had assigned the ownership of the Plaintiff's mortgage note, "without recourse", to Goldman Sachs Mortgage Company (refer to Exhibit "2", page 5 of 5 of this complaint) by an undated endorsement which contradicted the statement contained in RESURGENT's September 9, 2013 letter claiming Defendant FREDDIE MAC was the Plaintiff's creditor/owner and holder of the Plaintiff's mortgage note. These conflicting RESURGENT documents and statements drastically affected the Plaintiff's trust in RESURGENT's claims and disclosure of a valid documented creditor for his loan.

516.     The Plaintiff had performed each and every condition of his mortgage note and his deed of trust, Exhibits "2" and "3", and made timely payments of his monthly obligations under said note on his part of the conditions of these mortgage loan contracts except those conditions that he was prevented or excused from performing by virtue of Defendants RESURGENT and SHELLPOINT's conduct.

517.     The Plaintiff notified Defendant RESURGENT in his September 27, 2013 QWR letter, Exhibit "5", in response to Defendant RESURGENT's Hayes, Jr.'s September 9,

COMPLAINT

2013 letter, Exhibit "4", that he would curtail all monthly payments until Defendant RESURGENT gave verifiable proof of the valid documented owner and holder of this Plaintiff's mortgage loan, and proof of RESURGENT's written authorization to act as this proven owner and holder's agent/loan servicer.

518.    The Plaintiff, between August 13, 2013 and the date of foreclosure on the Plaintiff's home, April 25, 2016, sent in excess of twenty (20) QWR letters under RESPA and the federal and state of California FDCPA to Defendants RESURGENT and SHELLPOINT demanding verifiable documented proof of the Plaintiff's valid owner and holder of his mortgage, the direct contact information for said valid owner and holder of the Plaintiff's mortgage, and proof of Defendants RESURGENT and SHELLPOINT's written authorization to act as their agent or loan servicer.

519.    Defendant SHELLPOINT, who acquired the alleged servicing rights from alleged loan servicer Defendant RESURGENT for an unknown, unidentified, and unverified valid documented owner/holder of the Plaintiff's mortgage, as documented in a joint notice of transfer of servicing sent to the Plaintiff by Defendants RESURGENT and SHELLPOINT February 14, 2014, paragraphs 64 through 67 of this complaint, made Defendant SHELLPOINT an aquirer of servicing of defaulted debt and subject to the FDCPA and California Rosenthal Act as of March 1, 2014, refer to Exhibit "10" of this complaint.

520.    Between March 14, 2014 and April 25, 2016, the Plaintiff sent Defendant SHELLPOINT in excess of ten (10) QWR letters under RESPA and the FDCPA demanding the identification and proof of the verifiable valid documented owner and holder of the Plaintiff's mortgage and SHELLPOINT's proof of written authorization to act as agent and or loan servicer for said valid owner and holder as required by the FDCPA, California FDCPA (Rosenthal Act) and California B and P code 10233(a). Defendant SHELLPOINT refused to respond to the Plaintiff's multiple well documented "QWR"s under RESPA and the FDCPA with any verifiable evidence of a valid

166

documented creditor (owner and holder) of the Plaintiff's mortgage or SHELLPOINT's written authorization to act as agent or loan servicer for any verifiable valid documented creditor or owner of the Plaintiff's mortgage as referenced in the aforereferenced paragraphs and exhibits of this complaint.

521.    Between September 9, 2013 and April 25, 2016, the date of foreclosure on the Plaintiff's home at 3716 Crest Drive, Bakersfield, CA, Defendants RESURGENT, RCSLP and SHELLPOINT unfairly, deceitfully, and with devious willful intent disclosed in excess of seven different, and sometimes simultaneous, alleged valid owners and holders of the Plaintiff's mortgage, and alleged their valid written authorization to service and act as agent for said owners and holders without sending any verifiable proof as required by federal and state of California consumer protection laws, including RESPA and FDCPA. Defendants RESURGENT, RCSLP and SHELLPOINT deviously and willfully flipped the alleged ownership of the Plaintiff's mortgage back and forth in written notices to the Plaintiff amongst Defendants RCSLP, SHELLPOINT and FREDDIE MAC, sometimes days apart, in a contrived attempt to confuse and mislead the Plaintiff and cover up their violations of federal and state of California consumer protection laws referenced in this complaint. These grave intentional misrepresentations were maliciously made with intent to deceive the Plaintiff and fraudulently cover up grievous continual and well documented violations of CFPB and HBOR laws and regulations and deny the Plaintiff of his legal rights under the aforereferenced consumer protection laws in this complaint.

522.    The Plaintiff's allegations in paragraphs 512 through 521 of this complaint are verified as contrived, intentional and willful by the secret acts of Defendants RESURGENT, RCSLP, SHELLPOINT and unknown and undisclosed third parties, in deceitfully removing the Plaintiff's mortgage from the MERS system thus blocking the Plaintiff, his authorized representatives, and regulators from future access and examination of past flawed and illegal transfers of the ownership of the Plaintiff's

167

mortgage, and fraudulent past transfers of the Plaintiff's loan servicers. Refer to paragraphs 39 through 47; 60 through 70; 83 through 86, and Exhibits "6", "7", "9", "13" and "14" of this complaint. This deceitful, deliberate removal of the Plaintiff's mortgage from the MERS system was initiated on February 5, 2014 by unknown parties with MERS assignment of all rights, title and interest to the Plaintiff's mortgage to Defendant RCSLP, which was recorded February 12, 2014 in the office of the Kern County Recorder, in order to attempt to conceal the well documented fact that Defendants RESURGENT and RCSLP had illegally claimed that on December 4, 2013 RCSLP was the legal "owner and holder" of the Plaintiff's mortgage, which was in conflict with, and contrary to, the MERS transfer history of ownership Defendant RESURGENT's escalation representative,  Hayes, Jr., sent to the Plaintiff December 24, 2013, Exhibit "7" of this complaint.

523.     Defendants RESURGENT, RCSLP, SHELLPOINT and FREDDIE MAC have all refused to answer the Plaintiff's demand made in multiple certified mail QWR letters under RESPA and the FDCPA for full disclosure of the parties identities and purpose for permanently blocking access of all past and future transfer records for the Plaintiff's alleged mortgage owners and alleged authorized loan servicers/agents of the alleged owner of the Plaintiff's mortgage. All Defendants have refused to answer these multiple QWR letters under RESPA 2605 in the RESPA required response format; Section 6 of RESPA (12 USC Section 2605 (e)(1)(2)(3) et seq). In any event, a grave misrepresentation of the verifiable documented valid owner and holder of the Plaintiff's mortgage took place between December 4, 2013 and December 24, 2013.

524.     Defendants RESURGENT, RCSLP, and SHELLPOINT alleged sporadically at various times between January 13, 2013 and April 25, 2016 that Defendant FREDDIE MAC was the alleged owner and holder of the Plaintiff's mortgage but refused to provide the borrower with any documented verifiable valid proof of FREDDIE MAC's ownership, or verifiable documented proof they are, or ever were, an authorized agent

168

and/or loan servicer for the Plaintiff's mortgage. Defendant FREDDIE MAC at no time between January 15, 2013 to the date of filing of this complaint, made claim or provided proof to the Plaintiff that they were a valid documented owner and holder of the Plaintiff's mortgage or that Defendants RESURGENT, RCSLP, and SHELLPOINT was their verifiable documented agent.

525.    The Plaintiff alleges that only a valid, documented, and verifiable owner/beneficiary of his mortgage loan, as evidenced by Plaintiff's note, Exhibit "2", and deed of trust, Exhibit "3", or their documented valid assignees and/or their documented valid agent (loan servicer), with evidence of written authorization from the mortgage loan owner and holder of the Plaintiff's note and deed of trust, has the right to collect the mortgage debt, grant or deny any requested loan modifications, in compliance with federal and state of California loss mitigation laws and regulations, or initiate and foreclose on the Plaintiff's property, in compliance with California civil codes, including HBOR.

526.    The Plaintiff alleges that in any event a valid documented and verifiable owner/beneficiary of the Plaintiff's mortgage or their documented verifiable authorized agent/loan servicer must act in compliance with federal and state of California consumer protection laws identified but not limited to RESPA, FDCA, California Rosenthal Act, HBOR and the CFPB loss mitigation laws and regulations as well as other applicable federal and state of California laws and regulations to be identified at trial.

527.    Defendants RESURGENT, RCSLP and SHELLPOINT were individually and collectively negligent and libel for multiple acts of deceitful misrepresentation of the true valid documented and verifiable owner and holder of Plaintiff's mortgage who, on the date of filing of this complaint, is still unknown and unverified resulting in the Plaintiff's forced abandonment of his home on April 8, 2016, and SHELLPOINT's contrived illegal foreclosure on his home at 3716 Crest Drive, Bakersfield, CA on April 25, 2016.

COMPLAINT