# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH G. BEAVERS,<br><br>    Plaintiff,<br><br>    v.<br><br>NEW PENN FINANCIAL LLC, dba SHELLPOINT MORTAGE SERVICING; RESURGENT CAPITAL SERVICES LP; RESURGENT MORTGAGE SERVICING; FEDERAL HOME LOAN MORTGAGE CORPORATION; and DOES 1-50,<br><br>    Defendants. | Case No.: 1:17-cv-00747 - JLT<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS<br><br>(Doc. 24) |

    Kenneth Beavers asserts the defendants are liable for wrongful actions related to his applications for loan modification the foreclosure of his home. Defendants seek dismissal of the First Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 24) Because the Court concludes Plaintiffs fail to provide sufficient factual allegations to support his claims, the motion to dismiss is **GRANTED**.

**I.    Background and Factual Allegations**

    Plaintiff asserts he "executed and delivered" a promissory note in the amount of $408,000 to American Brokers Conduit, a lender, on a personal residence to on October 4, 2005. (Doc. 21 at 4, ¶ 15) He alleges the loan was secured by a Deed of Trust, which was delivered to Mortgage Electronic

1

Registration Systems, Inc., a beneficiary for American Brokers Conduit. (*Id.* at ¶ 16) According to Plaintiff, before he made his first mortgage payment, he was notified that his loan servicer was American Home Mortgage Servicing, Inc. (*Id.* at 4-5, ¶ 17)

He asserts that on March 26, 2012, "Bank of America, an alleged valid successor loan servicer, notified the plaintiff his loan servicing was transferred" to Resurgent Mortgage, which is a division of Resurgent Capital. (Doc. 21 at 5, ¶ 19) Plaintiff reports a month later, Resurgent Mortgage notified Plaintiff his loan servicing was placed with the company by Freddie Mac, not Bank of America. (*Id.*)

According to Plaintiff, he sent "his first request for modification or short sale and submitted a hardship letter" to Resurgent Mortgage on January 15, 2013. (Doc. 21 at 5, ¶ 20) Plaintiff asserts this request was a Qualified Written Request under the Real Estate Settlement Procedures Ac, 12 U.S.C. §2605. (*Id.*) He alleges he did not receive a response from Resurgent Mortgage until he filed a complaint, at which time "Resurgent Mortgage then provided Plaintiff with a Uniform Borrowers Assistance Form (UBAF) and written instructions for completion of the application and a list of required documents for loan modification approval." (*Id.*) He reports the document and instructions were received on April 19, and he "completed and submitted [the] UBAF [on] April 24, 2013. (*Id.*)

He reports he submitted six UBAFs to Resurgent Mortgage and Shellpoint between April 2013 and May 2015. (Doc. 21 at 5, ¶ 21) According to Plaintiff, each of the forms "were submitted in the same manner," and "were copied in their entirety, indexed, 3rd party certified as to content, double enveloped, addressed specifically and solely to defendants Resurgent Mortgage's and Shellpoint's designated single point of contact." (*Id.*) In addition, Plaintiff reports he sent the forms via certified mail. (*Id.*) Plaintiff contends he took these "precautions… because of defendants' Resurgent Mortgage and Shellpoint's repeated history of losing or mishandling multiple critical plaintiff's personal and business identification documents." (*Id.*, ¶ 22)

Plaintiff alleges, "Resurgent Mortgage verbally denied the plaintiff's April 2013 UBAF on July 15, 2013." (Doc. 21 at 6, ¶ 23) He asserts this was "a violation of the Consumer Financial Protection Bureau's (CFPB) and the state of California Foreclosure Reduction Act of2013 (HBOR) loss mitigation laws and regulations." (*Id.*) Plaintiff contends he "filed a written complaint," which "was

assigned to defendant Resurgent Mortgage's escalations officer, Wendell Hayes, Jr.[1]" (*Id.*, ¶¶ 23-24)

Plaintiff asserts that on September 9, 2013, he learned from an attachment to a letter from Resurgent Mortgage that "the original lender, ABC had assigned the plaintiffs note to Goldman Sachs Mortgage without recourse." (Doc. 21 at 9, ¶ 38) He alleges,

> This assignment was undated and contradicted defendant Resurgent Mortgage's April 2012 notice to the plaintiff stating defendant Freddie Mac was the owner and holder of the plaintiff's loan. If Freddie Mac did not own the plaintiff's note, they could not grant a loan modification or short sale, and the plaintiff would not be eligible for loan modification under federal loan modification programs.

(*Id.* at 9-10, ¶ 38) Plaintiff asserts that he then "sent an appeal letter/binder" to Resurgent, requesting proof of a valid present creditor, direct contact information for the valid creditor, and written proof of Resurgent Mortgage's "authorization to service the plaintiff's loan." (*Id.* at 10, ¶ 39) In addition, he "notified Resurgent Mortgage that all mortgage payments would be curtailed until Resurgent Mortgage provided valid documentation of the aforereferenced items." (*Id.*, ¶ 40)

Plaintiff asserts he "wrote in excess of twenty Qualified Written Request[s]" beginning September 29, 2013, "requesting vital information in regard to his multiple requests for loan modification." (Doc. 21 at 6, ¶ 27) He reports he also submitted thirteen requests were for "proof of a valid documented owner and holder of the plaintiff's mortgage and defendants Resurgent Mortgage's and Shellpoint's evidence of proof of authorization to act as agent/loan servicer of the plaintiff's mortgage from said valid owner holder." (*Id.* at 7, ¶ 28) Plaintiff contends the companies "disclosed in excess of five different entities or companies that were allegedly the valid owner and holder of the plaintiff's loan, including defendant Freddie Mac." (*Id.*, ¶ 29) However, Plaintiff contends the defendants "did not provide the plaintiff with any requested verifiable proof of a valid owner and holder of his loan or any evidence of verifiable authorization to service the plaintiff's loan from any of the disclosed alleged owners and holders of the plaintiffs loan over this period of time." (*Id.*, ¶ 30)

According to Plaintiff, on December 4, 2013, Resurgent Mortgage responded to the letter "by serving the plaintiff by certified mail a Notice of Default and Intent to Accelerate." (Doc. 21 at 10, ¶41;

---

[1] He asserts Mr. Hayes "was in control of the Plaintiff's file and loan modification request from August 1, 2013, as an escalations officer for defendant Resurgent Mortgage, until February 28, 2014, then as an escalations supervisor for defendant Shellpoint from March 1, 2014 until the date of foreclosure." (Doc. 21 at 6, ¶ 24)

3

*see also* Doc. 21 at 32-33) The Notice of Default informed Plaintiff that his mortgage loan was "in default for failure to pay amounts due." (Doc. 21 at 33) In addition, the document indicated that as of the date of mailing, "the total amount necessary to bring [the] loan current [was] $6,650.73." (*Id.*) Further, Plaintiff was informed:

> If you have not cured the default within Thirty Days (30) days of this notice which is 113/2014, (or if said date falls on a Saturday, Sunday, or legal holiday, then on the first business day thereafter), Resurgent will accelerate the maturity date of the Note and declare all outstanding amounts under the Note immediately due. Your property that is collateral for the Note may then be scheduled for foreclosure in accordance with the terms of the Security Instrument and applicable state laws.

(*Id.*) The Notice of Default indicated it was to "remain[] in effect until the default [was] cured." (*Id.*) Plaintiff contends he "was not 120 days late on his mortgage payment" when the Notice was issued, and it was a violation of federal law. (*Id.* at 10, ¶ 41)

Plaintiff reports that in March 2014, he was notified that "Shellpoint was the plaintiff's new loan servicer effective March 1, 2014." (Doc. 21 at 11, ¶ 47) He alleges he responded to the notice by sending a Qualified Written Request "dated March 14, 2014 to defendant Shellpoint demanding documented proof of original and successor creditors and written proof of authorization for Shellpoint to service the plaintiff's loan." (*Id.*, ¶ 49) The same month, Plaintiff asserts he attempted to access his Mortgage Electronic Registration Systems account online and discovered the status was marked "inactive," and he was denied "access to the history of recorded transfers of the plaintiff's mortgage loan owners and authorized servicers as well as any future transfers for his mortgage." (*Id.*, ¶ 51)

Plaintiff reports he submitted his sixth request for a loan modification on May 22, 2015. (Doc. 21 at 7, ¶ 32) He asserts that in response, Shellpoint "creat[ed] unreasonable, illogical and illegal conditions for loan modification approval." (*Id.*) Plaintiff alleges Shellpoint informed Plaintiff he needed to submit additional documents, including: (1) a "Profit and Loss Statement for his sole proprietor business showing his owner draws as an expense," (2) "[c]opies of his business trust account bank statements," and (3) "federal tax return information." (*Id.* at 7-8, ¶ 32) Plaintiff reports he sent a Qualified Written Request on July 17, 2015, "challenging these consumer traps conditions for loan modification approval." (*Id.* at 8, ¶ 33) He asserts that Shellpoint and its representative "refused to answer" and instead "issued a denial" on September 10, 2015. (*Id.*)

4

| | |
|---|---|
| 1 | Plaintiff alleges he sent a Qualified Written Request to Shellpoint on October 13, 2015, asking |
| 2 | "for a personal meeting to resolve the raging unfair dispute between the plaintiff and Shellpoint's |
| 3 | Houston, Texas escalations office led by Hayes, Jr." (Doc. 21 at 8, ¶ 34) According to Plaintiff, the |
| 4 | refusal of Resurgent Mortgage and Shellpoint "to answer these and other vital QWRs questions under |
| 5 | RESPA in a timely manner and format required by RESPA led to the unjust, unwarranted, and illegal |
| 6 | denial of the plaintiffs six complete UBAFs and was a major factor in the resultant foreclosure of his |
| 7 | home often years on April 25, 2016." (*Id.* at 8-9, ¶ 35) |

A trustee's deed upon sale was recorded May 4, 2016, conveying title to Shellpoint Mortgage. (Doc. 2-9 at 50-51) Shellpoint transferred title to Freddie Mac following the foreclosure. (Doc. 21 at 15, ¶ 65)

Based upon these facts, and additional allegations addressed below, Plaintiff identifies the following causes of action his First Amended Complaint: (1) failure to respond to Qualified Written Requests in violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605; (2) violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692; (3) violations of the Consumer Financial Protection Bureaus Loss Mitigation Laws, Regulations, and Procedures, 12 C.F.R. §1024.41; (4) violations of the Fair Credit Reporting Act, 15 U.S.C. § 1685; and (5) violation of the confidentiality of financial records and privacy under 12 U.S.C. § 3403 and 12 C.F.R. 1016. (*See* Doc. 21 at 6-29)

## II. Requests for Judicial Notice

Both parties request that the Court take judicial notice of various information to support their positions related to the motion to dismiss. The Court may take notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); *United States v. Bernal-Obeso,* 989 F.2d 331, 333 (9th Cir. 1993). The Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c).

Defendants request that the Court take "judicial notice of the current and past content of Shellpoint's websites." (Doc. 25 at 3) Defendants contend its attorney has provided a "true and accurate copy of …[the] 'Contact Us' page, which was by the undersigned counsel from Shellpoint's website at https://www.shellpointmtg.com/contact-us on September 6, 2017 at 10:39 am." (*Id.*) In

addition, Defendants assert they obtained a copy of the contact page from March 7, 2014, and request that the Court take judicial notice of its information. (*Id.* at 4, footnote omitted) Significantly, however, the contact information is relevant to the Court's evaluation of the factual sufficiency of Plaintiff's complaint under Rule 12(b)(6), discussed below. Accordingly, Defendants request for judicial notice of these documents is denied as moot.

Plaintiff also appears to request that the Court take judicial notice documents attached to his initial complaint, to which he refers in his opposition to the motion to dismiss. (*See* Doc. 27 at 2) The Court may take judicial notice of its own files and of documents filed in other courts. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006). However, the Court need not take judicial notice of prior filings submitted in the same case. *See, e.g., Hardesty v. Sacramento Metro. Air Quality Mgmt. Dist.,* 935 F. Supp. 2d 968, 979 (E.D. Cal. 2013). To the extent Plaintiff seeks to have the Court take judicial notice of the facts presented in the documents, the request is in appropriate as the facts are not capable of accurate and ready determination.[2] Therefore, Plaintiff's request for judicial notice is likewise denied.

### III. Pleading Requirements

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A complaint must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

A complaint must state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). The purpose is to give the defendant fair notice of the claims against him, and the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

---

[2] Moreover, Plaintiff is informed that once he filed an amended complaint in this action, the amended complaint supercedes the original complaint. *Lacey v. Maricopa County*, 2012 WL 3711591 at *1 n.1 (9th Cir. Aug. 29, 2012) (en banc). Thus, an amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 220.

6

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

### IV. Motion to Dismiss

Defendants assert that Plaintiff "fails to state a claim upon which relief may be granted" in his First Amended Complaint, and seeks dismissal of the claims pursuant to Rule 12(b)(6). (Doc. 24 at 2) A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations, quotation marks omitted).

A court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Therefore, the Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

## V. Discussion and Analysis

Defendants assert Plaintiff fails to identify any "particular wrongdoing" by Resurgent Capital and, as a result, "[t]he entire FAC should be dismissed as against Resurgent Capital." (Doc. 24 at 5) In addition, Defendants contend each cause of action raised by Plaintiff fails. (*Id.* at 5-12) Plaintiff opposes the motion to dismiss, arguing his claims are supported by the factual allegations. (*See generally* Doc. 27)

### A. First Claim for Relief: Failure to Respond to Qualified Written Requests

Plaintiff contends defendants Resurgent Mortgage and Shellpoint violated the Real Estate Settlement Procedures Act by failing to respond to his qualified written requests. (Doc. 21 at 6-9)

#### 1. RESPA Legal Standards

The Real Estate Settlement Procedures Act ("RESPA") provides that home buyers must be given certain disclosures relating to the mortgage loan settlement process. *See* 12 U.S.C. § 2601. For example, loan servicers "of a federally related mortgage loan" must respond to a "qualified written request from the borrower… for information relating to the servicing of such loan." *See* 12 U.S.C. § 2605(e). To trigger a loan servicer's duty to respond under the RESPA, a qualified written request must (1) be a written communication, and (2) include both "the name and account of the borrower" as well as (3) "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. §2605(e)(1)(B)(i)-(ii).

Upon receipt of a qualified written request, the loan servicer must "provide a written response acknowledging … the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period." 12 U.S.C. § 2605(e)(1)(A). In addition, the loan servicer has sixty days after the receipt of a qualified written request to respond to the borrower's inquiry. 12 U.S.C. § 2605(e)(2). If a loan servicer fails to comply with its duties, the servicer may be liable for (1) "any actual damages" the borrower suffered as a result of the servicer's failure to comply with its duties, and (2) "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $ 2,000." 12 U.S.C. §2605(f).

### 2. Plaintiff's claim

To state a cognizable claim for a RESPA violation for failure to respond to a qualified written request, a plaintiff must allege he submitted a request within the meaning of 12 U.S.C. § 2605(e), the loan servicer failed to respond, and he suffered damages as a result of the RESPA violation.

#### a. Statute of limitations

As an initial matter, claims brought under 12 U.S.C. § 2605 are subject to a three-year statute of limitations. *See* 12 U.S.C. § 2614. The statute of limitations begins to run when the loan servicer's response is due to the borrower, or sixty days after the receipt of the inquiry. *See* 12 U.S.C. § 2614; *Urbano v. Bank of Am., N.A.*, 2012 WL 2934154 at *7 (E.D. Cal. July 18, 2012).

Plaintiff asserts that "[b]etween September 29, 2013 and April 8, 2016 … [he] wrote in excess of twenty Qualified Written Request[s]." (Doc. 21 at 6, ¶ 27) Because Plaintiff initiated this action by filing a complaint on March 22, 2017, his claim is barred as to any requests made prior to January 21, 2014. *See* 12 U.S.C. § 2614; *Urbano*, 2012 WL 2934154 at *7.

#### b. Whether the communications were qualified written requests

Plaintiff alleges he sent communications to the defendants "requesting vital information in regard to his multiple requests for loan modification." (Doc. 21 at 6, ¶ 27) In addition, Plaintiff asserts he sent "in excess of thirteen [requests for]… proof of a valid documented owner and holder of the plaintiff's mortgage and defendants Resurgent Mortgage's and Shellpoint's evidence of proof of authorization to act as agent/loan servicer of the plaintiffs mortgage." (*Id.* at 7, ¶ 28) Plaintiff contends the defendants responded over the years to his requests by disclosing "five different entities or companies that were allegedly the valid owner and holder of the plaintiff's loan, including defendant Freddie Mac." (*Id.*, ¶ 29) He asserts the defendants "did not provide … any requested verifiable proof of a valid owner and holder of his loan or any evidence of verifiable authorization to service the plaintiff's loan." (*Id.*, ¶ 30) Finally, Plaintiff contends he sent a letter on October 13, 2015, to request "a personal meeting at any Shellpoint office." (*Id.*, ¶ 31) According to Plaintiff, the defendants either failed to respond or inadequately responded to each of these requests. (*See id.* at 6-8, ¶¶ 27-35)

Significantly, the Ninth Circuit observed that servicing, as defined under RESPA, "does not include the transactions and circumstances surrounding a loan's origination – facts that would be

relevant to a challenge to the validity of an underlying debt or the terms of a loan agreement. Such events precede the servicer's role in receiving the borrower's payments and making payments to the borrower's creditors." *Medrano v. Flagstar Bank*, FSB, 704 F.3d 661, 666-67 (9th Cir. 2012). Requests for information "relating to the original loan transaction and its subsequent history" do not qualify as qualified written requests. *Junod v. Dream House Mortg. Co.*, 2012 WL 94355 at *4 (C.D. Cal. Jan. 5, 2012); *see also Consumer Solutions REO, LLC v. Hillery*, 658 F. Supp. 2d 1002, 1014 (N.D. Cal. 2009) (dismissing a RESPA claim with prejudice after observing the requirement "[t]hat a QWR must address the *servicing* of the loan, and not its validity, is borne out by the fact that § 2605(e) expressly imposes a duty upon the loan servicer, and not the owner of the loan") (emphasis added). Thus, a request for "the name, address, name of a contact person and telephone number of the current holder in due course and owner of the mortgage note" is not a qualified written request within the meaning of RESPA. *Junod v. Dream House Mortg. Co.*, 2012 WL 94355 at *3-4.

Likewise, Plaintiff's requests for "information in regard to his multiple requests for loan modification" are not qualified written requests within the meaning of RESPA. Courts have consistently determined that requests—such as Plaintiff's in this action— related to loan modification are not related to "servicing" of a loan. *See, e.g., Au v. Republic State Mortg. Co.*, 948 F.Supp.2d 1086, 1104 (D. Haw. 2013) (holding a request for loan modification and loan documents is not a qualified written request, and the servicer "had no obligation under RESPA to respond"); *Tavake v. Chase Bank*, 2012 WL 6088305 at *4 (E.D. Cal. Dec. 6, 2012) ("a QWR must relate to the servicing of a loan and not to a loan modification"); *Van Egmond v. Wells Fargo Home Mortg.*, 2012 WL 1033281, at *4 (C.D. Cal. Mar. 21, 2012) ("RESPA only obligates loan services to respond to borrowers' requests for information relating to the *servicing* of their loans, which does not include loan modification information" [emphasis in original]). Further, Plaintiff fails to allege facts supporting the conclusion that his request for a meeting with Shellpoint representatives is a qualified written request related to the *servicing* of his loan under RESPA, rather than Plaintiff's continued requests for loan modification.

Accordingly, the factual allegations in the First Amended Complaint are insufficient to support the conclusion that Plaintiff made any timely "qualified written requests" within the meaning of RESPA to Resurgent Mortgage or Shellpoint.

c.  Failure to identify damages

Finally, RESPA provides that a loan servicer shall be liable for actual damages to an individual who brings an action. *See* 12 U.S.C. § 2605(f)(1). "Although this section does not explicitly set this out as a pleading standard, a number of courts have read the statute as requiring a showing of pecuniary damages in order to state a claim." *Allen v. United Financial Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009); (citing *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) ["alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages"]); *see also Pok v. American Home Mortg. Servicing, Inc.*, 2010 WL 476674 at *5 (E.D. Cal. Feb. 3, 2010) (dismissing a RESPA claim based on the plaintiff's failure to allege any facts supporting a conclusion that the defendant's alleged violation resulted in pecuniary damages).

Even assuming Plaintiff made qualified written requests to Resurgent Mortgage and Shellpoint, he fails to allege actual damages as a result of the alleged RESPA violations. Consequently, his claim for a violation of RESPA is not cognizable, and is **DISMISSED** with leave to amend.[3]

**B.    Second Claim for Relief: Violations of the Fair Debt Collection Practices Act**

Plaintiff alleges Resurgent Mortgage, Resurgent Capital, and Shellpoint are liable for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692. (Doc. 21 at 9-15) Under the provisions of the FDCPA, debt collectors are prohibited "from making false or misleading representations and from engaging in various abusive and unfair practices." *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995); *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010). To establish a violation of the FDCPA, Plaintiff must show: (1) he was a consumer (2) who was the object of a collection activity arising from a consumer debt, and (3) the defendant is a "debt collector" as defined by the FDCPA, (4) who engaged in an act or omission prohibited by the FDCPA. *Miranda v. Law Office of D. Scott Carruthers*, 2011 U.S. Dist. LEXIS 55180, at *11 (E.D. Cal. May 23, 2011), citing *Turner v. Cook*, 362 F.3d 1219, 1227-28 (9th Cir. 2004).

The term "debt collector" is defined under the FDCPA as "any person who uses any

---

[3] If Plaintiff chooses re-state this claim in his amended complaint, he SHALL focus only upon communications made on or after January 21, 2014, which are not barred by the applicable statute of limitations.

11

instrumentality... in any business the principal purpose of which is the collection of any debts." 15 U.S.C. § 1692a(6)(A). The definition excludes any person who collects debt "to the extent such activity... (i) concerns a debt which was originated by such person; or (ii) concerns a debt which was not in default at the time it was obtained by such person." *Id.* § 1692a(6)(F).

Plaintiff fails to provide any substantive facts supporting the conclusion that Resurgent Mortgage, Resurgent Capital, and Shellpoint engaged in activity that meets the definition of "debt collection" under the statute. Moreover, it is well established that the FDCPA does not extend to cover the "consumer's creditors, a mortgage servicing company, or any assignee of the debt, so long as the debt was not in default at the time it was assigned." *Nool v. HomeQ Servicing*, 653 F. Supp. 2d 1047, 1053 (E.D. Cal. 2009) (quoting *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir. 1985)); *see also Angulo v. Countrywide Home Loans, Inc.*, 2009 WL 3427179 at *5 (E.D. Cal. Oct. 26, 2009) ("creditors, mortgagors and mortgage service companies are not debt collectors and are statutorily exempt from liability under the FDCPA"). Consequently, Plaintiff's FDCPA claim against the mortgage servicers is not cognizable, and is **DISMISSED**.

### C. Third Claim for Relief: Violation of the Consumer Financial Protection Bureau's Loss Mitigation Laws, Regulations, and Procedures

Plaintiff contends Shellpoint is liable for violating 12 C.F.R. § 1024.41. (*See generally* Doc. 21 at 15-21) Section 1024.41 sets forth the procedures lenders must follow when reviewing borrowers' loss mitigation applications, with the obligations differing where the submitted application was complete or incomplete. As a threshold matter, the allegations in Plaintiff's complaint are unclear as to whether the initial—or subsequent—loan modification applications that he submitted were complete.[4] Consequently, the Court is unable to determine which obligations arise under 12 C.F.R. § 1024.41.

Given the lack of clarity of Plaintiff's allegations, the Court declines to speculate as to how Plaintiff believes Shellpoint violated 12 C.F.R 1024.41. *See, e.g., Startz v. JPMorgan Chase Bank, N.A.,* 2017 U.S. Dist. LEXIS 76711 at *11 (C.D. Cal. May 19, 2017) (declining "to independently

---

[4] Plaintiff asserts he submitted "five fully completed UBAFs," (Doc. 21 at 21, ¶ 85) However, he fails to support the conclusion that the document was complete with all information and documents requested. Indeed, his pleadings contradict this conclusion, as Plaintiff indicates the company requested information he refused to provide because he believed it was not appropriate or lawful. (*See id.* at 7-8, ¶ 32)

review and determine [the defendant's] compliance with each and every requirement of 1024.41" where the plaintiff failed to "indicate which of the myriad subsections of th[e] regulation" he believed the defendant violated). Accordingly, the third claim for relief is **DISMISSED** with leave to amend.

### D. Fourth Claim for Relief: Violations of the Fair Credit Reporting Act

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Ant. v. Burr*, 551 U.S. 47, 52 (2007). The FCRA sought to make "'consumer reporting agencies exercise their grave responsibilities [in assembling and evaluating consumers' credit, and disseminating information about consumers' credit] with fairness, impartiality, and a respect for the consumer's right to privacy.'" *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) (quoting 15 U.S.C. § 1681(a)(4), modifications in the original). Accordingly, the FCRA also imposes duties on the credit furnishers, which are the sources that provide information to credit reporting agencies, to ensure accurate credit reporting. *See id.*

#### 1. Statute of limitations

As an initial matter, Defendants contend Plaintiff's claim is, in part, barred by the two year-statute of limitations under the FCRA. (Doc. 24 at 12-13) In relevant part, the FRCA provides that "[a]n action to enforce any liability created under this title be brought … not later than the earlier of—(1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. §1681p.

In the First Amended Complaint, Plaintiff alleges he "discovered that on March 14, 2014 defendant Shellpoint had reported a negative payment history to all national credit bureaus." (Doc. 21 at 22, ¶ 97) In addition Plaintiff asserts that on July 24, 2014, he "filed a complaint with defendant Shellpoint for violation of federal and state of California Fair Credit Reporting Acts that gave documented proof that Shell point was guilty of false credit reporting …." (*Id.* at 23-24, ¶ 103) He reports further that "[o]n November 11, 2014 [he] sent a second letter of complaint to defendant Shellpoint for false and illegal credit reporting after Shellpoint refused to examine or correct the plaintiff's credit report." (*Id.* at 24, ¶ 106) Finally, Plaintiff alleges Shellpoint falsely reported to credit

agencies that Plaintiff "still owed monthly payments on his mortgage after foreclosing on… April 25, 2016." (*Id.* at 26, ¶ 115)

To the extent Plaintiff's claim is based upon any alleged violations of the FRCA that he discovered prior to March 22, 2015—two years before the date he filed the complaint in Kern County Superior Court—they are barred by the statute of limitations, because Plaintiff had knowledge of the violations. *See* 15 U.S.C. §1681p. Thus, Plaintiff's claim fails to the extent it is based upon the discovery he made on March 14, 2014, as well as the alleged violation addressed in his complaints dated July 24, 2014 and November 11, 2014. However, his claim regarding reports made after the foreclosure in April 2016 is not barred by the statute of limitations.

### 2. Plaintiff's claim based upon the reports following foreclosure

Two categories of responsibilities are placed upon credit furnishers in the FCRA, as set forth in 15 U.S.C. §1681s-2. Subsection (a) outlines a furnisher's duty to provide accurate information to credit reporting agencies. *See* 15 U.S.C. § 1681s-2(a). Subsection (b) outlines a furnisher's duty to investigate after receiving notice of a dispute regarding credit-related information from a credit reporting agency. *See* 15 U.S.C. § 1681s-2(b). "The FCRA expressly creates a private right of action for willful or negligent noncompliance with its requirements." *Gorman*, 584 F.3d at 1154 (citing 15 U.S.C. § 1681(n)-(o); *Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002)). However, the FCRA "limits this private right of action to claims arising under subsection (b)." *Id.* (citing 15 U.S.C. § 1681s-2(c)).

Plaintiff contends the credit reports indicating of "increased debt claimed owed after Shellpoint's foreclosure have been ….driving the plaintiff's credit score down causing him and his business financial difficulties obtaining credit and unsecured loans." (Doc. 21 at 26, ¶ 116) According to Plaintiff, the erroneous reporting "is causing an undetermined and ever-growing financial damage to the 80 year old plaintiff's small sole proprietorship business." (*Id.*, ¶ 118) However, Plaintiff fails to allege facts sufficient to support the conclusion that Shellpoint had a duty to investigate under U.S.C. § 1681s-2(b). *See Ewing v. Wells Fargo Bank*, 2012 WL 4514055 at *4 (D. Ariz. Oct. 2, 2012) (dismissing a plaintiff's FCRA claim for failure to allege that the reporting agency sent notice of the plaintiff's consumer dispute to the defendant). As a result, Plaintiff fails to state a cognizable claim for

a violation of the FCRA, and his claim is **DISMISSED**.

      **E.    Fifth Claim for Relief: Violation of the Confidentiality of Financial Records and Privacy**

Plaintiff contends Shellpoint is liable for violations of 12 U.S.C. § 3403 and 12 C.F.R. §1016 for violation of confidential financial records and his privacy. (Doc. 21 at 27) Defendants seek dismissal of the claim to the extent it is based upon a violation of 12 C.F.R. §1016, asserting that "[t]he Consumer Financial Protection Bureau explicitly confirmed the lack of private right of action under Regulation P, which implemented 12 CFR part 1016." (Doc. 24 at 13) (citing Amendment to the Annual Privacy Notice Requirement Under the Gramm-Leach-Bliley Act (Regulation P), 79 FR 64057-01, 2014 WL 5426128 at *64068, n.65 (Oct. 28, 2014)). Specifically, the Bureau stated "there is no private right of action under Regulation P." *Amendment*, 2014 WL 5426128 at *64068, n.65.

In light of the lack of a private right of action under this provision, Plaintiff's claim for a violation of 12 C.F.R. §1016 fails as a matter of law. Therefore, the fifth claim for relief, to the extent it is based upon 12 C.F.R. §1016, is **DISMISSED** without leave to amend.

## VI.    Conclusion and Order

Based upon the foregoing, **IT IS HEREBY ORDERED**:

1. Defendants' motion to dismiss is **GRANTED**;
2. Plaintiff's first, second, third, and fourth claims for relief are **DISMISSED with leave to amend**;
3. Plaintiff's fifth claim for relief, to the extent it is based upon 12 C.F.R. §1016, is **DISMISSED without leave to amend**;
4. Plaintiff **SHALL** file a Second Amended Complaint within thirty days of the date of service of this order. Plaintiff **SHALL** exclude all unnecessary evidentiary detail, including allegations related to claims barred by the statute of limitations discussed above. Plaintiff **SHALL NOT** attach exhibits unless they are necessary to demonstrate legally operative facts. The Second Amended Complaint and any attachments thereto must not exceed 40 pages.

**Plaintiff is advised that failure to comply with this Order will result in the Court deeming as an**

**admission by the plaintiff that he cannot cure the compliant which will result in the matter being dismissed for this reason, for his failure to prosecute and/or his failure comply with an order of the Court pursuant to Local Rule 110.**

IT IS SO ORDERED.

    Dated: __**October 12, 2017**__            __**/s/ Jennifer L. Thurston**__
                                                              UNITED STATES MAGISTRATE JUDGE