1  Kenneth G. Beavers
   3200 21st Street, Suite 300
2  Bakersfield, CA 93301
   Cell: (661) 204-4646
3  Fax: (661) 327-9551
   Email: kenbeavers6@gmail.com
4  Plaintiff, Pro Se

**FILED**

NOV 1 4 2017

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
         DEPUTY CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH G. BEAVERS, | CASE NO.: 1:17-CV-00747-LJO-JLT |
| Plaintiff, | [Assigned to the Honorable Jennifer L. Thurston, Magistrate Judge] |
| vs. | |
| NEW PENN FINANCIAL, LLC DBA SHELLPOINT MORTGAGE SERVICING; FEDERAL HOME LOAN MORTGAGE CORPORATION AKA FREDDIE MAC AND DOES 1 – 10 INCLUSIVE, | **SECOND AMENDED COMPLAINT FOR DAMAGES** |
| Defendants. | 1. Violations of the Loss Mitigation Laws and Regulations of Consumer Financial Protection Bureau and The California Foreclosure Reduction Act of 2013 (CFR § 1024.41(b)(2)(i)(A)(B)(ii), individually and collectively, and California Civil Codes § 2923.7 (b)(1)-(5); 2923.7 (c)(d) and (e)) |
| | 2. Violation of the Privacy Act (12 U.S.C. § 3403 (a)-(b)) |
| | 3. Breach of Fiduciary Duty |
| | 4. Breach of the Covenant of Good Faith and Fair Dealing |
| | 5. Fraud Based On Deceit and Misrepresentation |
| | **DEMAND FOR JURY TRIAL** |
| | Complaint Filed:  March 22, 2017 |
| | Removal Filed:  May 30, 2017 |
| | FAC Filed:  August 14, 2017 |

The plaintiff hereby notices the honorable Court, all parties herein and their respective attorneys of record that the plaintiff elects to submit to the Court his Second Amended Complaint as allowed by order of the Court October 12, 2017.

## COMPLAINT FOR DAMAGES

Come now PLAINTIFF Kenneth G. Beavers, individually, and allege as follows:

1

## INTRODUCTION

1. The Plaintiff is an 80 year old California licensed Real Estate and Mortgage Broker with 36 years of experience in processing, underwriting and servicing private money and traditional loans for his sole proprietor small mortgage firm.

2. The plaintiff was led to believe that his alleged loan servicer, Shellpoint, would review his loan modification request and application, a Uniform Borrower Assistance Form ("UBAF") dated December 31, 2014, in compliance with all federal and state of California loss mitigation laws, regulations and procedures under the guidelines of the Consumer Financial Protection Bureau ("CFPB") and the State of California Foreclosure Reduction Act of 2013 AKA the Homeowner Bill of Rights ("HBOR"). This was the first of three UBAFs the plaintiff was compelled to submit in an effort to save his home of ten years from foreclosure.

3. This civil action seeks to establish the true and unequivocal facts that loan servicer Shellpoint did not review and process the plaintiff's submitted UBAFs in compliance with CFPB and HBOR loss mitigation laws and regulations, and that their appointed "Single Point of Contact(s)" ("SPOC") and escalations department employees were poorly trained and supervised. The plaintiff will also seek to establish, unequivocally, that Shellpoint lost, mishandled and failed to protect the plaintiff's submitted personal and business identification documents which Shellpoint claimed were allegedly required for loan modification approval. These unprotected documents included federal tax returns, social security entitlement letters, bank statements, and business profit/loss statements, which left the plaintiff exposed to identity theft. The plaintiff will also seek to unequivocally establish that Shellpoint gave a third party unauthorized continuing access to the plaintiff's Shellpoint file in August 2014 and refused to rescind this unlawful access, thus further exposing the plaintiff's personal and business identification records exposed to identity theft.

4. The plaintiff initially was led to believe that Freddie Mac was the owner and holder of the plaintiff's loan, which would make him eligible for government loss mitigation loan modification programs. Otherwise he would not. Between May 13, 2014 and January 2016 Shellpoint disclosed four different entities as being the owner and holder of the plaintiff's

2

mortgage. Shellpoint engaged in multiple, reckless, misrepresentations of the true valid owner and holder of the plaintiff's mortgage and refused to give verifiable evidence of their authorization to service the plaintiff's loan from any disclosed alleged owner and holder of the plaintiff's mortgage. These misrepresentations confused and tormented the senior citizen plaintiff, making it impossible to decipher if he was eligible for loan modification under federal government programs.

5. On April 4, 2014 the plaintiff wrote his first of four letters directly and solely to Freddie Mac, as advised by the plaintiff's former loan servicer, Resurgent Mortgage Servicing (Resurgent Mortgage"), asking if they claimed to be the owner and holder of the plaintiff mortgage and, if so claimed, was Resurgent Mortgage or Shellpoint their authorized valid agent/loan servicer. Freddie Mac refused to answer the plaintiff directly, even after the plaintiff's Congressman Kevin McCarthy contacted them in July 2014 and they agreed to contact the plaintiff directly and copy Congressman McCarthy. Freddie Mac and Congressman McCarthy's office agreed that Shellpoint was not authorized to respond for Freddie Mac due to the heated numerous disputes between the plaintiff and alleged loan servicer, Shellpoint. Shellpoint was so notified. It is the plaintiff's goal to show that the plaintiff's request for loan modification was not reviewed and processed in a fair, equitable and compliant manner, as required by federal and state of California loss mitigation laws and regulations, and that defendant Shellpoint's actions and inactions led to the senseless and unwarranted foreclosure on the plaintiff's home of ten years on April 25, 2016.

## PARTIES

6. At all times material to this complaint, plaintiff, KENNETH G. BEAVERS was a resident of the County of Kern and the owner of the real property which is the subject of this action, commonly known as 3716 Crest Drive, Bakersfield, CA 93306.

7. Plaintiff is informed and believes and thereon alleges that defendant NEW PENN FINANCIAL, LLC dba SHELLPOINT MORTGAGE SERVICING ("**Shellpoint**") is a Delaware corporation duly authorized to conduct business throughout the State of California. At all times relevant to the facts alleged herein, defendant Shellpoint was responsible for

1  assuring that the actions, omissions, policies, procedures, practices and customs of its

2  employees complied with the laws and the Constitution of the United States and of the State of

3  California.

4  8.  Plaintiff is informed and believes and thereon alleges that FEDERAL HOME LOAN

5     MORTGAGE CORPORATION ("**Freddie Mac**") is a federally chartered corporation and is

6     duly authorized to conduct business throughout the state of California.

7  9.  Plaintiff is ignorant of the defendants sued as Does 1 – 10 herein, and thereon alleges that said

8     Doe defendants are the agents, employees, representatives, subsidiaries, and controlled entities

9     of the named defendants herein and that each Doe defendant at all times herein were acting as

10    the agent and/or representative of each other and hereby are responsible in some manner for

11    the injuries and damages complained of herein.

12 10. Each of the defendants caused and is responsible for the unlawful conduct and resulting by,

13    inter alia, personally participating in the conduct, or acting jointly and in concert with others

14    who did so; by authorizing, acquiescing or failing to take action to prevent the unlawful

15    conduct; by promulgating policies and procedures pursuant to which the unlawful conduct

16    occurred; by failing and refusing, with deliberate indifference to plaintiff's rights, to initiate

17    and maintain adequate supervision and/or training; and by ratifying the unlawful conduct that

18    occurred by agents and employees under their direction and control. Whenever and wherever

19    reference is made in this complaint to any act by a defendant, such allegation and reference

20    shall be deemed to mean the acts and failures to act of each defendant individually, jointly and

21    severally. They are sued in their individual and official capacities and in some manner are

22    responsible for the acts and omissions alleged herein. Plaintiff will ask leave of this Court to

23    amend this complaint to allege such name and responsibility when that information is

24    ascertained. Each of the defendants is the agent of the other.

25                    **JURISDICTION AND VENUE**

26         **FEDERAL QUESTION AND SUPPLEMENTAL JURISDICTION**

27 11. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331, which

28    provides: "[t]he district courts shall have original jurisdiction of all civil actions arising under

4

1    the Constitution, laws, or treaties of the United States."

2 12. Because plaintiff alleges violations of multiple federal statutes and regulations, his action

3    arises under federal law and is subject to this Court's original jurisdiction.

4 13. Under 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over any other causes of

5    action alleged in the complaint as "the district courts shall have supplemental jurisdiction over

6    all other claims that are so related to claims in the action within such original jurisdiction that

7    they form part of the same case or controversy."

8                  **FACTS COMMON TO ALL CAUSES OF ACTION**

9 14. Plaintiff Kenneth G. Beavers repeats and re-alleges each and every allegation in paragraphs 1

10    through 14 of this Second Amended Complaint with the same force and effect as if fully set

11    forth herein.

12 15. On or about October 4, 2005, plaintiff, as borrower, made, executed and delivered to

13    AMERICAN BROKERS CONDUIT ("ABC"), Lender, a Promissory Note in the amount of

14    $408,000 on his personal residence, which on page 3, **"ITEM 8 – GIVING OF NOTICES"**

15    states:

16        "Unless applicable law requires a different method, any notice that

17        must be given to me under this Note will be given by delivering it or by

18        mailing it by first class mail to me at the Property Address above or at a

19        different address if I give the Note Holder a notice of my different

20        address."

21 16. In October 2005 the plaintiff notified ABC, the originator of his loan, that all legal notices and

22    correspondence will be sent to: Kenneth G. Beavers, P.O. Box 5130 Bakersfield, CA 93388,

23    which has since never been changed.

24 17. To secure payment of the principal sum and interest as provided for in the Note and as part of

25    the same transaction, plaintiff as trustor, executed and delivered to MORTGAGE

26    ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") as beneficiary for ABC, a

27    Deed of Trust dated October 4, 2005, by the terms of which plaintiff, as trustor, conveyed to

28    Stewart Title of California, as trustee.

18. The plaintiff submitted three loan modification requests AKA Uniform Borrower Assistance Forms (UBAFs) to defendant Shellpoint's appointed Single Point of Contact ("SPOC"); UBAF #1 on December 31, 2014 to SPOC Williams; UBAF #2 on March 24, 2015 to SPOC Sanford; and UBAF #3 to SPOC Sanford. Each and every document on defendant Shellpoint's original document request letters and UBAF loan modification applications were submitted as requested. All three of the plaintiff's UBAFs were submitted in the same manner. These applications for loan modification were copied in their entirety, indexed, with each and every document certified in writing by a 3rd party as to its submission, double enveloped, and addressed specifically and solely to defendant Shellpoint's designated single point of contact ("SPOC"). Each submission contained a copy of defendant Shellpoint's original documentation request sent to the plaintiff. The delivery envelopes were photographed before shipping by certified mail. A copy of the photo of the inner delivery envelope of the double enveloped plaintiff's March 24, 2015 UBAF #2 loan modification, similar to UBAFs #1 and #3, is hereto attached as Exhibit "A" and made a part of this complaint. These precautions were taken because of defendant Shellpoint's repeated documented history of losing or mishandling multiple critical plaintiff's personal and business identification documents subjecting him to identity theft, and to nullify defendant Shellpoint's SPOC and escalations representatives claims that the documents were not submitted in order to deny the completeness of the plaintiff's submitted UBAF package or deny the plaintiff's modification request.

19. The plaintiff, in all submitted UBAFs, submitted signed and dated individual and business tax returns **with ALL schedules**, including Schedule E, as well as signed and dated quarterly or year to date profit/loss statements. This eliminated Shellpoint's requirement for business bank statements, including the plaintiff's business client trust accounts, and rental leases, etc. for original submissions.

20. On July 7, 2015 the plaintiff received a letter from defendant Shellpoint stating:

> "Shellpoint Mortgage Servicing maintains that we are in full compliance with all state and federal laws as well as within the terms of

6

the loan note signed and dated October 5, 2005 as protected by the Deed of trust dated October 4, 2005. Additionally, we maintain that we are in compliance with all regulations regarding the handling of sensitive information provided by the borrower."

This type of statement was made to the plaintiff multiple times over the course of the loan modification process.

21. On January 13, 2015 Shellpoint denied the plaintiff's December 31, 2014 UBAF #1 stating the plaintiff did not "provided us with the documents we requested. We have notified you of the specific document we need" but did not identify the specific documents they claimed were missing.

22. The plaintiff filed an immediate appeal January 24, 2015 after receipt of the January 13, 2015 denial which Shellpoint acknowledged February 4, 2015. Shellpoint recorded a Notice of Default ("NOD") February 5, 2015 while the plaintiff's loan modification denial was under appeal.

23. From this point forward Shellpoint SPOCs and escalation department representatives lost control of the plaintiff's loan modification files and requests.

24. Shellpoint sent two answers to the plaintiff's January 24, 2015 appeal, one dated February 4, 2015 and the other dated February 16, 2015, identifying the items they claimed were missing from the plaintiff's UBAF #1. In each letter it was claimed that the plaintiff's tax returns and bank statements were missing, while the remaining documents listed as missing differed. Each letter demanded their differing conditions be submitted to different Shellpoint SPOCs, which, due to the loss of prior documents, the plaintiff was unable to do until the conditions were clarified and the proper SPOC was identified by Shellpoint.

25. This was the beginning of a series of lost or mishandled plaintiff personal and business identification records by defendant Shellpoint. Defendant Shellpoint lost or mishandled the plaintiff's federal personal and business tax returns, checking account statements, social security entitlement letters, rental leases, IRS form 4506-T from the plaintiff's three submitted loan modification requests of December 31, 2014 (UBAF #1), March 24, 2015 (UBAF #2),

7

1 | and May 22, 2015 (UBAF #3).

2 | 26. These items were verified missing from the plaintiff's UBAF packages, in writing, by

3 | Shellpoint escalations department representatives Washington, Hayes Jr., Cano, and

4 | Kaufmann. The plaintiff was exposed to identity theft by Shellpoint's reckless actions of not

5 | protecting the plaintiff's personal information submitted to them with extreme security.

6 | 27. In March of 2015 Shellpoint informed the plaintiff that the SPOC identified in their February

7 | 16, 2015 letter was a fictitious person that was not employed by Shellpoint, thus making it

8 | impossible for the plaintiff to meet the two different deadlines for submission of any requested

9 | conditions.

10 | 28. On March 24, 2015 the plaintiff submitted a new loan modification application (UBAF #2) as

11 | instructed by Shellpoint, which was denied in two letters, one dated March 30, 2015 and the

12 | other dated March 31, 2015, claiming differing missing documents were missing from his

13 | UBAF #2 and again instructing the plaintiff to submit these alleged different conditions to **two**

14 | different Shellpoint SPOCs which, once again, the plaintiff was unable to do until Shellpoint

15 | identified the exact required alleged missing documentation and the identity of their authorized

16 | SPOC to review them. The plaintiff made this request in writing April 14, 2015 and was fearful

17 | of losing his home since Shellpoint recorded a NOD February 5, 2015. Shellpoint

18 | acknowledged receipt of this plaintiff letter on April 21, 2015 and demanded on May 12, 2015

19 | that the plaintiff submit an all new application UBAF (#3), which the plaintiff meticulously

20 | prepared and signed May 22, 2015, which was confirmed received by Shellpoint June 1, 2015.

21 | 29. Shellpoint's letter, dated July 7, 2015, in their first response to the plaintiff's May 22, 2015

22 | UBAF, confirmed that Shellpoint had lost submitted, 3rd party verified documents, and it also

23 | contained unreasonable loan modification approval conditions which were impossible for the

24 | plaintiff to meet because they were against Generally Accepted Accounting Principles

25 | ("GAAP") and IRS Regulations for his sole proprietor business.

26 | 30. The plaintiff sent a written complaint and appeal July 27, 2015. On August 12, 2015 Shellpoint

27 | accepted the plaintiff's July 28, 2015 appeal and issued the plaintiff a Notice of Completeness

28 | for his May 22, 2015 UBAF #3.

1   31. On August 24, 2015 Shellpoint sent the plaintiff a document request list of items needed to
2       complete his loan modification request that included the plaintiff's personal 2014 federal tax
3       returns thereby confirming it was lost or mishandled. Shellpoint demanded a return delivery
4       deadline date of September 5, 2015 for receipt of these documents, and required the plaintiff
5       return them to Greenville, South Carolina in a Shellpoint prepaid blue regular mail envelope or
6       they would cancel the plaintiff's loan modification request. The plaintiff **did not** receive
7       Shellpoint's letter dated August 24, 2015 until September 1, 2015 thereby making it impossible
8       for the plaintiff to accumulate and return these documents in Shellpoint's required prepaid
9       regular mail envelope by September 5, 2015. The plaintiff filed an appeal by express mail on
10      September 1, 2014, and by confirmed fax September 2, 2015.
11  32. Shellpoint answered the plaintiff's September 1, 2015 appeal letter with a denial of his May 22,
12      2015 UBAF #3 and cancellation of his Notice of Completeness for not submitting the
13      requested documents by September 5, 2015 in their required prepaid regular mail envelope.
14  33. On September 29, 2015 the plaintiff received a letter from Shellpoint's escalations department
15      Loran Kaufmann ("Kaufmann") regarding Shellpoint's September 10, 2015 denial of the
16      plaintiff's May 22, 2015 UBAF #3 stating:
17              "You previously submitted a request to our office to cease and desist
18              communication with you via telephone and thus we have been unable to
19              contact you to discuss the additional documentation and the
20              requirements each document must satisfy and/or the information your
21              documentation should reflect. As a result of the cease and desist
22              request, your Single Point of Contact (both current and previous)
23              cannot contact you to advise of the status of the loan modification or
24              documents needed."
25      This Shellpoint statement was used as a theme for all Shellpoint responses to the plaintiff, and
26      the CFPB from August 11, 2015 through the date of foreclosure, April 25, 2016.
27  34. In the plaintiff's signed and dated May 22, 2015 UBAF #3, on page 4, item 10 titled Borrower-
28      Co-Borrower Acknowledgement and Agreement it states:

9

> "I consent to being contacted concerning this request for mortgage
> assistance at any telephone number, including mobile telephone
> number, or email address I have provided to the Lender/Servicer/or
> authorized third party*."

Page 1 of all UBAF forms require the applicant to provide their email address.

35. On October 13, 2015 the plaintiff sent a letter to Shellpoint requesting a personal meeting with Shellpoint at any office not under control of Shellpoint escalations supervisor Hayes Jr. to resolve **all** issues, which letter was confirmed received.

36. On November 1, 2015 Shellpoint recast the plaintiff's home loan and raised his monthly payment $502.00 per month, beginning December 1, 2015.

37. On January 8, 2016 Shellpoint allegedly sent a letter to the CFPB dated **January 8, 2015**, one year earlier, in response to a CFPB web portal complaint the plaintiff filed November 9, 2015.

38. Attached to the CFPB January 8, 2015 Shellpoint letter was a Streamline Modification Solicitation Letter ("SMSL"), dated January 4, 2016, addressed to the plaintiff at P.O. Box 5130 Bakersfield, CA. This SMLS letter was never sent or delivered to the plaintiff at his designated address as required under the plaintiff's October 4, 2005 promissory note, page 3 **"ITEM 8 – GIVING OF NOTICES"** and constitutes a violation of the terms and conditions of the plaintiff's note.

39. The alleged SMSL had a "drop dead" expiration date of Monday January 18, 2016, a national holiday, Martin Luther King Day, with no written disclosure of the right for extension or appeal. This Streamline Modification Solicitation Letter (SMSL) dated January 4, 2016 stated:

> "We have tried to contact you to discuss the foreclosure prevention
> options available to you, but your time is running out." "You must
> contact us at 866-825-2175 or in writing at the address provided below
> no later than January 18, 2016." "However, if you do not respond by
> January 18, 2016 we will continue the foreclosure process."

40. The plaintiff challenged the validity of the SMSL and requested extensions in written correspondence to Shellpoint January 15, 2016 and February 24, 2016. Shellpoint responded

February 9, 2016 and February 18, 2016 but refused to give an extension, rather they continued to refer the plaintiff back to the original January 4, 2016 expired SMSL which was never sent to the plaintiff in accordance or compliance with the plaintiff's designated address for notice and correspondence. The plaintiff's February 24, 2016 letter was sent as an appeal to Shellpoint who responded in a letter to the plaintiff February 25, 2016 stating

> "We are working on the requested information and will forward it to
>
> you within the allotted time frame."

41. Shellpoint filed a Notice of Sale ("NOS") on the plaintiff's home March 8, 2016 while the plaintiff's file was under appeal. Shellpoint did not answer the plaintiff appeal until March 21, 2016 instructing the plaintiff to call Ruby Fielder, escalation representative. Shellpoint conducted a foreclosure sale April 25, 2015 over the plaintiff's written objections.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF THE LOSS MITIGATION LAWS AND REGULATIONS

## OF THE CONSUMER FINANCIAL PROTECTION BUREAU AND

## THE CALIFORNIA FORECLOSURE REDUCTION ACT OF 2013

## CFR § 1024.41(b)(2)(i)(A)(B)(ii), INDIVIDUALLY AND COLLECTIVELY,  AND

## CALIFORNIA CIVIL CODES § 2923.7 (b)(1)-(5); 2923.7 (c)(d) AND (e)

## AGAINST DEFENDANT SHELLPOINT

42. Plaintiff Kenneth G. Beavers repeats and re-alleges each and every allegation in paragraphs 1 through 41 of this Second Amended Complaint with the same force and effect as if fully set forth herein.

43. The plaintiff was led to believe and trusted defendant Shellpoint's claims they were in full compliance with all state and federal laws, the terms and conditions of the plaintiff's note and all regulations regarding the handling of sensitive information provided by the borrower. The plaintiff instead encountered Shellpoint SPOCs and escalation employees who lost or mishandled the plaintiffs submitted personal and business identification records accompanying his loan modification applications that were sent to and entrusted to specific Shellpoint SPOCs; having his file assigned to two simultaneous SPOCs with differing conditions for approval, and

11

loan modification approval conditions requiring him to violate federal law. The plaintiff encountered all of these experiences **after** Shellpoint had recorded a NOD February 5, 2015 on the plaintiff's home.

44. The plaintiff is bringing this First Claim for Relief for Shellpoint's alleged violations of federal and state of California loss mitigation laws and regulations in the processing and review of his three UBAF loss mitigation request applications. The First Claim for Relief is referencing alleged violations of CFR § 1024.41(b)(2)(i)(A)(B)(ii), individually and collectively, and California Civil Codes § 2923.7 (b)(1)-(5); 2923.7 (c)(d) and (e).

45. The plaintiff had performed all conditions on his part of submitting his three UBAF loan modifications except those conditions that he was prevented or excused from performing by virtue of defendant Shellpoint's conduct. The plaintiff lost his home April 25, 2015 through foreclosure by defendant Shellpoint. The plaintiff alleges he was not given fair and equitable consideration to save his home of ten years through loan modification. The plaintiff lost over $40,000.00 in improvements, had paid the lender over $160,000.00 at an above market interest rate, $17,400 in security to protect his property and his wife from physical attacks by Shellpoint hired collectors for which police reports were filed, and had spent hundreds of hours away from work trying to save his home.

46. The plaintiff and his wife lived in fear daily, for over a year, not knowing if they were eligible for a federal loan modification because of the lack of verifiable proof defendant Freddie Mac was the owner and holder of their mortgage.

47. In addition to those damages set out in paragraph 45 above, the plaintiff has suffered damages including, but not limited to, anxiety due to loss of home, emotional distress and consequential damages as a direct and proximate result of defendant Shellpoint's actions of mishandling the plaintiff's loan modification request. Shellpoint's negligent actions were willful, therefore warrants imposition of punitive damages in an appropriate amount to be determined at trial.

///

///

///

12

## SECOND CLAIM FOR RELIEF

## VIOLATIONS OF THE PRIVACY ACT

## 12 U.S.C. § 3403 (a) (b)

## AGAINST DEFENDANT SHELLPOINT

## AND DEFENDANT FREDDIE MAC

48. Plaintiff Kenneth G. Beavers repeats and re-alleges each and every allegation in paragraphs 1 through 47 of this Second Amended Complaint with the same force and effect as if fully set forth herein.

49. The plaintiff received in two certified mailings of an "Important Notice" from his previous alleged loan servicer Resurgent Mortgage Servicing dated December 4, 2013, which was attached to their NOD claiming defendant Resurgent Capital was the valid owner and holder of the plaintiff's loan, not defendant Freddie Mac. This "important notice" granted the plaintiff's authorization to contact Freddie Mac directly if he had any questions regarding his loan and its status.

50. On April 4, 2014, as advised and authorized, the plaintiff sent a letter/binder directly to defendant Freddie Mac asking if they claimed any ownership of the plaintiff's loan, and if they claimed ownership the plaintiff needed verifiable proof of ownership as well as verifiable evidence of the Freddie Mac's authorized agent/loan servicer.

51. This letter/binder was addressed exclusively and solely to defendant Freddie Mac. The plaintiff considered Freddie Mac's direct response critical in his effort to obtain fair and reasonable consideration for loan modification. If defendant Freddie Mac was not the verifiable owner of his mortgage he would not be eligible for federal loan programs.

52. Freddie Mac refused to answer the plaintiff's April 4, 2014 letter. On July 16, 2014 the plaintiff filed a complaint with his congressman, Kevin McCarthy, asking him to contact Freddie Mac on the plaintiff's behalf, requesting Freddie Mac respond directly to the plaintiff's April 4, 2014 letter. The plaintiff signed a constituent services release of information form specifically and solely for Freddie Mac information.

///

13

53. Congressman McCarthy's office opened dialogue with defendant Freddie Mac and it was verbally agreed that, because of the nature of the complaint and the numerous controversies with the loan servicers, Freddie Mac would respond directly to the plaintiff and copy Congressman McCarthy's office. The plaintiff ratified this agreement by phone. The plaintiff notified defendant Shellpoint's escalation supervisor Hayes Jr. about this agreement August 1, 2014 by fax and certified mail. The plaintiff's August 1, 2014 letter specifically states that defendant Shellpoint is not authorized to respond for defendant Freddie Mac under this agreement.

54. On August 26, 2014, defendant Shellpoint and their escalations supervisor Hayes Jr. broke this agreement by sending an unauthorized letter of response to the plaintiff's April 4, 2014 letter sent solely and exclusively to defendant Freddie Mac to Congressman McCarthy.

55. Shellpoint's Hayes Jr.'s August 26, 2014 letter was sent in a reckless unprotected manner. It was addressed to "Office of Congressman Kevin McCarthy" whose office consists of interns, clerical staff, and volunteers, thus breaking the plaintiff's right to financial privacy. Defendant Shellpoint and Hayes Jr. did not contact Congressman McCarthy's office for a designated recipient for their letter which contained the plaintiff's personal and financial information thus leaving this information exposed to unknown parties and identity theft.

56. In addition to the violation of the plaintiff's August 1, 2014 notice denying Shellpoint's authorization to respond to Congressman McCarthy, defendant Shellpoint sent voluminous unauthorized plaintiff personal information to Congressman McCarthy's office outside of the scope of the information requested by the plaintiff from defendant Freddie Mac on April 4, 2014.

57. Defendant Shellpoint's letter also granted Congressman McCarthy's office continuing access to the plaintiff's Shellpoint file without authorization from the plaintiff. The plaintiff complained multiple times to Shellpoint about allowing personnel of Congressman McCarthy's office access to the plaintiff's Shellpoint file. Shellpoint would not and did not remove this authorization, leaving the plaintiff's Shellpoint personal and private financial records vulnerable for unauthorized access by unknown third parties.

14

58. Defendant Shellpoint's escalation supervisor, Hayes, Jr., responded to the plaintiff's complaints about their August 26, 2014 letter to Congressman McCarthy's office claiming Shellpoint was authorized to respond, all content and exhibits were warranted and, lastly, states on April 20, 2015 "Shellpoint takes the privacy of its customers non-public personal information very seriously and has policies and procedures in place to ensure the confidentiality of such information". The plaintiff disputed this claim multiple times.

59. In a letter to the CFPB, dated August 11, 2015, Shellpoint Hayes Jr. states the office of Congressman Kevin McCarthy sent the plaintiff's April 4, 2014 letter addressed solely to Freddie Mac to Shellpoint which would be a violation of the Privacy Act because the plaintiff never signed or would sign Congressman McCarthy's Constituent's Services Release of Information designating Shellpoint as an authorized recipient. In the same letter Shellpoint's Hayes Jr. states defendant Freddie Mac instructed Shellpoint to send the August 26, 2015 unauthorized Shellpoint letter thus breaking the agreed method of response. Shellpoint's Hayes Jr.'s granting of access to the plaintiff's personal Shellpoint files to the office of Congressman McCarthy was still in effect.

60. The plaintiff has suffered severe emotional damage and fear from Shellpoint's deliberate release of the plaintiff's personal information outside of the scope of his request for specific information regarding the ownership of his loan being sent in an unprotected manner granting continuing access by unknown third parties to his personal information exposing him to identity theft. On February 24, 2015 the plaintiff's business bank notified the plaintiff that they had blocked an illegal online access to his two business trust accounts that contained substantial amounts of his client's money and they were putting a fraud alert on both accounts. They recommended the plaintiff close these accounts and open new ones. On March 2, 2015 the IRS notified the plaintiff that unknown parties had changed his business mailing address for his then 34 year old business which led to the discovery that hackers had changed the plaintiff's social security number (SSN) and name by leaving out the "s" so the plaintiff could not access his IRS records that use his SSN as a password. The plaintiff notified Shellpoint on March 6, 2015 that the IRS had opened a fraud investigation. The IRS wanted to know if

1   anyone had extensive personal information sufficient to attempt to access and change the
2   plaintiff's IRS information. The plaintiff reported that Shellpoint had the most detailed up to
3   date records and information on the plaintiff.
4   61. Defendant Shellpoint's actions violated the agreed method of response to the plaintiff's April
5      4, 2014 letter between Freddie Mac, Congressman McCarthy's office and the plaintiff. Their
6      reckless, willful and illegal release of the plaintiff's personal Shellpoint financial records and
7      prior loan servicer, Resurgent Mortgage, records dating back to 2012, with continuing
8      unauthorized access, was done with deliberate disregard for the rights of the plaintiff's
9      personal and financial privacy. The plaintiff and his business have been damaged by the
10     defendants' unauthorized release of his personal information and the granting of the continual
11     access by unauthorized third parties in addition to lost financial records that were submitted to
12     Shellpoint. These defendants' actions expose the plaintiff and his business to the continuing
13     threat of identity theft and therefore warrant the imposition of punitive damages as to
14     defendants Shellpoint and Freddie Mac in an amount to be determined at trial.

15                             **THIRD CLAIM FOR RELIEF**
16                             **BREACH OF FIDUCIARY DUTY**
17                          **AGAINST DEFENDANT SHELLPOINT**
18                           **AND DEFENDANT FREDDIE MAC**

19  62. Plaintiff Kenneth G. Beavers repeats and re-alleges each and every allegation in paragraphs 1
20     through 61 of this Second Amended Complaint with the same force and effect as if fully set
21     forth herein.
22  63. The actions of defendants Shellpoint and Freddie Mac were malicious and cold by not
23     protecting the plaintiff's entrusted personal information and conveying it, without plaintiff's
24     authorization, to unknown third parties. The practices and patterns of the defendants during this
25     loan modification request transaction were designed to cause and did cause plaintiff to act upon
26     the trust reposed in defendants by plaintiff to act in compliance with all federal and state of
27     California loss mitigation laws and regulations, terms of the note and deed of trust and protect
28     plaintiff's personal information.

64. Defendants Shellpoint and Freddie Mac owed a fiduciary duty to plaintiff to act only in a manner that would protect plaintiff's interest and not jeopardize his rights in the subject property and not subject plaintiff to loss of the property and suffer other damages through illegal, unlawful and unfair acts on defendants' part. Defendants Shellpoint and Freddie Mac breached that fiduciary duty by the commission of the acts alleged herein, which have caused plaintiff damages in an amount as yet unknown. Plaintiff will seek leave to amend this complaint when the amount of damages is actually known. These actions were intentional, thereby warranting an award of punitive damages in an appropriate amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**

**BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

**AGAINST DEFENDANT SHELLPOINT**

**AND DEFENDANT FREDDIE MAC**

65. Plaintiff Kenneth G. Beavers repeats and re-alleges each and every allegation in paragraphs 1 through 64 of this Second Amended Complaint with the same force and effect as if fully set forth herein.

66. Defendants and each of them, under the terms of the Promissory Note and Deed of Trust and the understandings between the parties, had a duty to act in good faith and fair dealing with plaintiff in his request for loan modification as outlined in this Second Amended Complaint.

67. Shellpoint with regard to failing to review and process the plaintiff's loan modification request in compliance with federal and state of California loss mitigation laws and regulations, failure to protect the plaintiff's personal information, and to disclose to the plaintiff a valid verifiable identification of the owner of the plaintiff's loan and a verifiable authorized loan servicer.

68. Freddie Mac for refusing to directly provide proof of ownership of the plaintiff's loan and their authorized agent/loan servicer and failure to protect the plaintiff's rights to fair dealing by ignoring the plaintiff's authorized direct contact letters and breaking the verbal contract with Congressman Kevin McCarthy's representatives allowing unauthorized personal information of the plaintiff be sent to his office unprotected.

17

69. Defendants breached said covenant by virtue of their conduct as hereinabove alleged.

70. As a proximate result of the actions of the defendants and each of them, as herein alleged, plaintiff has been irreparably damaged due to the loss of his home and such actions warrant an award of punitive damages in an acceptable amount to be determined at time of trial.

**FIFTH CLAIM FOR RELIEF**

**FRAUD BASED ON DECEIT AND MISREPRENTATION**

**AGAINST DEFENDANT SHELLPOINT**

71. Plaintiff Kenneth G. Beavers repeats and re-alleges each and every allegation in paragraphs 1 through 70 of this Second Amended Complaint with the same force and effect as if fully set forth herein.

72. At numerous times between March 23, 2014 and the date of the foreclosure on the plaintiff's home, April 25, 2016, defendant Shellpoint stated to the plaintiff that they were in full compliance with **all** state and federal laws as well as within the terms of the loan note and deed of trust and were in compliance with **all** regulations regarding the handling of sensitive information provided by the plaintiff. The plaintiff trusted and relied on these statements as being truthful. This trust was shattered when Shellpoint did not review and process the plaintiff's loan modification requests in compliance or in accordance with federal and state of California loss mitigation laws and regulations as alleged in this complaint. This resulted in the plaintiff not being given fair and equitable consideration for loan modification to save his home.

73. Defendant Shellpoint's alleged offer and delivery method of an alleged valid SMLS, which was not in compliance with the conditions of the plaintiff's note, and contained an unreasonable expiration date on a national holiday Monday led to the foreclosure on the plaintiff's home.

74. Shellpoint disclosed four different entities to the plaintiff as being the alleged valid owner and holder of his loan but would not provide any verifiable proof to the plaintiff or verifiable authorization from any disclosed alleged owners for Shellpoint to act as their authorized agent/loan servicer between May 12, 2014 and the date of foreclosure, April 25, 2016. The

plaintiff sent four letters directly to defendant Freddie Mac who was one of Shellpoint's alleged valid owners of the plaintiff's loan between April 4, 2014 and October 26, 2015 asking if they owned the plaintiff's mortgage and if Shellpoint was their authorized agent loan servicer. Defendant Freddie Mac never responded to any of the plaintiff's written requests for confirmation of ownership of the plaintiff's loan or that Shellpoint was their authorized agent.

75. On February 12, 2014 MERS assigned all beneficial interest in the plaintiff's mortgage to Resurgent Capital Services. On February 5, 2015 Shellpoint recorded a NOD against the plaintiff's home stating that they were the "creditor" and that they were a debt collector in a "Debt Validation Notice". Shellpoint did not hold beneficial interest in the plaintiff's mortgage until **December 21, 2015** when Resurgent Capital Services assigned all beneficial interest in the plaintiff's mortgage to Shellpoint. Shellpoint was not the creditor for the plaintiff's mortgage on the date the NOD was filed as claimed.

76. These actions of misrepresentation by defendant were willful. They acted with reckless disregard for the rights and the protection of the plaintiff, leading to the loss of his home creating irreparable damage to the plaintiff, and such actions warrant an award of punitive damages in an acceptable amount to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendants as follows:

        A. For compensatory damages in an amount to be proven at trial;

        B. For punitive damages against defendants Shellpoint and Freddie Mac in an amount to be proven at trial;

        C. For reasonable costs of this suit and attorneys' fees; including attorneys fees pursuant to 42 U.S.C. § 1988; and;

///

///

///

///

D.  For such further other relief as the Court may deem just, proper, and appropriate.

Respectfully Submitted,

Dated: November 13, 2017

Kenneth G. Beavers, Pro Se

## DEMAND FOR JURY TRIAL

COME NOW PLAINTIFF, Kenneth G. Beavers and demand a trial by jury.

Dated: November 13, 2017

Kenneth G. Beavers, Pro Se

EXHIBIT "A"

FROM:

Kenneth G. Bonner
3716 Crest Dr.
Bakersfield CA. 93306

## ☆ NOTICE ☆

This Uniform Borrower Assistance Form
SEALED ENVELOPE
Dated March 24th 2015 contains personal
Identification documents and information.

This ENVELOPE is to be opened by
MR. NICOLAS SANFORD ONLY who is
"Single point Contact under HBOR.

_No other_ Shellpoint Mortgage Servicing or 3rd party Employee
is granted authorization or permission to open this
document ENVELOPE OR this will be considered a
break in delivery priority subject to civil liability
as to the privacy Act and other applicable federal and california law.

Kenneth G. Bonner, March 24, 2015

TO:

Nicolas Sanford "Single Point
Contact" Shellpoint Mortgage Servicing
ONLY under the California
Homeowner Bill of Rights (HBOR)

Bubble Mailer

# PROOF OF SERVICE

I am employed in the City of Bakersfield and County of Kern, California. I am over the age of 18. I am a Pro SE Plaintiff in the action. My business address is 3200 21st Street, Suite 300, Bakersfield, CA 93301.

On NoVEMbER 13,2017 , I served the following documents

## SECOND AMENded COMPLAINT

On the interested parties in this action by placing true copies thereof enclosed in sealed envelopes address as follows:

| Attorney | Telephone/Facsimile/email | Party |
|---|---|---|
| AKERMAN LLP,<br>Preston K. Ascherin,<br>Parisa Jassim<br>601 West 5th St., Ste. 300<br>Los Angeles, CA 90071 | Phone: (213) 688-9500<br>Facsimile: (213) 627-6342<br>Email: preston.asherin@akerman.com | Defendant:<br>New Penn Financial, LLC DBA Shellpoint<br>Mortgage Servicing; Resurgent Capital<br>Service LP; Resurgent Mortgage Servicing;<br>Federal Home Loan Mortgage Corporation<br>AKA Freddie Mac |

☒ (OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, a true copy of the foregoing document in sealed envelopes or packages designated by the express service carrier, addressed as stated above, with fees for overnight delivery paid or provided for.

☐ (State)    I declare under penalty of perjury under the laws of the State of California that the above is true and correct

☒ (Federal)    I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on November 13,2017, at Bakersfield, California.

Kenneth G. Beavers

Plaintiff Pro SE

Kenneth D Beavers Pro SE
(Signature)

1
PROOF OF SERVICE