# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH G. BEAVERS, | Case No.: 1:17-cv-00747 - JLT |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| v. | (Doc. 34) |
| NEW PENN FINANCIAL LLC, dba SHELLPOINT MORTAGE SERVICING; RESURGENT CAPITAL SERVICES LP; RESURGENT MORTGAGE SERVICING; FEDERAL HOME LOAN MORTGAGE CORPORATION; and DOES 1-50, | |
| Defendants. | |

Kenneth Beavers asserts the defendants are liable for wrongful actions related to his applications for loan modification the foreclosure of his home. Defendants seek dismissal of several cause of action raised the Second Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 34) Because the Court concludes Plaintiff fails to provide sufficient factual allegations to support the challenged claims, the motion to dismiss is **GRANTED**.

## I.     Background and Factual Allegations

Plaintiff asserts he "executed and delivered" a promissory note in the amount of $408,000 to American Brokers Conduit, a lender, on a personal residence to on October 4, 2005. (Doc. 33 at 5, ¶15) He alleges the loan was secured by a Deed of Trust, which was delivered to Mortgage Electronic

1

Registration Systems, Inc., a beneficiary for American Brokers Conduit. (*Id.,* ¶ 17)

He asserts that on March 26, 2012, "Bank of America, an alleged valid successor loan servicer, notified the plaintiff his loan servicing was transferred" to Resurgent Mortgage, which is a division of Resurgent Capital. (Doc. 21 at 5, ¶ 19) Plaintiff reports a month later, Resurgent Mortgage notified Plaintiff his loan servicing was placed with the company by Freddie Mac, not Bank of America. (*Id.*) Shellpoint began serving Plaintiff's loan on March 1, 2014, when Resurgent Mortgage became a part of Shellpoint. (FAC ¶ 47; Doc. 2-2 at 24)

According to Plaintiff, he sent "his first request for modification or short sale and submitted a hardship letter" to Resurgent Mortgage on January 15, 2013. (Doc. 21 at 5, ¶ 20) He alleges he did not receive a response from Resurgent Mortgage until he filed a complaint, at which time "Resurgent Mortgage then provided Plaintiff with a Uniform Borrowers Assistance Form (UBAF) and written instructions for completion of the application and a list of required documents for loan modification approval." (*Id.*) He reports the document and instructions were received on April 19, and he "completed and submitted [the] UBAF [on] April 24, 2013. (*Id.*)

He alleges that he submitted three UBAFs "to defendant Shellpoint's appointed Single Point of Contact ('SPOC'); UBAF #1 on December 31, 2014 to SPOC Williams; UBAF #3 on March 24, 2015 to SPOC Sanford; and UBAF #3 to SPOC Sanford."[1] (Doc. 33 at 6, ¶ 18) According to Plaintiff, he submitted "[e]ach and every document on defendant Shellpoint's original document request letters and UBAF loan modification applications." (*Id.*) In addition, Plaintiff asserts all of the forms "were submitted in the same manner," and "were copied in their entirety, indexed, with each and every document certified in writing by a 3rd party as to its submission, double enveloped, and addressed specifically and solely to defendant Shellpoint's designated single point of contact." (*Id.*) Plaintiff contends he took "[t]hese precautions … because of defendant Shellpoint's repeated document history of losing or mishandling multiple critical … personal and business identification documents." (*Id.*)

On January 13, 2015, Shellpoint denied the UBAF dated December 31, 2014, stating Plaintiff

---

[1] Previously, Plaintiff alleged that he submitted six UBAFs between April 2013 and May 2015. (Doc. 21 at 5, ¶21) It appears he omitted reference to the earlier UBAF's because they were submitted outside of the statute of limitations period.

did not provide all documents requested, and notifying him additional documents were needed. (Doc. 33 at 6, ¶ 21) However, Plaintiff contends Shellpoint "did not identify the specific documents they claimed were missing." (*Id.*) Plaintiff reports that he "filed an immediate appeal [on] January 24, 2015." (*Id.*, ¶ 22) According to Plaintiff, Shellpoint responded to the appeal, on February 4, 2015, and identified the missing documents. (*Id.*, ¶ 24) He asserts Shellpoint also responded on February 15, 2015, and directed the documents be submitted to a different individual. (*Id.*) Plaintiff contends he was unable to respond "until the conditions were clarified and the proper SPOC was identified by Shellpoint." (*Id.*)

Plaintiff alleges he "submitted a new loan modification application" on March 24, 2015, "as instructed by Shellpoint, which was denied in two letters, one dated March 30, 2015 and the 12 other dated March 31, 2015." (Doc. 33 at 8, ¶ 28) Plaintiff asserts the two letters identified "differing missing documents were missing from his again instruct[ed] the plaintiff to submit these alleged different conditions to two different Shellpoint SPOCs." (*Id.*) Plaintiff contends he was again "unable to [comply] until Shellpoint identified the exact required alleged missing documentation and the identity of their authorized SPOC to review them." (*Id.*)

He asserts he submitted another UBAF "signed May 22, 2015, which was confirmed received by Shellpoint June 1, 2015." (Doc. 33 at 8, ¶ 28) According to Plaintiff, "Shellpoint's letter, dated July 7, 2015, … confirmed that Shellpoint had lost submitted, 3rd party verified documents, and it also contained unreasonable loan modification approval conditions which were impossible for the plaintiff to meet because they were against Generally Accepted Accounting Principles… and IRS Regulations for his sole proprietor business." (*Id.*, ¶ 29) Plaintiff contends he was unable to comply with the deadlines identified by Shellpoint to submit identified missing documents due to a delay in the mail, and the UBAF from May 2015 was also denied. (*Id.* at 8-9, ¶¶ 31-32)

Plaintiff alleges he sent a written request to Shellpoint on October 13, 2015, asking for "a personal meeting with Shellpoint at any office not under control of Shell point escalations supervisor Hayes Jr. to resolve all issues." (Doc. 33 at 10, ¶ 34) According to Plaintiff, the refusal of Resurgent Mortgage and Shellpoint "to answer these and other vital QWRs questions under RESPA in a timely manner and format required by RESPA led to the unjust, unwarranted, and illegal denial of the

plaintiffs six complete UBAFs and was a major factor in the resultant foreclosure of his … on April 25, 2016." (Doc. 21 at 8-9, ¶ 35)

In the First Amended Complaint filed on August 14, 2017, Plaintiff identified the following causes of action: (1) failure to respond to Qualified Written Requests in violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605; (2) violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692; (3) violations of the Consumer Financial Protection Bureaus Loss Mitigation Laws, Regulations, and Procedures, 12 C.F.R. §1024.41; (4) violations of the Fair Credit Reporting Act, 15 U.S.C. § 1685; and (5) violation of the confidentiality of financial records and privacy under 12 U.S.C. § 3403 and 12 C.F.R. 1016. (*See* Doc. 21 at 6-29) Defendant challenged several causes of action through a motion to dismiss, which was granted by the Court on October 12, 2017. (Docs. 24, 30)

On November 14, 2017, Plaintiff filed his Second Amended Complaint. (Doc. 33) In the amended pleading, Plaintiff alleged the following causes of action: (1) violations of the Consumer Financial Protection Bureaus Loss Mitigation Laws, Regulations, and Procedures, 12 C.F.R. §1024.41; and California Foreclosure Reduction Act of 2013, Cal. Civ. Code § 2923.7; (2) violation of The Privacy Act, 12 U.S.C. § 3403; (3) breach of a fiduciary duty; (4) breach of the covenant of good faith and fair dealing; and (5) fraud. (*See* Doc. 33 at 1, 11-19) Defendants now seek dismissal of the first, third, fourth and fifth claims. (Doc. 35)

## II.    Pleading Requirements

General rules for pleading complaints are governed by the Federal Rules of Civil Procedure. A complaint must include a statement affirming the court's jurisdiction, "a short and plain statement of the claim showing the pleader is entitled to relief; and . . . a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a). The Federal Rules adopt a flexible pleading policy, and *pro se* pleadings are held to "less stringent standards" than those drafted by attorneys. *Haines v. Kerner*, 404 U.S. 519, 521-21 (1972).

A complaint must state the elements of the plaintiff's claim in a plain and succinct manner. *Jones v. Cmty Redevelopment Agency*, 733 F.2d 646, 649 (9th Cir. 1984). The purpose is to give the defendant fair notice of the claims against him, and the grounds upon which the complaint stands. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The Supreme Court noted,

4

> Rule 8 does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

### III. Motions to Dismiss

Defendants assert that Plaintiff "fails to state a claim upon which relief may be granted" in his First Amended Complaint, and seeks dismissal of the claims pursuant to Rule 12(b)(6). (Doc. 34 at 2) A Rule 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) is appropriate when "the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Thus, under Rule 12(b)(6), "review is limited to the complaint alone." *Cervantes v. City of San Diego*, 5 F.3d 1273, 1274 (9th Cir. 1993). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Supreme Court explained,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (internal citations, quotation marks omitted).

A court must construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in favor of the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). "The issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Therefore, the Court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Assoc. v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998).

1  **IV.     Discussion and Analysis**

2      Defendants contend the first, third, fourth, and fifth causes of action raised in the Second

3  Amended Complaint should be dismissed. (Doc. 34 at 5-11) Plaintiff opposes the motion to dismiss,

4  arguing these claims are supported by the factual allegations. (*See generally* Doc. 38)

5      **A.     First Claim for Relief, Part I: Violations of the Consumer Financial Protection

6  Bureaus Loss Mitigation Laws, Regulations, and Procedures, 12 C.F.R. §1024.41**

7      Plaintiff contends Shellpoint is liable for violating 12 C.F.R. § 1024.41(b)(2)(i)(A)(B)(ii). (*See

8  generally* Doc. 33 at 11-12), which may be enforced through the Real Estate Settlement Procedures Act

9  ("RESPA"), 12 U.S.C. § 2605(f). Section 1024.41 sets forth the procedures lenders must follow when

10 reviewing borrowers' loss mitigation applications, with the obligations differing where the submitted

11 application was complete or incomplete.  As a threshold matter, the allegations in Plaintiff's Second

12 Amended Complaint are again unclear as to whether the initial—or subsequent—loan modification

13 applications that he submitted were complete.[2] Consequently, the Court is unable to determine which

14 obligations arose under Section 1024.41.

15     Moreover, while Plaintiff identifies the subsection of Section 1204.41 related to the receipt of

16 loss mitigation applications, Plaintiff fails to specifically identify facts addressing the obligations of a

17 servicer and how Shellpoint failed in these obligations. Nevertheless, from what the Court can surmise,

18 Plaintiff contends Shellpoint failed to respond to his loss mitigation applications within the five days

19 required by Section 1204.41, and instead took additional time to inform him whether the loss mitigation

20 applications were complete, what additional documents were required, and to set a deadline that

21 Plaintiff believed was reasonable for him to submit the additional documents.

22     Assuming the facts support a conclusion that the defendant violated these provisions, a servicer

23 may only be liable for (1) "any actual damages" the borrower suffered as a result of the servicer's

24 failure to comply with its duties, and (2) "any additional damages, as the court may allow, in the case

25 of a pattern or practice of noncompliance with the requirements of this section, in an amount not to

---

[2] Plaintiff previously asserts he submitted "five fully completed UBAFs," (Doc. 21 at 21, ¶ 85) He now has changed the number to three UBAFs, and it is unclear whether the forms were complete as he also alleges Shellpoint responded that documents were missing. At hearing, the plaintiff admitted that Shellpoint indicated that the application was facially complete but then later required additional documents to be submitted or resubmitted.

6

exceed $ 2,000." 12 U.S.C. §2605(f). "Although this section does not explicitly set this out as a pleading standard, a number of courts have read the statute as requiring a showing of pecuniary damages in order to state a claim." *Allen v. United Financial Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009); (citing *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) ["alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages"]); *see also Pok v. American Home Mortg. Servicing, Inc.*, 2010 WL 476674 at *5 (E.D. Cal. Feb. 3, 2010) (dismissing a RESPA claim based on the plaintiff's failure to allege any facts supporting a conclusion that the defendant's alleged violation resulted in pecuniary damages).

Plaintiff fails to allege actual damages as a result of the alleged RESPA violations, and the facts alleged are insufficient to support a conclusion that Shellpoint has "a pattern or practice of noncompliance with the requirements of [RESPA]." Consequently, Plaintiff's first claim for relief is not cognizable, to the extent it is based upon a breach of the requirements set forth in Section 1204.41, and is **DISMISSED** with leave to amend.

**B.     First Claim for Relief, Part II: Violations of Cal. Civ. Code § 2923.7**

Plaintiff asserts Shellpoint is liable for violations of Section 2923.7 (Doc. 33 at 11-12), which governs the actions of a single point of contact for a mortgage servicer ("SPOC), which may include an "individual or team of personnel" assigned to a borrower's account. Cal Civ. Section 2923.7(e). Pursuant to Section 2923.7(b):

> The single point of contact shall be responsible for doing all of the following:
>
>     (1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.
>
>     (2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.
>
>     (3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.
>
>     (4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.

7

(5) Having access to individuals with the ability and authority to stop
foreclosure proceedings when necessary.

In addition, the SPOC is to "remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current." Cal. Civ. Code § 2923.7(c). The SPOC should also "refer[] and transfer[] a borrower to an appropriate supervisor upon the request of a borrower." *Id.*, § 2923.7(d). The SPOC requirement helps prevent borrowers from being "given the run-around [and] being told one thing by one bank employee while something entirely different is being pursued by another." *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 904-05 (2013).

As an initial matter, Plaintiff fails to allege that he requested a SPOC to facilitate the review of his loan modification applications, which is a threshold requirement for a claim for a violation of this provision. See Cal. Civ. Code § 2923.7(a) ("*[u]pon request from a borrower* who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact") (emphasis added). *See also Williams v. Wells Fargo Bank, N.A.*, 2014 WL 1568857 at *8 (C.D. Cal. Jan. 27, 2014) ("the text of section 2923.7 requires that the borrower make a specific request for a single point of contact"). Moreover, even if Plaintiff had alleged that he had requested an SPOC, Plaintiff's allegations are insufficient to determine how or why he believes Shellpoint violated Section 2923.7. Instead, Plaintiff merely identifies Cal. Civ. Code § 2923.7 subsections (b), (c), (d), and (e) in the caption, and the Court cannot speculate how Shellpoint may be liable for violating these provisions. *See Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim"); *see also Norris v. Bayview Loan Servicing, LLC,* 2015 WL 6745048 at *5 (C.D. Cal. Oct. 26, 2015) (explaining that the plaintiff's invocation of Section 2923.7 as a claim, "without further factual support, is a conclusory allegation of law insufficient to defeat a motion to dismiss"). Therefore, Plaintiff's first cause of action, to the extent it is based upon a violation of Section 2923.7 is not cognizable and is **DISMISSED.**

### C. Third Claim for Relief: Breach of a Fiduciary Duty

Defendants contend that "Plaintiff cannot state a claim for breach of fiduciary duty against

8

Shellpoint or Freddie Mac." (Doc. 34 at 7) To state a claim for breach of fiduciary duty, a plaintiff must show: (1) the existence of a fiduciary relationship; (2) the breach of that relationship; and (3) damage proximately caused by the breach. *Roberts v. Lomanto*, 112 Cal. App. 4th 1553, 1562 (2003). However, "[a]bsent special circumstances . . . a loan transaction is [an] at arms-length [transaction] and there is no fiduciary relationship between the borrower and lender." *Oaks Mgmt. Corp. v. Superior Court*, 145 Cal. App. 4th 453, 466 (2006).

As Defendants observe, "The relationship between a lending institution and its borrower-client is not fiduciary in nature." (Doc. 34 at 7, quoting *Nymark v. Heart Fed. Savings & Loan Assoc.*, 231 Cal.App.3d 1089, 1093, fn. 1 (1991). To the contrary, "[a] commercial lender is entitled to pursue its economic interest in a loan transaction. This right is inconsistent with the obligations of a fiduciary, which require that the fiduciary knowingly agree to subordinate its interests to act on behalf of and for the benefit of another." *Gonzalez v. First Franklin Loan Servs.*, 2010 WL 144862 at *13 (E.D. Cal. Jan. 11, 2010). Further, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role." *Nymark.*, 231 Cal.App.3d at 1096.

In this case, Plaintiff fails to allege any facts supporting the conclusions that Defendants acted in a manner exceeding their conventional roles as financial institutions, or that Defendants established a fiduciary relationship with Plaintiff. Consequently, Plaintiff's third claim for a breach of a fiduciary duty fails and is **DISMISSED** with leave to amend.

**D.     Fourth Claim for Relief: Breach of the Covenant of Good Faith and Fair Dealing**

Plaintiff alleges defendants Freddie Mac and Shellpoint are liable for a breach of the covenant of good faith and fair dealing. (Doc. 33 at 17-18, ¶¶ 65-69) Defendants contend this claim fails because Plaintiff's "allegations are legally insufficient." (Doc. 34 at 8)

Under California law, "there is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Kransco v. American Empire Surplus Lines Ins. Co.*, 23 Cal.4th 390, 400 (2000); *see also McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 799 (2008) ("[g]enerally, every contract, … imposes upon each party a duty of good faith and fair dealing in its performance and

its enforcement"). The covenant is "read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." *Carma Developers (Cal.), Inc. v. Marathon Development Cal., Inc.*, 2 Cal.4th 342, 373 (1992). Therefore, the implied covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of [the parties] agreement." *McClain*, 169 Cal. App. 4th at 806.

To allege a cognizable claim for a breach of the implied covenant, a plaintiff must allege: "(1) the existence of a contract; (2) plaintiff performed all, substantially performed, or was excused from performing his obligations under the contract; (3) all conditions for defendant's performance occurred; (4) defendant unfairly interfered with plaintiff's right to receive the benefits of the contract; and (5) plaintiff was harmed by defendant's conduct." *Gonzalez*, 2010 WL 144862 at *17 (citing Judicial Council of California – Civil (CACI) (2009 ed.) § 325) Significantly, "no cause of action for the tortious breach of the implied covenant of good faith and fair dealing can arise unless the parties are in a 'special relationship' with 'fiduciary characteristics.'" *Pension Trust Fund v. Fed. Ins. Co.*, 307 F.3d 944, 955 (9th Cir. 2002) (citing *Mitsui Manufacturers Bank v. Superior Court*, 212 Cal. App. 3d 726, 730 (1989)).

Plaintiff asserts the defendants "had a duty to act in good faith and fair dealing in plaintiff in his request for loan modification."[3] (*Id.*, ¶ 66) Plaintiff contends Shellpoint breached this duty through "failing to review and process the plaintiff's loan modification request in compliance with federal and state of California loss mitigation laws and regulations, failure to protect the plaintiff's personal information, and to disclose to the plaintiff a valid verifiable identification of the owner of the plaintiff's loan and a verifiable authorized loan servicer." (*Id.*, ¶ 67) In addition, he asserts Freddie Mac breached the covenant through actions such as "refusing to directly provide proof of ownership of the plaintiff's loan and their authorized agent/loan servicer and failure to protect the plaintiff's rights to

---

[3] Even if true, this is insufficient to give rise to a breach of the implied covenant of good faith and fair dealing. An action for the breach of the implied covenant sounds in contract and imposes liability where there is an existing contract between the parties. It does not impose liability for the failure to comply with statutory duties.
Plaintiff does not claim that there was a breach of the implied covenant as it relates to duties imposed related to the original promissory note.

10

fair dealing by ignoring the plaintiff's authorized direct contact letters." (*Id.*, ¶ 68)

These facts, as Defendants argue, are not sufficient to support a claim for a breach of the implied covenant of good faith and fair dealing. As explained above, Plaintiff fails to allege facts sufficient to support a conclusion that the parties had a fiduciary relationship. In addition, Plaintiff fails to identify contracts with Freddie Mac and Shellpoint that would give rise to this claim, and fails to identify any express provision that has been frustrated by the conduct of either defendant. Finally, Plaintiff fails to identify damages as a result of the alleged breach. Consequently, his claim for a breach of the covenant of fair good faith and fair dealing is not cognizable, and is **DISMISSED** without leave to amend.

### E. Fifth Claim for Relief: Fraud based on Deceit and Misrepresentation[4]

Plaintiff contends Shellpoint is liable for fraud for failure to "review and process the plaintiff's loan modification requests in compliance or in accordance with federal and state of California loss mitigation laws and regulations." (Doc. 33 at 18) The burden to establish fraud is "heavy," *Robi v. Five Platters, Inc.*, 918 F.2d 1439, 1444 (9th Cir. 1990), because "when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud.'" *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting Fed. R. Civ. P. 9(b)).

The heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure requires that plaintiff "state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Edwards v. Marin Park, Inc.,* 356 F.3d 1058, 1066 (9th Cir. 2004); *see also Kearns*, 567 F.3d at 1126 (the plaintiff must articulate the "who, what, when, where, and how" of the fraud alleged). "For corporate defendants, a plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." *Flowers v. Wells Fargo Bank, N.A.*, 2011 WL 2748650, at *6 (N.D. Cal. July 13, 2011). Only factual allegations, rather than mere conclusions, satisfy this pleading burden. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.1989). If the allegations do not meet the heightened pleading standard, the "averments . . .

---

[4] State law "uses the words fraud and deceit interchangeably." *Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1271 (N.D. Cal. 2014).

11

should be disregarded, or stripped from the claim for failure to satisfy Rule 9(b)." *Kearns*, 567 F.3d at 1124 (quotations omitted).

The second amended complaint does not specifically identify when the disputed statements were made, or that the individuals with whom he spoke had the authority on behalf of Shellpoint.[5] Further, there is no indication that the people with whom Plaintiff communicated acted in a manner intended to deceive Plaintiff or that, in fact, he *was* deceived. As Defendants assert, "[a]t most, plaintiff disagrees with Shellpoint's handling of his loss mitigation applications and complaints." (Doc. 34 at 11) Without further factual allegations, the Court is unable to find that Plaintiff meets the heightened pleading requirements under Rule 9 for a claim sounding in fraud. *See Kerns*, 567 F.3d at 1124; *see also Edwards,* 356 F.3d at 1066. Therefore, Plaintiff's claim for fraud against Shellpoint is **DISMISSED**.

**V.     Conclusion and Order**

Based upon the foregoing, the Court **ORDERS**:

1.     Defendants' motion to dismiss is **GRANTED**;

2.     The fourth claim for relief is **DISMISSED without leave to amend**;

3.     The rest of the complaint is **DISMISSED with <u>one final</u> opportunity[6] to amend**;

    a.     If Plaintiff elects to file a Third Amended Complaint, it **SHALL** be filed within **thirty days** of the date of service of this order. Plaintiff **SHALL NOT** attach exhibits unless they are necessary to demonstrate legally operative facts. The Third Amended Complaint and any attachments thereto must not exceed 40 pages.

    b.     If Plaintiff elects **<u>not</u>** to file a Third Amended Complaint, he **SHALL** notify the Court within thirty days of the date of service of this order. Upon such written notice, the Second Amended Complaint with stand, with the matter proceeding only the second

---

[5] Though Plaintiff's opposition identifies instances when he contends the defendant lied to him or others, a lie without more is insufficient to demonstrate fraud.

[6] The Court will not grant any further leave to amend absent an express showing of an ability to cure the deficient pleading. Thus, the Court urges the plaintiff to review the elements of the claims he wishes to bring and to state factual allegations to support each element.

claim for relief for a violation of the Privacy Act remaining.[7]

IT IS SO ORDERED.

Dated: **January 11, 2018**         **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE

---

[7] In addition, if Plaintiff files such a notice, the Court will dismiss Resurgent Capital Services, LP and Resurgent Mortgage Servicing as defendants, as no claims were brought against these defendants in the Second Amended Complaint.